ROBERT C. SCHUBERT S.B.N. 62684
WILLEM F. JONCKHEER S.B.N. 178748
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@schubertlawfirm.com
wjonckheer@schubertlawfirm.com

*Local Counsel for Plaintiff*

BRIAN J. WANCA (*to be admitted pro hac vice*)
ANDERSON & WANCA
3701 Algonquin Road, Ste 760
Rolling Meadows, IL 60008
Telephone: (847)368-1500
Facsimile: (847)368-1501
bwanca@andersonwanca.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons,, <br><br> Plaintiff, <br><br> v. <br><br> MCKESSON CORPORATION and JOHN DOES 1-10, <br><br> Defendants. | No. 3:13-cv-2219 JSC <br><br> **CLASS ACTION** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, TRUE HEALTH CHIROPRACTIC, INC. ("Plaintiff") brings this action on behalf of itself and all others similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal

knowledge, alleges the following upon information and belief against Defendants, MCKESSON CORPORATION and JOHN DOES 1-10 ("Defendants").

**PRELIMINARY STATEMENT**

1. This case challenges Defendants' practice of sending unsolicited facsimiles.

2. The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 ("JFPA" or the "Act"), and the regulations promulgated under the Act, prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission. The JFPA provides a private right of action and provides statutory damages of $500 per violation. Upon information and belief, Defendants have sent facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the JFPA, including, but not limited to, the facsimile transmission of unsolicited advertisement on April 20, 2010 ("the Fax"), a true and correct copy of which is attached hereto as Exhibit A and made a part hereof. The Fax promotes the services and goods of Defendants. Plaintiff is informed and believes, and upon such information and belief avers, that Defendants have sent, and continue to send, unsolicited advertisements via facsimile transmission in violation of the JFPA.

3. Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the JFPA.

5. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative fact because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the JFPA. This action seeks relief expressly authorized by the

JFPA: (i) injunctive relief enjoining Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

7. Venue is proper in this District because Defendants committed a statutory tort within this District, and a significant portion of the events took place within this District.

## PARTIES

8. Plaintiff, TRUE HEALTH CHIROPRACTIC, INC., is an Ohio corporation with its principal place of business located in Ohio.

9. On information and belief, Defendant, MCKESSON CORPORATION, is a Delaware corporation with its principal place of business in San Francisco, California.

10. John Does 1-10 will be identified through discovery, but are not presently known.

## FACTS

11. On or about April 20, 2010, Defendants transmitted by telephone facsimile machine an unsolicited fax to Plaintiff. A copy of the facsimile is attached hereto as Exhibit A.

12. Defendants created or made Exhibit A which Defendants knew or should have known is a good or product which Defendants intended to and did in fact distribute to Plaintiff and the other members of the class.

13. Exhibit A is part of Defendants' work or operations to market Defendants' goods or services which were performed by Defendants and on behalf of Defendants. Therefore, Exhibit A constitutes material furnished in connection with Defendants' work or operations.

14. Plaintiff had not invited or given permission to Defendants to send the faxes.

15. On information and belief, Defendants faxed the same and similar unsolicited facsimiles to Plaintiff and more than 40 other recipients without first receiving the recipients'

3

express permission or invitation.

16. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

17. Defendants' facsimiles did not display a proper opt-out notice as required by 47 C.F.R. 64.1200.

18. On or about May 9, 2008, approximately two years prior to Plaintiff's receipt of Defendant's unsolicited facsimile, MCKESSON was served with a citation from the FCC informing it of violations of the TCPA and demanding it cease and desist the violations. A true and correct copy of the citation is attached hereto as Exhibit B.

## CLASS ACTION ALLEGATIONS

19. In accordance with F. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), Plaintiff brings this class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, and (4) did not display a proper opt-out notice.

Excluded from the Class are the Defendants, their employees, agents and members of the Judiciary. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

20. Class Size (F. R. Civ. P. 23(a)(1)): Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

21. Commonality (F. R. Civ. P. 23 (a) (2)): Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

    a) Whether the Defendants sent unsolicited fax advertisements;

4

  b)  Whether the Defendants' fax advertised the commercial availability of property, goods, or services;

  c)  The manner and method the Defendants used to compile or obtain the list of fax numbers to which they sent Exhibit A and other unsolicited faxed advertisements;

  d)  Whether the Defendants faxed advertisements without first obtaining the recipient's prior permission or invitation;

  e)  Whether the Defendants sent the faxed advertisements knowingly;

  f)  Whether the Defendants violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

  g)  Whether the faxes contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

  h)  Whether the Defendants should be enjoined from faxing advertisements in the future;

  i)  Whether the Plaintiff and the other members of the class are entitled to statutory damages; and

  j)  Whether the Court should award treble damages.

