UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC INC,<br><br>    Plaintiff,<br><br>    v.<br><br>MCKESSON CORPORATION,<br><br>    Defendant. | Case No. 13-cv-02219-JST<br><br>**ORDER DENYING MOTION TO TRANSFER VENUE**<br><br>Re: ECF No. 17 |

Before the Court is Defendant McKesson Corporation's Motion to Transfer Venue, ECF No. 17. The Court will deny the motion.

## I. BACKGROUND

This is a putative class action filed by Plaintiff True Health Chiropractic, Inc. against Defendant McKesson Corporation, for violation of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), codified at 47 U.S.C. § 227. Compl., ECF No. 1. True Health is an Ohio corporation; McKesson is a Delaware corporation with its principal place of business in San Francisco, California. First Am. Compl. ("FAC"), ECF No. 7 ¶¶ 8–9.

The JFPA "prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission." FAC ¶ 2. Plaintiff claims that "Defendants have sent facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the JFPA, including, but not limited to, the facsimile transmission of [an] unsolicited advertisement on April 20, 2010." Id. at ¶¶ 2, 11. The copy of the fax attached to the First Amended Complaint bears a stamp at the top showing that the fax was sent from phone number (404) 704-8673 to phone number (614) 794-1625. Id., Ex. A. Plaintiff proposes the following class definition:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, and (4) did not display a proper opt-out notice.

FAC ¶ 19.

McKesson secured an extension of time to respond to the First Amended Complaint, ECF No. 18 (July 12, 2013), so it could file the instant Motion to Transfer Venue, ECF No. 17. True Health's First Amended Complaint was filed by counsel from four law firms: San Francisco law firm Schubert Jonckheer & Kolbe LLP; Illinois law firm Anderson & Wanca; Cincinnati, Ohio law firm Montgomery, Rennie & Jonson; and Boehm, Kurtz & Lowry, also from Cincinnati. FAC pp. 11–12.

McKesson now seeks transfer to the Northern District of Ohio based on the previous filings of (1) a similar complaint in the Northern District of Ohio by a different plaintiff represented by Montgomery, Rennie & Jonson and Anderson & Wanca, and (2) a similar complaint in the Eastern District of Tennessee by a third plaintiff represented by Anderson & Wanca. Neither case is still pending, and no party points to any case currently pending in the Northern District of Ohio based on similar facts or allegations to the present case.

The history of these prior cases is as follows: On September 11, 2012, Whiteamire Clinic, P.A., Inc. filed a proposed class action against McKesson in the Northern District of Ohio alleging violation of the JFPA arising from the transmission of the same April 20, 2010 fax on behalf of a substantially identical class to the one proposed here. Whiteamire Clinic, P.A., Inc. v. McKesson Corp., No. 12-cv-2289-DAP, ECF No. 1 (N.D. Ohio Sept. 11, 2012) (Polster, J.). Whiteamire filed an amended complaint in December 2012, Whiteamire, ECF No. 20, and then moved for leave to file a second amended complaint without class allegations, Whiteamire, ECF No. 22 (Jan. 11, 2013). Following that motion, counsel from the law firm Anderson & Waca moved to withdraw because that firm was retained to assist with the class allegations that Whiteamire no longer wanted to pursue. Whiteamire, ECF No. 22 (Jan. 16, 2013).

McKesson filed a statement of non-opposition to the motions for leave to amend and to withdraw, both of which the court granted. Whiteamire, ECF No. 27. McKesson then moved to

1  dismiss. Whiteamire, ECF No. 29. That motion was denied in its entirety on March 18, 2013.
2  Whiteamire, ECF No. 32. Whiteamire filed a notice of voluntary dismissal with prejudice on
3  April 26, 2013, after McKesson objected to Whiteamire's request voluntarily to dismiss the action
4  without prejudice on the grounds that Whiteamire would simply re-file the action as a class action
5  in a different forum. Whiteamire, ECF Nos. 34 (Objection), 35 (Not. of Voluntary Dismissal).
6  Following two status conferences with the court, Whiteamire decided to dismiss the action with
7  prejudice. Whiteamire, ECF No. 35.

8      Coincident with the voluntary removal of class allegations in the Whiteamire action, on
9  January 7, 2013, McLaughlin Chiropractic Associates, Inc., represented by Anderson & Waca and
10 Provost Umphrey Law Firm, LLP, filed an action against McKesson in the Eastern District of
11 Tennessee alleging violation of the Junk Fax Prevention Act arising out of the transmission of
12 faxes on February 3, 2010, February 22, 2010 and May 11, 2010, on behalf of a substantially
13 identical class. McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., No. 13-cv-00011,
14 ECF No. 1 (E.D. Tenn. Jan. 7, 2013) (Jordan, J.). The May 11, 2010 fax was substantially
15 identical to the April 20, 2010 faxes in the instant action and the Whiteamire action. McLaughlin,
16 ECF No. 1, Ex. A at 3.

