Tyree P. Jones, Jr. (SBN 127631)
tpjones@reedsmith.com
REED SMITH LLP
1301 K Street, NW
Suite 1100 – East Tower
Washington, DC 20005
Telephone: +1 202 414 9296
Facsimile: +1 202 414 9299

Attorneys for Defendants
McKesson Technologies, Inc.
and McKesson Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC, INC., an Ohio corporation, and MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC., a Tennessee corporation, individually and as the representatives of a class of similarly-situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>MCKESSON CORPORATION, MCKESSON TECHNOLOGIES, INC., and JOHN DOES 1-10,<br><br>Defendants. | CASE NO.: 3:13-cv-02219 JST<br><br>**NOTICE OF MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE: August 19, 2014<br>TIME: 2:00 p.m.<br>PLACE: Courtroom 9, 19th Fl.<br><br>Hon. Jon S. Tigar |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 19, 2014, at 2:00 p.m., in the above entitled court, Defendants McKesson Technologies, Inc. and McKesson Corporation ("McKesson") will, and hereby do, move this Court for an order staying all proceedings in this action pending final merits disposition, including any appeal, of numerous Petitions currently pending before the Federal Communications Commission ("FCC") regarding the scope and validity of 47 C.F.R. Section 64.1200(a)(4)(iv). This Motion is made on the grounds that a stay of the proceedings is necessary and appropriate to allow the FCC to clarify this issue, which directly bears on pertinent issues material to this action. Additionally, McKesson will be substantially prejudiced if it must defend against claims that may be based on an invalid regulation.

This Motion is supported by the following Memorandum of Points and Authorities and the complete files and records of this action and upon any such oral and documentary evidence as may be allowed at the time of hearing.

DATED: July 7, 2014.   REED SMITH LLP

By:   /s/ Tyree P. Jones, Jr.
Tyree P. Jones, Jr. (SBN 127631)
tpjones@reedsmith.com
REED SMITH LLP
1301 K Street, NW
Ste. 1100 – East Tower
Washington, DC 20005
Telephone:    +1 202 414 9296
Facsimile:     +1 202 414 9299

Attorneys for Defendants
McKesson Technologies, Inc.
and McKesson Corporation

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 3 |
| | A. | Factual Background | 3 |
| | B. | The Petitions Pending Before the FCC and the Corresponding Stays of Actions | 4 |
| III. | LEGAL STANDARD | | 5 |
| IV. | ARGUMENT | | 6 |
| | A. | The FCC's Consideration of the Petitions Constitutes an Independent Proceeding Which Bears Upon the Issues in the Present Case | 7 |
| | | 1. The TCPA Only Governs Unsolicited Faxes | 7 |
| | | 2. The Regulation Exceeds the FCC's Statutory Authority | 7 |
| | | 3. The Statutory Basis for the Regulation May Not Be the TCPA | 8 |
| | B. | The Competing Interests Weigh in Favor of Granting a Stay | 9 |
| | | 1. Granting a Stay Will Not Cause Damage to Plaintiffs | 9 |
| | | 2. McKesson Will Suffer Hardship and Inequity if the Court Does Not Grant a Stay Because It Would Deprive McKesson of the Ability to Challenge the Validity of the Regulation | 11 |
| | | 3. A Stay Would Promote the Orderly Course of Justice and Simplify the Issues and Questions of Law Before the Court | 11 |
| | |    a. The Opt-Out Regulation Is a Central Issue in this Action | 11 |
| | |    b. The FCC Has Discretion to Implement the TCPA and to Interpret the Meaning of Terms Under the TCPA | 12 |
| | C. | Other Courts Have Granted Stays Pending the FCC's Ruling on this Very Issue | 13 |
| V. | CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

**Cases**

*American Tile and Marble Co. v. All Granite & Marble Corp.*,
   No. 8:13-cv-89-JFB-TDT (D. Neb. Jan. 27, 2014)................................................................. 5

*Auer v. Robbins*,
   519 U.S. 452 (1997)........................................................................................................... 14

*Barr v. Futuredontics, Inc.*,
   No. 0:13-cv-61982-JIC (S.D. Fla. Feb. 14, 2014) ............................................................... 5

*Burik v. Staples Contract & Commercial, Inc.*,
   No. 1:12-cv-10806-NMG (D. Mass. Aug. 9, 2013)............................................................. 5

*Charvat v. EchoStar Satellite, LLC*,
   630 F.3d 459 (6th Cir. 2010) ........................................................................................ 14, 15

*Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)........................................................................................................... 14

*Clark v. Time Warner Cable*,
   523 F. 3d 1110 (9th Cir. 2008) .......................................................................................... 14

*CMAX, Inc. v. Hall*,
   300 F.3d 265 (9th Cir. 1962) .............................................................................................. 7

*Critchfield Physical Therapy, P.C. v. TechHealth, Inc.*,
   No. 4:12-cv-00268-AGF (E.D. Mo. Oct. 15, 2013) ............................................................ 5

*In re StarNet, Inc.*,
   355 F.3d 634 (7th Cir. 2004) ............................................................................................. 15

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)......................................................................................................... 6, 7

