UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC INC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MCKESSON CORPORATION, et al., <br><br> Defendants. | Case No. 13-cv-02219-JST <br><br> **ORDER DENYING MOTION TO STAY** <br><br> Re: ECF No. 84 |

Before the Court is McKesson's motion to stay these proceedings, ECF No. 84. For the reasons discussed below, the Court will DENY the motion.

**I.     BACKGROUND**

Plaintiffs brought this putative class action alleging that McKesson sent Plaintiffs unsolicited faxes without opt-out notices in violation of the Telephone Consumer Protection Act, as amended by the Junk Fax Prevention Act of 2005 (collectively, "JFPA"). ECF No. 90 at 2. Both named Plaintiffs, True Health Chiropractic and McLaughlin Chiropractic, allegedly received faxes without opt-out notices during the class period. Id. The putative class is defined as follows:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephonic facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, and (4) did not display a proper opt-out notice.

Id. at 4.

In conformance with the class definition, both True Health and McLaughlin contend the faxes they received were unsolicited. Id. at 2. McKesson contests this allegation. ECF No. 92 at 8. Both parties point to registration forms as evidence of their positions: McKesson points to True Health's provision of its fax number on one of four of those forms as evidence of express

permission to send faxes, id., while True Health points to the boxes marked on each of those same forms that read: "Do Not . . . Fax," ECF No. 91 at 14-15, as evidence that True Health expressly did not provide permission to send it faxes. See ECF No. 93-1, Ex. 7. McKesson also relies on an alleged established business relationship between McKesson and True Health, and True Health's owner's admission that he published True Health's fax number on its website[1] as evidence of express permission. ECF No. 92 at 8. Finally, McKesson asserts that its established business relationship with True Health means that the JFPA did not require McKesson to obtain True Health's express permission to send it faxes. Id. at 8-9.

The Federal Communications Commission ("FCC") is currently in the process of taking comments in response to various petitions challenging one of its regulations implementing the JFPA. FCC, CGB Seeks Comment on Commission's Rule On Opt-Out Fax Advertisements (Aug. 25, 2014 3:10 PM), http://www.fcc.gov/document/cgb-seeks-comment-commissions-rule-opt-out-fax-advertisements. The "solicited-fax" regulation prohibits the sending of fax advertisements without opt-out notices to those who have given the sender express invitation or permission to send them faxes. 47 C.F.R. § 64.1200(a)(4)(iv). The petitioners challenging the regulation argue that the JFPA only granted the FCC authority to regulate *unsolicited* faxes (those sent without express invitation or permission), but the FCC also chose to regulate *solicited* faxes. McKesson has filed comments related to one FCC petition, but has not submitted its own petition. ECF No. 92 at 7.

McKesson seeks to stay this action, contending that the FCC's resolution of the challenges to the solicited-fax regulation is a "central legal issue" here. ECF No. 84 at 2.

## II. LEGAL STANDARD

District courts have inherent power to stay proceedings in order to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); see also Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005) (explaining that Landis provides district courts with "discretionary power to

---

[1] Plaintiffs object to McKesson's citation of this evidence. ECF No. 95 at 2. This motion does not turn on the presence or absence of this evidence, so Plaintiffs' objection is moot.

stay proceedings"). District courts may stay proceedings "pending resolution of independent proceedings [that] bear upon the case." Leyva v. Certified Grocers of Cal., 593 F.2d 957, 863 (9th Cir. 1979). The party seeking the stay bears the burden of showing that a stay is warranted. See Landis, 229 U.S. at 255.

A court, in evaluating a motion to stay, must weigh the competing interests at stake. CMAX, Inc. v. Hall, 300 F.3d 265, 268 (9th Cir. 1962). Among the competing interests are: (1) the possible damage that may result from a stay; (2) the hardship or inequity a party may suffer by being required to proceed; and (3) the stay's potential effect on the orderly course of justice, measured in terms of simplifying or complicating issues, proof, and questions of law. Lockyer, 398 F.3d at 1110 (citing CMAX, 300 F.3d at 268, and Landis, 299 U.S. 248).

## III. DISCUSSION

McKesson contends that this Court should stay this case pending the FCC's resolution of the petitions challenging the solicited-fax regulation. ECF No. 84 at 2-3. Plaintiffs respond that this case does not fall within the ambit of the issues the FCC is considering in those petitions, which only address solicited faxes, because all putative class members here allegedly received unsolicited faxes. ECF No. 91 at 15. Plaintiffs have the better argument, because the evidence before the Court shows that the solicited-fax regulation has nothing to do with the resolution of this case.

