UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC INC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MCKESSON CORPORATION, et al., <br><br> Defendants. | Case No. 13-cv-02219-HSG   (DMR) <br><br> **ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SANCTIONS** <br><br> Re: Dkt. No. 162 |

Plaintiffs filed a motion for sanctions for Defendants' alleged failure to produce discovery previously ordered by this court. [Docket No. 162.] The court held a hearing on the motion on March 26, 2015. For the reasons stated below and at the hearing, the court **grants in part** Plaintiffs' motion.

**I.     BACKGROUND AND PRIOR COURT ORDERS**

This is a putative class action brought under the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA"). It challenges Defendants' alleged practice of sending unsolicited facsimile advertisements, or so-called "junk faxes."

This is the parties' third time before the court on the same discovery issues. In October 2013, Plaintiffs served the document requests, interrogatories, and requests for admission that form the basis for the underlying disputes. Mot. at 3. Plaintiffs filed their first motion to compel Defendants to produce "all facsimile advertisements that it transmitted during the four-year period prior to the filing of the Complaint" on June 23, 2014. [Docket No. 79.] Judge Tigar, the then-presiding judge, handled the dispute and delayed a determination on the matter because Defendants' motion to stay the case was still pending. *See* Docket No. 87. On October 22, 2014,

1  Judge Tigar denied the motion to stay and referred Docket No. 79 to this court for resolution.  On
2  November 13, 2014, the court held a hearing on Docket No. 79, as well as two other discovery
3  letters the parties had filed in the meantime, *see* Docket Nos. 110, and 111.  On November 14,
4  2014, this court issued an order compelling Defendants to produce discovery, after some
5  additional meet and confer discussions to narrow the scope of discovery.  *See* November 14 Order
6  [Docket No. 127].  The parties met and conferred, but were unable to agree upon a narrower scope
7  for the discovery, and thus presented their dispute again to this court. [Docket No. 133.]  The
8  court issued an order on Docket No. 133 on December 5, 2014, directing Defendants to produce
9  certain discovery.  *See* December 5 Order [Docket No. 143].

Because the specifics of the December 5 Order are at issue in the sanctions motion, the court will review its prior order in greater detail.

### A. Exemplar Faxes [Docket No. 79]

In Docket No. 79, Plaintiffs moved to compel Defendants to produce exemplars[1] of all fax advertisements that did not include an opt-out notice that Defendants sent during the class period. In the November 14 Order, the court granted Plaintiffs' motion to compel and ordered Defendants to produce "all unique fax ads without opt-out notices sent by Defendants during the class period." However, the court noted that "the discovery request propounded by Plaintiffs is too broadly worded, and could capture documents well beyond the 'fax advertisements without opt-out notices' that are the subject of this case."  The court therefore ordered the parties to "have a detailed and specific meet and confer session so that they can identify the types of documents that fall within the scope of this case, and those that are outside that scope." November 14 Order at 2.

The parties met and conferred, but were unable to agree upon a narrower scope for this discovery.  Plaintiffs proposed that Defendants produce exemplar faxes that fall within the following description:

> Any document that was: (1) created, in whole or in part, by one or

---

[1] As the court noted in its November 14 Order, during the November 13, 2014 hearing, "Plaintiffs' counsel clarified that Plaintiffs sought only exemplars of each unique ad, not copies of every single ad sent to a recipient." November 14 Order at 1 n. 1.

> more employees of the marketing department of McKesson corporation, McKesson Technologies, Inc., McKesson Provider Technologies, or other McKesson entity; (2) transmitted to one or more fax numbers via server, computer, or other automated function; (3) that advertised the commercial availability or quality of any property, good, or service or McKesson; (4) after June 20, 2009.

