UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC INC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MCKESSON CORPORATION, et al., <br><br> Defendants. | Case No. 13-cv-02219-HSG  (DMR) <br><br> **ORDER RE: JOINT DISCOVERY LETTER** <br><br> Re: Dkt. No. 183 |

Before the court is a joint discovery letter filed by Plaintiffs True Health Chiropractic, Inc. and McLaughlin Chiropractic Associates, Inc. and Defendants McKesson Corporation and McKesson Technologies, Inc. ("MTI"). [Docket No. 183.] In the joint letter, Plaintiffs move to compel Defendants to produce certain documents from McKesson entities other than those for which Defendants have already produced documents. The court held a hearing on this matter on May 21, 2015. For the reasons stated below and at the hearing, Plaintiffs' motion is denied.

## I.   BACKGROUND

The factual background of this case has been summarized elsewhere. *See, e.g.*, Docket Nos. 127, 143, 157, 178. In brief, this putative class action challenges Defendants' alleged practice of sending unsolicited facsimile advertisements, or so-called "junk faxes," in violation of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA"). The faxes attached to the Second Amended Complaint are all advertisements for medical software.

On June 23, 2014, Plaintiffs filed their first motion to compel Defendants to produce "all facsimile advertisements that it transmitted during the four-year period prior to the filing of the Complaint." [Docket No. 79.] After delays due to Defendants' motion stay the case, the court

1    held a hearing on the discovery letter and ordered the parties to further meet and confer.  The

2    parties were unable to resolve their dispute without judicial intervention.  They filed another joint

3    discovery letter, in which Plaintiffs, among other things, moved the court to compel Defendants to

4    produce faxes falling within the following description:

> Any document that was: (1) created, in whole or in part, by one or more employees of the marketing department of **McKesson Corporation, McKesson Technologies, Inc., McKesson Provider Technologies, or other McKesson entity**; (2) transmitted to one or more fax numbers via server, computer, or other automated function; (3) that advertised the commercial availability or quality of any property, good, or service or McKesson; (4) after June 20, 2009.

Docket No. 143 (order dated December 5, 2014) at 3 (emphasis added).  Defendants generally objected to this proposal as being too burdensome, but did not specifically note a problem with discovery requests that targeted McKesson entities other than the named Defendants.  Neither party educated the court about the corporate structure of the various McKesson entities and their relationship to each other.  The court ordered production as requested by Plaintiffs, but the court was not called upon at that time to consider whether a search for documents from "the marketing department of McKesson Corporation, McKesson Technologies, Inc., McKesson Provider Technologies, or other McKesson entity" was appropriate.

Subsequently, Defendants produced only four exemplar faxes, limiting their production to faxes that were "similar in substance" to the faxes attached to the pleadings.  Plaintiffs brought a motion for sanctions against Defendants alleging that Defendants had failed to produce the discovery ordered by the court. [Docket No. 162.]  At the sanctions hearing, new counsel appeared for Defendants, and represented for the first time that production of responsive documents would be 'impossible' by April 2, 2015, and could include irrelevant documents.  The court thus ordered Defendants to produce responsive documents only from the marketing departments of McKesson Corporation or McKesson Technologies by April 2, 2015.  The court stated that it was "not excusing Defendants from producing documents from "McKesson Provider Technologies or other McKesson entities," as delineated in its December 5, 2014 order.  However, based on defense counsel's representation about the potential burden and overbreadth of such a

2

production, the court ordered the parties to meet and confer further. *Id.*

Defendants subsequently investigated its documents and learned that all of the faxes attached to the operative complaint "were created by or at the direction of one or more former employees of Physician Practice Solutions ("PPS"), a business unit under McKesson Technologies Inc." Cheung Decl. [Docket No. 179] at ¶ 4. Defendants searched for marketing documents created by PPS that were transmitted to fax numbers during the relevant time period. *Id.* As a result of this search, Defendants produced 37 previously-unproduced exemplar faxes to Plaintiffs, raising the total number of unique faxes known to Plaintiffs to 45. Letter at 1. According to Defendants, they "have already produced every fax that reasonably comes within the scope of the allegations in Plaintiff's Second Amended Complaint." Letter at 2.

Plaintiffs now request that Defendants expand their search for exemplar faxes to other McKesson entities, departments, business units, and/or affiliates. The parties met and conferred and were unable to resolve their dispute without judicial intervention. This letter followed.

## II.     CORPORATE STRUCTURE OF DEFENDANT MCKESSON CORPORATION

The two Defendants named in this action are McKesson Corporation and MTI, and the putative class is defined as "[a]ll persons who . . . were sent [faxes] . . . advertising the commercial availability of any property, goods, or services by or on behalf of Defendants" from whom Defendants did not obtain permission to send faxes. Sec. Am. Compl. ["SAC," Docket No. 90] at ¶ 21.

Defendants have provided a declaration explaining some aspects of the corporate structure and organization of McKesson Corporation. *See* Shuford Decl. [Docket No. 192]. McKesson Corporation has over 600 subsidiaries or affiliated companies that are separate legal entities. McKesson Corporation and its subsidiaries employ 70,400 full-time employees as of March 31, 2015. *Id.* at ¶ 4. More than 400 of McKesson Corporation's subsidiaries or affiliated companies are non-United States legal entities acquired through McKesson Corporation's acquisition of Celesio AG. *Id.* at ¶ 2.

