ROBERT C. SCHUBERT S.B.N. 62684
WILLEM F. JONCKHEER S.B.N. 178748
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, California  94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@schubertlawfirm.com
wjonckheer@schubertlawfirm.com

*Local Counsel for Plaintiff*

BRIAN J. WANCA
ANDERSON & WANCA
3701 Algonquin Road, Ste 500
Rolling Meadows, IL 60008
Telephone: (847)368-1500
Facsimile: (847)368-1501
bwanca@andersonwanca.com

*Counsel for Plaintiff*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

<table>
<tr><td>

TRUE HEALTH CHIROPRACTIC, INC., and MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC., individually and as the representatives of a class of similarly-situated persons,

           Plaintiffs,

      v.

MCKESSON CORPORATION, MCKESSON TECHNOLOGIES INC., and JOHN DOES 1-10,

           Defendants.

</td><td>

No.      **3:13-cv-02219-HSG**

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

</td></tr>
</table>

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1

## <u>NOTICE OF MOTION</u>

2

### **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

3

On September 10, 2015, at 2:00 p.m., Plaintiffs will present this Motion for Class

4

Certification before the Honorable Haywood S. Gilliam in Room 15 – 18th Floor.

5

Plaintiffs seek entry of an order appointing Plaintiffs as class representatives, appointing

6

Plaintiffs' counsel as class counsel, and certifying the following class pursuant to Fed. R. Civ. P.

7

23(b)(2) and (b)(3):

8

> All persons or entities who received faxes from "McKesson" from September 2,
> 2009, to May 11, 2010, offering "Medisoft," "Lytec," or "Revenue Management
> Advanced" software or "BillFlash Patient Statement Service," where the faxes do
> not inform the recipient of the right to "opt out" of future faxes.

9

10

This motion is based on the attached Memorandum of Points and Authorities, the

11

12

Declaration of Glenn L. Hara filed herewith, and any arguments and evidence to be presented at a

13

hearing on this motion.

14

DATED:  July 16, 2015                         TRUE HEALTH CHIROPRACTIC, INC. and

15                                                                    MCLAUGHLIN CHIROPRACTIC
                                                                       ASSOCIATES, INC.,
16

17                                                                    By: s/ Glenn L. Hara

18                                                                    BRIAN J. WANCA *(pro hac admitted)*
                                                                       RYAN M. KELLY *(pro hac admitted)*
19                                                                    GLENN L. HARA *(pro hac admitted)*
                                                                       ROSS M. GOOD *(pro hac admitted)*
20                                                                    ANDERSON + WANCA
                                                                       3701 Algonquin Road, Suite 760
21                                                                    Rolling Meadows, IL  60008
                                                                       Telephone:  847-368-1500
22                                                                    Fax:  847-368-1501
                                                                       bwanca@andersonwanca.com
23                                                                    rmkelly@andersonwanca.com
                                                                       ghara@andersonwanca.com
24                                                                    rgood@andersonwanca.com
25
                                                                       And:
26

27                                                                    GEORGE D. JONSON *(pro hac admitted)*

28

*(sidebar, left margin)* SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

MATTHEW STUBBS *(pro hac admitted)*
MONTGOMERY, RENNIE & JONSON
36 East Seventh Street
Cincinnati, OH  45202
Telephone:  513-768-5220
Fax:  513-768-9220
gjonson@mrjlaw.com
mstubbs@mrjlaw.com
*Counsel for Plaintiffs*

ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA  94111
Telephone:  415-788-4220
Fax:  415-788-0161
rschubert@schubertlawfirm.com
wjonckheer@schubertlawfirm.com

*Local Counsel for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

BACKGROUND ............................................................................................................................ 2

A. The Allegations of the Second Amended Complaint ............................................ 2

B. Defendants deny the faxes are "advertisements" and assert affirmative defenses of EBR and "prior express invitation or permission." ............................ 3

C. Defendants produce 44 unique fax advertisements sent by McKesson's PPS business unit, none of which contains any opt-out notice........................................ 3

D. Defendants produce transmission records and "recipient" contact information.............................................................................................................. 4

E. Plaintiff's expert analyzes the evidence and concludes the PPS faxes were sent in 62,125 successful transmissions to 11,979 fax numbers......................... 5

F. Plaintiffs depose former MTI employee Kari Holloway, leading to the discovery of fax broadcaster Slingshot Technologies........................................ 6

G. Defendant's expert does not dispute Biggerstaff's findings with respect to the 62,125 PPS transmissions.... ....................................................................... 7

H. Biggerstaff submits a Second Expert Report to rebut Sponsler and note the Slingshot invoices show an additional 8,209 successful transmissions................. 7

I. Plaintiffs discover evidence of fax advertising at other McKesson entities, which discovery is still being pursued...... .................................................. 8

ARGUMENT...................................................................................................................... 9

I. Standards for class certification in a TCPA fax case.. ........................................ 9

II. Plaintiff's class definition is "ascertainable," to the extent there is such a requirement.. .............................................................................................. 10

III. The Rule 23(a) factors are easily satisfied.. ...................................................... 13

A. The class is sufficiently numerous.. ....................................................... 13

B. There are common questions of law or fact.......................................... 13

C. Plaintiffs' claims are typical... ............................................................. 14

D. Plaintiffs and their counsel will fairly and adequately represent the class.......................................................................................................... 14

IV. The proposed class may be maintained under Rule 23(b)(2) or (b)(3)............... 16

A. Certification is appropriate under Rule 23(b)(2)....................................... 16

SCHUBERT JONCKHEER & KOLBE LLP<br>Three Embarcadero Center, Suite 1650<br>San Francisco, CA 94111<br>(415) 788-4220

i

B.      Certification is appropriate under Rule 23(b)(3) because common questions predominate and a class action is the superior method of adjudication... ............................................................................................ 17

CONCLUSION ........................................................................................................... 20

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

### <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

Cases

4

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014) ........................................................................................................... 11

5

*Boyd v. Bank of Am. Corp.*, 2014 WL 2925098 (C.D. Cal. June 27, 2014) ............... 15

6

*Bruno v. Quten Res. Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011) ............................ 13

7

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) ...................................................... 12

8

*Chapman v. Wagener Equities, Inc.*, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014) ..... 19

9

*Critchfield Physical Therapy v. Taranto Grp., Inc.*, 263 P.3d 767 (Kan. 2011) .. 19, 20

10

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................. 14

11

*ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513 (3d Cir. 1998) ................................ 20

12

*Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ........ 14

13

*Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008) ................................. 9

14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................... 14, 15

