TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
BEN PATTERSON (CA SBN 268696)
BPatterson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
MCKESSON TECHNOLOGIES, INC., AND MCKESSON
CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>Defendants. | Case No.  13-cv-02219-HSG<br><br>**DEFENDANTS' SURREPLY OPPOSING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>Hearing Date: September 10, 2015<br>Time: 2:00 p.m.<br>Courtroom: Courtroom 15, 18th Floor |

Defendants respectfully submit this surreply to address new legal and factual developments after Defendants' opposition to Plaintiffs' motion for class certification was filed on August 13, 2015. Specifically, (1) the FCC has granted Defendants' petition for a retroactive waiver of the opt-out notice requirement for solicited faxes, (2) True Health's owner and President, Dr. Jeffrey Shope, has entered into a plea agreement to plead guilty to fraud in federal court, and (3) Plaintiffs' reply relies on a new, out-of-circuit case issued after Defendants' opposition that does not change Plaintiffs' failure to show that the purported class is ascertainable.

### A. The FCC Has Granted Defendants' Waiver Petition.

Less than a week ago, on August 28, 2015, the FCC granted Defendants' petition for retroactive waiver of the opt-out notice requirement of 47 C.F.R. § 64.1200(a)(4)(iv) for faxes sent with prior express permission or invitation. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CGC Docket No. 02-278, DA 15-976 (Aug. 28, 2015) ("Waiver Order"), ¶ 24. The Waiver Order is attached as Exhibit A to the Declaration of Tiffany Cheung in Supp. of Defs.' Admin. Mot. for Leave to File a Surreply ("Cheung Decl."). Because the FCC's rule requiring opt-out notices for solicited faxes is now waived for Defendants, whether a fax was solicited or not (i.e., was there consent) becomes even more critical to the Court's analysis of the myriad individualized issues regarding consent that defeat class certification. Pursuant to the Waiver Order, there is no TCPA violation for any marketing faxes in this case that were sent with consent. As detailed in Defendant's Opposition, determining which fax may have been sent without consent will require numerous individualized inquiries that overwhelm any common issues. (ECF No. 220 ("Opp.") at 9-14.) Plaintiffs do not dispute the evidence showing that, among other methods, consent was obtained through personal conversations and relationships between individual customers and their account representatives. (*Id*. at 4, 13-14.) No class can be certified here.

In Plaintiffs' reply brief, they argue that "an FCC 'waiver,' even assuming Defendants receive one, would have no effect in this case" because it would violate the separation of powers doctrine. (ECF No. 221 ("Reply") at 11-12.) Plaintiffs in this case raised these exact same

arguments before the FCC. (Waiver Order ¶ 9 ("several commenters reiterate arguments raised prior to the release of the 2014 Anda Commission Order and argue that the Commission does not have authority to waive its regulations in a private right of action and that doing so violates the separation of powers").) The FCC resoundingly rejected this "separation of powers" argument in its August 28, 2015 Order: "[W]e dismiss arguments that by granting waivers while litigation is pending violates the separation of powers as several commenter[s] have suggested." (*Id.* ¶ 13.) The FCC explained that, "by addressing requests for declaratory ruling and/or waiver, we are interpreting a statute, the TCPA, over which Congress provided the Commission authority as the expert agency." (*Id.*) "[T]he mere fact that the TCPA allows for private rights of action to enforce rule violations does not undercut our authority, as the expert agency, to define the scope of when and how our rules apply." (*Id.*) The Waiver Order and the FCC's interpretation and waiver of its own rules do not violate the separation of powers doctrine. (*See* Opp. at 11-12; ECF No. 217 ("Stay Reply") at 6-8; Waiver Order ¶ 13.)

In any event, now that the FCC has issued a final Order on the matter, any challenges to that Order ― including the FCC's express holding that its Order does not violate the separation of powers ― must be brought within the statutory framework of the Hobbs Act, 28 U.S.C. § 2342, for review of FCC orders. Orders by an agency "are 'final orders' for the purposes of the Hobbs Act 'if they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.'" *U.S. West Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000) (quoting *Sierra Club v. United States Nuclear Regulatory Comm'n*, 862 F.2d 222, 225 (9th Cir. 1988)). Under the Hobbs Act, "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of--(1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342(1); *see* 47 U.S.C. § 402(a). Because the FCC has issued a final Order granting McKesson's waiver petition and rejecting Plaintiffs' "separation of powers" argument, any challenge to that Order, must be brought in the court of appeals. This Court lacks jurisdiction to review the validity of the rulings in the FCC's Waiver Order.

