UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRUE HEALTH CHIROPRACTIC INC, et al.,

                Plaintiffs,

      v.

MCKESSON CORPORATION, et al.,

                Defendants.

Case No. 13-cv-02219-HSG   (DMR)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS; GRANTING MOTION FOR LEAVE TO FILE SURREPLY**

Re: Dkt. No. 207, 218

      Before the court is a motion for sanctions filed by Plaintiffs True Health Chiropractic, Inc. and McLaughlin Chiropractic Associates, Inc.  [Docket No. 207.]  Defendants McKesson Corporation ("McKesson") and McKesson Technologies, Inc. ("MTI") have also filed a motion for leave to file a surreply to the motion for sanctions.  [Docket No. 218.]  The court held a hearing on the motions on September 10, 2015.  For the reasons stated below and at the hearing, the motion for leave to file a surreply is **granted**[1] and the motion for sanctions is **granted in part and denied in part.**

## I.      BACKGROUND

      This putative class action challenges Defendants' alleged practice of sending unsolicited facsimile advertisements, or so-called "junk faxes," in violation of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227.

      In the motion for sanctions, Plaintiffs contend that Defendants hid the existence of third-party fax broadcaster Slingshot Technologies ("Slingshot") and its role in sending or providing a software platform to send the faxes that form the basis of Plaintiffs' claims.  Plaintiffs also

---

[1]  Plaintiffs raised argument and evidence for the first time on reply.  Accordingly, the court **grants** Defendants leave to file a surreply to respond to the new evidence raised by Plaintiffs on reply.

United States District Court
Northern District of California

1   contend that Defendants hid the existence of a former MTI employee, Kari Holloway, who had

2   knowledge of Slingshot's role in sending the faxes.  For these two alleged transgressions,

3   Plaintiffs seek several forms of sanctions: (1) preclusion of Defendants' affirmative defenses that

4   the fax recipients had established business relationships with Defendants and/or they gave prior

5   express permissions to Defendants to send the faxes; (2) repudiation of a common interest

6   agreement contract between Slingshot and Defendants; and (3) attorneys' fees and costs caused by

7   Defendants' late disclosure of the existence of Holloway and Slingshot and of documents obtained

8   from Slingshot.

9          **A.**       **Procedural History**

10          It took over a year to settle the pleadings in this case.  Plaintiff True Health filed a

11   complaint on May 15, 2013 against only Defendant McKesson, attaching one fax advertisement

12   advertising the software product Medisoft to its complaint.  On June 20, 2013, True Health filed a

13   First Amended Complaint ("FAC"), also against only McKesson and attaching the same single fax

14   advertisement.  On July 11, 2013, McKesson filed a motion to transfer venue; the presiding judge

15   denied the motion to transfer venue on November 12, 2013.  On December 2, 2013, McKesson

16   timely filed an Answer to the FAC.

17          On May 5, 2014, True Health filed a motion for leave to amend the FAC; the presiding

18   judge granted the motion on June 23, 2014.  The parties then stipulated to vacate all of the

19   deadlines in the scheduling order.  On July 18, 2014, Plaintiffs filed the Second Amended

20   Complaint ("SAC"), this time adding Plaintiff McLaughlin and Defendant MTI and including four

21   fax advertisements advertising Medisoft and another software product called Lytec that were

22   allegedly sent by Defendants in 2010.  Defendants timely filed an Answer on August 22, 2014.

23          As the pleadings were settled, the discovery deadlines were vacated and extended several

24   times.  The cutoff for expert discovery was July 2, 2015.  Fact discovery, however, remains open.

25          **B.**       **Reorganization of Defendants' Sales Teams**

26          It is worth explaining Defendants' corporate structure to understand their relation to the

27   entity that sent the faxes at issue.  McKesson Corporation has over 600 subsidiaries or affiliated

28   companies that are separate legal entities; these entities collectively employ 70,400 full-time

United States District Court
Northern District of California

2

1    employees.  Many of these entities are subdivided into multiple business units.  MTI is a

2    subsidiary of McKesson Corporation with approximately 10,000 to 13,000 employees and

3    numerous business units, including a business unit called Physician Practice Solutions ("PPS").

