UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>Defendants. | Case No. 13-cv-02219-HSG<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION; DENYING AS MOOT MOTION FOR STAY; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 208, 209 |

Plaintiff True Health Chiropractic, Inc. filed this putative class action on May 15, 2013, alleging that Defendant McKesson Corporation ("McKesson") sent "unsolicited advertisements" by facsimile ("fax") in violation of the Telephone Consumer Protection Act ("TCPA"). *See* Dkt. No. 1. Plaintiff filed a First Amended Complaint on June 20, 2013, Dkt. No. 7, and a Second Amended Complaint ("SAC"), Dkt. No. 90, which added McLaughlin Chiropractic Associates, Inc. as a Plaintiff and McKesson Technologies, Inc. ("MTI") as a Defendant.

Pending before the Court is Plaintiffs' motion for certification of a nationwide class defined as: "[a]ll persons or entities who received faxes from 'McKesson' from September 2, 2009, to May 11, 2010, offering 'Medisoft,' 'Lytec,' or 'Revenue Management Advanced' software or 'BillFlash Patient Statement Service,' where the faxes do not inform the recipient of the right to 'opt out' of future faxes." Dkt. No. 209 ("Mot.") at 1. Defendants filed an opposition to that motion, Dkt. No. 220 ("Opp."), and Plaintiffs filed a reply, Dkt. No. 221 ("Reply").

The Court has carefully considered the arguments presented by the parties, both in their submissions to the Court and during oral argument, and for the reasons discussed below, DENIES Plaintiffs' motion for class certification.

## I. BACKGROUND

The SAC alleges that Defendants violated the TCPA by sending "unsolicited advertisements" by fax. SAC ¶¶ 1-2. Plaintiffs contend that they had not invited or given permission to Defendants to send the faxes, SAC ¶¶ 14-18, but that even assuming the faxes were sent pursuant to a recipient's express permission or an "established business relationship," the requisite "opt-out notice" was absent, *id.* at ¶¶ 33-34.

The parties agree that there are approximately 11,979 unique fax numbers at issue. Dkt. No. 209-3; Dkt. No. 220-18.

## II. CLASS CERTIFICATION STANDARD

Federal Rule of Civil Procedure 23 governs class actions, including the issue of class certification. A plaintiff "bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("A party seeking class certification must affirmatively demonstrate [her] compliance with the Rule.").

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). "Further, while Rule 23(a) is silent as to whether the class must be ascertainable, courts have held that the Rule implies this requirement as well." *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1178 (N.D. Cal. 2013); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) (holding that a class "must be adequately defined and clearly ascertainable before a class action may proceed").

If the four prerequisites of Rule 23(a) are met, a court also must find that the plaintiff

"satisf[ies] through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Plaintiffs assert that they meet the requirements of both Rule 23(b)(2) and 23(b)(3). Rule 23(b)(2) provides for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) applies where there is "predominance" and "superiority": "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## III.    DISCUSSION

Plaintiffs seek certification under either Rule 23(b)(2) or 23(b)(3). The Court finds certification under either rule inappropriate.

### A.    TCPA Provisions Applicable to Faxes

The TCPA provides that it shall be unlawful for any person:

> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--
>
>   (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
>
>   (ii) the sender obtained the number of the telephone facsimile machine through--
>
>     (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or
>
>     (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,
>
>   except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and
>
>   (iii) the unsolicited advertisement contains a notice meeting

3

> the requirements under paragraph (2)(D),
>
> except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E)[.]

47 U.S.C. § 227(b)(1)(C). The statute defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." § 227(a)(5).

### B.     Certification under Rule 23(b)(2)

Defendants argue that Plaintiffs' attempt to certify an "injunction-only" class under Rule 23(b)(2) must fail because the TCPA provides for individualized monetary damages to class members. *See* Opp. at 24; *Dukes*, 131 S.Ct. at 2557 ("[Rule 23(b)(2)] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."). Several courts have considered *Dukes* in the context of a TCPA claim and held that the individual monetary awards provided by the statute foreclose the certification of a 23(b)(2) class. *See Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013) (holding the availability of statutory damages renders "Plaintiffs' TCPA claims . . . ineligible for Rule 23(b)(2) certification" (citing *Dukes*, 131 S.Ct. at 2557)); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 516 (E.D. Wis. 2014) ("[P]ermitting certification under Rule 23(b)(2) in TCPA cases would impermissibly allow the monetary tail to wag[ ] the injunction dog." (internal quotation marks omitted) (citing *Dukes*, 131 S.Ct. at 2557)); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) (same).

Given that each plaintiff is independently entitled to statutory damages under the TCPA, and that Plaintiffs expressly seek "actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation," *see* SAC ¶ 39, the Court finds certification under Rule 23(b)(2) impermissible. *See Dukes*, 131 S.Ct. at 2557 (holding that certification is improper for claims for "individualized relief," including claims that entail an "individualized award of

monetary damages").[1]

### C. Certification under Rule 23(b)(3)

The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Accordingly, the predominance analysis "focuses on the relationship between the common and individual issues in the case." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (internal quotation marks omitted); *see also In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) ("Whether judicial economy will be served in a particular case turns on close scrutiny of the relationship between the common and individual issues." (internal quotation marks omitted)).