22. <u>Typicality (F. R. Civ. P. 23 (a) (3))</u>: The Plaintiff's claims are typical of the claims of all class members. The Plaintiff received faxes sent by or on behalf of the Defendants advertising goods and services of the Defendants during the Class Period. The Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. The Defendants have acted the same or in a similar manner with respect to the Plaintiff and all the class members.

23. <u>Fair and Adequate Representation (F. R. Civ. P. 23 (a) (4))</u>: The Plaintiff will fairly and adequately represent and protect the interests of the class. It is interested in this matter, has no conflicts and has retained experienced class counsel to represent the class.

24. <u>Need for Consistent Standards and Practical Effect of Adjudication (F. R. Civ. P. 23 (b) (1))</u>: Class certification is appropriate because the prosecution of individual actions by class

members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for the Defendants, and/or (b) as a practical matter, adjudication of the Plaintiff's claims will be dispositive of the interests of class members who are not parties.

25. <u>Common Conduct (F. R. Civ. P. 23 (b) (2))</u>: Class certification is also appropriate because the Defendants have acted and refused to act in the same or similar manner with respect to all class members thereby making injunctive and declaratory relief appropriate. The Plaintiff demands such relief as authorized by 47 U.S.C. §227.

26. <u>Predominance and Superiority (F. R. Civ. P. 23 (b) (3))</u>: Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

a) Proof of the claims of the Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

b) Evidence regarding defenses or any exceptions to liability that the Defendants may assert and prove will come from the Defendants' records and will not require individualized or separate inquiries or proceedings;

c) The Defendants have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

d) The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one (1) proceeding based upon common proofs; and

e) This case is inherently manageable as a class action in that:

(i) The Defendants identified persons or entities to receive the fax transmissions and it is believed that the Defendants' computer and business records will enable the Plaintiff to readily identify class members and establish liability and damages;

(ii) Liability and damages can be established for the Plaintiff and the class with the same common proofs;

6

(iii) Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv) A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

(v) A class action will contribute to uniformity of decisions concerning the Defendants' practices; and

(vi) As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

## COUNT I

**Claim for Relief for Violation of the JFPA, 47 U.S.C. § 227** *et seq.*

27. Plaintiff and the Plaintiff Class reassert and incorporate herein by reference the averments set for in paragraphs 1-26 above.

28. The JFPA makes unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement …" 47 U.S.C. § 227(b)(1)(C).

29. The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

30. **Opt-Out Notice Requirements.** The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in §(b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

1. a statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

7

2. a statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

3. a statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶31 of its 2006 Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005,* 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of fax machines giving them the right, and means, to stop unwanted faxed advertisements.

31. **2006 FCC Report and Order.** The JFPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the JFPA, including the JFPA's Opt-Out Notice Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

A. The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶8-12 and 17-20);

B. The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of

8

1 the Act and provides that the failure to comply with these requirements precludes the ability to
2 invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶13-16);

3         C.    The things that must be done in order to comply with the Opt-Out Notice
4 Requirements for the purposes of the third of the three prongs of the exemption under §
5 (b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes
6 the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order
7 ¶¶24-34);

8         D.    The failure of a sender to comply with the Opt-Out Notice Requirements
9 precludes the sender from claiming that a recipient gave "prior express permission or invitation" to
10 receive the sender's fax (*See* Report and Order ¶48);

11 As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-Out
12 Notice Requirements has, by definition, transmitted an unsolicited advertisement under the JFPA.
13 This is because such a sender can neither claim that the recipients of the faxed advertisement gave
14 "prior express permission or invitation" to receive the fax nor can the sender claim the exemption
15 from liability contained in § (b)(C)(1) of the Act.

16     32.    **The Fax**. Defendant sent the April 20, 2010 Fax via facsimile transmission from
17 telephone facsimile machines, computers, or other devices to the telephone facsimile machines of
18 Plaintiff and members of the Plaintiff Class. The Fax constituted advertisements under the Act.
19 Defendants failed to comply with the Opt-Out Requirements in connection with the Fax, which
20 contained no Opt-Out notice whatsoever. The Fax was transmitted to persons or entities without
21 their prior express permission or invitation and/or Defendants are precluded from asserting any
22 prior express permission or invitation because of the failure to comply with the Opt-Out Notice
23 Requirements. By virtue thereof, Defendants violated the JFPA and the regulations promulgated
24 thereunder by sending the Fax via facsimile transmission to Plaintiff and members of the Class.