17     McKesson moved to dismiss, stay, or transfer the McLaughlin action. McLaughlin, ECF
18 No. 5. The Eastern District of Tennessee ordered the case transferred to the Northern District of
19 Ohio based on the first-to-file rule because the two actions involved "nearly identical parties and
20 issues." McLaughlin, ECF Nos. 24 (Opinion), 25 (Transfer Order). See Zide Sport Shop of Ohio
21 v. Ed Tobergte Assocs., Inc., 16 F. App'x 433, 437 (6th Cir. 2001) (discussing first-to-file rule).
22 Judge Polster related the McLaughlin action to the Whiteamire action on March 25, 2013.
23 McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., No. 13-cv-00554-DAP, ECF No. 30
24 (N.D. Ohio March 25, 2013) (Polster, J.). McLaughlin voluntarily dismissed the action four days
25 later. McLaughlin (N.D. Ohio), ECF No. 35.

26 **II.    LEGAL STANDARDS**
27     "For the convenience of parties and witnesses, in the interest of justice, a district court may
28 transfer any civil action to any other district or division where it might have been brought." 28

3

U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quotation omitted). A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).

Courts considering transfer must engage in a two-step analysis. First, courts determine whether the action could have been brought in the target district. Hoffman v. Blaski, 363 U.S. 335, 344 (1960). Second, courts undertake an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622). That analysis considers the convenience of the parties, the convenience of the witnesses, and the interests of justice, as understood through the following eight factors: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones, 211 F.3d at 498–99. The moving party bears the burden of establishing the factors in favor of transfer. Id.

### III. ANALYSIS

McKesson makes two basic arguments in support of its motion to transfer: a transfer would "promote the interests of justice by thwarting forum shopping and promoting judicial economy," Mot. at 6, and the Northern District of Ohio would be a more convenient forum than the Northern District of California.

#### A. Venue in the Target District

McKesson asserts that venue is proper in the Northern District of Ohio, Mot. at 2, and Plaintiff conceded the point at the hearing on this motion. The Court will accept the parties' agreement and assume that venue would be proper in the Northern District of Ohio.

/ / /

### B. Transfer in the Interests of Justice

Turning to McKesson's allegation that Plaintiff is "forum shopping," the Court ordinarily starts with "a strong presumption in favor of the plaintiff's choice of forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). "[W]hen an individual brings a derivative suit or represents a class, [however,] the named plaintiff's choice of forum is given less weight." Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). Less deference is also appropriate when the plaintiff has chosen a forum where it does not reside. See, e.g., Young v. Wells Fargo & Co., No. 08-cv-3735-SI, 2008 WL 5245894, at *4 (N.D. Cal. Dec. 17, 2008). Similarly, "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," a class action plaintiff's choice of forum is entitled only to "minimal consideration." Lou, 834 F.2d at 739.

Finally, the plaintiff's choice of forum is entitled to minimal deference if the plaintiff chose the forum to escape an unfavorable ruling elsewhere. Indeed, "[d]ismissal, followed by the reinstitution of a case to avoid a particular judge or precedent, is exactly the kind of forum shopping anticipated and expressly prohibited by local rules of many districts." Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc., No. 03-cv-3711-MHP, 2003 WL 22387598, at *6 (N.D. Cal. Oct. 14, 2003). See, e.g., Forrand v. Fed. Exp. Corp., 07-cv-4674-TEH, 2008 WL 276389, at *3 (N.D. Cal. Jan. 31, 2008) (finding of forum shopping where three of four plaintiffs filed class action in another district and class certification was denied).

Pushing in the other direction, however, is that the transfer statute itself makes forum shopping by defendants possible, which is equally undesirable. Van Dusen, 376 U.S. at 630. Though lessened deference to a plaintiff's choice of forum renders the defendant's burden easier, the burden on a motion to transfer must therefore remain with the defendant on a motion to transfer. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

Here, McKesson argues that Plaintiff's counsel learned of unfavorable precedent in Ohio concerning Junk Fax Prevention Act class actions, causing them to voluntarily dismiss Whiteamire, file McLaughlin in the Eastern District of Tennessee, voluntarily dismiss McLaughlin once it was transferred to the Northern District of Ohio, and then file this action. The precedent in

1   question is the Ohio Court of Appeals' decision in Miller v. Painters Supply & Equipment Co.,
2   No. 95614, 2011 WL 3557018 (Oh. Ct. App. Aug. 11, 2011), affirming the trial court's denial of
3   class certification on a variety of grounds, including the ground that "deciding whether
4   'unsolicited' advertisements were sent would require individual, fact intensive inquiries that
5   would make class certification impractical." Id. at *4. That court reasoned that a class of non-
6   customers who were sent junk faxes from a directory of phone numbers might be certifiable, but
7   the fact that the absent class members in that case were existing customers raised individual issues
8   that would predominate over the common questions in the litigation. Id.

9   True Health asserts, without argument or citation, that Miller is factually distinguishable
10  and contradicted by "numerous cases with far more authority," that Plaintiff's counsel "have
11  represented plaintiffs in TCPA cases filed in Ohio that were certified as class actions subsequent
12  to the Miller decision," and that "the Miller decision was of no consequence to the Whiteamire or
13  McLaughlin suits." Opp., ECF No. 19 at 10 n.6.