*Leyva v. Certified Grocers of Cal.*,
   593 F.2d 857 (9th Cir. 1979) ........................................................................................... 6, 7

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ......................................................................................... 6, 7

*Med. West Ballas Pharmacy, Ltd. v. Richie Enter.*,
   No. 09SL-CC05410-01 (St. Louis Cnty. Sept. 11, 2013).................................................... 5

*Meras Eng'g, Inc. v. CH20, Inc.*,
   No. C-11-0389 EMC, 2013 WL 146341 (N.D. Cal. Jan. 14, 2013) .................................... 6

*Milwaukee Occupation Med. S.C. v. Prime Health Servs., Inc.*,
   No. 12-cv-008086 (Circuit Ct. Milwaukee Cnty., Wis. Oct. 7, 2013)................................. 5

*Nack v. Walburg*,
   2013 WL 4860104 (8th Cir. 2013) ................................................................................. 5, 10

*Nack v. Walburg*,
   715 F.3d 680 (8th Cir. 2013) ............................................................................................. 10

*Physicians Healthsource v. Purdue Pharma L.P.*,
   No. 12-cv-01208, 2014 WL 518992 (D. Conn. Feb. 3, 2014)............................................. 5

*Raitport v. Harbour Capital Corp.*,
   No. 09-cv-156-SM, 2013 WL 4883765 (D.N.H. Sept. 12, 2013) ....................................... 5

*St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*,
   No. 4:12-cv-2224, 2013 WL 3988671 (E.D. Mo. July 17, 2013)........................................ 5

*St. Louis Heart Ctr., Inc. v. Gilead Palo Alto, Inc.*,
  No. 4:13-cv-958-JAR, 2013 WL 5436651 (E.D. Mo. Sept. 27, 2013) ............................................ 5

*Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*,
  618 F. Supp. 2d 256 (E.D.N.Y. 2009) ........................................................................................... 14

*United States v. General Dynamics Corp.*,
  828 F.2d 1356 (9th Cir. 1987) ...................................................................................................... 14

*United States. v. W. Pac. R.R. Co.*,
  352 U.S. 59 (1956) ........................................................................................................................ 15

*Whiteamire Clinic, P.A., Inc. v. Quill Corp.*,
  No. 1:12-cv-05490 (N.D. Ill. Apr. 9, 2014) ................................................................................... 5

**Statutes**

28 U.S.C. § 2342 ................................................................................................................................ 12

47 U.S.C. § 227(a)(5) .......................................................................................................................... 8

47 U.S.C. § 227(b)(1)(C)(i)-(iii) ......................................................................................................... 8

47 U.S.C. § 227(b)(1)(C)(iii) .............................................................................................................. 8

47 U.S.C. § 227(b)(2) ........................................................................................................................ 13

47 U.S.C. § 227(b)(2)(B) ................................................................................................................... 13

47 U.S.C. § 227(b)(3) ........................................................................................................................ 12

47 U.S.C. § 227(c)(1) ........................................................................................................................ 13

47 U.S.C. § 227(c)(2) ........................................................................................................................ 13

47 U.S.C. § 227(e)(6)(C) ................................................................................................................... 14

5 U.S.C. § 553(c) ............................................................................................................................... 10

**Regulations**

47 C.F.R. § 64.1200(a)(4)(iv) ......................................................................................................... 1, 9

**Other Authorities**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967, 25972 (May 3, 2006) ......................................... 8

# I. INTRODUCTION

Defendants McKesson Technologies, Inc. and McKesson Corporation[1] ("McKesson") request a stay of this putative class action until the Federal Communications Commission ("FCC" or "Commission") rules on numerous petitions for Declaratory Ruling (the "Petitions") that are currently pending before it that directly bear on material issues pertinent to this case.

Specifically, the Petitions all request a declaratory ruling from the FCC clarifying the applicability of 47 C.F.R. Section 64.1200(a)(4)(iv) ("Regulation"), a section of the implementing rules of the Telephone Consumer Protection Act ("TCPA") which requires facsimile advertisements sent with the consent of the recipient, and therefore "solicited," to include an opt-out notice:

> A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section.

47 C.F.R. § 64.1200(a)(4)(iv).

The language of this regulation stands in stark contrast with the plain language of the TCPA, which only governs the transmission of *unsolicited* fax advertisements, not *solicited* faxes. As a result, the FCC arguably has exceeded the scope of its authority by promulgating a regulation that requires solicited advertisements to include an opt-out notice. Moreover, the FCC did not identify the specific statutory authority under which it promulgated this Regulation, leaving open the question of whether it promulgated the Regulation under the TCPA or some *other* provision. Accordingly, the Petitions assert a number of bases for challenging the validity and scope of the Regulation.

Here, Plaintiffs True Health Chiropractic, Inc. ("True Health") and McLaughlin Chiropractic Associates, Inc. ("McLaughlin") (collectively, "Plaintiffs") have alleged that the basis for McKesson's liability (which McKesson denies) is a result of the absence of an opt-out notice in the faxes at issue. Plaintiffs' Second Amended Complaint ("SAC") alleges violations of the TCPA related to all fax advertisements that ". . . (4) <u>did not display a proper opt-out notice</u>."[2] Plaintiff

---

[1] Defendants maintain that McKesson Corporation has been erroneously sued and is not a proper party to this action.