### A. The JFPA and Regulations at Issue

The JFPA "prohibits any person from using: [a]ny telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an *unsolicited* advertisement, unless . . . (iii) the *unsolicited* advertisement contains [an opt-out notice]." ECF No. 84 at 7 (citing 47 U.S.C. § 227(b)(1)(C)). The JFPA "defines 'unsolicited advertisements' to be 'any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission*." Id. (citing 47 U.S.C. § 227(a)(5)).

The regulation implementing the JFPA provisions above, 47 C.F.R. § 64.1200(a)(4)(i)-(iii), generally prohibits any person or entity from using "a telephone facsimile machine . . . to

send an unsolicited advertisement to a telephone facsimile machine, unless" the fax contains an opt-out notice, regardless of whether the recipient and sender share an established business relationship. The "solicited-fax regulation" is found at 47 C.F.R. § 64.1200(a)(4)(iv). It provides: "A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with paragraph (a)(4)(iii) of this section." This latter provision is the one that various petitioners have challenged as exceeding the FCC's statutory authority.

### B. Under Lockyer, a Stay Is Not Warranted Here.

Because a stay's potential effect on the orderly course of justice has cascading effects on the other Lockyer factors, the Court addresses this factor first.

#### 1. The stay's effect on the orderly course of justice, measured in terms of simplifying or complicating issues, proof, and questions of law

Given that the class definition includes only those who received faxes but did not grant McKesson "prior express invitation or permission" to do so—i.e., only those who received unsolicited faxes—the FCC's ruling regarding the solicited-fax regulation has no bearing on this litigation. McKesson's motion is premised on the assumption that True Health and McLaughlin provided McKesson "express permission or invitation" to send them faxes. See ECF No. 84. But the evidence McKesson cites to show this—(1) the four registration forms True Health provided, one of which contains True Health's fax number, but all of which contain a check in the "Do Not . . . Fax" box; (2) an established business relationship between True Health and McKesson; and (3) the inclusion of True Health's fax number on its website—does not support its argument.

What the registration forms that McKesson points to show is the opposite of express permission – they show that Plaintiffs asked *not* to receive faxes. This extinguishes McKesson's argument that Plaintiffs impliedly consented to receive such faxes by the mere act of including their fax number among other information they provided during the product registration process. That an affirmative request not to receive faxes trumps implied permission is not only common sense, but also reflects the FCC's interpretation of the JFPA. See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005,

4

21 F.C.C. Rcd. 3787, 3832 & n.164 (2006) ("[A] sender that has an EBR with a consumer may send a facsimile advertisement to that consumer without obtaining separate permission from him," but "a sender that has received an opt-out request from a consumer must not continue to send facsimile advertisements regardless of whether there exists a business relationship between them."). The other evidence that McKesson submits is equally unhelpful, because it also is premised on the notion that an established business relationship is always sufficient by itself to confer permission to send faxes – which is not the law.

Thus, given that True Health (and the class, by definition) cannot be said to have given express consent to receive faxes, the FCC's decision regarding whether opt-out notices are required for *solicited* faxes will not affect the "orderly course of justice" in this case. See Lockyer, 398 F.3d at 1113 (declining to stay an action where another proceeding was "unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court.").

McKesson cites a number of cases in which courts have granted stays based on FCC petitions, but none are helpful here. The vast majority of those cases involved indisputably "solicited" faxes. See Nack v. Wahlburg, No. 4:10-cv-00478, 2013 WL 4860104, at *1 (E.D. Mo. Sept. 12, 2013) (granting stay where "Plaintiff conceded that the faxes were sent with Plaintiff's permission" and stating: "[the] FCC regulation requiring an opt-out notice only applied to unsolicited faxes."); Whiteamire Clinic, P.A., Inc. v. Quill Corp., No. 12-cv-05490, at *1 (N.D. Ill. Apr. 9, 2014) (granting stay where there was no dispute that the defendants had prior express permission to fax advertisements to the plaintiff); Barr v. Futuredontics, Inc., No. 13-cv-61982-JIC (S.D. Fla. Feb. 14, 2014) (granting a stay where "Plaintiff 'expressly agreed to receive the fax advertisements at issue.'"); Raitport v. Harbour Capital Corp., No. 09-cv-156-SM, 2013 WL 4883765, at *1 (D.N.H. Sept. 12, 2013) (granting a stay in a case that involved faxes that recipients had "invited and affirmatively wished to receive."); Phys. Healthsource v. Purdue Pharma LP, No. 12-cv-01208, 2014 WL 518992 (D. Conn. Feb. 3, 2014) (granting stay where faxed advertisements were solicited; "The plaintiff's claims likely depend, at least in part, on [the solicited-fax] regulation, because there is evidence that the faxes in question were sent with permission."); cf. Kaye v. Amicus Mediation & Arbitration Grp., Inc., No. 13-CV-347 (JCH),