In the December 5 Order, the court found Plaintiffs' proposal to be reasonable "in that it describes the relevant documents while also incorporating measures likely to reduce burden and weed out non-responsive documents." December 5 Order at 3. The court also noted that Plaintiffs' definition would avoid "word-mincing disputes" about the scope of discovery. *Id.* The court then ordered Defendants to produce "exemplar documents meeting the definition in Plaintiffs' proposal" by December 12, 2014. *Id.*

**B.     Discovery Related to Prior Express Permission Defense [Docket No. 110]**

In Docket No. 110, Plaintiffs moved to compel documents showing that the recipients of fax advertisements sent by Defendants had given Defendants prior express permission to send those faxes (i.e., documents relevant to the "permission defense"). The court granted Plaintiffs' motion to compel, stating that the "evidence sheds light on the question of whether the permission defense is an individualized inquiry or a generalized argument." November 14 Order at 2-3. However, the court also expressed its "concern that Plaintiffs' request as currently written will be burdensome." *Id.* at 3. The court thus ordered the parties to "meet and confer regarding a more efficient way for Plaintiffs to discover information about Defendants' permission defense. For example, if Defendants contend that a customer's software registration constitutes that customer's express permission to receive fax ads, Defendants could produce an example of one customer's software registration, and explain in an interrogatory response which recipients allegedly granted Defendants permission to send fax ads by completing similar software registrations." *Id.*

The parties met and conferred and Defendants agreed to produce "a supplemental interrogatory response that details the categories of permission . . . [and] identify the evidentiary categories that would frame discovery." Docket No. 133 at 6. However, the parties disagreed as to one aspect of this discovery request: Plaintiffs wanted Defendants to identify the recipients that allegedly fall into each category of permission, but Defendants proposed to list the *number* of

3

recipients that fall into each category with no individually identifying information.

In the December 5 Order, the court rejected Defendants' proposal and stated, "The court has already ordered Defendants to identify the recipients, and has already found that the protective order is sufficient to safeguard Defendants' proprietary interests. Accordingly, Defendants shall respond to the discovery request at issue in Docket No. 110, including by identifying the names and fax numbers of the recipients, by December 12, 2014." December 5 Order at 4.

### C. Transmission Records [Docket No. 111]

In Docket No. 111, Plaintiffs moved to compel the production of documents containing information about recipients of the fax ads sent by Defendants during the class period, including their identities and fax numbers, and the dates and times they received transmissions. The court found "this information to be relevant to class certification issues, and further finds that Defendants' concerns about the recipients' confidential information are adequately addressed by the parties' protective order" and therefore granted Plaintiffs' motion to compel. November 14 Order at 3. Furthermore, the court held that "[t]he universe of recipients shall be bounded by the group of 'fax advertisements' identified . . . [for] Docket No. 79." *Id.*

On December 5, 2014, the court noted that it had "resolve[d] the issues in Docket No. 79," and therefore required Defendants to produce documents responsive to the discovery request at issue in Docket No. 111 by December 12, 2014.

### D. Procedural History and Case Management Deadlines

On December 11, 2014, the day before Defendants' discovery responses were due, Defendants filed a motion for relief from this court's December 5 Order. Judge Tigar denied the motion for reconsideration on December 19, 2014, finding that the December 5 Order was "well-reasoned, thorough, and correct in all respects." *See* Docket No. 148.

On the same day they filed their motion for reconsideration, Defendants also filed a motion to bifurcate discovery so that discovery related to the named Plaintiffs' individual claims would proceed before other discovery. On January 20, 2015, Judge Tigar denied Defendants' motion to bifurcate discovery, finding that several factors weighed against bifurcation, including the likelihood of overlap between individual and class discovery; that bifurcating discovery would not

4

1  allow class certification motions to be filed by the scheduled deadline; that bifurcation has
2  potential to further complicate this litigation by "rais[ing] a slew of issues as to what discovery
3  relates to the class, as opposed to the named plaintiffs"; and that Defendants requested bifurcation
4  at a "relatively late date . . . especially given that the parties initially agreed not to bifurcate
5  discovery." *See* Docket No. 157 at 1-6.

6  On February 13, 2015, this case was reassigned to Judge Gilliam. On April 1, 2015, Judge
7  Gilliam extended some of the case management deadlines. Expert disclosures are now due on
8  April 22, 2015. Expert discovery closes on May 26, 2015. Dispositive motions, including
9  Plaintiffs' motion for class certification, are due on June 29, 2015. [Docket No. 177.]