Many of the approximately 200 subsidiaries or affiliated companies in the United States have multiple business units. *Id.* at ¶ 3. These business units are "constantly changing." For

example, Plaintiffs' original discovery request sought documents from "the marketing department of . . . McKesson Provider Technologies," which no longer exists as a business unit.[1] The different business units have different leadership personnel, and generally operate independently from one another. *Id.* The subsidiaries and business units affiliated with McKesson Corporation offer different services and products. *Id.* at ¶ 5. Those that sell software offer different types of software (e.g., software for supply chain management, document management, medical imaging, and surgery services) to different types of customers (pharmacies, physicians, government entities, hospitals). *Id.*

MTI is a subsidiary of McKesson Corporation. Over the past few years, MTI has had between approximately 10,000 and 13,400 employees. *Id.* at ¶ 6. MTI has several main business units, which oversee a variety of businesses, including nurse call centers and solutions for radiology and cardiology departments. The Business Performance Solutions unit ("BPS") is one of the main business units in MTI. These main business units, including BPS, can encompass a number of separately incorporated entities. In addition to the main business units, there are at least 27 smaller business units. PPS is a sub-unit that falls under the BPS business unit.[2] Since 2009, the business units within MTI have frequently reorganized, and the business units' alignment with legal entities has changed. *Id.* at ¶ 6.

According to McKesson's Assistant Secretary and Manager of the Subsidiary Group Anne Schuford, there is no central database that McKesson Corporation can search to determine whether the 200 American subsidiaries or affiliated companies have sent marketing faxes, or to collect all marketing faxes sent by any McKesson-related entity. *Id.* at ¶ 7. There is also no central database that MTI can search to determine whether any of the business units that roll up into it have sent marketing faxes. *Id.*

---

[1] It remains unclear from the parties' submissions what subsidiary or affiliated entity McKesson Provider Technologies belonged to, or why Plaintiffs seek documents from this particular business unit. McKesson Provider Technologies does not appear in the Second Amended Complaint.

[2] Unlike BPS, PPS does not encompass separately incorporated entities, nor is PPS itself a separate corporate entity.

4

### III. LEGAL STANDARDS

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "[T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).

A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

"District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (citations omitted).

### IV. DISCUSSION

In the Second Amended Complaint, Plaintiffs' claims target faxes sent "by or on behalf of" McKesson Corporation or MTI. SAC at ¶ 21. In the joint letter, Plaintiffs argues that Defendants should be ordered to produce documents from *all* McKesson subsidiaries. Letter at 2. Plaintiffs quickly abandoned that position at the hearing. Instead, Plaintiffs assert that Defendants should

search for responsive documents in all "business units" of MTI.[3]

The court finds that that requiring Defendants to search each of the business units of MTI would be burdensome. As described above, MTI is a large entity with many independently operating subdivisions, including some that are separate legal entities. Defendants' counsel explained at the hearing that a search for faxes sent by all of MTI's business units would require counsel to first determine what business units existed from 2010 to the present, whether each of those business units had a marketing department, who from the business unit or marketing department of the business unit would have knowledge of faxes sent by that business unit, what those individuals knew, and what documents existed in the files of those individuals.

Against this burden, and as became clear at the hearing, Plaintiffs have devoted little effort to date to obtaining discovery that could aid in defining the scope of the class. Plaintiffs have propounded some written discovery, but have yet to take a Rule 30(b)(6) deposition on the topic of the organizational structure of McKesson Corporation and its related entities. As a result, Plaintiffs have not sufficiently demonstrated that they are entitled to production of documents from the business units of MTI other than PPS. As acknowledged by Plaintiffs, all of the faxes described in the Second Amended Complaint were generated by PPS. Defendants have now produced all responsive faxes from PPS for the relevant time frame. Plaintiffs could not identify any evidence connecting any other business unit within MTI besides PPS to the fax transmissions that form the basis of their Second Amended Complaint.

Accordingly, on the current record, the court finds that the burden on Defendants of locating and producing faxes from other MTI business units outweighs the likely benefit of the proposed discovery, and **denies** Plaintiffs' motion to compel.

### V.     MOTION TO SEAL

Defendants move to file under seal an exhibit to the Declaration of Anne Schuford.

---

[3] In the joint letter, Plaintiffs proposed a further limitation to business units "that sell computer software (as opposed to Band-Aids, for example)." Letter at 2. Defendants respond that limiting their search to "software" products is arbitrary, as there is no principled reason for differentiating between business units that sell software products and those that do not. Letter at 6.

[Docket No. 191.]

Civil Local Rule 79-5(b) states that "no document may be filed under seal (i.e., closed to inspection by the public) except pursuant to a court order that authorizes the sealing of the particular document, or portions thereof. A sealing order may issue only upon a request that establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law (hereinafter referred to as 'sealable')." "The request must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)." *Id.* Furthermore, "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Civ. L.R. 79-5(d)(1)(A).

Defendants have filed a declaration establishing that the document it seeks to seal contains "confidential and proprietary information about Defendants' internal business operations and corporate structure" and as such should be protected from public disclosure. *See* Docket No. 191 at 1-2. The document has been designated as "Confidential" pursuant to the parties' protective order. Finally, Defendants note that they have conferred with counsel for Plaintiffs concerning Defendants' request to seal the document, and Plaintiffs' counsel stated that they had no objection to Defendants filing this document under seal."

Accordingly, the motion to seal is **granted.**

### VI.   CONCLUSION

For the reasons stated above, Plaintiffs' motion to compel is **denied**.

**IT IS SO ORDERED.**

Dated: May 27, 2015

_____
Donna M. Ryu
United States Magistrate Judge