15

*Hazel's Cup & Saucer, LLC v. Around The Globe Travel, Inc.*, 86 Mass. App. Ct. 164 (2014) ...................................................................................................................... 9

16

*Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) .......... 14, 19

17

*Hughes v. Kore of Ind. Enters., Inc.*, 731 F.3d 672 (7th Cir. 2013) .......................... 20

18

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, --- F.3d ---, 2015 WL 4079438 (6th Cir. July 7, 2015) ...................................................................................................................... 11

19

*Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682 (7th Cir. 2013) ............... 2, 9, 11, 17, 20

20

*Jay Clogg Realty Grp., Inc. v. Burger King Corp.*, 298 F.R.D. 304 (D. Md. 2014) .... 19

21

*Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ........... 10

22

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) ....... 9, 10,11, 16, 17

*Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ........ 17

23

*Mateo v. V.F. Corp.*, 2009 WL 3561539 (N.D. Cal. Oct. 27, 2009) ........................... 13

24

*Meyer v. Portfolio Recovery Assocs., LLC*, 2011 WL 11712610 (S.D. Cal. Sept. 14, 2011) ...................................................................................................................... 13, 16

25

*Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012) ....................................... 19, 20

26

*Mussat v. Global Healthcare Res., LLC*, 2013 WL 1087551 (N.D. Ill. Mar. 13, 2013) ............................................................................................................................ 19

27

*Negrete v. Allianz Life Ins. Co.*, 287 F.R.D. 590 (C.D. Cal. 2012) ............................ 17

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

*NRDC v. EPA*, 749 F.3d 1055 (D.C. Cir. 2014) ................................................ 18

*O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479 (N.D. Cal. 2011) ........................ 13

*Pecover v. Electric Arts Inc.*, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) .............. 13

*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255 (S.D. Fla. Dec. 24, 2014) ................................................ 10, 11, 15, 18, 19

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482 (W.D. Mich. 2014) ................................................ 17

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .................... 10

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) ................................................ 14

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ................................................ 14

*Saf–T–Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312 (N.D. Ill. 2008) ..... 9

*Savanna Group v. Trynex, Inc.*, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013) .................. 20

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) .................... 13

*Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554 (C.D. Cal. 2012) ...... 9, 10, 14, 17

*Von Colln v. County of Ventura*, 189 F.R.D. 583 (C.D. Cal. 1999) ........................ 13

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................................ 2

**Statutes**

15 U.S.C. § 1601 ................................................ 15

47 U.S.C. § 227 (the "TCPA") ................................................ 1

47 U.S.C. § 227(a)(5) ................................................ 1, 2, 13, 14

47 U.S.C. § 227(b)(l)(C) ................................................ 2

47 U.S.C. § 227(b)(2) ................................................ 16

47 U.S.C. § 227(b)(3) ................................................ 16, 18

**Rules and Regulations**

47 C.F.R. § 64.1200 ................................................ 3

47 C.F.R. § 64.1200(f)(1) ................................................ 1, 13

47 C.F.R. § 64.1200(f)(10) ................................................ 1, 13

47 C.F.R. § 64.1200(a)(4)(ii) ................................................ 1, 2, 14

47 C.F.R. § 64.1200(a)(4) (iv) ................................................ 1, 2, 14, 17

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (2003) ................................................ 18

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

iv

Fed. R. Civ. P. 23(a) ................................................................................................. 13, 14

Fed. R. Civ. P. 23(a)(1) .................................................................................................. 13

Fed. R. Civ. P. 23(a)(2) .................................................................................................. 13

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 14

Fed. R. Civ. P. 23(b)(2) ............................................................................................. 16, 17

Fed. R. Civ. P. 23(b)(3) ......................................................................................... 12, 16, 17

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

From September 2, 2009, to May 11, 2010, Defendants successfully sent 70,334 advertisements for their software products to 11,979 unique fax numbers in the United States, including four transmissions to Plaintiffs' fax numbers. Defendants produced electronic transmission logs showing the date and time of each transmission to each target fax number and images of 44 unique advertisements corresponding to each transmission. Defendants produced "a list, including the name and contact information, for the recipients of the faxes produced in this case" corresponding to 10,150 of the 11,979 fax numbers. None of the faxes contains any "opt-out notice" informing the recipient how to avoid receiving future faxes.

Plaintiffs seek to certify the following class:

> All persons or entities who received faxes from "McKesson" from September 2, 2009, to May 11, 2010, offering "Medisoft," "Lytec," or "Revenue Management Advanced" software or "BillFlash Patient Statement Service," where the faxes do not inform the recipient of the right to "opt out" of future faxes.

There are four classwide questions to be decided on the merits:

(1) whether the faxes are "advertisements" as defined by the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(a)(5), and the implementing regulations issued by the Federal Communications Commission ("FCC"), 47 C.F.R. § 64.1200(f)(1);

(2) whether Defendants are "senders," defined by FCC regulations as any "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," 47 C.F.R. § 64.1200(f)(10);

(3) whether the faxes contain the "opt-out notice" required by the TCPA and FCC regulations for a defendant to maintain either of the two affirmative defenses to a TCPA fax claim: "established business relationship" ("EBR") or "prior express invitation or permission," 47 C.F.R. § 64.1200(a)(4)(ii)–(iv); and

(4) whether Defendants "willfully or knowingly" violated the TCPA, allowing the Court to increase the statutory damages from the automatic $500 per violation to $1,500 per violation and the scope of injunctive relief.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1

The Court need not, and in fact should not, decide these questions now. It need only determine whether the "*answers*" to these questions are "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As argued below, these questions can *only* be answered classwide, and doing so will resolve the entire case. That is why "[c]lass certification is normal" under the TCPA: "because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013).

## BACKGROUND FACTS

### A.    The Allegations of the Second Amended Complaint.

On July 18, 2014, Plaintiffs' filed their Second Amended Class Action Complaint ("SAC"), alleging Defendants violated the TCPA, 47 U.S.C. § 227(b)(l)(C), by sending "unsolicited advertisements" by fax. (Doc. 90 ¶ 1). The TCPA defines an "unsolicited" advertisement as any advertisement "transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

The SAC attaches four faxes received by Plaintiffs from "McKesson" advertising the "Medisoft" computer-software product, with three of the faxes offering a "cash rebate" on purchases (SAC, Exs. A, B-1, B-3) and one offering a "40% discount" on purchases (*id.*, Ex. B-2). None of the faxes contains any instructions for how to "opt out" of receiving future faxes. (*Id.*) The SAC alleges Defendants created the faxes, that the faxes were part of Defendants' efforts to "market [their] goods or services," and that Plaintiffs "had not invited or given permission to Defendants to send the faxes." (*Id.* ¶¶ 14–16). By sending "unsolicited advertisements" by fax, the SAC alleges, Defendants violated the TCPA, giving rise to cause of action for $500 minimum statutory damages per violation and injunctive relief. (*Id.* ¶¶ 12, 13).