### B. True Health's Dr. Shope Has Entered a Plea Agreement for Fraud.

On August 12, 2015, a criminal docket was opened in the U.S. District Court for the Southern District of Ohio, titled *USA v. Shope*, Case No. 15-cr-00189-GLF, for an Information alleging that the owner, proprietor, and President of True Health, Dr. Jeffrey Shope, engaged in "a scheme to defraud health care benefit programs." (Case No. 15-cr-00189-GLF, ECF No. 1.) On August 14, 2015, Dr. Shope's bond conference was scheduled for September 29, 2015, and his arraignment is also set for the same day. (*Id.* at ECF Nos. 5, 7.) As detailed in the agreement signed by Dr. Shope, he will plead guilty to health care fraud, and voluntarily exclude himself from participation in Medicare, Medicaid, and all federal health care programs for 10 years; and faces a maximum term of 10 years in prison, a maximum fine of $250,000, and a maximum term of three years of supervised release and restitution. (*Id.* at ECF No. 2 (Cheung Decl. Ex. B) ¶¶ 1, 2, 14.) The terms of the plea agreement correspond to a 24-30 month sentencing range, as recommended by the Federal Sentencing Guidelines. (*Id.* ¶ 11.)

The fraud offenses to which Dr. Shope will plead guilty and for which he may face imprisonment render him inadequate to serve as a class representative. (*See* Opp. at 23.) This plea constitutes an admission that Dr. Shope "knowingly and willfully execute[d], or attempt[ed] to execute, a scheme or artifice" to defraud or to obtain money or property of a health care benefit program "by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1347(a)(1-)-(2); (Cheung Decl. Ex. B ¶ 1.) Such offenses detract from the claims of the class and raise doubts about the named plaintiff's credibility and integrity. *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 215-16 (E.D. Cal. 2015) (finding representative inadequate because her conviction for identity theft "required proof of her intent to deceive or to defraud" and "cast doubt on her honesty and credibility") (internal quotation marks and citation omitted). Although Plaintiffs argue that only criminal convictions related to the underlying class case are relevant to the adequacy requirement, they are wrong. Courts have found representative plaintiffs inadequate based on criminal convictions even when unrelated claims were asserted in the putative class action. *See Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378, 1396-97 (N.D. Cal. 2014) (finding that plaintiff in Fair Credit Reporting Act case, who had criminal history of burglary,

1 trespass, and vandalism, was inadequate class representative because she is unfit to properly
2 exercise her fiduciary duties"). In particular, in a case involving fraud by the named plaintiff, like
3 this case, an admission of fraud undercuts the named plaintiff's credibility regardless of the
4 underlying claims he purports to assert and renders him unfit to serve as a fiduciary to absent
5 class members.

### C. Plaintiffs' New Out-of-Circuit Case Does Not Alter the Ascertainability Requirement in the Ninth Circuit.

Plaintiffs cite a new case in their Reply brief that was issued after Defendants' opposition was due, *Rikos v. Procter & Gamble Co.*, No. 14-4088, --- F.3d ----, 2015 WL 4978712 (6th Cir. Aug. 20, 2015), as part of Plaintiffs' repeated argument that the Court should not follow the Third Circuit's *Carrera* ascertainability standard. (Reply at 3.) But Defendants did not rely on *Carrera* in their opposition brief. Rather, Defendants relied on Ninth Circuit law to demonstrate that Plaintiffs' proposed class is not ascertainable. (Opp. at 15-22.) The out-of-circuit *Rikos* case (and the other out-of-circuit authority Plaintiffs rely heavily upon) does not alter that conclusion. Applying the Sixth Circuit's *Young* standard, the majority in *Rikos* found that the district court had not abused its discretion in finding the proposed class of those who purchased a certain product was ascertainable. *Rikos*, 2015 WL 4978712, at *24. The court there reasoned that defendant's "own documents indicate that more than half of its sales are online," and "online sales would provide the names and shipping addresses of those who purchased" the product, and that sales receipts and affidavits could supplement those records. *Id.*

By contrast, here, there is no way to ascertain any of the 70,000+ "recipients" from Defendants' records. In their Reply, Plaintiffs *still* do not identify whether a "recipient" is the owner of the fax machine, the subscriber of the fax number, or the person who picked up the fax. But Plaintiffs do not attempt to salvage their "expert's" infeasible proposal to subpoena unknown phone companies to identify the subscribers of the fax numbers at issue, and they have not proposed any means at all for identifying the owners of each fax machine. (*See* Opp. at 15-22.) In any event, unlike *Rikos*, Defendants' records do not identify *any* of the subscribers to fax numbers, owners of fax machines, or anyone who actually picked up any faxes.

Any proposal to rely on affidavits to identify "recipients" would be infeasible because to prove a prima facie violation, a putative class member would need to provide multiple affidavits, including affidavits from non-parties. At a minimum, each class member would need: 1) an affidavit stating that he or she picked up a fax up to six years ago between September 2009 and May 2010 that referenced "Medisoft," "Lytec," "Revenue Management Advanced" software, or "BillFlash Patient Statement Service"; and 2) affidavits from every other person authorized to use the class member's fax number stating that they did not consent to receiving the fax that the putative class member picked up. The proposed class is simply not ascertainable.

Dated: September 4, 2015

TIFFANY CHEUNG
BEN PATTERSON
MORRISON & FOERSTER LLP


By:   */s/Tiffany Cheung*
        TIFFANY CHEUNG

Attorneys for Defendants
MCKESSON TECHNOLOGIES, INC.,
AND MCKESSON CORPORATION

DEFENDANTS' SURREPLY RE CLASS CERTIFICATION
CASE NO. 13-CV-02219-HSG
sf-3571835

5