4    PPS is the entity that offered the Medisoft and Lytec products that are advertised in the faxes

5    attached to the SAC.

6            By the time True Health initiated this lawsuit, more than three years after the date the faxes

7    were sent, PPS no longer sold Medisoft or Lytec.  Paul Decl. at ¶ 3.  PPS did not use inside sales

8    representatives to sell those products, and nearly every member of the PPS inside sales team had

9    left the company before the lawsuit was filed.  *Id.*  PPS's inside sales team was entirely disbanded

10   by April 2014.  *Id.*

11       **C.     Plaintiffs' Discovery Requests Regarding Third Party Fax Broadcasters**

12               **1.     McKesson Corporation**

13           True Health served its first set of discovery requests on McKesson on October 1, 2013,

14   before McKesson had filed its Answer to the FAC.  They included requests for production of

15   documents ("RFPs") and interrogatories that broadly sought information concerning any third-

16   party fax broadcaster that McKesson may have used to transmit its fax advertisements.[2]

17           Defendants aver that in late 2013, McKesson searched through the files most likely to

18   contain relevant information and interviewed then-current employees at PPS, but could not

19   uncover any records of the fax attached to the FAC.  On January 10, 2014, McKesson responded

20   to True Health's October 2013 discovery requests, and did not identify or provide documents

21   referencing any third-party fax broadcaster.  *See* Stubbs Decl. Ex. 4 (McKesson's response to RFP

22   Nos. 10-14 stating that it "did not enter into any contracts or agreements for the provision of fax

23   broadcasting services"); Ex. 5 (McKesson Corporation's response to Interrogatory No. 13 stating

24

---

25   [2] *See, e.g.*, Stubbs Decl. [Docket No. 207-1] Ex. 4 (RFP Nos. 9-14 and 35-37 requesting
     documents about "any other entity that sent any facsimile transmissions of any document, by or on

26   behalf of Defendant"; any contracts or agreements "entered into between Defendant any third
     party for the provision of fax broadcasting services"; and "all invoices, bills…or other documents

27   which set forth…[the] amounts owed to any third person for the creation or transmission by
     facsimile of any document identify in Request Number 1"); Ex. 5 (Interrogatory Nos. 4, 13-14

28   inquiring whether McKesson Corporation had "instructed any person to…use a list of persons
     and/or telephone numbers to send any facsimile transmission").

United States District Court
Northern District of California

that "it did not instruct any third party to…use a list of persons and/or telephone numbers to send the facsimile transmission…").  Defendants note that at that point, McKesson was the only named Defendant, and that to this day McKesson has not entered into any agreements for "fax broadcasting services" related to any of the faxes at issue.  Opp. [Docket No. 210] at n. 1.

### 2.      MTI

As noted above, the SAC that Plaintiffs filed on July 18, 2014 added MTI as a Defendant. On August 22, 2014, MTI responded to Plaintiffs' first set of interrogatories.  Stubbs Decl. Ex. 8. Those interrogatories asked, "Did [MTI] send the Back-to-Black advertisement…?"  MTI responded, "Yes."  *Id.* at 3-4.  MTI's responses did not refer to any third-party fax broadcaster.

### D.      Disclosure and Deposition of Kari Holloway

Kari Holloway worked for PPS from February 2009 until August 2013.  As of early 2010 (when the four faxes attached to the SAC were sent), Holloway was leading a field sales team. She created the content for the PPS product fax advertisements.