Undertaking the predominance analysis requires some inquiry into the merits, as the Court must consider "how a trial on the merits would be conducted if a class were certified." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (internal quotation marks omitted); *see also Zinser*, 253 F.3d 1180, 1189-90 (noting that district courts must consider as part of the predominance analysis whether a manageable class adjudication can be conducted); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (finding predominance "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication" (internal quotation marks omitted)); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (same).

Here, Defendants argue that Plaintiffs cannot establish predominance because individual issues regarding prior express permission predominate over any common issues of fact. Defendants have provided evidence demonstrating that such individualized inquiries will be necessary. For example, Defendants' former sales representative Jeffrey Paul explained that he would have "numerous conversations with customers over the phone on a daily basis" and that it

---

[1] The Ninth Circuit affirmed the district court's provisional certification of a Rule 23(b)(2) class in *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012). Although *Meyer* was a TCPA class, the Court finds *Meyer* does not dictate a different outcome here. Unlike the facts in *Meyer* where it appears plaintiffs sought only injunctive relief, here Plaintiffs explicitly seek individualized monetary relief. Thus, under *Dukes*, Rule 23(b)(2) certification would be impermissible.

5

1  "was commonplace for customers to ask [him] . . . to send them information by fax, including
2  information on promotions." Dkt. No. 220-1 ¶¶ 2-4. Like other sales representatives working
3  with him, Paul's "long-standing relationships and dealings with customers" allowed him to
4  become "familiar with [his] customers' communications preferences." *Id.* at ¶¶ 4-6; *see also* Dkt.
5  No. 220-15 at 4 ("[B]ecause of these longstanding and well developed relationships, PPS sales
6  representatives would learn and know that a particular customer exclusively preferred to receive
7  faxes over, for example, emails."). Relying on these individualized communications and
8  relationships, representatives would send faxes as requested. Dkt. No. 220-1 at ¶ 3-4.

9  Another member of the sales team, Kari Holloway, *see* Dkt. No. 210-3 at 5, testified that
10  "customers would request a lot of information via fax," and that she and other sales team members
11  would send faxes either "in a bulk communication or a one-by-one fax," Dkt. No 220-13 at 5. She
12  explained that they would send faxes to existing customers based on their communications with
13  each fax recipient. *Id*. Customers would make specific requests for faxes "through oral
14  conversations," and the "sales representatives had a decent handle on who their customers were. . .
15  [and] the ways they would like to be communicated with." *Id.* at 6-7.

16  Moreover, Defendants' interrogatory responses list additional ways Defendants say they
17  obtained prior express permission to send faxes. Some customers may have given permission by
18  providing their fax numbers during the registration process. Dkt. No. 220-15 at 3. Others
19  allegedly gave permission by checking a box during "their software registration that indicated
20  their express permission to be sent faxes as a preferred method of communication." *Id.* at 4. And
21  in some instances, customers completed written consent forms providing express permission to
22  receive faxes. *Id.* Thus, in addition to the individualized oral and email communications sales
23  team members had with customers, Defendants identify several other methods by which customers
24  could have provided permission.

25  Although there are some common issues present, including whether the faxes are
26  advertisements and whether the product registration forms constitute "express permission," the
27  diversity of ways in which Defendants allegedly received permission suggests "that the issue of
28  consent should be evaluated individually, rather than on a classwide basis." *Connelly*, 294 F.R.D.

at 578. The facts underlying the issue of "express permission" here are unlike cases in which consent was received through uniform means, thus facilitating generalized determinations under the law. *Compare Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 688 (S.D. Fla. 2013) (finding putative class members "went through the same or similar admissions process, during which they provided their phone numbers" and thus, the class "will prevail or lose together both on their claims and on [d]efendants' affirmative defense of consent")[2], *and Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash. 2007) (finding common issues predominated where defendants "obtained all of the recipients' facsimile numbers from the Manufacturers' News database," thus creating the common issue of "whether the recipients' inclusion in the Manufacturers' News database constitutes express permission to receive advertisements via facsimile") *with Connelly*, 294 F.R.D. at 578 (finding individual issues predominated where defendant argued that class members consented via "the individualized experience that each guest shared with Hilton," including by signing up for the loyalty rewards program over the phone, online, or through a paper application, or by reserving rooms online, over the phone, or through brick-and-mortar travel agencies), *Gannon v. Network Tel. Servs., Inc.*, No. CV 12-9777-RGK PJWX, 2013 WL 2450199, at *2 (C.D. Cal. June 5, 2013) (holding that where defendants provided evidence of varied ways in which class members consented, the class was not ascertainable or identifiable, because significant inquiry as to each individual would be required), *aff'd*, 628 F. App'x 551 (9th Cir. 2016), *and Gene*, 541 F.3d at 329 (noting that because defendant "culled fax numbers from a variety of sources," "individual inquiries of the recipients are necessary to sort out which transmission was consented to" and thus "class-wide proof of consent is not possible").