25     33.    **Defendant's Other Violations.** Plaintiff is informed and believes, and upon such
26 information and belief avers, that during the period preceding four years of the filing of this
27 Complaint and repeatedly thereafter, Defendants have sent via facsimile transmission from
28 telephone facsimile machines, computers, or other devices to telephone facsimile machines of

9

members of the Plaintiff Class faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express permission or invitation (and/or that Defendants are precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements in connection with such transmissions). By virtue thereof, Defendants violated the JFPA and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief avers, that Defendants are continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

34. The TCPA/JFPA provides a private right of action to bring this action on behalf of Plaintiff and the Plaintiff Class to redress Defendants' violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

35. The JFPA is a strict liability statute, so the Defendants are liable to the Plaintiff and the other class members even if their actions were only negligent.

36. The Defendants knew or should have known that (a) the Plaintiff and the other class members had not given express invitation or permission for the Defendants or anybody else to fax advertisements about the Defendants' goods or services; (b) Defendants transmitted an advertisement; and (c) the Fax did not contain the required Opt-Out Notice.

37. The Defendants' actions caused damages to the Plaintiff and the other class members. Receiving the Defendants' junk fax caused the recipients to lose paper and toner consumed in the printing of the Defendants' fax. Moreover, the Defendants' fax used the Plaintiff's fax machine. The Defendants' fax cost the Plaintiff time, as the Plaintiff and its employees wasted their time receiving, reviewing and routing the Defendants' unauthorized fax. That time otherwise would have been spent on the Plaintiff's business activities. The Defendants' fax unlawfully interrupted the Plaintiff's and other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of Defendants' advertisements occurred outside of Defendants' premises.

WHEREFORE, Plaintiff, TRUE HEALTH CHIROPRACTIC, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, MCKESSON CORPORATION and JOHN DOES 1-10, jointly and severally, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint the Plaintiff as the representative of the class and appoint the Plaintiff's counsel as counsel for the class;

B. That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater;

C. That Court enjoin the Defendants from additional violations; and

D. That the Court award pre-judgment interest, costs and such further relief as the Court may deem just and proper.

Date: June 20, 2013

TRUE HEALTH CHIROPRACTIC, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons


By: _____Willem F. Jonckheer_____
ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA  94111
Telephone:  415-788-4220
Fax:  415-788-0161
rschubert@schubertlawfirm.com
wjonckheer@schubertlawfirm.com

*Local Counsel for Plaintiff*

BRIAN J. WANCA (*to be admitted pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847-368-1500 / Fax:  847-368-1501
bwanca@andersonwanca.com

GEORGE D. JONSON (*to be admitted pro hac vice*)
MONTGOMERY, RENNIE & JONSON
36 East Seventh Street, Suite 2100

Cincinnati, OH  45202
Telephone:  513-768-5220 / Fax:  513-768-9220
gjonson@mrjlaw.com

JOHN LOWRY (*to be admitted pro hac vice*)
BOEHM, KURTZ & LOWRY
36 E. Seventh Street, Suite 1510
Cincinnati, OH  45202
Telephone:  513-421-2255 / Fax:  513-421-2764
jlowry@bklawfirm.com

*Counsel for Plaintiff*

FROM: McKesson 404 704 8673 TO: 16147941625                 04/20/10 13:18 Page1 of 1





## Receive a **$1,500 cash rebate and $750 for each additional provider:**

**For chiropractic practices, there's never been a better time to adopt an EHR solution, and now with Medisoft° Clinical, it's never been easier with FREE chiropractic templates.**

Medisoft's chiropractic templates enable quick and complete documentation, allowing you to bill more accurately, resulting in higher levels of reimbursement. The electronic health record and the customized chiropractic templates interface easily and integrate seamlessly with your practice management system.

### Qualify for ARRA stimulus money.

For providers who qualify, Medical Clinical with the chiropractic templates may provide a clearer path to meaningful use of EHR technology and federal Incentive payments.

## Medisoft° Templates

- Assessment Initial
- Assessment Follow-up
- Fibromyalgia
- Headache
- Headache Follow-up
- Low Back Pain
- Low Back Pain Follow-up
- Neck Pain
- Neck Pain Follow-up
- Sciatica
- Sciatica Follow-up
- Strain/Sprain

Call your local value added reseller or visit
www.chirotemplates.com for more information.