14  In addition, True Health points out that it has not suffered any unfavorable rulings in Ohio,
15  unlike the plaintiffs in the decisions cited by Defendant. Thus, per True Health, even if the
16  unfavorable decision in Miller led Plaintiff here, it did so the way any unfavorable precedent leads
17  a plaintiff to file in one jurisdiction rather than another. And, unlike in many other cases of forum
18  shopping, Plaintiff in this case was not the plaintiff in the cases filed in Ohio and Tennessee, and
19  Plaintiff is represented by two additional law firms, one of which is located in this district.

20  Each side makes strong arguments, but on balance, the Court concludes that McKesson has
21  not satisfied its burden of demonstrating that transfer to the Northern District of Ohio would serve
22  the interest of justice.

23  First, although it is possible that Plaintiff's counsel has pursued the same claim in multiple
24  courts, nothing prohibits counsel from doing so, particularly when the cases are filed by different
25  plaintiffs, and no case is currently pending in other districts.

26  Second, the Court is not persuaded that Plaintiff is any guiltier of forum shopping than
27  McKesson is. Although venue might be proper in the Northern District of Ohio, no party resides
28  there. It seems just as likely that McKesson would rather be in front of a judge it likes as that

Plaintiff wants to be in a federal district it likes. Plaintiff is not escaping an unfavorable ruling, because there is no unfavorable ruling to escape. And this Court does not have enough information to conclude with any certainty that the Northern District of Ohio would apply the Miller case as McKesson asserts, so McKesson's motion boils down to a request that the Court hold that Plaintiff filed in this district to escape an as-yet unwritten *future* unfavorable ruling. The Court will decline the invitation.

In addition, even if True Health filed in the Northern District to avoid Miller, it was entitled to do so provided it was not escaping a prior unfavorable ruling in its own case. "[A]ttempting to achieve tactical advantage in the choice of a forum . . . is a perfectly legitimate goal in an adversarial system of justice." Sorensen v. Phillips Plastics Corp., No. 08-cv-03094-MHP, 2008 WL 4532556, at *3 (N.D. Cal. Oct. 9, 2008) (citing Sun Pharm. Indus., Ltd. v. Eli Lilly & Co., No. 07-cv-15087, 2008 WL 1902111, at *4 (E.D. Mich. Apr. 30, 2008)). See also Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 779 (1984) (plaintiff's selection of forum with longest statute of limitations was permissible and "no different from the litigation strategy of countless plaintiffs who seek a forum with favorable substantive or procedural rules or sympathetic local populations."). Here, the plaintiffs in the Ohio and Tennessee actions never suffered an unfavorable ruling that suggests True Health filed this action because its counsel sought to escape the Ohio forum, rather than to seek this forum out, as it is entitled to do.

Third, that the Ohio court already decided a motion to dismiss does not rise to the level of expertise with the subject matter of this action that weighs in favor of transfer, particularly because McKesson's motion was denied.[1]

### C. Convenience of the Parties and Witnesses, and Interests of Justice

Turning to the other points raised in McKesson's papers, many of the factors listed in

---

[1] The Court notes that McKesson has made no showing, nor can the Court conclude, that this action would be assigned to Judge Polster, who presided over the Whiteamire action, instead of any other one of the fifteen district court judges in that district, as the Whiteamire action is no longer pending. The Northern District of Ohio's local rules do not appear to address reassignment of cases to judges who presided over a related case already closed. Cf. Civil L.R. 3.1(b)(3) (N.D. Ohio) ("A case may be re-assigned as related to an earlier assigned case . . .").

Stewart, supra, do not apply here. There are no "relevant agreements" to consult with respect to where they were negotiated and executed. Plaintiff does not assert any state law claims.[2] And, although there are contacts with the Northern District of Ohio, True Health resides in the Southern District of Ohio, and McKesson resides in this district.

On the issue of convenience, each party places heavy emphasis on what would be more convenient for the other party. Plaintiff argues that this district is most convenient for McKesson and the witnesses because McKesson is headquartered here, and because the decisions underlying the cause of action "likely" were made here, so the witnesses and evidence are likely located here. McKesson argues that the Northern District of Ohio is more convenient for Plaintiff, and that Plaintiff obviously does not mind litigating in Ohio, since it has done so before (albeit in a different district).

The Court concludes that McKesson has not succeeded in establishing that transfer would be proper for the convenience of the parties or witnesses, particularly given that McKesson is headquartered here. Indeed, McKesson has made no attempt to establish where the relevant witnesses and evidence are, emphasizing instead that it does not mind litigating in Ohio.

## CONCLUSION

For the foregoing reasons, the Court concludes that McKesson has not met its burden and therefore DENIES the motion to transfer venue.

**IT IS SO ORDERED.**

Dated: November 12, 2013

JON S. TIGAR
United States District Judge

---

[2] Although Plaintiff does not assert any state law claims, it argues that California has added penalties available for the conduct challenged in this action, which Plaintiff argues weighs against transfer. Because Plaintiff has not asserted any claims under California state law, the Court cannot place any weight on that factor.