[2] On June 23, 2014, the Court granted plaintiff True Health's motion for leave to file a second amended complaint to add McLaughlin as a plaintiff. *See* Order Granting Leave to Amend Complaint to Add McLaughlin as a Class

True Health's Motion for Leave to File Second Amended Complaint and Join Additional Plaintiff ("Motion to Amend"), ECF No. 69, Exh. 1, ¶ 21 (emph. added); *see id.* at 2:5-8 (noting that True Health brought the instant action to recover statutory damages provided by the TCPA because "the Back-to-Black Ad did not include the required opt-out notice"). This is the very issue that is squarely before the FCC.

The Court should stay this action because, until the FCC resolves this regulatory dispute, the Court will have no clear directive on the applicability of the opt-out notice requirement. Congress has vested the FCC with the authority to implement and interpret the TCPA, and allowing the FCC to review the scope of the Regulation will clarify a central legal issue in this case. Further, a stay of this action until the FCC clarifies this issue will not prejudice Plaintiffs, especially given the Parties' stipulation to continue all current scheduling order dates in light of the newly amended complaint. Stipulated Request to Continue All Scheduling Order Dates, ECF No. 82. McKesson, however, will suffer significant prejudice if it must defend against a claim that may be based on an invalid regulation, the validity of which it cannot challenge in this proceeding.

Importantly, courts across the country, including in the Ninth Circuit, have stayed actions factually similar to this action pending the FCC's review of the Regulation. In May 2014, the Hon. James V. Selna of the Central District of California granted a defendant's identical request to stay a TCPA class action pending adjudication of the defendant's petition before the FCC regarding the validity of the Regulation. *See* Order Granting Motion to Stay, *Phys. Healthsource, Inc. v. Masimo*, No. 14-cv-00001-JVS-AN (C.D. Cal. May 22, 2014), ECF No. 47 ("*Masimo* Order"). Judge Selna's ruling establishes unequivocally that where, as here, the opt-out notice is a central issue in the litigation, a stay of the action is appropriate.

Indeed, a stay in this matter will help promote uniformity, as well as mitigate the risk of inconsistent court decisions by permitting the FCC to decide the proper scope of the opt-out notice requirement. Allowing the FCC to opine first will also avoid judicial findings of liability which may later be at odds with the FCC guidance on this point. Simply put, in light of the pending, unresolved

---

Representative ("Order Granting Leave to Amend"), ECF No. 80. Plaintiffs, however, have not yet filed the second amended complaint.

issue of national significance that will soon be clarified by the FCC, the Court should stay the current action and await the FCC's resolution of this issue.

## II. BACKGROUND

### A. Factual Background

On May 15, 2013, Plaintiff True Health filed this putative class action alleging a violation of the TCPA, as amended by the Junk Fax Prevention Act ("JFPA"), based upon the alleged transmission of a facsimile message pertaining to McKesson's Medisoft® electronic health records ("EHR") software. Initially, True Health's original complaint alleged that it did not have a business relationship with McKesson. After defense counsel advised True Health that it was a purchaser of McKesson's Medisoft® software, and thus, a McKesson customer, True Health then filed its First Amended Class Action Complaint on June 20, 2013, removing any inferences that True Health does not have an established business relationship with McKesson. Plaintiff True Health's First Amended Class Action Complaint ("FAC"), ECF No. 7. Following the Court's order granting True Health's request to add McLaughlin as a plaintiff, the Second Amended Complaint seeks to certify a class consisting of:

> [a]ll persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, and (4) **did not display proper opt-out notice.**

Motion to Amend, ECF No. 69, Exh. 1, ¶ 21 (emph. added).

Plaintiff True Health now concedes that it is a long-standing customer of McKesson, which has had direct communications with McKesson, registered various versions of the Medisoft® software, entered into technical support agreements with McKesson thereby availing itself of McKesson's technical support capabilities, and purchased upgrades to the software in 2010, 2011, 2013, and 2014, among other things. There is also ample evidence in the record that Plaintiffs provided express consent to receive faxes from McKesson, including in their registration of the software. *See, e.g.*, Defendants' Document Production, RS-TRUEHEALTH-000001-000008.

In light of this customer relationship, and a record replete with evidence that the fax advertisements were sent with Plaintiffs' prior express consent or permission, a central legal issue in

these proceedings will be whether the facsimiles sent by McKesson were "solicited" faxes—and thus whether the faxes required the "opt-out" language pursuant to 47 C.F.R. section 64.1200(a)(4)(iv), a regulation promulgated by the FCC. Indeed, during meet and confer discussions preceding the Joint Discovery Letter currently pending before this Court, Plaintiffs' counsel reiterated that even if the faxes at issues are "solicited," the alleged failure to include the "opt-out" language establishes liability. This specific issue is the focus of the Petitions pending before the FCC.