ECF No. 87 (D. Conn. May 27, 2014) (denying motion to stay because two of the three class claims were based on allegedly unsolicited faxes).

Two cases McKesson cites involved both solicited and unsolicited faxes, but in both, the courts distinguished between solicited and unsolicited faxes and only granted stays to the extent that solicited faxes were at issue. See Am. Tile & Marble Co. v. All Granite & Marble Corp., No. 13-cv-89-JFB-TDT (D. Neb. Jan. 27, 2014) (granting a partial stay—where some faxes class members received were solicited, while others were not—after ordering discovery to determine which putative class members had received solicited versus unsolicited faxes; and stating: "If discovery reveals none of the faxes were solicited . . . a stay is unwarranted."); Phys. Healthsource, Inc. v. Masimo, No. 14-cv-00001-JVS-AN (C.D. Cal. May 22, 2014) (granting stay where "[t]he scope of the claims asserted in the [operative complaint] . . . encompasses claims by putative class members who received 'solicited' advertisements [so that] the issue before the FCC is potentially dispositive of a large number of [putative class members'] claims.").[2]

Ultimately, granting a stay to allow the FCC to decide whether the solicited-fax regulation is valid will have no effect on the orderly course of justice in this case. The FCC's determination will not simplify the issues, proof, or questions of law presented here.

### 2. The possible damage that may result from a stay versus the hardship or inequity McKesson may suffer by being required to proceed

The damage a stay would cause far outweighs any inequity or hardship to McKesson in allowing the case to proceed.

On the one hand, there is a significant potential for harm to the Plaintiffs from a stay. Some evidence, such as the memory of percipient witnesses, will diminish or weaken during the

---

[2] McKesson cites three rulings in two other cases. Neither deals with the solicited/unsolicited distinction. In one, the court did not explicitly note whether the faxes at issue were solicited, though they impliedly were. See St. Louis Heart Ctr., Inc. v. Gilead Palo Alto, Inc., No. 13-cv-958-JAR, 2013 WL 5436651, at *2 (E.D. Mo. Sept. 27. 2013) (granting stay where: "Defendants request the action be stayed pending resolution of its Petition for Declaratory Ruling . . . seeking resolution of the threshold legal issue in this case, namely, the applicability of the [solicited-fax regulation], which purports to govern solicited faxes and requires those faxes to contain an opt-out notice."); St. Louis Health Ctr., Inc. v. Forest Pharm., Inc., No 12-cv-2224, 2013 WL 3988671 (E.D. Mo. July 17, 2013) (same). In the other case, the court granted a stay the plaintiff did not object to. Burik v. Staples Contract & Commercial, Inc., No. 12-cv-10806-NMG (D. Mass. Aug. 9, 2013). These cases do not provide guidance for the Court's resolution of the instant motion.

pendency of a stay. Other evidence could be lost or damaged. This harm is exacerbated by the fact that Defendants' requested stay would be of indefinite duration. Cf. Lair v. Murry, 871 F. Supp. 2d 1058, 1068 (D. Mont. 2012) ("stays should not be indefinite in nature and should not be granted unless it appears likely the other proceeding will be concluded within a reasonable time").

On the other hand, there is little inequity or hardship to McKesson. It has not filed a petition with the FCC and thus is not litigating the same issue on two fronts. See, e.g., Masimo, No. 14-cv-00001-JVS-AN (C.D. Cal. May 22, 2014) (granting stay where defendant had filed a petition challenging the regulation with the FCC); St. Louis Heart Ctr., 2013 WL 5436651 (same); Whiteamire Clinic, No. 12-cv-05490 (same). And there is no risk of inconsistent results, because this case does not concern the solicited-fax regulation. Based on the evidence adduced so far, the solicited-fax regulation has no effect on McKesson's liability in this case.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES McKesson's motion to stay.

**IT IS SO ORDERED.**

Dated: October 22, 2014

_____
JON S. TIGAR
United States District Judge