## II. DEFENDANTS' PRODUCTION TO DATE

Defendants' actions following the December 5 Order exhibit a good deal of foot-dragging as well as a distinct lack of candor. The parties met and conferred on December 22, 2014, after Judge Tigar denied Defendants' motion for reconsideration of this court's December 5 Order. Defendants informed Plaintiffs that they would not be able to produce the ordered discovery until after the holidays, and asked for an extension until January 21, 2015. Plaintiffs refused the extension, but agreed not to file a motion to compel or for sanctions until the parties conferred during the week of January 5, 2015. Mot. at 7; Stubbs Decl. [Docket No. 162-3] at ¶¶ 4-6. Plaintiffs' counsel stated that they expected Defendants to begin "rolling" production of the discovery during that week.

On January 8, 2015, the parties conferred by phone. Defendants stated they would produce transmission records for the four faxes attached to the SAC by January 15, 2015. Defendants also stated they would produce "exemplar" faxes by that date but would likely need additional time to produce the transmission records associated with those faxes. On January 15, 2015, Defendants informed Plaintiffs' counsel by email that "[y]ou will have the information tomorrow." On January 16, 2015, Defendants sent an email stating that the production would actually occur on January 20, 2015. Wanca Decl. [Docket No. 162-1] at ¶¶ 2-3, 6.

On January 20, 2015, Defendants sent Plaintiffs' counsel a DVD containing the fax transmission information for the four faxes attached to Plaintiffs' Second Amended Complaint.

Stubbs Decl. at ¶ 7. The letter did not mention any of the other outstanding discovery that this court had ordered in the December 5 Order. The transmission records relate to four "job numbers," with each "job" showing a single fax broadcast on each of the dates of the four faxes attached to the SAC. Wanca Decl. at ¶ 7. Notably, Plaintiff True Health's fax number was not contained in the transmission records, "even though the 'Back to Black' fax attached to the SAC shows it was transmitted from McKesson to True Health's fax number on April 20, 2010." Mot. at 9; Hara Decl. [Docket No. 162-2] at ¶ 11.

On January 22, 2015, Plaintiffs' counsel sent Defendants' counsel an email stating that Defendants had only sent fax transmission information for the four faxes attached to the SAC, but not for any other faxes, which Plaintiffs considered to be in violation of the December 5 Order. Hara Decl. at ¶ 8. On January 23, 2015, Defendants' counsel responded, stating that the January 20 production "was not complete" and that "we are working toward making it complete." *Id.* at ¶ 9. Defendant proposed making another production by February 6, 2015, but would produce documents until then on a "rolling basis." *Id.*

On February 3, 2015, counsel conferred by phone. Plaintiffs noted that Defendants had not produced any documents on a "rolling basis" and informed Defendants that they were drafting a motion for sanctions. *Id.* at ¶ 2. Plaintiffs stated that they would wait to file the motion until after Defendants produced documents on February 6, since the sanctions remedy could be shaped by the completeness of Defendants' second production. *Id.* Defendants stated the February 6 production would be "substantial." *Id.* at ¶ 3.

On February 6, 2015, Defendants produced four pages of documents, consisting of four "exemplar" fax advertisements, each relating to a specific "job number." Wanca Decl. at ¶ 10. Defendants stated that "transmission information associated with each Job" would be produced by February 9, 2015. *Id.* On February 12, 2015, Defendants produced transmission logs for the four "job numbers" relating to the four "exemplar" faxes, with each "job" showing a single broadcast of each fax to several thousand fax numbers. *Id.* at ¶ 10.

On February 13, 2015, Defendants requested that Tiffany Cheung and Ben Patterson of Morrison & Foerster LLP be substituted in as counsel, replacing Defendants' previous counsel,

Tyree Jones, David Reidy and Andrew Amoroso of Reed Smith, LLP. Judge Gilliam granted the request on February 18, 2015. *See* Docket Nos. 159, 161.