The SAC also alleges that, even if a sender claims one of the two defenses to a TCPA fax claim—that the faxes were sent pursuant to an EBR or with the recipient's "prior express invitation or permission"—FCC regulations require that the faxes include specific "opt-out notice" informing the recipient of the right to opt out of future faxes and providing instructions for doing so under 47 C.F.R. § 64.1200(a)(4)(ii)–(iv). (SAC ¶ 33). Defendants' faxes fail these requirements, the SAC

alleges, because they contain no opt-out instructions at all. (*Id.* ¶ 34). Thus, the SAC alleges, Defendants cannot establish EBR or "prior express invitation or permission." (*Id.*) Plaintiffs alleged Defendants sent fax advertisements during the class period to "more than 40 other recipients without first receiving the recipients' express permission or invitation" and that class certification is appropriate. (*Id.* ¶¶ 17, 22).

Finally, the SAC alleges that, on May 9, 2008, the FCC served McKesson Corp. with a Citation, attached to the SAC as Exhibit C, warning McKesson that it "apparently sent one or more unsolicited advertisements to telephone facsimile machines in violation of" the TCPA. (SAC, Ex. C). The Citation attached a copy of the TCPA and the FCC's implementing regulations, 47 C.F.R. § 64.1200, and advised McKesson Corp. that "in the event of a complaint or dispute, the burden rests with the fax sender" to demonstrate compliance. (*Id.*)

**B.      Defendants deny the faxes are "advertisements" and assert affirmative defenses of EBR and "prior express invitation or permission."**

On August 22, 2014, Defendants filed separate answers denying the faxes attached to the SAC are "advertisements" under the TCPA. (Docs. 103 & 104, ¶ 34). Each Defendant stated it "alleges as an affirmative defense that Plaintiffs cannot recover damages under the TCPA because they gave their express prior consent." (*Id.*, Second Aff. Defense). Each Defendant stated it "alleges as an affirmative defense that Plaintiffs cannot recover damages under the TCPA because Plaintiffs have an established business relationship" with Defendants. (*Id.*, Fourth Aff. Defense).

**C.      Defendants produce 44 unique fax advertisements sent by McKesson's PPS business unit, none of which contains any opt-out notice.**

After a year-long series of discovery disputes that led to Magistrate Judge Ryu's order sanctioning Defendants (*see* Order, Doc. 178), on April 2, 2015, Defendants produced 44 fax images, including the four attached to the SAC, bates-labeled RS-TRUEHEALTH000352–98. (Hara Decl., Ex. A ). Defendants filed declarations from outside and in-house counsel, explaining that these faxes "were created by or at the direction of one or more former employees of Physician Practice Solutions ('PPS'), a business unit under McKesson Technologies Inc." and that they were

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

3

"transmitted to one or more fax numbers via server, computer, or other automated function" during the class period. (Doc. 179 ¶ 4).

The vast majority of the faxes promote "Medisoft" or "Lytec" software products, offering a "discount" on software purchases of 40%, 25%, 20%, 15%, or 10% (Hara Decl., Ex. A, RS-TRUEHEALTH000352, 353, 355, 357, 360, 361, 368, 370, 372, 373, 377, 381, 382, 383, 384, 386, 387, 389, 390, 391, 392, 393, 396, 398), a year of "free e-prescribing" with purchase (RS-TRUEHEALTH000374, 375, 376), "cash rebates" on purchases (RS-TRUEHEALTH000358, 359, 362, 363, 364, 365), "free EMR software plus free data conversion of your existing Medinotes system" with purchase (RS-TRUEHEALTH000388), or "discounted implementation services" with purchase (RS-TRUEHEALTH000394, 395, 397). Two faxes advertise McKesson's "BillFlash Patient Statement Service," offering to "waive the $30/month service fee for 12 months—a $360 value!" (RS-TRUEHEALTH000366, 367). Two faxes promote McKesson's "Revenue Management Advanced solution," stating "[t]his product is available with the latest release of Medisoft and Lytec." (RS-TRUEHEALTH000379, 380). One fax announces "the release of Medisoft Revenue Management Direct," offering the product "free for the first year," a "$900 value allows you to test drive all the features with this new technology." (RS-TRUEHEALTH000385).

Like the four faxes attached to the SAC, none of the newly produced faxes contains any opt-out notice informing recipients how to stop future faxes. (*Id.*, RS-TRUEHEALTH000352–98).

**D.     Defendants produce transmission records and "recipient" contact information.**

Following Magistrate Judge Ryu's sanctions order, Defendants produced transmission records for 44 fax broadcasts corresponding to the fax advertisements. The transmission records show one transmission to "True Health Chiropractic" at fax number 614-794-1625 on April 20, 2010, consistent with the header information on Exhibit A to the SAC. (Hara Decl. ¶ 3). The transmission records show three transmissions to "McLaughlin Chiropractic Center" at fax number 865-687-0279 on February 3, 2010, February 22, 2010, and May 11, 2010, consistent with the header information on Exhibits B-1, B-2, and B-3 to the SAC. (Hara Decl. ¶ 4).

4

Also pursuant to Magistrate Judge Ryu's order, on April 8, 2015, Defendants produced an interrogatory response that "(1) identifies each type of act that Defendants believe demonstrates a recipient's express permission to receive faxes (e.g. completing a software registration), (2) explains how that act qualifies as express permission, and (3) identifies each recipient allegedly giving that type of permission by name and contact information (including, at a minimum, fax and phone number)." (Order, Doc. 178, at 12). Defendants refer to three Excel spreadsheets containing thousands of names, addresses, telephone numbers, and fax numbers attached to their interrogatory response. (Hara Decl. ¶ 5 ).