McKesson's January 2014 discovery responses did not identify Holloway.[3]  On February 5, 2014, McKesson provided its initial disclosures pursuant to Federal Rule of Civil Procedure 26(a), which also did not identify Holloway as an individual likely to have discoverable information that McKesson may use to support its claims or defenses.  Nonetheless, as Plaintiffs' counsel stated at the hearing, Plaintiffs knew of Holloway's existence at least by May or June 2014, and began asking McKesson for her deposition around that time.  McKesson informed Plaintiffs that Holloway was no longer employed with any McKesson entity, but agreed to accept service of a deposition subpoena on her behalf.  However, Plaintiffs elected not to serve that subpoena; instead, at that point in the summer of 2014, they elected to focus on litigating Defendants' then-pending motion to stay the case, as well as various joint discovery letters filed by the parties.

The SAC that was filed on July 18, 2014 added MTI as a Defendant and attached three

---

[3]   McKesson's January 2014 discovery responses alluded to the existence of a former employee with knowledge of the faxes, but did not identify that former employee by name. At the hearing, Defendants' counsel confirmed that the anonymous former employee was not Holloway.

United States District Court
Northern District of California

United States District Court
Northern District of California

more examples of faxes that Defendants had allegedly sent to Plaintiffs.  One of those faxes was an advertisement that urged readers to "Contact McKesson Today!" by responding to "kari.holloway@mckesson. com."  SAC at Ex. B-2.  Defendants aver that they did not learn of Holloway's existence until they reviewed the SAC and its attachments.[4]

On January 20, 2015, Defendants produced fax transmission records that listed Holloway's email address as the sender.  On February 28, 2015, MTI timely provided its initial disclosures.  In these disclosures, MTI *did* identify Holloway as a potential witness, although it misspelled her name as "Carrie Holloway."

Plaintiffs deposed Holloway on April 28, 2015.  Holloway testified that she had used her computer to send faxes using Slingshot, which Holloway described as either a software program or a vendor that provided broadcasting services.  Holloway also testified that she was the person who sought out Slingshot to use to send faxes.

After Holloway was deposed, Plaintiffs requested that Defendants serve supplemental discovery responses that referenced the role of Slingshot in sending the faxes at issue.  Defendants did so in June and July 2015.

E.      **Defendants' Prior Knowledge of and Communications with Slingshot**

Defendants formally disclosed the participation of Slingshot in their June and July 2015 discovery responses, but counsel for McKesson had begun investigating Slingshot's connection to the faxes as early as July 2014, when it reached out to Slingshot seeking documents relating to those faxes, after reviewing the SAC and its attached fax advertisements.

The investigation into Slingshot's role unfolded as follows.  According to PPS policy, a vendor ID should be set up in accounting in order for payments to be disbursed to vendors providing services to PPS.  Paul Decl. at ¶ 5.  However, PPS's accounting system did not list a vendor called Slingshot or Accelero.  Cheung Decl. at ¶ 16.  Apparently, Slingshot/Accelero was not registered in the accounting system because Holloway had paid Slingshot using her personal

---

[4]  Plaintiffs note that the advertisement with Holloway's email address was also included as an exhibit to McKesson's motion to transfer venue, which it filed in July 2013.  *See* Docket No. 17-2 at 17.

United States District Court
Northern District of California

1   corporate credit card, which was improper.  *See* Opp. at 7; Paul Decl. at ¶ 5 ("Corporate credit

2   cards were meant to be used for business related travel and entertainment expenses, not for paying

3   vendors for services performed.").  Defendants then searched the files in which contracts with

4   vendors are stored in the ordinary course of PPS's business, but uncovered no agreements with

5   Slingshot or Accelero for any faxing services.

6          After the investigation failed to reveal information about Slingshot, Defendants reached

7   out to Slingshot directly.  On July 24, 2014, then-counsel for McKesson Tyree Jones sent an email

8   to Maurice Mitts of Slingshot following up on a recent conversation between Mitts and one of

9   McKesson's in-house attorneys.  Jones requested that Slingshot provide documents relating to

10  Slingshot's participation in transmitting faxes for McKesson.  On September 5, 2014, Geoffrey

11  Huling of Slingshot responded to Jones' email with an email that contained dozens of invoices for

12  fax broadcasting services provided by Slingshot to McKesson.  Slingshot also provided

13  transmission records to Defendants' counsel.  Holloway is the only PPS employee identified in

14  those documents.  Defendants did not begin producing these transmission records to Plaintiffs

15  until January 20, 2015.