While the issue of whether any class member *actually* granted permission is not before the Court at this stage of litigation, the Court is required to determine at the class certification stage

---

[2] Unlike in this case, the plaintiffs in *Manno* expressly excluded "those individuals who had ***any communications*** with [defendant] prior to being called" from the class definition. 289 F.R.D. at 689-90 (emphasis in original). This approach conclusively eliminated the need for any individualized inquiry regarding consent.

7

"whether the issue of consent is a common issue with a common answer that predominates over any individual issues." *Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 630 (S.D. Cal. 2015). Defendants have presented sufficient evidence to establish that this Court would need to make detailed factual inquiries regarding whether each fax recipient granted prior express permission. And significantly, Plaintiffs have not offered their own satisfactory method of establishing a lack of "express permission" via class-wide proof. *See Zinser*, 253 F.3d at 1186 (party seeking class certification has the burden of meeting the class certification requirements); *Gene*, 541 F.3d at 328 (holding that plaintiff had not met its burden to show that the class certification requirements were satisfied where plaintiff failed to offer a "sensible method of establishing consent or lack thereof via class-wide proof"). This remains equally true whether the lack of consent is an element of a TCPA claim (as Defendants argue) or the presence of consent is an affirmative defense under the TCPA (as Plaintiffs claim). *See Gene*, 541 F.3d at 327 ("Whether established by [defendant] as an affirmative defense or by [plaintiff] as an element of the cause of action, the issue of consent will entirely determine how the proposed class-action trial will be conducted on the merits.").

Moreover, the Federal Communications Commission's ("FCC") grant of a retroactive waiver to Defendants does not affect this outcome. The waiver stems from a FCC regulation that requires even solicited faxes to include opt-out notice. *See* 47 C.F.R. § 64.1200(a)(3)(iv); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 FR 25967-01, 25972 ("[E]ntities that send facsimile advertisements to consumers from whom they obtained permission must include on the advertisements their opt-out notice and contact information to allow consumers to stop unwanted faxes in the future."). In August 2015, the agency retroactively excused Defendants from providing opt-out notice in faxes sent with prior express permission before April 30, 2015. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 8598, 8613 (2015) ("Waiver Order").

As a threshold matter, the Court notes that its consideration of the waiver does not violate separation of powers. Whereas the statute on its face pertains to *unsolicited* advertisements, the waiver relates only to *solicited* faxes, and stems directly from the agency's regulation of solicited

8

1  faxes. Because the waiver's scope is unrelated to Defendants' alleged liability for problems with
2  unsolicited faxes, there is no retroactive release of *statutory* liability and thus no potential
3  separation of powers issue. Accordingly, assuming *arguendo* that the FCC's promulgation of the
4  regulation regarding solicited faxes was proper (notwithstanding the statute's facial limitation to
5  unsolicited faxes), the FCC also must have authority "to determine when and how to apply [that]
6  regulation, and to waive it for good cause." *See Bais Yaakov of Spring Valley v. Graduation
7  Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693, at *5 (S.D.N.Y. Mar. 29, 2016); *see
8  also Simon v. Healthways, Inc.*, No. CV1408022BROJCX, 2015 WL 10015953, at *6–7 (C.D.
9  Cal. Dec. 17, 2015) (analyzing FCC waiver in denying motion for class certification in TCPA case
10 involving faxes). The regulations provide that the FCC may waive any provision of the rules if
11 good cause exists, *see* 47 C.F.R. § 1.3, and that is exactly what the FCC has done through its grant
12 of waiver.

13  Turning to the waiver's impact on certification, the Court finds that because the waiver
14 does not confirm or deny whether Defendants had express permission or invitation to send the
15 faxes, it does not resolve the predominance problem here. *See* Waiver Order at 8610 (stating that
16 the question of express permission "remains a question for triers of fact in the private litigation").
17 The waiver applies only once there is a determination that Defendants sent solicited faxes, and the
18 Court therefore still would have to conduct the numerous individual inquiries described above to
19 determine which advertisements were "solicited" and thus fall within the waiver's scope.

20  Because Plaintiffs have failed to satisfy the predominance requirement, the Court finds a
21 class action would not be superior to other methods for fairly and efficiently adjudicating the
22 controversy. Therefore, certification is improper under Rule 23(b)(3).

## IV. CONCLUSION

In light of the foregoing, the Court DENIES Plaintiffs' motion for class certification, Dkt. No. 209. The Court also DENIES Defendants' motion for a stay as moot, Dkt. No. 208.

//

//

9

United States District Court
Northern District of California

1    The Court sets a case management conference for Tuesday, September 6, 2016 at 2:00 p.m.
2  The parties should be prepared to discuss case scheduling at the hearing.
3    **IT IS SO ORDERED.**
4  Dated: 8/22/2016

        _____
        HAYWOOD S. GILLIAM, JR.
        United States District Judge