© 2010 McKesson Corporation and/or one of its subsidiaries. All rights reserved
Medisoft is a registered trademark of McKesson Corporation and/or one of its subsidiaries. All other company or product names mentioned may be trademarks, service marks or registered trademarks of their respective companies.
*Offer valid from April 19, 2010 through March 25, 2011. To qualify, participants must prove ICA or ACA membership
May not be used in conjunction with any other McKesson promotion



**MCKESSON**
*Empowering Healthcare*

EXHIBIT
A

Federal Communications Commission



**FEDERAL COMMUNICATIONS COMMISSION
WASHINGTON, D.C. 20554**

May 9, 2008

**VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

McKesson Corporation
f/k/a Relay Health Corporation
Attn: Giovani Colella, MD, CEO
1 Post Street, Floor 19
San Francisco, CA 94104

RE: EB-08-TC-2410

Dear Dr. Colella:

    This is an official **CITATION**, issued pursuant to section 503(b)(5) of the Communications Act of 1934, as amended (the Act), 47 U.S.C. § 503(b)(5), for violations of the Act and the Federal Communications Commission's rules that govern telephone solicitations and unsolicited advertisements.[1] As explained below, future violations of the Act or Commission's rules in this regard may subject you and your company to monetary forfeitures.

    It has come to our attention that your company, acting under your direction, apparently sent one or more unsolicited advertisements to telephone facsimile machines in violation of Section 227(b)(1)(C) of the Communications Act, as described in the attached complaint(s).[2] Section 227(b)(1)(C) makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use a telephone facsimile machine,

---

[1] 47 U.S.C. § 227; 47 C.F.R. § 64.1200. A copy of these provisions is enclosed for your convenience. Section 227 was added to the Communications Act by the Telephone Consumer Protection Act of 1991 and is most commonly known as the TCPA. The TCPA and the Commission's parallel rules restrict a variety of practices that are associated with telephone solicitation and use of the telephone network to deliver unsolicited advertisements, including fax advertising. 47 U.S.C. § 64.1200(a)(3); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 – Junk Fax Protection Act of 2005*, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787 (2006) (*2006 TCPA Report and Order*).

[2] We have attached one complaint at issue in this citation. The complaint addresses a facsimile advertisement that contains the telephone number 516-491-1891, which your business utilized during the time period at issue.


EXHIBIT B

**Federal Communications Commission**

computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."[3] As relevant here, an "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission."[4] Mere distribution or publication of a fax number does not establish consent to receive advertisements by fax.[5] Fax advertisements may be sent to recipients with whom the sender has an established business relationship, as long as the fax number was provided voluntarily by the recipient.[6] An established business relationship is defined as a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, based on a purchase, inquiry, application or transaction by that subscriber regarding products or services offered by such person or entity. This relationship must not have been previously terminated by either party.[7] A fax advertisement may be sent to a recipient with whom the sender has an established business relationship only if the sender also:[8]

    (i) obtains the fax number directly from the recipient;[9] or

---

[3] 47 U.S.C. § 227(b)(1)(C); *see also* 47 C.F.R. § 64.1200(a)(3) (providing that no person or entity may . . . use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine). Both the TCPA and the Commission's rules define "telephone facsimile machine" as "equipment which has the capacity to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3); 47 C.F.R. § 64.1200(f)(11). The Commission has stated that "[t]he TCPA's definition of 'telephone facsimile machine' broadly applies to any equipment that has the capacity to send or receive text or images." Thus, "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes. . . [although] the prohibition does not extend to facsimile messages sent as email over the Internet." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd 14014, 14131-32 (2003) (*2003 TCPA Report and Order*).

[4] 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(13) (defining "unsolicited advertisement" to specify that prior express invitation or permission may be "in writing or otherwise").

[5] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12408-09 (1995) (*1995 TCPA Reconsideration Order*); *see also 2003 TCPA Report and Order*, 18 FCC Rcd at 14128 (concluding that mere publication of a fax number in a trade publication or directory does not demonstrate consent to receive fax advertising).

[6] 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. 64.1200(a)(3)(ii).

[7] 47 U.S.C. § 227(a)(2); 47 C.F.R. 64.1200(f)(5); *see also 2006 TCPA Report and Order*, 21 FCC Rcd at 3797-3799. An inquiry about a store location or merely visiting a company website does not create an established business relationship; an inquiry must seek information about the products or services offered by the company. Once established, nonetheless, a business relationship will permit an entity to send facsimile advertisements until the recipient "terminates" the relationship by making a request not to receive future faxes. *2006 TCPA Report and Order*, 21 FCC Rcd at 3798.