**B.     The Petitions Pending Before the FCC and the Corresponding Stays of Actions**

Since June 2013, seventeen TCPA defendants have filed petitions with the FCC seeking clarification of the opt-out notice regulation.[3] The Petitions generally seek a declaratory ruling from the FCC that "section 64.1200(a)(4)(iv) of the Commission's rules does not apply to fax advertisements sent with the prior express permission of the recipient because such faxes constitute 'solicited' faxes that . . . cannot be required to include opt-out notices", or, in the alternative, that "the statutory basis for this rule is not section 227 of the Communications Act." *See, e.g.,* Public Notice, *Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements* , CG Docket Nos. 02-278, 05-338, DA 14-556 (rel. Apr. 25, 2014).

As a result of the pending Petitions, *at least thirteen* TCPA defendants have sought and obtained stays while the FCC decides its ruling, including a number of cases filed by Plaintiffs'

---

[3] *See, e.g.*, *Petition of American Caresource Holdings, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (filed June 30, 2014); Petition *of Stericycle, Inc. for Declaratory Ruling and/or Waiver Regarding 47 C.F.R.§ 64.1200(a)(4)(iv)*, CG Docket Nos. 02-278, 05-338 (filed June 6, 2014); *Petition of Cannon & Associates LLC D/B/A Polaris Group for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (filed May 15, 2014); *Petition of S&S Firestone, Inc., d/b/a S&S Tire for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (filed May 7, 2014); *Petition of Best Buy Builders, Inc. for Declaratory Ruling and/or Waiver*, CG Docket No. 05-338 (filed Apr. 7, 2014); *Petition for Declaratory Ruling and/or Waiver of Masimo Corporation*, CG Docket Nos. 02-278, 05-338 (filed Apr. 1, 2014); *Petition of Magna Chek, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (filed Mar. 28, 2014); *Petition of Crown Mortgage Company*, CG Docket Nos. 02-278, 05-338 (filed Feb. 21, 2014); *Petition of TechHealth, Inc. for Declaratory Ruling*, CG Docket Nos. 02-278, 05-338 (filed Jan. 6, 2013); *Petition of Prime Health Servs., Inc. for Declaratory Ruling*, CG Docket Nos. 02-278, 05-338 (filed Dec. 17, 2013); *Purdue Pharma Petition for Declaratory Ruling*, CG Docket Nos. 02-278, 05-338 (filed Dec. 12, 2013); *Petition of All Granite and Marble Corp.*, CG Docket Nos. 02-278, 05-338 (filed Oct. 28, 2013); *Petition of Futuredontics, Inc.*, CG Docket Nos. 02-278-05-338 (filed Oct. 18, 2013); *Petition of Douglas Paul Walburg et al.*, CG Docket Nos. 02- 278, 05-338 (filed Aug. 19, 2013); *Petition for Declaratory Ruling and/or Waiver of Gilead Sciences, Inc., and Gilead Palo Alto, Inc.*, CG Docket Nos. 02-278, 05-338 (filed Aug. 9, 2013); *Petition of Staples, Inc. and Quill Corp.*, CG Docket Nos. 02-278, 05-338 (filed July 19, 2013); and *Petition of Forest Pharmaceuticals*, CG Docket No. 05-338 (filed June 27, 2013).

counsel in the present matter. In fact, Plaintiffs' counsel, Anderson and Wanca, is counsel in at least eight of these stayed matters.4 Most recently, the U.S. District Court for the Central District of California granted defendant Masimo Corporation's ("Masimo") request to stay a TCPA/JFPA action pending adjudication of its petition before the FCC regarding the validity of the opt-out notice Regulation. *See Masimo* Order, at 4. There, the court found that a stay was appropriate because, among other things, it would not cause undue delay or harm to the plaintiff, Masimo may be forced to defend the claims against it without being permitted to challenge the validity of the regulation within the civil action, and the scope of the plaintiff's claims suggested that "the issue before the FCC is potentially dispositive of a large number of claims." *Id*.

The *Masimo* court's decision to stay that action is persuasive, not only because, like here, the opt-out notice is a central issue in that litigation as well, but also because the Court weighed competing factors that are almost identical to those implicated in this litigation. The Court should not hesitate to follow its sister court, as well as numerous courts in other jurisdictions, by staying this action.

### III. LEGAL STANDARD

A district court may stay proceedings pursuant to its inherent power to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (*Landis* provides a district court with "discretionary power to stay