On February 17, 2015, Plaintiffs' counsel conferred with new counsel to advise that Plaintiffs would be filing this Motion. Hara Decl. at ¶ 7. Plaintiffs asked if Defendants' production was complete. *Id.* Counsel stated she did not know, having just entered the case. *Id.* Plaintiffs then contacted Defendants' prior counsel to pose the same question. Plaintiffs Defendants' prior counsel responded in an email the next day, stating that "Defendants have complied with Magistrate Judge Ryu's order," because Defendants "produced exemplar faxes, and thereafter produced the corresponding transmission records, which again included the identity of those to which it sent those faxes." *Id.* at ¶ 9. With respect to a discovery response explaining Defendants' claim of "prior express invitation or permission," Defendants' prior counsel stated that "Magistrate Judge Ryu's order did not direct that such a response be provided; she only suggested it as a means to resolve the dispute." *Id.*

In sum, to date, Defendants have produced four "exemplar" faxes and transmission records for eight "job numbers," each showing one broadcast of one of the eight known fax images (the four faxes attached to the SAC and the four additional "exemplar" faxes). Defendants have produced no additional documents or information regarding its claim that it obtained "prior express invitation or permission" to send fax advertisements to the class.

### III. LEGAL STANDARDS

Rule 37 authorizes the imposition of various sanctions for discovery violations, including a party's failure to obey a court order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A). Such sanctions may include "(i) directing that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental

1 examination." Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). In addition, "the court must order the

2 disobedient party, the attorney advising that party, or both to pay the reasonable expenses,

3 including attorneys' fees, caused by the failure, unless the failure was substantially justified or

4 other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

## IV. DISCUSSION

Plaintiffs note that the discovery it seeks is urgent, as it is required for Plaintiffs' experts to offer opinions on (1) the number of unique fax images sent to the class, (2) the number of transmissions of those images to each unique fax number, and (3) the nature of the records showing those transmissions. Plaintiffs also contend that they require the discovery for their class certification motion: Defendants have signaled their intention to argue that class certification is inappropriate because some class members gave "prior express invitation or permission" to receive the allegedly offending faxes, but without discovery relevant to this defense Plaintiffs cannot prepare a response. Mot. at 16.

### A. Defendants' Violation of December 5 Order

Plaintiffs contend that Defendants violated this court's December 5 Order by (1) not producing all exemplars, transmission records, and evidence of permission by December 12, 2014, (2) producing only selective subsets of documents on January 20, February 6 and 12, 2015, and (5) failing to set forth which "categories of permission" they are relying on and failing to identify the class members that allegedly fall into each such category. Mot. at 15.

#### 1. Discovery of "Exemplar" Faxes

In the December 5 Order, the court expressed its desire to avoid "word-mincing disputes" between the parties and therefore ordered Defendants to produce documents responsive to the following request:

> Any document that was: (1) created, in whole or in part, by one or more employees of the marketing department of McKesson corporation, McKesson Technologies, Inc., McKesson Provider Technologies, or other McKesson entity; (2) transmitted to one or more fax numbers via server, computer, or other automated function; (3) that advertised the commercial availability or quality of any property, good, or service or McKesson; (4) after June 20, 2009.

8

December 5 Order at 3. These are specific, measurable, and concrete limitations on the document request based on the author of the document, the method by which it was transmitted, its content, and its date.

Despite this clear marching order, Defendants have attempted to interpose additional restrictions on this definition. Remarkably, Defendants avoid addressing the operative language in the December 5 Order in their opposition papers. Instead, they quote selectively from comments made by Plaintiffs' counsel during the November 13, 2014 hearing in which Plaintiffs' counsel purported restricted the discovery sought to advertisements "so similar in time, so similar in substance that they would be part of the class." Opp. at 5. This not only predates the December 5 Order, but also quotes Plaintiffs' counsel out of context. There is no indication that Plaintiffs actually intended this to be an additional limitation, as the parties' subsequent filings do not mention it, nor does the court's December 5 Order.

Defendants' opposition also includes this paragraph:

> The search ultimately conducted by Defendants, as required by the Court's December 5, 2014 Order, went well beyond merely looking for only fax exemplars with slight differences. Indeed, on the face of the four additional unique fax exemplar found, it is clear that they are quite different from the faxes attached to the complaint. (Jones Decl. ¶ 17, Ex. H.) Consistent with the Court's order, Defendants used reasonable search terms based on Plaintiffs' position that the exemplars relevant to this case are those "so similar in substance" to the faxes attached to the Complaint that Plaintiffs may argue those faxes are encompassed within the class definition. (Docket No. 130 (Hearing Tr.) at 8:4-5.)