First, Defendants state, "[a]ttached as Exhibit A is a list, including the name and contact information, of such customers that received copies of the faxes that have been produced in this matter" whom Defendants claim gave express permission by providing their fax numbers on software-registration forms. (*Id.*) Second, Defendants state, "[a]ttached as Exhibit B is a list, including the name and contact information, for the recipients of the faxes produced in this case" whom Defendants claim are listed as having given express permission in their internal "SalesForce" database. (*Id.*) Third, Defendants state, "[a]ttached as Exhibit C is a list, including the name and contact information, for the recipients of the faxes produced in this case for which the internal database includes a comment indicating that the customer requested to receive faxes or otherwise consented to receiving faxes." (*Id.*)

**E.      Plaintiff's expert analyzes the evidence and concludes the PPS faxes were sent in 62,125 successful transmissions to 11,979 fax numbers.**

On April 22, 2015, Plaintiff's expert, Robert Biggerstaff, submitted his expert report. (Hara Decl., Ex. B , Expert Report of Robert Biggerstaff). Biggerstaff analyzed the fax images and transmission records and concluded that "these records documented 44 separate fax broadcast jobs," that the records "are consistent with data I regularly review that are recorded automatically by a computer-based fax broadcasting platform," and that such records are "highly reliable and accurate, particularly when reporting the metadata regarding individual fax transmissions." (*Id.* ¶ 16). Biggerstaff concluded the evidence reveals "83,038 fax transmission records, of which

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

62,125 were confirmed received" and that "[t]hose 62,125 received faxes were sent to 11,979 unique normalized numbers." (*Id.* ¶ 19).

Biggerstaff found that ten of the Excel files with transmission records "did not contain complete metadata about the fax transmissions contained therein." (*Id.* at 7, n.1). Biggerstaff stated that "[f]or purposes of this analysis, I have treated these records as records of fax transmissions that were **not** received," but that "other data or testimony may establish that some other treatment is appropriate." (*Id.*)

Biggerstaff also analyzed Defendants' spreadsheets identifying the "recipients of the faxes produced in this case" from whom Defendants claim to have obtained express permission to send fax advertisements. (*Id.* ¶¶ 20–26). Biggerstaff found that, of the 11,979 fax numbers that received Defendants' faxes, 10,150 of those numbers were listed on one or more of the "recipient" lists, with an associated name and contact information. (*Id.* ¶ 24).

Biggerstaff found that Interrogatory Exhibit A—the list of "recipients" from whom Defendants claim they obtained express permission in a software-registration form—contains "7,670 unique fax numbers with confirmed received fax transmissions" that "were found **only** in" Exhibit A and "do not appear in Interrogatory Exhibits B or C." (*Id.* ¶ 26). Biggerstaff found "[t]hose 7,670 unique fax numbers received a confirmed 39,495 total fax transmissions." (*Id.*)

Biggerstaff found "1,829 unique fax numbers with confirmed received fax transmissions documented in the 44 fax logs, that were **not** found in **any** of the three above spreadsheets" and that "[t]hose 1,829 fax numbers received a confirmed 9,313 total fax transmissions." (*Id.* ¶ 25).

### F.    Plaintiffs depose former MTI employee Kari Holloway, leading to the discovery of fax broadcaster Slingshot Technologies.

On April 29, 2015, Plaintiffs deposed Kari Holloway, whom Defendants first identified as a person with knowledge of the underlying facts in MTI's initial Rule 26(a) disclosures on February 28, 2015. (Hara Decl. ¶ 7). Ms. Holloway testified she was employed at PPS in 2009–2010 and she created the fax advertisements at issue. (Hara Decl., Ex. D, Holloway Dep. at 19–21).

Holloway testified she used a "fax broadcasting company" called "Slingshot" to transmit the faxes. (*Id.* at 13–14, 25–27). Plaintiffs' counsel were familiar with "Slingshot Technologies"

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   from previous cases and immediately subpoenaed the company.[1] Slingshot subsequently produced

2   documents relating to Defendants' fax broadcasting, including invoices relating to the fax

3   broadcasts for which Defendants had failed to produce transmission data, and which Biggerstaff

4   treated as having "0" successful transmissions in his first expert report.

**G.   Defendant's expert does not dispute Biggerstaff's findings with respect to the 62,125 PPS transmissions.**

7        On June 18, 2015, Defendants served their Rebuttal Expert Report of Ken Sponsler. (Hara

8   Decl. ¶ 9 ). Sponsler explains he was retained "to assess the expert report and opinions" of

9   Biggerstaff. (*Id.*) Sponsler acknowledges "there is a list of 11,979 unique fax numbers that appears

10  to convey information regarding the number [*sic*] to which faxes were sent." (*Id.*) Sponsler does

11  not dispute Biggerstaff's conclusion that the 44 fax images produced in discovery were

12  successfully transmitted to those 11,979 fax numbers over 62,125 transmissions. (*Id.*)

13       Sponsler's only claim is that there is no way to "identify[] class members" in this case

14  because "there is no available data source to identify the historical subscribers associated with

15  facsimile numbers." (*Id.*) Sponsler does not explain why he believes the class is composed solely

16  of "historical subscribers." (*Id.*) Sponsler states he reviewed Defendants' interrogatory response

17  and attached spreadsheets from April 2, 2015, which identify the "recipients of the faxes produced

18  in this case" by name and other contact information. (*Id.*) Sponsler does not challenge his clients'

19  representations that these are, in fact, the "recipients" of the faxes. (*Id.*)

**H.   Biggerstaff submits a Second Expert Report to rebut Sponsler and note the Slingshot invoices show an additional 8,209 successful transmissions.**

22       On July 16, 2015, Biggerstaff served his Second Expert Report. (Hara Decl., Ex. L, Second

23  Expert Report of Robert Biggerstaff). Biggerstaff states Sponsler is mistaken that there is no way

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

---

[1] Plaintiffs are currently seeking sanctions before Magistrate Judge Ryu for Defendants' failure to disclose Ms. Holloway until February 28, 2015, and for failing to disclose the involvement of Slingshot Technologies (or any fax broadcaster) and, in fact, denying they used any third parties to send their faxes. (*See* Pls.' Motion for Sanctions, Doc. 207).

1   to identify historical subscriber information and that "breaking the task into manageable pieces

2   demonstrates the task is both quantitatively and qualitatively manageable." (*Id.* ¶ 19).

3        Biggerstaff's Second Report also states the Slingshot invoices produced after his initial

4   report show 8,209 successful transmissions in the broadcasts which Biggerstaff previously treated

5   as having "0" successful transmissions in Exhibit 1 to his first Report due to the lack of

6   transmission data. (*Id.* ¶ 18). Biggerstaff found "these invoices provide previously missing data

7   regarding the number of faxes received, for nine (9) jobs listed in that exhibit" and that "[a] revised

8   version of that Exhibit is attached hereto, which sets out a total of 70,334 faxes received." (*Id.*)

9   **I.   Plaintiffs discover evidence of fax advertising at other McKesson entities,**

10       **which discovery is still being pursued.**

11       Given Defendants' failure to disclose the existence of Slingshot Technologies, Plaintiffs

12   suspected other known "fax broadcasters" would likely have evidence of additional undisclosed

13   fax broadcasting by McKesson entities and issued subpoenas to several of those broadcasters. At

14   least two broadcasters responded that they have responsive information.