16         After Slingshot provided documents to Defendants in September 2014, Defendants

17  continued to investigate Slingshot/Accelero's role in sending the faxes.  Defendants' attempts to

18  obtain further information from Slingshot were unsuccessful.  Defendants then offered to enter

19  into a common interest agreement with Slingshot in order to facilitate Slingshot's provision of

20  relevant information, but Slingshot still did not provide the requested information.  On April 15,

21  2015, Slingshot's Huling wrote to Mitts stating, "McKesson has new attorneys (Morrison and

22  Foester has replaced Reed Smith) and they are proposing a common interest agreement.  I had a

23  conference call with them earlier today.  They also have a lot of questions that I don't know the

24  answers to.  It may make sense, from an efficiency and cost perspective, if we enter into the

25  common interest agreement, and to let them speak to Adam and/or Ian[5] directly."  Stubbs Decl.

26  Ex. 13.

27

28  _____

[5]   The record does not disclose the identities or roles of "Adam and/or Ian."

United States District Court
Northern District of California

The record does not disclose whether Defendants and Slingshot/Accelero ever entered into a common interest agreement.

### F.      Representations to the Court

The parties first appeared before this court on November 13, 2014, for a hearing regarding three joint discovery letters filed by the parties.  Those disputes concerned Defendants' production of additional exemplar faxes and information about the recipients of those faxes.  The parties also appeared before the court on March 26, 2015 regarding Plaintiffs' motion for sanctions, and on May 21, 2015 to determine which McKesson entities were required to produce information.

In these hearings and filings, the identification of Holloway and Defendants' use of a third-party fax broadcaster were not discussed by the parties, much less "directly touched on," as suggested by Plaintiffs.  Mot. at 10.  According to Defendants, Plaintiffs did not challenge Defendants' discovery responses with respect to third-party fax broadcasters until a meet and confer session sometime after May 11, 2015, and once Plaintiffs raised the issue, Defendants agreed to supplement their discovery responses.  Opp. at 5-6.

### G.      Other Discovery Produced by Defendants and Slingshot

Defendants aver that they have produced all of the potential faxes at issue, the transmission records for those faxes, and extensive evidence regarding the consent given by PPS's customers to receive the faxes from PPS.  Specifically, on April 2, 2015, Defendants produced all marketing faxes that were created by PPS and transmitted by fax, and on April 8, produced transmission records for those faxes.  Also on April 2, Defendants served interrogatory responses regarding all of the customers and the various methods by which PPS obtained consent, and supplemented these responses on June 2.  On June 16, Plaintiffs requested additional information about Holloway and her communications with Slingshot; on July 15, Defendants produced responsive records, including email communications between Holloway and Slingshot, and records indicating that Holloway paid for Slingshot's services using her personal corporate credit card.  Defendants note that fact discovery remains ongoing, and depositions have occurred even after Plaintiffs filed the sanctions motion.

On May 19 and 20, 2015, Slingshot produced documents directly to Plaintiffs.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 37 authorizes the imposition of various sanctions for discovery violations, including a party's failure to identify a witness in its initial disclosures under Rule 26(a), or failure to timely supplement initial disclosures and/or discovery responses pursuant to Rule 26(e).  Fed. R. Civ. P. 37(c)(1).  Such sanctions may include ordering a party to pay the reasonable expenses, including attorneys' fees, caused by its failure to comply with the order or rule; so-called exclusion or preclusive sanctions, i.e., the entry of an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; or the imposition of "other appropriate sanction[s]."  Fed. R. Civ. P. 37(b)(2)(A)(ii), (b)(2)(C), (c)(1)(A).