[8] If a valid EBR existed between the fax sender and recipient prior to July 9, 2005, and the sender also possessed the facsimile number prior to July 9, 2005, the sender may send the facsimile advertisements to that recipient without demonstrating how the number was obtained or verifying it was provided voluntarily by the recipient. 47 U.S.C. § 227(b)(1)(C)(iii); 47 C.F.R. § 64.1200 (a)(ii)(C); *see also 2006 TCPA Report and Order*, 21 FCC Rcd at 3796.

[9] 47 U.S.C. § 227(b)(1)(C)(ii)(I); 47 C.F.R. § 64.1200 (a)(ii)(A).

**Federal Communications Commission**

(ii) obtains the fax number from the recipient's own directory, advertisement, or site on the Internet, unless the recipient has noted on such materials that it does not accept unsolicited advertisements at the fax number in question;[10] or

(iii) has taken reasonable steps to verify that the recipient agreed to make the number available for public distribution, if obtained from a directory or other source of information compiled by a third party.[11]

Finally, in the event of a complaint or dispute, the burden rests with the fax sender to demonstrate that it either obtained prior express permission to send the facsimile advertisement or satisfied all the criteria necessary to invoke the established business relationship exemption.[12]

**If, after receipt of this citation, you or your company violate the Communications Act or the Commission's rules in any manner described herein, the Commission may impose monetary forfeitures not to exceed $11,000 for each such violation or each day of a continuing violation.**

You may respond to this citation within thirty (30) days from the date of this letter either through (1) a personal interview at the Commission's Field Office nearest to your place of business, (2) a written statement, or (3) a teleconference interview with the Commission's Telecommunications Consumers Division in Washington, DC. Your response should specify the actions that you are taking to ensure that you do not violate the Commission's rules governing telephone solicitation and unsolicited advertisements, as described above.

**Please contact Delores Browder at (202) 418-2861 to arrange for an interview at the closest field office, if you wish to schedule a personal interview. You should schedule any interview to take place within thirty (30) days of the date of this letter. You should send any written statement within thirty (30) days of the date of this letter to:**

> Kurt A. Schroeder
> Deputy Chief
> Telecommunications Consumers Division
> Enforcement Bureau
> Federal Communications Commission
> 445-12th Street, S.W., Rm. 4-C222
> Washington, D.C. 20554

**Reference EB-08-TC-2410 when corresponding with the Commission.**

Reasonable accommodations for people with disabilities are available upon request. Include a description of the accommodation you will need including as much detail as you can.

---

[10] 47 U.S.C. § 227(b)(1)(C)(ii)(II); 47 C.F.R. § 64.1200 (a)(ii)(B).

[11] 47 U.S.C. § 227(b)(1)(C)(ii)(II); 47 C.F.R. § 64.1200 (a)(ii)(B); see also *2006 TCPA Report and Order*, 21 FCC Rcd at 3795 ("[I]f the sender obtains the number from sources of information compiled by third parties—*e.g.*, membership directories, commercial databases, or internet listings—the sender must take reasonable steps to verify that the recipient consented to have the number listed, such as calling or emailing the recipient.").

[12] *2006 TCPA Report and Order*, 21 FCC Rcd at 3793-9, 3795, 3812.

3

**Federal Communications Commission**

Also include a way we can contact you if we need more information. Please allow at least 5 days advance notice; last minute requests will be accepted, but may be impossible to fill. Send an e-mail to fcc504@fcc.gov or call the Consumer & Governmental Affairs Bureau:

For sign language interpreters, CART, and other reasonable accommodations: 202-418-0530 (voice), 202-418-0432 (tty);

For accessible format materials (braille, large print, electronic files, and audio format): 202-418-0531 (voice), 202-418-7365 (tty).

Under the Privacy Act of 1974, 5 U.S.C. § 552(a)(e)(3), we are informing you that the Commission's staff will use all relevant material information before it, including information that you disclose in your interview or written statement, to determine what, if any, enforcement action is required to ensure your compliance with the Communications Act and the Commission's rules.

The knowing and willful making of any false statement, or the concealment of any material fact, in reply to this citation is punishable by fine or imprisonment under 18 U.S.C. § 1001.

Thank you in advance for your anticipated cooperation.

Sincerely,

Kurt A. Schroeder
Deputy Chief, Telecommunications Consumers Division
Enforcement Bureau
Federal Communications Commission

Enclosures