---

4 *See, e.g.*, *Masimo*, No. 14-cv-00001-JVS-AN, ECF No. 47; *Physicians Healthsource v. Purdue Pharma L.P.*, No. 12-cv-01208, 2014 WL 518992 (D. Conn. Feb. 3, 2014); *St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, No. 4:12-cv-2224, 2013 WL 3988671, at *1 (E.D. Mo. July 17, 2013) (ordering the case to be stayed until final rulings are issued by the FCC on the defendant's petition for a declaratory ruling and through any appeals filed in connection with the ruling); *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 1:12-cv-05490 (N.D. Ill. Apr. 9, 2014) (granting defendants' renewed motion to stay); *Barr v. Futuredontics, Inc.*, No. 0:13-cv-61982-JIC (S.D. Fla. Feb. 14, 2014) (finding the defendant's FCC petition raises substantial legal issues); *American Tile and Marble Co. v. All Granite & Marble Corp.*, No. 8:13-cv-89-JFB-TDT (D. Neb. Jan. 27, 2014) (granting in part and denying in part); *Critchfield Physical Therapy, P.C. v. TechHealth, Inc.*, No. 4:12-cv-00268-AGF (E.D. Mo. Oct. 15, 2013); *Milwaukee Occupation Med. S.C. v. Prime Health Servs., Inc.*, No. 12-cv-008086 (Circuit Ct. Milwaukee Cnty., Wis. Oct. 7, 2013); *St. Louis Heart Ctr., Inc. v. Gilead Palo Alto, Inc.*, No. 4:13-cv-958-JAR, 2013 WL 5436651, at *2 (E.D. Mo. Sept. 27, 2013); *Nack v. Walburg*, 2013 WL 4860104, at *1-2 (8th Cir. 2013); *Raitport v. Harbour Capital Corp.*, No. 09-cv-156-SM, 2013 WL 4883765, at *1 (D.N.H. Sept. 12, 2013); *Med. West Ballas Pharmacy, Ltd. v. Richie Enter.*, No. 09SL-CC05410-01 (St. Louis Cnty. Sept. 11, 2013); *Burik v. Staples Contract & Commercial, Inc.*, No. 1:12-cv-10806-NMG (D. Mass. Aug. 9, 2013).

proceedings in its own court"). Indeed, a trial court may stay proceedings "pending resolution of independent proceedings which bear upon the case." *See Leyva v. Certified Grocers of Cal.*, 593 F.2d 857, 863 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id*. at 864; *see Meras Eng'g, Inc. v. CH20, Inc.*, No. C-11-0389 EMC, 2013 WL 146341, at *3 (N.D. Cal. Jan. 14, 2013) ("For the sake of judicial economy, such a stay may be granted pending the outcome of other legal proceedings related to the case.").

"Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.3d 265, 268 (9th Cir. 1962). Among the competing interests are: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Lockyer*, 398 F.3d at 1110 (discussing stay framework set out in *CMAX* and citing *Landis*, 299 U.S. at 268).

### IV.  ARGUMENT

In line with the Central District's recent decision in *Masimo*, the Court should stay this action pending a ruling by the FCC on the Petitions. The Petitions seek a resolution from the FCC on whether "solicited" fax messages, or those sent with the prior invitation or permission of the recipient, must include an opt-out notice. Because the opt-out notice requirement is a key legal issue in this action, the FCC's consideration of the pending Petitions constitutes an "independent proceeding[] which bears upon the case." *Leyva*, 593 F.2d at 863. Moreover, the competing interests affected by the granting or refusal of a stay weigh heavily in favor of granting a stay here. Specifically, a stay will not cause Plaintiffs to suffer any harm, while McKesson will be prejudiced if it is forced to defend against this action without clarity regarding the validity of the Regulation, and a decision from the FCC will simplify the issues before the Court.

/ / / / /

### A. The FCC's Consideration of the Petitions Constitutes an Independent Proceeding Which Bears Upon the Issues in the Present Case

The Petitions before the FCC call into question the validity and enforceability of Section 64.1200(a)(4)(iv), which is an issue central to the present case. Specifically, the pending Petitions seek review of whether the FCC exceeded its statutory authority by stating in 47 C.F.R. section 64.1200(a)(4)(iv) that the opt-out notice requirements apply to solicited faxes, and clarification as to whether the FCC adopted this regulation under a statutory basis other than the TCPA. The FCC's determination of these issues bears directly on this case because Plaintiffs have alleged that the TCPA required McKesson to include opt-out language in the faxes at issue. Accordingly, the Court should exercise its discretion to stay the present proceedings pending the FCC's resolution of this issue.

#### 1. The TCPA Only Governs Unsolicited Faxes

The relevant provision of the TCPA regarding the opt-out notice requirement is found at Section 227(b)(1)(C). The statute prohibits any person from using:

> Any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an *unsolicited* advertisement, unless . . . (iii) the *unsolicited* advertisement contains a notice meeting the requirements under paragraph (2)(D).

47 U.S.C. § 227(b)(1)(C)(iii) (emph. added). The TCPA defines "unsolicited advertisements" to be "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission*." *See id.* § 227(a)(5) (emph. added). In sum, the TCPA expressly addresses *unsolicited* advertisements, but does not address *solicited* advertisements.

#### 2. The Regulation Exceeds the FCC's Statutory Authority

In 2005, with the enactment of the Junk Fax Prevention Act, Congress amended the TCPA to permit the transmission of unsolicited faxes to a person with whom the sender has an established business relationship ("EBR") as long as the advertisement contains an "opt out" notice. *Id.* § 227(b)(1)(C)(i)-(iii); *see In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967, 25972 (May 3, 2006) (clarifying that "a sender that has an EBR with a consumer may send a facsimile advertisement to

that consumer without obtaining separate permission from him"). Despite this amendment, however, the TCPA continues to govern only fax advertisements that are transmitted without an individual's "prior express invitation or permission." As a result, neither the TCPA's prohibition against unsolicited fax advertisements, nor the EBR exception to that provision apply to facsimile transmissions made *with* a recipients' prior express consent.