Opp. at 6-7. What this amounts to is Defendants' imposition of a limitation on discovery that the court did not order, and then seeking recognition from the court for being slightly flexible about that artificial restriction.

The court's order was clear. There is no limitation to faxes that are "similar" to the faxes attached to the complaint. Defendants' attempts to read additional limitations are perplexing at best. Defendants' untenable interpretation of this court's order is especially suspect, given that they apparently understood the scope of the order when they quoted the discovery request verbatim in their motion for reconsideration and then argued to Judge Tigar in detail about how

9

the specific parameters of that request would be onerous to meet. *See* Docket No. 144 at 2-3 and n. 2 ("In terms of burden, the Order still requires Defendants to search all of their fax transmissions created and sent by those in the marketing department to anyone during the 4-year class period to determine whether they were fax advertisements that contained TCPA-compliant opt-out language, and sent to those who had provided prior permission, a group not encompassed by the putative class.").

**By April 2, 2015**, Defendants shall produce documents that fall within this description, which is slightly modified from the court's December 5, 2014 Order:  "Any document that was: (1) created, in whole or in part, by one or more employees of the marketing department of ***McKesson Corporation or McKesson Technologies, Inc.***; (2) transmitted to one or more fax numbers via server, computer, or other automated function; (3) that advertised the commercial availability or quality of any property, good, or service or McKesson; (4) after June 20, 2009." Defendants shall simultaneously file declarations from its lead outside counsel and lead in-house counsel certifying that this production of documents is complete.  The court notes that its December 5, 2014 Order included the marketing department of "McKesson Provider Technologies or other McKesson entity."  The court is not excusing Defendants from producing such documents.  However, based on defense counsel's representation that production of such documents would be "impossible" by April 2, 2015, and may include irrelevant documents, the court ordered the parties to meet and confer further.  If they cannot agree on the scope and phased production schedule of documents regarding "McKesson Provider Technologies or other McKesson entities," they should file a joint letter by no later than April 9, 2015.[2]

---

[2] The court notes that Plaintiffs have already suggested one possible method for identifying the relevant documents from other McKesson entities. *See* Docket No. 133 at 3 ("If the Court believes that Plaintiffs' proposed order would place too much of a burden on the McKesson entities, this Court could order McKesson to cooperate with Plaintiffs in searching and retrieving data from the pertinent electronic systems. Plaintiffs have identified their electronic discovery coordinator, Robert Biggerstaff, and repeatedly offered to have Mr. Biggerstaff work with an electronic discovery coordinator designated by McKesson to accomplish this. McKesson has ignored or denied these requests."). *See also* "Guidelines for the Discovery of Electronically Stored Information," Guideline 2.05 (E-Discovery Liaison(s)), available at http://cand.uscourts.gov/eDiscoveryGuidelines.

### 2.     Discovery of Transmission Records

Plaintiffs noted that the transmission records produced by Defendants did not include Plaintiff True Health's fax number as one of the recipients. Apparently, Defendants have corrected this problem. According to Defendants, this was Plaintiffs' "core concern" with Defendants' production of transmission records, and Defendants' correction of that problem means that all of the problems with its responses to the discovery requests identified in Docket No. 110 have been resolved.

This is not so. As described above, this court ordered Defendants to produce transmission records for all exemplar faxes that it identified. Because Defendants imposed artificial additional limitations on its search for exemplar faxes, it has not produced all responsive documents.

By **April 9, 2015**, Defendants shall produce transmission records for any additional documents produced on April 2, 2015, and shall also file certifying declarations as described above.