15       First, ProFax, Inc. produced invoices and fax logs relating to a McKesson entity called

16   "McKesson Pharmacy Systems" showing faxing activity from August 3, 2009, to December 28,

17   2010. (Hara Decl. ¶ 10). ProFax records state the account is for "Per Se Technologies," but it is

18   billed to McKesson Pharmacy Systems. (*Id.*) One of Defendants' witnesses, Holly Wilson, testified

19   on April 10, 2015, that "Per-Se Technologies was a company that McKesson purchased" in 2007

20   and that "Medisoft and Lytec"—the products advertised in the vast majority of the PPS faxes—

21   "were owned by Per-Se Technologies." (*Id.* ¶ 11).

22       Second, WestFax, Inc. indicated it possesses relevant documents with respect to faxes sent

23   by another McKesson entity, but it has refused to produce those documents or disclose the name of

24   the entity without a court order. The discovery dispute is currently pending before Magistrate

25   Judge Ryu. (*See* Joint Letter, July 2, 2015, Doc. 204).

26       Plaintiffs are moving for class certification now as to the 70,334 faxes successfully sent by

27   PPS through Slingshot Technologies, in accordance with the Court's case management schedule,

28   which has already been delayed several times due to Defendants' failure to timely produce

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

8

discovery. Plaintiffs state, however, that they may seek to amend the class definition, or perhaps

create subclasses, to include additional faxing activity among Defendants' various business units

based on evidence uncovered in the future.

## ARGUMENT

### I.       Standards for class certification in a TCPA fax case.

"Class certification is normal" under the TCPA "because the main questions, such as

whether a given fax is an advertisement, are common to all recipients." *Ira Holtzman, C.P.A. v.*

*Turza*, 728 F.3d 682, 683 (7th Cir. 2013). These cases typically involve thousands of identical

violations, with statutory damages too small to incentivize individual suits, and present "an

archetypical example of a case in which the class action mechanism is superior to that of individual

litigation of each claim." *Hazel's Cup & Saucer, LLC v. Around The Globe Travel, Inc.*, 86 Mass.

App. Ct. 164, 166 (2014). There are hundreds of cases certifying TCPA fax classes. District courts

in the Ninth Circuit have certified TCPA fax classes in, for example, *Vandervort v. Balboa Capital*

*Corp.*, 287 F.R.D. 554, 561 (C.D. Cal. 2012), and *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642,

651 (W.D. Wash. 2007).

There are two circumstances where courts have occasionally denied class certification in

TCPA fax cases: (1) where there is no list of target fax numbers or transmission records, *see, e.g.*,

*Saf–T–Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 314 (N.D. Ill. 2008), or (2)

where the faxes were sent before the opt-out-notice requirements came into effect August 1, 2006,

and the defendant establishes that individual inquiries will be necessary into the EBR or prior

express permission defenses with respect to a significant portion of the class, *see, e.g.*, *Gene &*

*Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008). Neither scenario is present here.

Plaintiffs have the fax numbers and transmission records showing each individual transmission,

and Defendants have identified the "recipients" of their faxes corresponding to 10,150 of the

11,979 target fax numbers. Plus, all of Defendants' faxes were sent after August 1, 2006, without

any opt-out notice, meaning "it does not matter which recipients consented or had an established

business relation with [Defendants]." *Turza*, 728 F.3d at 684 (affirming certification and summary

judgment for opt-out-notice class); *see also Vandervort*, 287 F.R.D. at 561 (certifying opt-out-

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

notice class); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255, at *5 (S.D. Fla. Dec. 24, 2014) ("Courts routinely certify TCPA class actions precisely because the requirement of an opt-out notice obviates the need to consider consent or established business relationships.").

## II.     Plaintiff's class definition is "ascertainable," to the extent there is such a requirement.

It is unclear whether there is a separate "ascertainability" requirement in the Ninth Circuit,[2] but assuming it applies, it is easily met here. "Ascertainability" does not require "that the identity of the class members . . . be known at the time of certification." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012). All that is required to demonstrate ascertainability is that the class definition contains "a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *Vandervort*, 287 F.R.D. at 558.

In *Vandervort*, for example, the district court analyzed this issue in detail and held a class of persons "sent" fax advertisements lacking compliant opt-out notice under the TCPA was ascertainable. *Id.* The court held the class definition contained an objective, "common set of characteristics" that would allow a class member to "identify himself or herself" based on "(1) whether a fax was sent, and (2) whether it contained an opt-out identical to or substantially similar to Exhibit 1 to the Complaint," especially given that the defendant's records contained contact information corresponding to the target fax numbers. *Id.*

In *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 651 (W.D. Wash. 2007), the court held a class of persons who "received" fax advertisements was ascertainable because "likely recipients" could be determined from the industry publication where the defendant obtained the target fax numbers and the plaintiff's expert testified "he will be able to determine whether a facsimile

---

[2] The Ninth Circuit is poised to decide this issue in *Jones v. ConAgra*, No. 14-16327 (9th Cir.), a consumer-products case where the only means of identification was for claimants to swear they purchased a particular product (*e.g.*, tomato paste) years earlier. *See Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *8 (N.D. Cal. June 13, 2014). These product-labeling cases are easily distinguishable because Plaintiffs possess objective evidence of class membership in the form of fax-transmission records and lists of "recipient" contact information Defendants produced pursuant to Court order.

transmission was made and completed based on defendant's telephone records." *Id.* The court held

that, "although it will have to be determined whether class members received the relevant

facsimile" during claims administration, those "individual issues do not defeat certification," given

the "numerous common issues," such as whether the faxes were advertisements. *Id.* at 652.

The Sixth Circuit addressed "ascertainability" in the TCPA fax context in *Am. Copper &*
*Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014), holding that "fax

numbers are objective data satisfying the ascertainability requirement" as a matter of law and

affirming certification of a class "sent" faxes based on the list of target fax numbers. Just days ago,

the Sixth Circuit elaborated on the question of "who has a cause of action to sue under" the TCPA

fax-advertising provisions, concluding any "recipient" has standing. *Imhoff Inv., L.L.C. v.*
*Alfoccino, Inc.*, --- F.3d ---, 2015 WL 4079438, at *3 (6th Cir. July 7, 2015). The Sixth Circuit held

"recipient" includes the owner of the fax machine, who pays "the cost of the paper and ink" in

printing the advertisement. *Id.* at *4 (quoting *Am. Copper*, 757 F.3d at 544). But it held "all

recipients," and not only the owner of the fax machine or the subscriber of the fax number, have

standing "because such advertisements waste the recipients' time and impede the free flow of

commerce." *Id.* (citing *Turza*, 728 F.3d at 684 ("Even a recipient who gets the fax on a computer

and deletes it without printing suffers *some* loss: the value of the time necessary to realize that the

inbox has been cluttered by junk."). The Sixth Circuit concluded the TCPA "gives recipients of

unsolicited fax advertising the legal right to recover damages and obtain injunctive relief from the

senders of those faxes." *Id.* at *5.