"[O]n the menu of sanctions that a court may select from in applying Rule 37, preclusion of evidence is among the most severe; indeed, under certain circumstances, the imposition of preclusive sanctions may be tantamount to dismissal of a plaintiff's claims or entry of default judgment against a defendant."  *Network Appliance, Inc. v. Bluearc Corp.*, No. C 03-5665 MHP, 2005 WL 1513099, at *3 (N.D. Cal. June 27, 2005) *aff'd*, 205 F. App'x 835 (Fed. Cir. 2006) (citation omitted).  A court determines whether a case-dispositive sanction, including an exclusion sanction, is proper under a five-factor test analyzing: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; (5) the availability of less drastic sanctions."  *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990) (applying test to request for terminating or dismissal sanctions).  *See also Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (applying five-factor test and determining that expert testimony should not have been excluded as a sanction for counsel's failure to disclose damages evidence and for late-disclosing experts); *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (applying five-factor analysis to determine whether "case-dispositive sanction under Rule 37(b)(2) is just").  "Exclusion sanctions based on alleged discovery violations are generally improper absent undue prejudice to the opposing side."  *Amersham Pharmacia Biotech, Inc. v. Perkin–Elmer Corp.*, 190 F.R.D. 644, 648 (N.D. Cal. 2000)

1   (citing *Wendt*, 125 F.3d at 814).

2                               **III.     DISCUSSION**

3       **A.     Sanctionable Conduct**

4           Plaintiffs identify two courses of conduct that they believe warrant sanctions: (1)

5   Defendants' late identification of Kari Holloway as a witness with potentially relevant

6   information; and (2) Defendants' alleged attempts to hide the existence of Slingshot, which

7   Plaintiffs claim include false, incomplete, or late-supplemented discovery responses, and

8   "arguments and representations to counsel for Plaintiffs and this court about the difficulty of

9   finding records internally that it had already received from Slingshot." Mot. at 14.

10          The court finds that at least some of Defendants' conduct is sanctionable. With respect to

11  the disclosure of Holloway, McKesson knew of Holloway's identity at least as of July 2014, but

12  failed to supplement its initial disclosures or identify her in its discovery responses; to date,

13  McKesson has still not identified Holloway as a potential witness in its Rule 26(a) disclosures,

14  (though MTI's February 2015 initial disclosures did so identify her). With respect to Slingshot,

15  McKesson's January 2014 and MTI's August 2014 discovery responses both explicitly stated and

16  implied that no third parties had been involved in sending the faxes, but at least by September 5,

17  2014, Defendants were aware that Slingshot played a significant role in sending the faxes. Yet

18  Defendants did not correct their earlier discovery responses to reflect this new information about

19  Slingshot in September 2014 (when it ascertained Slingshot's role) or in April 2015 (when

20  Holloway testified to Slingshot's role), but instead waited until Plaintiffs' requested that they do

21  so in June and July 2015. Holloway and Slingshot were not bit players; they were directly

22  involved in the transmission of the faxes at issue in this case. Federal Rule of Civil Procedure

23  26(e)(1)(A) requires a party to supplement its discovery responses "in a timely manner if the party

24  learns that in some material respect the disclosure or response is incomplete or incorrect, and if

25  additional or corrective information has not otherwise been made known to the other parties

26  during the discovery process or in writing." Defendants' failure to timely supplement their

27  discovery responses to disclose Holloway and Slingshot was without good cause, and is therefore

28  subject to sanctions.

United States District Court
Northern District of California

**B.      Preclusive Sanctions and Abrogation of Common Interest Agreement**

The question, then, is what sanction is appropriate.  Several factors counsel against granting Plaintiffs either of the two more draconian sanctions that they have requested.

*First*, public policy favors disposition of cases on their merits, and Plaintiffs' request for harsh preclusion sanctions is potentially case-dispositive.