Although the scope of the TCPA unequivocally is limited to *unsolicited* faxes, the amended rules adopted by the FCC in 2006 expanded the TCPA's opt-out notice requirements to include *solicited* faxes—specifically, those "sent to a recipient that *has* provided prior express invitation or permission." 47 C.F.R. 64.12009(a)(4)(iv) (emph. added); *see In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, Report and Order and Third Order on Reconsideration, 21 FCC Rcd. 3787 (2006) ("JFPA Order"). As a result, the scope of the JFPA Order regarding solicited faxes is not commensurate with the language of the TCPA because it interprets a statute that governs *unsolicited* faxes only. Similarly, the JFPA Order contains further contradictory language in that it explains that "the opt-out notice requirement only applies to communications that constitute unsolicited advertisements" and that an opt-out notice is required for solicited faxes "to allow consumers to stop unwanted faxes in the future." JFPA Order, 21 FCC Rcd. 3810, 3812, ¶¶ 42 n.154, 48.

In short, the FCC arguably exceeded its authority in promulgating Section 64.1200(a)(4)(iv) because the plain language of the TCPA is limited to unsolicited faxes, not solicited faxes.

**3.     The Statutory Basis for the Regulation May Not Be the TCPA**

Even if the FCC did not exceed its authority in promulgating Section 64.1200(a)(4)(iv), there still remains serious doubt as to whether Section 227(b) of the Communications Act is the statutory basis for the FCC's rule.

Indeed, the statutory basis for the Regulation is unclear. *See* 5 U.S.C. § 553(c) (requiring the FCC, pursuant to the Administrative Procedure Act, to state the statutory basis of its rule). Although the JFPA Order made multiple amendments to Section 64.1200—the addition of Section 64.1200(a)(4)(iv) being one of them—the FCC cited *eleven* different statutory provisions in the JFPA Order as the basis for its authority. *See JFPA Order*, 21 FCC Rcd at 3817, ¶ 64 (adopting

1  Order "pursuant to the authority contained in sections 1-4, 201, 202, 217, 227, 258, 303(r), and 332
2  of the Communications Act of 1934, as amended; 47 U.S.C. §§ 151-154, 201, 202, 217, 227, 258,
3  303(r), and 332; and sections 64.1200 and 64.318 of the Commission's Rules, 47 C.F.R. §§ 64.1200
4  and 64.318"). Thus, it is wholly unclear whether the FCC relied on Section 227, or some other
5  section, for its authority to add the regulation at issue. As the Eighth Circuit recently noted, "it is
6  questionable whether the regulation at issue (thus interpreted) properly could have been promulgated
7  under the statutory section that authorizes a private right of action."[5] *Nack v. Walburg*, 715 F.3d
8  680, 682 (8th Cir. 2013).

On these bases, the Petitions call into question the validity of the Regulation and implicate a central issue in this case—namely, whether the TCPA required McKesson to include opt-out language in the fax it transmitted. Because the Petitions before the FCC bear on this issue, the Court is well within its discretion to stay this matter pending their resolution.

**B.     The Competing Interests Weigh in Favor of Granting a Stay**

**1.     Granting a Stay Will Not Cause Damage to Plaintiffs**

Plaintiffs will suffer no damage from a stay pending the FCC's ruling. To the extent Plaintiffs will argue that waiting for the FCC's decision will cause them undue delay, that concern is mitigated by recent actions of the FCC that suggest that it considers resolving this issue to be a high priority, and one that it will decide in the near future. For example, the FCC already has issued *five* public notices seeking comment on the Petitions including as recently as June 27, 2014.[6]

---

[5] In *Walburg*, the Eighth Circuit declined to review Section 64.1200(a)(4)(iv), finding that the issue should first be addressed by the FCC and that the defendant "ha[d] not yet elected to seek a stay of litigation to pursue administrative remedies through the FCC." *Id.* at 686. Thereafter, the defendant filed a petition with the FCC challenging the regulation and, upon remand, the district court granted a stay of the case pending the FCC's decision. *See Walburg*, No. 4:10-cv-00478, 2013 WL 4860104, at *1 (E.D. Mo. Sept. 12, 2013).

[6] *See* Public Notice, *Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338, DA 14-923 (rel. June 27, 2014); Public Notice, *Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338, DA 14-734 (rel. May 30, 2014); Public Notice, *Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338, DA 14-556 (rel. Apr. 25, 2014); Public Notice, *Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338, DA 14-416 (rel. Mar. 28, 2014); Public Notice*, Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements,* CG Docket Nos. 02-278, 05-338, DA 14-120, at 1 n.1 (rel. Jan. 31, 2014).