### 3.     Discovery Related to "Prior Express Permission" Defense

With respect to the materials relevant to Defendants' contention that putative class members had given Defendants prior express permission to send them faxes, Defendants contend that the court's order was not actually an order, but rather a *suggestion*. *See* Opp. at 10-11 (court only "suggested" that Defendants provide an interrogatory response to satisfy this discovery request); Hara Decl. at ¶ 9 (Defendant's prior counsel expressing belief that "Magistrate Judge Ryu's order did not direct that such a response be provided; she only suggested it as a means to resolve the dispute"). This characterization is flagrantly unbelievable. As explained above, the court granted Plaintiffs' motion to compel Defendants to produce this information on November 14, noting that the information was relevant and discoverable, but required the parties to meet and confer "regarding a more efficient way for Plaintiffs to discover information about Defendants' permission defense." November 14 Order at 2-3. The court suggested one possibility: "For example, if Defendants contend that a customer's software registration constitutes that customer's express permission to receive fax ads, Defendants could produce an example of one customer's software registration, and explain in an interrogatory response which recipients allegedly granted

11

1  Defendants permission to send fax ads by completing similar software registrations." *Id.*
2  Subsequently, as the court noted in its December 5 Order, "[t]he parties met and conferred and
3  Defendants agreed to produce 'a supplemental interrogatory response that details the categories of
4  permission . . . [and] identify the evidentiary categories that would frame discovery.'" December 5
5  Order at 4 (quoting Docket No. 133 at 6); *see also* Docket No. 133 at 7 ("Defendants ask that the
6  Court find that . . . Defendants be allowed to provide a supplementary interrogatory response.").
7  The *only* disagreement with respect to this discovery dispute that required further judicial
8  intervention was Defendants' refusal to provide identifying information for the recipients that
9  allegedly fall into each category of permission (as opposed to just the *number* of recipients). This
10 court's December 5 Order found Defendants' refusal unreasonable and already in violation of the
11 court's previous order. *See* December 5 Order at 4 ("This court has already ordered Defendants to
12 identify the recipients, and has already found that the protective order is sufficient to safeguard
13 Defendants' proprietary interests."). That Defendants now say that the court did not order this
14 discovery beggars belief.

15 Defendants also argue that they have in fact produced discovery in response to this request,
16 specifically by producing the transmission records which "include[] the contact information for all
17 corresponding fax recipients that was reasonably available in Defendants' records." Opp. at 11.
18 This misses the point. The purpose of this discovery request is not simply to learn the identities of
19 the recipients of Defendants' faxes, but to explore Defendants' defense that some or all of these
20 fax recipients gave Defendants "prior express permission," and the method by which such
21 permission was allegedly given. Defendants' discovery to date does not answer these questions.

22 Thus by **April 2, 2015**, Defendants shall produce an interrogatory response that (1)
23 identifies each type of act that Defendants believe demonstrates a recipient's express permission to
24 receive faxes (e.g. completing a software registration), (2) explains how that act qualifies as
25 express permission, and (3) identifies each recipient allegedly giving that type of permission by
26 name and contact information (including, at a minimum, fax and phone number). The effect of
27 this interrogatory response should be to identify every putative class member who supposedly
28 gave permission and explain how that recipient gave permission. Defendants shall also file

certifying declarations as described above.

### 4. Failure to Meet and Confer

Defendants contend that Plaintiffs did not meet and confer about the purported deficiencies in Defendants' production prior to filing this motion for sanctions. Plaintiffs' submissions include declarations from three of their attorneys, which describe the sequence of communications between Plaintiffs' and Defendants' attorneys and attach written communications between them between December 19, 2014 and February 18, 2015. They demonstrate that Plaintiffs' in fact repeatedly informed Defendants of the insufficiency of their discovery responses. *See* Wanca Decl.; Hara Decl.; Stubbs Decl. It appears that Defendants may be arguing that Plaintiffs failed to adequately meet and confer with Defendants' *new* counsel, who substituted into the action on February 18, 2015, the day before Plaintiffs filed their motion for sanctions. But Plaintiffs' submissions also describe how Plaintiffs' attorneys spoke with new counsel on February 17, 2015 and informed her of Plaintiffs' intention to file a motion for sanctions; attempted to speak with her again on February 18; and called and exchanged emails Defendants' prior counsel Tyree Jones on February 17 and 18, 2015. Hara Decl. at ¶¶ 7-10. The meet and confer communications between the parties regarding the instant discovery disputes were amply documented in writing prior to the substitution of counsel. Given Defendants' wholly deficient performance regarding their obligations, as well as the impending case management deadlines, Plaintiffs were well within their rights in moving for sanctions at this juncture, rather than waiting for new counsel to get fully up to speed.[3]