In this case, Plaintiffs seek to certify a class of persons or entities who "received"

Defendants' fax advertisements. Plaintiffs have the target fax numbers and the transmission logs

showing the date and time of each transmission and whether each transmission was successful.

Plaintiffs have "the name and contact information, for the recipients of the faxes produced in this

case" produced from Defendants' records for the vast majority of the class. The class is as

"ascertainable" as it gets. *See Doctor Diabetic*, 2014 WL 7366255, at *4 (holding class of persons

who "received" faxes was ascertainable based on list of fax numbers and transmission records).

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

11

Defendants' expert states there is no way to "identify[] class members" in this case because "there is no available data source to identify the historical subscribers associated with facsimile numbers." (Hara Decl. ¶ 9). First, this assumes Plaintiffs have the burden of "identifying" class members in a vacuum. That is incorrect. Plaintiffs will give class members the "best notice practicable" under Rule 23(b)(3), and class members will identify *themselves* by filing claims to their share of any recovery. When they claim, they can be asked to verify their names from the "recipient" information produced by Defendants, or to provide other documentary and/or declaratory evidence. "There will always be some level of inquiry required to verify that a person is a member of a class," and "[s]uch a process of identification does not require a 'mini-trial,' nor does it amount to 'individualized fact-finding,'" and "indeed must be done in most successful class actions." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 170–71 (3d Cir. 2015).

Second, Defendants' expert assumes that only "subscribers" of the target fax numbers are class members. Not so. The proposed class consists of all "recipients," and Defendants have already identified the "recipients of the faxes produced in this case" with respect to 10,150 of the 11,979 unique fax numbers that received one or more of the 44 fax images. (Hara Decl. ¶ 5). Many of those recipients are, no doubt, also the subscribers of the fax numbers at issue, but that need not be the determining criteria for class membership.

Third, even if Plaintiffs were required to identify the subscriber of each fax number, they can do so. As Biggerstaff explains in his Second Expert Report, the larger telephone carriers, which hold over 90% of phone numbers, "have dedicated teams with automated systems that will produce the desired information automatically and efficiently." (Hara Decl., Ex. L, Second Expert Report of Robert Biggerstaff ¶¶ 15–16). Biggerstaff explains Defendants' expert "appears to have intentionally designed his work *against* finding matches for subscriber data" by using unrealistic search terms and using sources that cannot be expected to produce "reasonable results with real world data," and instead "make matching appear less useful than it actually is." (*Id.* ¶ 17). Biggerstaff, unlike Sponsler, knows from experience that "breaking the task into manageable pieces demonstrates the task is both quantitatively and qualitatively manageable." (*Id.* ¶ 19).

In sum, the proposed class easily satisfies any reasonable "ascertainability" requirement, and is in fact more ascertainable than in most certified class actions.

## III.   The Rule 23(a) factors are easily satisfied.

### A.   The class is sufficiently numerous.

Rule 23(a)(1)'s numerosity requirement imposes a "low hurdle easily surmounted." *Pecover v. Electric Arts Inc.*, 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010). The courts use "general knowledge and common sense" in determining whether numerosity is satisfied. *Bruno v. Quten Res. Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011). A class of at least forty members presumptively satisfies numerosity. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012). Here, there are thousands of class members, and joinder of all class members would not only be "impracticable," but impossible.

### B.   There are common questions of law or fact.

Rule 23(a)(2) requires "questions of law or fact common to the class." The showing required is "minimal." *Meyer v. Portfolio Recovery Assocs., LLC*, 2011 WL 11712610, at *3 (S.D. Cal. Sept. 14, 2011). This requirement is "construed liberally," and it is met when "even a single common question of law or fact" is present. *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 489 (N.D. Cal. 2011). The presence of some factual variations among class members' experiences will not defeat commonality. *Mateo v. V.F. Corp.*, 2009 WL 3561539, at *4 (N.D. Cal. Oct. 27, 2009); *Von Colln v. County of Ventura*, 189 F.R.D. 583, 591 (C.D. Cal. 1999).

This case arises out of a common nucleus of fact because Defendants sent the same faxes advertising their products to all class members. The common legal issues to be determined on a classwide basis are:

(1) whether the faxes are "advertisements" as defined by 47 U.S.C. § 227(a)(5), and 47 C.F.R. § 64.1200(f)(1);

(2) whether Defendants are "senders," defined as any "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," 47 C.F.R. § 64.1200(f)(10);

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

13

(3) whether the faxes contain the "opt-out notice" required to assert EBR or "prior express invitation or permission" under 47 C.F.R. § 64.1200(a)(4)(ii)–(iv); and

(4) whether Defendants "willfully or knowingly" violated the TCPA and FCC regulations, giving the Court discretion to increase the minimum statutory damages of $500 per violation to $1,500 per violation, and the scope of injunctive relief.

The commonality requirement is easily satisfied in this case.

## C.   Plaintiffs' claims are typical.

Typicality measures whether there is a sufficient nexus between the claims of unnamed representatives and those of the class at large. *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). A plaintiff need only possess the same interest and have suffered the same injury as the other class members. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Under these "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members." *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, at *6 (E.D. Cal. Nov. 27, 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Claims need not be identical to be typical. *Id.* Typicality can be satisfied even if factual differences exist between the plaintiff and the other class members. *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 WL 4906433, at *7 (C.D. Cal. Nov. 13, 2008) (holding, "the typicality requirement is not particularly strict").

Here, Plaintiffs and the proposed class have the same legal claims based on the same statutes and are entitled to the same damages and injunctive relief. Plaintiffs' claims are typical of the class. Courts routinely find the typicality element satisfied in mass junk-faxing cases. *See, e.g.*, *Vandervort*, 287 F.R.D. at 561; *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008).

## D.   Plaintiffs and their counsel will fairly and adequately represent the class.

Rule 23(a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis involves two inquiries: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the

14

action effectively on behalf of the class. *Boyd v. Bank of Am. Corp.*, 2014 WL 2925098, at *6

(C.D. Cal. June 27, 2014) (citing *Hanlon*, 150 F.3d at 1020).

Because Plaintiffs' claims are typical of the class, it is not surprising there are no

conflicting interests between Plaintiffs and other class members, let alone any disqualifying ones.