*Second*, Plaintiffs have failed to sufficiently identify the prejudice they have suffered.  It is true that Holloway was not formally disclosed to Plaintiffs until February 2015, but Plaintiffs had informally known of Holloway's identity for nine months and had been requesting that Defendants make her available for a deposition.  Yet, when Defendants offered to accept service of Plaintiffs' deposition subpoena on behalf of Holloway, Plaintiffs elected not to pursue this discovery for months.  Eventually, Holloway's deposition became an issue again, and Defendants provided Holloway for a deposition within the fact discovery period.  At the hearing, Plaintiffs' counsel contended that because they did not learn of Slingshot's role until Holloway's deposition in April 2015, they were precluded from developing a more robust record regarding Defendants' affirmative defenses and thus presented a weaker case for class certification than they could have.  But these contentions are not matched by Plaintiffs' actions.  By January 2015, Plaintiffs had the identities of the fax recipients so that they could test Defendants' defenses regarding prior express permission, yet Plaintiffs did not reach out to the recipients for discovery.  The disclosure of Slingshot's existence did not add any more information that would have facilitated this discovery.  Moreover, if Plaintiffs truly believed that they were prejudiced by Defendants' late disclosures, they could have requested that the presiding judge continue the deadline for their motion for class certification; Plaintiffs did not do so.

Defendants' conduct delayed the production of discoverable information, but Plaintiffs have not sufficiently explained how this delay affected their ability to obtain additional discovery or make arguments in its motions.  Nor have they adequately explained how Defendants' conduct affected the court's ability to manage its docket.

Plaintiffs offer additional arguments for why they have suffered prejudice from Defendants' actions, but none are persuasive.  They contend that they "suffered real prejudice in

1    having to file multiple joint letters and motions in an effort to compel McKesson to produce

2    information it should have produced immediately."  Reply at 9.  However, as noted above, the

3    joint letters and other motions filed by Plaintiffs concerned the parties' disputes about Defendants'

4    production of exemplar faxes and recipient information, and the McKesson entities from whom

5    Plaintiffs could seek discovery, not the identification of Holloway or any third-party fax

6    broadcaster.

7         Plaintiffs also contend that they suffered prejudice because "McKesson proposed to

8    mediate several times while it was concealing this critical information [and]….[h]ad Plaintiffs

9    agreed, any settlement would almost certainly have been injudicious and unfair to the putative

10   class members."  Reply at 9.  This is a hypothetical, speculative harm, not actual prejudice

11   suffered by Plaintiffs, who in fact *did not agree* to mediate.

12        **Third,** the first two sanctions requested by Plaintiff bear no relation to the allegedly

13   sanctionable conduct.  Plaintiffs seek preclusion of two of Defendants' affirmative defenses, i.e.,

14   that the fax recipients had established business relationships with Defendants, and/or they gave

15   prior express permissions to Defendants to send the faxes.  But Plaintiffs do not argue that the

16   information they received from Holloway or Slingshot was at all related to these defenses.

17   Plaintiffs urge the court to follow the holding in *Craftwood Lumber Co. v. Interline Brands, Inc.*,

18   No. 11 C 4462, 2013 WL 4598490, at *14 (N.D. Ill. Aug. 29, 2013), a junk fax case in which the

19   court sanctioned the defendant pursuant to Rule 37 by precluding it from asserting establish

20   business relationship and prior express permission defenses.  However, in *Craftwood Lumber*, the

21   defendant had engaged in "egregious and willful misconduct," "displayed a cavalier attitude

22   toward the judicial process," and "engaged in a pattern of stonewalling" and ultimately failed to

23   produce evidence on those defenses after a year of litigating the subject.  *Id.* at *13.  Unlike

24   *Craftwood Lumber*, here Defendants have produced information relevant to these defenses, so

25   precluding them on the basis of discovery conduct related to another subject matter is

26   inappropriate.