Additionally, the FCC has met with interested parties to discuss their petitions. *See, e.g.*, Letter from A. Bellin to M. Dortch Re: Notification of Ex Parte Presentation, CG Docket Nos. 02-278, 05-338 (Apr. 11, 2014). Also telling is FCC Commissioner Michael O'Reilly's recent blog post on the Official FCC Blog, titled "TCPA: It Is Time to Provide Clarity", in which he states that "the [TCPA] rules have become complex and unclear." *See* Michael O'Reilly, TCPA: It Is Time to Provide Clarity, Official FCC Blog (Mar. 25, 2014), *available at* http://www.fcc.gov/blog/tcpa-it-time-provide-clarity (attached hereto as **Exhibit A**). Commissioner O'Reilly writes that "the problems caused by this lack of clarity [regarding the opt-out notice] are evidenced by an increasing number of TCPA-related law suits and a growing backlog of petitions pending at the FCC," and that "the FCC needs to address this inventory of petitions as soon as possible." *Id*. The post further states that the FCC needs to "take a hard look at its own precedent," and gives, as a specific example, the FCC's expansion of "certain TCPA requirements to encompass solicited fax advertisements even though the statute is limited to unsolicited fax advertisements." *Id*. All of these actions underscore that the FCC is making the Petitions a serious priority.

Additionally, though Plaintiffs allege they received the faxes at issue in February, April and May 2010, plaintiff True Health waited until May 15, 2013—*over three years later*—to file this action (and McLaughlin was added as a plaintiff *over a year after that*, in June 2014). Plaintiffs cannot argue that a stay will affect witnesses, the retention of documents, or the discovery process generally, when Plaintiffs themselves waited *years* to file suit. Similarly, the alleged harm to Plaintiffs individually is minimal, as the statutory damages they could recover at trial would amount to $6,000, at best. *See* 47 U.S.C. § 227(b)(3) (providing for statutory damages of $500 per violation, and for the trebling of damages where defendant acted willfully or knowingly); SAC, ¶¶ 12-13 (alleging McKesson transmitted a total of four faxes to Plaintiffs). In light of all of these factors, there is little chance, if any, that Plaintiffs will suffer damage from the granting of a stay, much less damage that would outweigh the hardship or inequity that a denial of a stay would pose to McKesson.

/ / / / /

/ / / / /

### 2. McKesson Will Suffer Hardship and Inequity if the Court Does Not Grant a Stay Because It Would Deprive McKesson of the Ability to Challenge the Validity of the Regulation

Requiring McKesson to defend against Plaintiffs' putative class action while the FCC considers the validity of the Regulation would constitute a significant hardship to McKesson. Specifically, McKesson would be forced to defend against a claim that may be based on a potentially invalid regulation, and would similarly be unable to challenge the validity of the Regulation in this Court.

To be clear, the Hobbs Act provides the courts of appeals with exclusive jurisdiction to determine the validity of FCC orders. *See* 28 U.S.C. § 2342 (2006). Thus, as the *Masimo* court correctly opined, if a stay is not granted, a defendant like McKesson "could find itself in the position of simultaneously having to defend the present action while in another forum seeking an adjudication of whether a particular defense is available to defend itself here." *Masimo* Order, at 3. Absent a stay, this procedural quagmire would pose a significant hardship to McKesson.

### 3. A Stay Would Promote the Orderly Course of Justice and Simplify the Issues and Questions of Law Before the Court

#### a. The Opt-Out Regulation Is a Central Issue in this Action

As Plaintiffs' complaint makes clear, the issue of whether the faxes at issue should have contained an opt-out notice is a key component of this case. *See, e.g.*, SAC ¶ 19 ("Defendants' facsimiles did not display a proper opt-out notice as required by 47 C.F.R. 64.1200."). Indeed, Plaintiffs seek to certify a purported class of individuals who were sent fax advertisements that "... (4) did not display a proper opt out notice." *See id.* ¶ 21. Plaintiffs unquestionably have put at issue the necessity of an opt-out notice.

McKesson, too, has acknowledged that the opt-out notice is at issue, asserting as an affirmative defense in its answer to Plaintiff True Health's First Amended Complaint that "Plaintiff cannot recover damages under the TCPA because it gave its express prior consent." McKesson's Answer to First Amended Class Action Complaint, ECF No. 38. Thus, there can be no question that both parties have asserted that this matter involves legal issues related to solicited fax

advertisements—making the opt-out notice regulation a central issue in this litigation. A determination from the FCC regarding the validity of the Regulation would only serve to clarify this important question of law.

### b. The FCC Has Discretion to Implement the TCPA and to Interpret the Meaning of Terms Under the TCPA

In addition to the centrality of the opt-out regulation, there is no dispute that Congress explicitly gave the FCC the power to implement and construe the TCPA. 47 U.S.C. § 227(b)(2). Specifically, the TCPA empowers the FCC to prescribe regulations under the Act, *see* 47 U.S.C. §§ 227(b)(2), 227(c)(1), 227(c)(2), to exempt calls from the requirements of the Act, *see id.* § 227(b)(2)(B), to intervene in suits filed by state attorneys general, *see id.* § 227(e)(6)(C), and to enforce the provisions of the Act and its accompanying regulations, *see Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010) (outlining the FCC's role under the TCPA). Further, and germane to this lawsuit, the FCC has interpretive authority over the provisions of the TCPA, *see Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984), over its accompanying regulations, *see Auer v. Robbins*, 519 U.S. 452, 461 (1997), and has the power to construe the TCPA, *see Charvat*, 630 F.3d at 467.