Defendants also claim that Plaintiffs have failed to meet and confer *since* they filed the motion for sanctions, but the requirement in the Federal and Civil Local Rules is that the parties

---

[3] In fact, the only specific issue that Defendants point to as not ripe for court intervention is the transmission records' omission of Defendants' fax number. Opp. at 12 ("As just one example, the first time Defendants learned from Plaintiffs that True Health's fax number was not contained in the produced transmission records was *in the motion for sanctions itself*.") (emphasis in original). As noted above, this is a *de minimis* issue. The record shows that Plaintiffs repeatedly raised concerns that Defendants were failing to produce the discovery ordered by this court by the deadlines that this court had set.

1  meet and confer *before* a discovery motion is filed, not after.  *See* Civil L.R. 37-1(a) ("The Court
2  will not entertain a request or a motion to resolve a discovery dispute unless, pursuant to Fed. R.
3  Civ. P. 37, counsel have *previously* met and conferred for the purpose of attempting to resolve all
4  disputed issues.") (emphasis added); Fed. R. Civ. P. 37(d)(1)(B) ("A motion for sanctions for
5  failing to answer or respond must include a certification that the movant *has* in good faith
6  conferred or attempted to confer with the party failing to act in an effort to obtain the answer or
7  response without court action.") (emphasis added).

### B. Attorneys' Fees

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

This is the third time, in some form, that this court has ordered Defendants to produce the discovery that Plaintiffs originally requested in October 2013.  The positions Defendants have taken with respect to its interpretation of the court's December 5 Order are unreasonable, as demonstrated above and by the contrary positions taken by Defendants in its other submissions, including in its motion for reconsideration before Judge Tigar.  Defendants have had nearly four months to comply with the court's December 5 Order, but have failed to do so without substantial justification.  Accordingly, the court finds that Plaintiffs should be awarded attorneys' fees.

The court **grants** Plaintiffs' motion for sanctions in the form of attorneys' fees and costs.  By **April 9, 2015**, Plaintiffs shall file its fee motion.[4]  The court will decide whether and when to set a hearing on the fee motion.[5]

---

[4] Civil Local Rule 37-4(b)(3) provides that a party moving for an award of attorney fees or other form of sanction under Federal Rule of Civil Procedure 37 must file a declaration which "itemize[s] with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed."

[5] Plaintiffs' motion for sanctions specifically notes that "Plaintiffs are not, in this Motion, asking the Court to deem it 'established' that McKesson did not obtain 'prior express invitation or permission' to send its fax advertisements or to prohibit McKesson from introducing any evidence (if it actually has any) on that issue.  Instead, the Ninth Circuit first requires the Court to consider

14

## V.   CONCLUSION

For the reasons stated above, Plaintiffs' motion for sanctions is **granted in part.** Any further delay in producing the discovery discussed in this Order may expose Defendants to additional monetary or other sanctions.

**IT IS SO ORDERED.**

Dated: April 1, 2015

_____
DONNA M. RYU
UNITED STATES MAGISTRATE JUDGE

---

'the availability of less drastic sanctions.'"  Mot. at 16 (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002)).  Thus Plaintiffs request a coercive penalty of $10,000 per day first, and "if this 'less drastic' sanction[] is not effective, the Court should raise the amount of the coercive penalty substantially and/or order (or recommend to Judge Gilliam, as necessary) the more severe preclusionary sanctions authorized by Fed. R. Civ. P. 37(b)(2)(A)(i)–(iii)."  Mot. at 18.  However, in its Reply, Plaintiffs seem to be requesting both the $10,000 per day penalty *and* preclusionary or evidentiary sanctions.  Reply [Docket No. 168] at 14.  Even if Plaintiffs arguably made this request in its opening motion, rather than on reply, this court exercises its discretion and declines to consider these sanctions, as well Plaintiff's request that the court hold Defendants in civil contempt and issue coercive monetary sanctions.  Defendants' motion for leave to file a surreply (purportedly to respond to Plaintiffs' request for preclusionary or evidentiary sanctions, but in reality also to add further argument regarding the substantive issues raised in the opening motion), *see* Docket No. 169, is therefore **denied as moot**.

15