Both Plaintiffs understand the responsibilities of a class representative and are prepared to

discharge those responsibilities in the interest of the proposed classes.

Defendants have deposed both proposed class representatives. McLaughlin's

representative, Wesley McLaughlin, D.C., testified he understands this "is a class action," which

involves "a group of people that have a similar lawsuit that they're filing against a company for

similar damages." (Hara Decl., Ex. G, McLaughlin Dep. at 230). He understands he is "a proposed

class representative" and that seeks to represent "the group of individuals who received these

faxes" (*id.*), and is prepared to do "whatever's necessary in order to prosecute this case" (*id.* at

259). McLaughlin authorized the SAC before it was filed (*id.* at 255), although he conceded that

"part of why I hired an attorney" was "assist[ing] me in deciding who to – who to sue, because

they're my legal counsel" (*id.* at 171). McLaughlin knows the TCPA allows for "at least 500 for

the statutory limit and then 1,500, the treble damages for knowingly violating it." (*Id.* at 229). True

Health's principal, Jeffrey Shope, D.C., similarly testified he authorized this suit, and his testimony

revealed no conflicts. (Hara Decl., Ex. H, Shope Dep. at 65–66).

Proposed class counsel are highly qualified. Proposed lead counsel A+W consists of seven

highly experienced TCPA litigators. (*See* Hara Decl., Ex. I, Firm Resume of Anderson + Wanca).

A+W have obtained certification of litigation classes and been appointed class counsel in dozens of

TCPA fax class actions. *See, e.g.*, *Doctor Diabetic*, 2014 WL 7366255, at *6 ("Anderson & Wanca

is one of very few firms that specialize in TCPA class actions and so is knowledgeable of the

applicable law and experienced in litigating TCPA classes."). Montgomery, Rennie & Jonson's

attorneys, including George Jonson and Matthew Stubbs, have successfully prosecuted and

defended class actions involving the Consumer Credit Protection Act, 15 U.S.C. § 1601; the

TCPA, and matters involving the rights of oil and gas royalty holders; prisoner and other civil

rights; noise-induced hearing loss; and mass accidents. (Hara Decl., Ex. J, Firm Resume of

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Montgomery, Rennie & Jonson). Jonson and Stubbs have been prosecuting and defending junk fax violations in various state and federal courts for over ten years and have consistently been deemed adequate counsel. (*Id.*) Local counsel Schubert Jonckheer & Kolbe LLP has successfully represented plaintiffs in class actions and shareholder representative litigation for over twenty five years, specializing in complex litigation such as this action. Its attorneys have extensive experience in consumer protection, shareholder rights, unlawful employment practices, antitrust, and securities fraud. (Hara Decl., Ex. K, Firm Resume of Schubert Jonckheer & Kolbe LLP).

In sum, neither proposed class representative has any conflict with the other class members, and they have hired experienced counsel devoted to vigorously prosecuting the case. The adequacy requirement is easily satisfied.

**IV.    The proposed class may be maintained under Rule 23(b)(2) or (b)(3).**

**A.    Certification is appropriate under Rule 23(b)(2).**

Class certification is appropriate under Rule 23(b)(2) where the defendant has acted "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." For example, in *Kavu*, 246 F.R.D. at 649, the court certified a TCPA fax class under Rule 23(b)(2) and (b)(3). The court held certification was appropriate under (b)(2) because it was likely that "plaintiffs would have brought suit to obtain the injunctive relief they seek even if they could not obtain a money recovery," given the relatively low statutory damages under the TCPA and the plaintiffs' interest in stopping the flow of fax advertisements. *Id.* In *Meyer v. Portfolio Recovery Assocs., LLC*, 2011 WL 11712610, at *5 (S.D. Cal. Sept. 14, 2011), the district court certified a TCPA autodialer class under (b)(2) on the grounds that "the TCPA provides for injunctive relief and the Plaintiff seeks injunctive relief in his complaint" and "the injunctive relief sought applies generally to the class" as a whole.

In this case, injunctive relief is at least as important as it was in *Kavu* or *Meyer* because there appears to be endemic fax advertising across the various McKesson entities. McKesson Corp. was cited by the FCC for junk faxing in 2008. (SAC, Ex. C). Moreover, although the 70,344 transmissions uncovered thus far originated from the PPS business unit, discovery has revealed fax advertising through ProFax by at least one other McKesson entity, and through WestFax by

16

another, as yet unnamed, McKesson entity. Defendants appear to have an institutional problem with fax advertising in their business units, and an injunction is particularly appropriate to require Defendants to investigate this problem and undertake reforms to change it. The propriety and scope of such injunctive relief may be decided classwide under Rule 23(b)(2).

**B.    Certification is appropriate under Rule 23(b)(3) because common questions predominate and a class action is the superior method of adjudication.**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over questions affecting only individual members of the class." It is not necessary that *all* questions be common, only that some questions are common and they predominate over the individual questions. *See Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Negrete v. Allianz Life Ins. Co.*, 287 F.R.D. 590, 597 (C.D. Cal. 2012) ("If common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, then adjudication on a representative basis is appropriate.").

Common questions predominate in this case. The four main questions are (1) whether the faxes are advertisements, (2) whether Defendants are "senders" as defined by FCC regulation, (3) whether the faxes contain compliant opt-out notice, and (4) what statutory damages and injunctive relief are appropriate. The answers to these questions will not vary from class member to class member. There are *no* individualized issues.

Defendants will likely argue individual issues predominate regarding whether they obtained statutory "prior express invitation or permission" from each class member. That is incorrect because, without compliant opt-out notice, "it does not matter which recipients consented or had an established business relation with [the defendant]." *Turza*, 728 F.3d at 684; *Vandervort*, 287 F.R.D. at 561.

Defendants have petitioned the FCC for a "retroactive waiver" from the regulation requiring opt-out notice on faxes sent with prior express permission, 47 C.F.R. § 64.1200(a)(4)(iv), but the effect of such a "waiver," assuming Defendants obtain one someday, would be limited to FCC enforcement proceedings. In *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 498 (W.D. Mich. 2014), the district court held it would give no effect to a "waiver"

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

from the opt-out-notice regulation, holding "[i]t would be a fundamental violation of the separation of powers for the administrative agency to 'waive' retroactively the statutory or rule requirements for a particular party in a case or controversy presently proceeding in an Article III court." *Id.* The court held nothing in the contemplated waiver "invalidates the regulation itself" and "[t]he regulation remains in effect just as it was originally promulgated" for deciding whether the defendant violated the "regulations prescribed under" the TCPA in an action under 47 U.S.C. § 227(b)(3). *Id.* The court held "the FCC cannot use an administrative waiver to eliminate statutory liability in a private cause of action; at most, the FCC can choose not to exercise its own enforcement power." *Id.* Thus, the FCC can no more "waive" a private right of action for violation of its regulations than the SEC can "waive" liability in a PSLRA class action under SEC Rule 10b-5 or the EPA could "waive" violations of its regulations in a "citizen suit" under the Clean Air Act.[3] Moreover, "whether the FCC can grant a retroactive waiver that would apply in civil litigation between private parties" is *itself* merely "another classwide question" that does not preclude class certification. *Doctor Diabetic*, 2014 WL 7366255, at *5.