27        The second sanction requested by Plaintiffs—repudiation of any common interest

28   agreement between Slingshot and Defendants—is also drastic and unconnected to the sanctionable

United States District Court
Northern District of California

11

conduct.  A party to a common interest agreement can invoke the "common interest privilege" or "joint defense privilege" such that "communications by [the party] his own lawyer remain privileged when the lawyer subsequently shares them with co-defendants for purposes of a common defense."  *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 n. 7 (9th Cir. 1987) (citations omitted) (citation omitted).  The privilege also protects communications between persons who share a common interest, including third parties who are not named in a lawsuit.  *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) ("[P]ersons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.") (citation omitted); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007).  Plaintiffs cite no case in which a court has found the rather harsh sanction of revocation of the attorney-client privilege[6] is proper for a party's failure to disclose or untimely disclosure of the existence of a third party with whom it may share a common interest.  Defendants contend (and Plaintiff does not dispute) that it has received discovery from both Defendants and Slingshot in response to Plaintiffs' discovery requests, and Plaintiffs have not shown how any common interest agreement between Defendants and Slingshot would affect Plaintiffs' ability to obtain discoverable materials in the future.  In any event, the record does not disclose that Slingshot and Defendants actually entered into this agreement.

*Fourth*, less drastic sanctions are available.  As noted above, Plaintiffs contend that Defendants' behavior prejudiced their ability to conduct robust discovery and to make the best possible arguments at class certification.  This direct consequence could have been cured by seeking an adjustment to the case management calendar, but Plaintiffs did not request such relief.  Moreover, Defendants' conduct can be addressed through the imposition of attorneys' fees, which is discussed directly below.

### C.   Reasonable Expenses

Plaintiffs also seek "attorneys' fees and expenses caused by [Defendants'] failure to timely disclose of the existence of Holloway and Slingshot Technologies and produce the documents they

---

[6]  The common interest privilege "is an extension of the attorney client privilege [that] has been long recognized by this circuit."  *Waller*, 828 F.2d at 583 n. 7.

United States District Court
Northern District of California

obtained from Slingshot." Mot. at 17. Federal Rule of Civil Procedure 37(c)(1)(A) authorizes the imposition of sanctions in the form of "payment of the reasonable expenses, including attorneys' fees," caused by a failure to disclose or supplement disclosures. This sanction is less drastic than the other forms of sanctions requested by Plaintiffs. But it is still problematic because Plaintiffs have not explained what attorneys' fees or expenses it has incurred due to Defendants' untimely disclosure of Holloway or Slingshot. Plaintiffs did not raise issues concerning Holloway or third-party fax broadcasters in discovery letters filed with the court. When Plaintiffs' learned of Holloway and Slingshot's existence, Plaintiffs informally urged Defendants to supplement their discovery responses and disclosures, which Defendants then agreed to do — these issues did not require court intervention. Moreover, the court has already awarded significant attorneys' fees sanctions against Defendants for certain work that Plaintiffs had to undertake due to Defendants' discovery behavior. The court must be mindful to avoid double recovery and double punishment.

The only certain consequence of Defendants' failure is the instant motion for sanctions. Plaintiffs' counsel stated at the hearing that he had spent approximately 40 hours at a rate of $495 per hour drafting the motion papers, for a total of $19,800 in attorneys' fees for filing the motion. However, this motion was based in part on Plaintiffs' inappropriate request for extreme sanctions unrelated to the sanctionable conduct, and Plaintiffs' decision to raise new arguments on reply prompted additional briefing regarding Defendants' motion for leave to file a surreply. Accordingly, the court imposes monetary sanctions on Defendants in the amount of **$15,000.**

## IV.     CONCLUSION

For the reasons stated above, Plaintiffs' motion for sanctions is **granted in part and denied in part. Defendants shall pay this amount to Plaintiffs' counsel within 14 days of this order.**

**IT IS SO ORDERED.**

Dated: September 12, 2015

_____
                Donna M. Ryu
        United States Magistrate Judge

13