Thus, in light of the specific role given the FCC under the TCPA, a stay of this case is appropriate because the FCC is best positioned to make a determination as to the construction of that statute. Granting a stay will help to protect the special role and expertise of the FCC in construing the TCPA. *See Clark*, 523 F.3d at 1115 (noting that the grant of a stay helps "protect agencies possessing 'quasi-legislative powers' . . . that are 'actively involved in the administration of regulatory statutes'") (internal citation omitted). A stay will also help protect "the integrity of [the] regulatory scheme" created by the TCPA by allowing the FCC to speak to the scope of the opt-out requirement. *E.g.*, *General Dynamics*, 828 F.2d at 1362. Finally, granting a stay will ensure that the FCC and the courts "do not work at cross-purposes." *Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*, 618 F. Supp. 2d 256, 268 (E.D.N.Y. 2009).

Further, the Court should stay this lawsuit and allow the FCC to definitively address this issue to promote uniformity and consistency regarding the proper scope of the opt-out notice

requirement. The risk of inconsistent court decisions regarding the TCPA is simply too great if a stay is not granted to permit the FCC to decide this issue. *See Charvat*, 630 F.3d at 466 (staying case under doctrine of primary jurisdiction and noting that the TCPA and its regulations control "services nationally, creating the possibility of conflicting decisions in different state and federal jurisdictions").

Permitting the FCC to speak first also will avoid judicial findings of liability which may later turn out to be incorrect in light of FCC guidance. *See United States. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (noting that allowing an agency to decide the issue first ensures that "the limited functions of review by the judiciary are more rationally exercised"); *see also In re StarNet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004) ("Instead of trying to divine how the FCC would resolve the ambiguity created by the word 'location,' we think it best to send this matter to the Commission under the doctrine of primary jurisdiction"; "although the FCC's position would be subject to review by the judiciary for reasonableness, the agency's views are the logical place for the judiciary to start").

Because the FCC is best positioned to determine this issue, a ruling from the FCC will only further serve to clarify the issues before the Court. The Court should stay this matter pending the Commission's final determination.

**C.     Other Courts Have Granted Stays Pending the FCC's Ruling on this Very Issue**

Finally, there is ample precedent for the Court granting a stay pending the FCC's ruling regarding the Regulation. Over a dozen courts presiding over TCPA fax cases have granted stays pending rulings by the FCC, including the Ninth Circuit. *See supra* Section II.B at n.4 (listing cases). Judge Selna's decision in *Masimo* is just the latest in a consistent line of decisions across the country that have determined, under similar factual allegations, that a stay is appropriate pending clarification from the FCC. The Court should not hesitate to follow the well-reasoned decision of its sister courts and stay this action.

## V.     CONCLUSION

In light of the confusion over the validity and scope of the FCC's regulation, and the critical role the regulation plays in McKesson's defense of this matter, the Court should not hesitate to

follow the numerous other courts that have stayed actions pending a ruling from the FCC on this same issue. Accordingly, McKesson respectfully requests that the Court stay the present case pending final merits disposition, including any appeal, of the Petitions currently pending before the FCC.

DATED: July 7, 2014.  REED SMITH LLP

By: /s/ Tyree P. Jones, Jr.
Tyree P. Jones, Jr. (SBN 127631)
tpjones@reedsmith.com
REED SMITH LLP
1301 K Street, NW
Ste. 1100 – East Tower
Washington, DC 20005
Telephone: +1 202 414 9296
Facsimile: +1 202 414 9299

Attorneys for Defendants
McKesson Technologies, Inc.
and McKesson Corporation

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically on Brian J. Wanca, Willem F. Jonckheer, George D. Jonson and Matthew E. Stubbs via the Court's CM/ECF electronic noticing system, and was served via electronic mail on and, on this 7th day of July, 2014.

>Willem F. Jonckheer
>Schubert Jonckheer & Kolbe LLP
>Three Embarcadero Center, Suite 1650
>San Francisco, CA 94111
>415-788-4220
>Email: wjonckheer@schubertlawfirm.com
>
>George D. Jonson
>Montgomery, Rennie & Jonson - Cincinnati
>2100 Society Bank Center
>36 East Seventh Street
>Cincinnati, OH 45202
>513-241-4722
>Fax: 513-241-8775
>Email: gjonson@mrjlaw.com
>
>Matthew E. Stubbs
>Montgomery, Rennie & Jonson - Cincinnati
>2100 Society Bank Center
>36 East Seventh Street
>Cincinnati, OH 45202
>513-241-4722
>Fax: 513-241-8775
>mstubbs@mrjlaw.com
>
>Brian J. Wanca
>Anderson & Wanca
>3701 Algonquin Road, Ste. 760
>Rolling Meadows, IL 60008
>847-368-1500
>Fax: 847-368-1501
>Email: bwanca@andersonwanca.com
>
>*Counsel for Plaintiff True Health Chiropractic, Inc.*

    /s/ Tyree P. Jones, Jr.
Counsel for Defendant
McKesson Technologies, Inc. and
McKesson Corporation