Even assuming Defendants obtain an FCC waiver and it is effective in private litigation, Defendants' claims for prior express permission can easily be decided through creation of subclasses. For example, Defendants admit they have no evidence of permission with respect to 1,829 fax numbers that received a confirmed 9,313 total transmissions. (Hara Decl., Ex. B, Biggerstaff Expert Report ¶ 25). These are "pure" unsolicited faxes to which Defendants have no defense. Defendants admit their claim of express permission with respect to 39,495 transmission to 7,670 fax numbers is that they obtained permission in software-registration forms. (*Id.* ¶ 26). The Court can easily decide whether listing a fax number on a software-registration form constitutes "prior express permission" to receive fax advertisements at that number.[4]

---

[3] The EPA cannot even create an affirmative defense for use in private citizen suits enforcing its regulations. *NRDC v. EPA*, 749 F.3d 1055, 1063 (D.C. Cir. 2014)

[4] The answer is unequivocally no. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 193 (2003) ("Express permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements.").

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Regarding superiority, a class action is routinely recognized to be a superior method of adjudicating mass TCPA violations. *See Doctor Diabetic*, 2014 WL 7366255, at *9 ("Congress expressly created the TCPA as a 'bounty' statute to increase the incentives for private plaintiffs to enforce the law."); *Jay Clogg Realty Grp., Inc. v. Burger King Corp.*, 298 F.R.D. 304, 310 (D. Md. 2014) (class treatment more likely to eliminate a "scourge on our society" than restricting enforcement to individual actions); *Hinman*, 545 F. Supp. 2d at 807 ("[R]esolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources."); *Critchfield Physical Therapy v. Taranto Grp., Inc.*, 263 P.3d 767, 778 (Kan. 2011) ("While the defendant in such [a small claims] action might benefit if only a small number of plaintiffs found it worth their while to bring suit or were aware of their rights under the TCPA, this small turnout would serve only to frustrate the intent of the TCPA and to protect junk fax advertisers from liability.").

Class enforcement is the only practical means to hold Defendants accountable. Only by aggregating their claims can consumers and businesses impacted by Defendants' junk faxes effectively challenge Defendants' defiance of federal law. *See Chapman v. Wagener Equities, Inc.*, 2014 WL 540250 *16 (N.D. Ill. Feb. 11, 2014) (holding $500 statutory recovery gives individual plaintiffs "a low incentive to bring a lawsuit on their own behalf"); *Mussat v. Global Healthcare Res., LLC*, 2013 WL 1087551, at *7 (N.D. Ill. Mar. 13, 2013) (holding TCPA fax class superior given "fairly small potential for individual recovery"); *Savanna Group v. Trynex, Inc.*, 2013 WL 66181, at *16 (N.D. Ill. Jan. 4, 2013) ("small potential recovery in individual actions" under the TCPA "weighs in favor of class-wide resolution").

The Supreme Court recognized the realities of TCPA litigation in deciding whether federal courts have jurisdiction over TCPA claims, asking in *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 753 (2012), "How likely is it that a party would bring a $500 claim in, or remove a $500 claim to, federal court?" The Court noted that nearly all TCPA cases filed in or removed to federal court are class actions, rejecting the argument that federal courts would be "inundated" by individual TCPA suits. *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Private class actions are vital to effective enforcement of the law. As the Seventh Circuit recently stressed, "[a] class action, like litigation in general, has a deterrent as well as a compensatory objective." *Hughes v. Kore of Ind. Enters., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013); *see also Turza*, 728 F.3d at 688 (holding the TCPA's private right of action exists so "recipients need not depend on the FCC" for enforcement); *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 515 (3d Cir. 1998) (class-action remedy gives TCPA its "teeth"), *abrogated on other grounds by Mims*, 132 S. Ct. 740. If "only a small number of plaintiffs found it worth their while to bring suit or were aware of their rights under the TCPA, this small turnout would serve only to frustrate the intent of the TCPA and to protect junk fax advertisers from liability." *Critchfield Physical Therapy*, 263 P.3d at 780.

### Conclusion

This case is ideally suited for class treatment. The proposed class is "ascertainable," given Defendants have produced the fax numbers, transmission logs, and identifying information for the vast majority of "recipients." The class is sufficiently numerous, with claims too small to warrant individual prosecution. Common questions of fact and law predominate. Plaintiffs' claims are identical to those of the other class members, and they have retained counsel well qualified to represent the class and willing to commit the necessary resources. As a practical matter, a class action is the only way members will ever obtain relief, and judicial economy and uniformity will be served by certifying this class.

Respectfully submitted,

TRUE HEALTH CHIROPRACTIC, INC. and MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC., individually and as the representatives of a class of similarly-situated persons,

By: s/ Glenn L. Hara
     One of Plaintiff's Attorneys

BRIAN J. WANCA *(pro hac admitted)*
RYAN M. KELLY *(pro hac admitted)*
GLENN L. HARA *(pro hac admitted)*
ROSS M. GOOD *(pro hac admitted)*
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847-368-1500
Fax:  847-368-1501
bwanca@andersonwanca.com
rmkelly@andersonwanca.com
ghara@andersonwanca.com
rgood@andersonwanca.com

And:
GEORGE D. JONSON *(pro hac admitted)*
MATTHEW STUBBS *(pro hac admitted)*
MONTGOMERY, RENNIE & JONSON
36 East Seventh Street
Cincinnati, OH  45202
Telephone:  513-768-5220
Fax:  513-768-9220
gjonson@mrjlaw.com
mstubbs@mrjlaw.com

*Counsel for Plaintiffs*

ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA  94111
Telephone:  415-788-4220
Fax:  415-788-0161
rschubert@schubertlawfirm.com
wjonckheer@schubertlawfirm.com

*Local Counsel for Plaintiffs*

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was served electronically on all counsel of record via the Court's CM/ECF electronic noticing system on this 16th day of July 2015.

s/ Glenn L. Hara        
One of Plaintiffs' Attorneys
