**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC, INC.; MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC., individually and as representatives of a class of similarly situated persons,<br>            *Plaintiffs-Appellants*,<br><br>v.<br><br>MCKESSON CORPORATION; MCKESSON TECHNOLOGIES, INC.,<br>            *Defendants-Appellees.* | No. 16-17123<br><br>D.C. No.<br>4:13-cv-02219-HSG<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted October 17, 2017
San Francisco, California

Filed July 17, 2018

Before:  Michael Daly Hawkins, William A. Fletcher,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Telephone Consumer Protection Act / Class Certification

The panel affirmed in part and reversed in part the district court's denial of class certification in an action under the Telephone Consumer Protection Act.

Appellants sought to represent a class of plaintiffs who allegedly received unsolicited faxed advertisements from defendants in violation of the TCPA. The district court denied class certification on the ground that under Fed. R. Civ. P. 23(b)(3), individual issues related to affirmative defenses would predominate over issues common to the class. These "consent defenses" alleged that putative class members in various ways gave defendants "prior express invitation or permission" to send the faxes.

The panel concluded that the district court did not impose an "ascertainability" or administrative feasibility requirement for class certification. Agreeing with the Sixth Circuit, the panel held that there is no requirement that all faxes, whether consented or not, must contain an "opt-out" notice because the FCC's Solicited Fax Rule has been held invalid by the D.C. Circuit.

The panel nonetheless concluded that the district court erred in part in holding that appellants' proposed class or subclasses failed to satisfy the predominance requirement of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Rule 23(b)(3).  The panel held that in light of *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (holding that "express consent" is an affirmative defense to a claim brought under 47 U.S.C. § 227(b)(1)(A), a provision of the TCPA dealing with unsolicited telephone calls), "prior express invitation or permission" under § 227(b)(1)(C) is an affirmative defense on which the defendant bears the burden of proof.  The panel affirmed the district court's denial of class certification with respect to one possible subclass and reversed the district court's holding that other possible subclasses could not satisfy the predominance requirement. The panel held that one subclass would satisfy predominance, and it remanded for a determination whether another subclass would also satisfy the requirement.  The panel also remanded to allow the district court to address the requirements of Rule 23(a).

---

## COUNSEL

Glenn L. Hara (argued), Anderson and Wanca, Rolling Meadows, Illinois; Willem F. Jonckheer, Schubert Jonckheer & Kolbe LLP, San Francisco, California; for Plaintiffs-Appellants.

Joseph R. Palmore (argued) and Seth W. Lloyd, Morrison & Foerster LLP, Washington, D.C.; Ben Patterson and Tiffany Cheung, Morrison & Foerster LLP, San Francisco, California; for Defendants-Appellees.

---

## OPINION

W. FLETCHER, Circuit Judge:

Appellants True Health Chiropractic and McLaughlin Chiropractic ("True Health") seek to represent a class of plaintiffs who allegedly received unsolicited faxed advertisements from appellees McKesson Corporation and McKesson Technologies, Inc. ("McKesson") between September 2009 and May 2010, in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"). The district court denied class certification on the ground that individual issues related to McKesson's affirmative defenses would predominate over issues common to the class. *See* Fed. R. Civ. P. 23(b)(3). We granted True Health's request for permission to appeal the order pursuant to Federal Rule of Civil Procedure 23(f). We affirm in part, reverse in part, and remand.

### I. Background

#### A. True Health's TCPA Claim

The TCPA forbids certain unsolicited advertisements sent via phone or facsimile ("fax"). 47 U.S.C. § 227(b)(1). In enacting the TCPA, "Congress intended to remedy a number of problems associated with junk faxes, including the cost of paper and ink, the difficulty of the recipient's telephone line being tied up, and the stress on switchboard systems." *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015). The TCPA makes it unlawful to send "unsolicited advertisement[s]" via fax machine. 47 U.S.C. § 227(b)(1)(C). An advertisement is unsolicited if it includes "any material advertising the commercial availability or quality of any

property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5). But unsolicited advertisements may be sent if (1) the sender and recipient have "an established business relationship," (2) the recipient voluntarily provided his or her contact information to the sender either directly or indirectly through "a directory, advertisement, or site on the Internet," and (3) the "unsolicited advertisement contains" an opt-out notice meeting certain statutory requirements. *Id.* § 227(b)(1)(C)(i)–(iii). In 2006, the Federal Communications Commission ("FCC") promulgated a regulation requiring that companies include opt-out notices in solicited as well as unsolicited advertisements (the "Solicited Fax Rule"). 47 C.F.R. § 64.1200(a)(4)(iv). Eleven years later, the D.C. Circuit held the Solicited Fax Rule invalid. *See Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017).

True Health's Second Amended Complaint ("SAC") alleges that McKesson sent to named plaintiffs and other putative class members unsolicited fax advertisements without their prior express permission or invitation, and without opt-out notices, in violation of 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4)(iv). According to the SAC, McKesson sent the faxes at issue after having received a May 9, 2008, citation from the FCC warning it against sending unsolicited advertising by fax. The citation stated, "It has come to our attention that your company . . . apparently sent one or more unsolicited advertisements to telephone facsimile machines in violation of Section 227(b)(1)(C) of the [TCPA]." In its answer to the SAC, McKesson alleged that True Health and other putative class members in various ways gave McKesson "prior express

invitation or permission" to send the faxes. 47 U.S.C. § 227(a)(5). For ease of reference, we will refer to this as McKesson's "consent defenses."

## B. Discovery

During discovery, True Health requested that McKesson produce "[a]ll Documents indicating that any person gave prior express invitation or permission to receive facsimile transmissions of any [McKesson advertisements]." True Health also asked McKesson to identify "each type of act that Defendants believe demonstrates a recipient's express permission to receive faxes" and to list which class members consented in each of the ways identified.

McKesson responded by listing three groups of consent defenses that it claimed relieved it of TCPA liability. McKesson attached to its response three exhibits, which corresponded to the three groups of asserted consent defenses, listing putative class members who purportedly consented in the specified manners. According to McKesson, each exhibit contains the "name and contact information (where available)" of faxes for each asserted consent defense. The exhibits are not in the record, but McKesson described the consent defenses it asserted against the putative class members in each exhibit.

Exhibit A lists putative class members that, according to McKesson, (1) provided their fax numbers when registering a product purchased from Physician Practice Solutions ("PPS"), a business unit of McKesson Technologies, and/or (2) entered into software-licensing agreements, called End User License Agreements ("EULAs"). Exhibit A, which

contains 11,979 unique fax numbers, lists all of the putative class members on whose behalf True Health brings suit.

Exhibit B, a subset of Exhibit A, lists putative class members that, according to McKesson, (1) "check[ed] a box during their software registration that indicated their express permission to be sent faxes as a preferred method of communication to receive promotional information," (2) "complete[d] a written consent form whereby they further provided their express permission to receive faxes," and/or (3) "confirm[ed]," via phone, "that they would like to continue to receive faxes and/or would like to change their communication method preferences" during an "outreach program to update contact information of certain preexisting customers."  The putative class members listed in Exhibit B were identified "based on information currently residing in [a PPS internal database]."  McKesson stated that Exhibit B may not list every putative class member that consented in the specified ways:  "Other recipients of those faxes may have also indicated consent through one or more of the methods described above before receiving such faxes, but limitations of the database do not allow Defendants to identify those specific customers without individualized inquiries."  Exhibit B lists 2,701 unique fax numbers.

Exhibit C, another subset of Exhibit A, lists putative class members that, according to McKesson, gave consent in individual "oral or email" communications with McKesson sales representatives.  McKesson stated,

> "Often, because of . . . long-standing and well developed relationships, PPS sales representatives would learn and know that a particular customer exclusively preferred to

> receive faxes over, for example, emails.
> Other times, PPS sales representatives would
> notate that customer's preference for faxes by
> making a note that might be linked to the
> [PPS internal database].   .   .   .   In some
> instances, customers specifically requested
> that they receive promotional information
> exclusively via fax."

McKesson stated further, as it did with respect to Exhibit B, that Exhibit C may not list every putative class member that consented in the specified ways:  "Other recipients of those faxes may have also indicated invitation or permission through oral communications with their PPS representatives, and individualized inquiries must be conducted to specifically identify those customers."   Exhibit C lists fifty-five unique fax numbers.

Regarding Exhibit C, McKesson submitted a declaration from sales representative Jeffery Paul and deposition excerpts of former sales representative Kari Holloway.  Mr. Paul stated in his declaration that he "became familiar with [his] customers and . . . how to communicate with them[,]" and claimed that "[m]any customers specifically asked [him] to send them faxes instead of using alternative ways to communicate, such as emails."  He further stated that "[i]t was commonplace for customers to ask [him] on a daily basis to send them information by fax, including information on promotions or upgrades[,]" and that "[c]ustomers specifically asked [him] to fax them information on discounts, promotions, and/or upgrades when available[.]"    Ms. Holloway stated in her deposition, "Our existing customers oftentimes would request us to send faxes specifically."  She also claimed, "The sales representatives had a decent handle

on who their customers were.  It wasn't an enormous number so they knew the people and they knew the ways they would like to be communicated with."

## C. Denial of Class Certification

True Health moved under Rule 23(b)(3) to certify the class of "[a]ll persons or entities who received faxes from 'McKesson' from September 2, 2009, to May 11, 2010, offering [certain McKesson services], where the faxes do not inform the recipient of the right to 'opt out' of future faxes." McKesson opposed the motion, contending, *inter alia*, that the proposed class did not satisfy the Rule 23(b)(3) predominance requirement, given that the consent defenses available against putative class members listed in Exhibits A, B, and C could not be resolved without individualized inquiries.  True Health argued that the predominance requirement was met for the entire putative class, but requested in the alternative that the district court certify subclasses.  At oral argument on the motion for class certification, the district court raised sua sponte the possibility of dividing the class into three subclasses, each corresponding to the putative class members in Exhibits A, B, and C.

The district court denied class certification, holding that individual issues in McKesson's various consent defenses defeated predominance under Rule 23(b)(3).  The court's order did not address True Health's request for subclasses. True Health appealed.[1]

---

[1] True Health also moved for certification under Rule 23(b)(2). The district court denied the motion.  True Health does not appeal that ruling.

## II. Standard of Review

We review orders denying class certification as well as the underlying factual determinations for abuse of discretion. *Jimenez v. Allstate Ins. Co*., 765 F.3d 1161, 1164 (9th Cir. 2014) (citing *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1066 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017)); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)).  A district court abuses its discretion when it applies the wrong legal standard. *Jimenez*, 765 F.3d at 1167 (citing *Levya v. Medline Indust., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).  We review de novo the district court's application of the law to the facts.  *Mazza*, 666 F.3d at 588 (citing *United States v. Hinkson*, 585 F.3d 1247, 1259 (9th Cir. 2009) (en banc)).

## III.  Discussion

True Health makes three arguments on appeal.  First, it argues that the district court erred in applying an "ascertainability" requirement.  Second, it argues that an opt-out notice is required for all faxes, both solicited and unsolicited, and that the district court erred in holding otherwise.  Third, it argues that the district court erred in holding that True Health's proposed class or subclasses fail to satisfy the "predominance" requirement of Rule 23(b)(3). We disagree with the first two arguments but agree with the third.  We discuss them in turn.

### A.  Ascertainability

True Health argues that the district court erred in imposing an ascertainability requirement for class certification in violation of *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124–25 (9th Cir. 2017).  True Health's argument fails.

In its order denying class certification, the district court observed in passing that some courts have read an ascertainability requirement into Rule 23.  It later noted in a parenthetical that another district court had denied certification, in part, on ascertainability grounds.  Neither of these references to ascertainability show that the district court ascribed to the view that a class must be ascertainable, much less that the court applied such a requirement in this case.

Nor did the court violate *Briseno*.  In *Briseno*, the defendant argued that a class must be "ascertainable" to be certified under Rule 23.  *Briseno*, 844 F.3d at 1124.  We understood defendant's argument to be that identification of class members must be "administratively feasible[.]" *Id.* at 1133.  We held that there is no free-standing requirement above and beyond the requirements specifically articulated in Rule 23.  *Id.*  The district court's order in this case does not impose an administrative-feasibility requirement.

### B.  The Solicited Fax Rule

True Health argues that under the FCC's Solicited Fax Rule, 47 C.F.R. § 64.1200(a)(4)(iv), both solicited and unsolicited faxes are subject to the "opt-out" notice requirement of 47 U.S.C. § 227(b)(1)(C)(iii).  That is, True Health argues that under the Solicited Fax Rule all

faxes—whether consented or not—must contain such a notice. If True Health is right, variations in the manner in which members of the proposed class may have given consent are irrelevant in determining McKesson's failure to include opt-out notices in its faxes, and therefore such variations are irrelevant to a determination of predominance under Rule 23(b)(3).

True Health's argument fails because the Solicited Fax Rule has been held invalid by the D.C. Circuit. The FCC promulgated the Solicited Fax Rule in 2006. The FCC then issued an order in 2014 interpreting the Solicited Fax Rule. *See* Order, *Petitions for Declaratory Ruling, Waiver, and/or Rulemaking Regarding the Commission's Opt-Out Requirement for Faxes Sent with the Recipient's Prior Express Permission*, 29 FCC Rcd. 13,998 (2014). In *Bais Yaakov*, the D.C. Circuit vacated the 2014 FCC order on the ground that the underlying Solicited Fax Rule was invalid: "We hold that the FCC's 2006 Solicited Fax Rule is unlawful to the extent that it requires opt-out notices on solicited faxes." 852 F.3d at 1083.

In *Bais Yaakov*, the D.C. Circuit decided multiple petitions for review that had been consolidated and transferred by the Judicial Panel on Multidistrict Litigation ("JPML"). *See Sandusky Wellness Ctr. v. ASD Specialty Healthcare*, 863 F.3d 460, 467 (6th Cir. 2017) (describing procedural history of *Bais Yaakov*). When the JPML consolidates challenges to an agency regulation and transfers them to a court of appeals, the court to which they are transferred becomes "the sole forum for addressing . . . the validity of the FCC's rules." *MCI Telecomms. Corp. v. U.S. W. Commc'ns*, 204 F.3d 1262, 1267 (9th Cir. 2000) (quoting *GTE S., Inc. v. Moirrison*, 199 F.3d 733, 743 (4th Cir. 1999)).

The decision of that court is then binding on all circuits. *See Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008).

True Health argues that *Bais Yaakov*'s holding—that the Solicited Fax Rule is invalid—is not binding on us because the FCC's 2006 Solicited Fax Rule was not directly under review. True Health does not challenge the authority of the court in *Bais Yaakov* to invalidate the Solicited Fax Rule in the course of reviewing the FCC's 2014 order, but it argues that the only part of *Bais Yaakov* binding on this court was its ruling vacating the 2014 order.

Plaintiff Sandusky Wellness Center, represented by the same counsel as True Health in this case, made essentially the same argument to the Sixth Circuit last year. *See Sandusky*, 863 F.3d at 467–68. The Sixth Circuit disagreed with the argument, and so do we. It is, of course, true that *Bais Yaakov* reviewed a 2014 FCC order. But the validity of the 2014 order depended on the validity of the 2006 Solicited Fax Rule, and the court in *Bais Yaakov* squarely held that the underlying Solicited Fax Rule was invalid. We agree with the reasoning of the Sixth Circuit and hold that we are bound by *Bais Yaakov*.[2]

---

[2] In a separate 2015 order, the FCC retroactively waived the Solicited Fax Rule for more than one hundred companies, including McKesson. *See* Order, *Petitions for Declaratory Ruling and Retroactive Waiver of 47 C.F.R. § 64.1200(a)(4)(iv) Regarding the Commission's Opt-Out Notice Requirement for Faxes Sent with the Recipient's Prior Express Permission*, 30 FCC Rcd. 8598, 8598, 8613 (2015). Because we hold that we are bound by the D.C. Circuit's decision holding that the Solicited Fax Rule is invalid, we do not address the parties' arguments concerning the effect of the 2015 FCC order.

## C. Predominance

Finally, in the event that its Solicited Fax Rule argument is rejected, True Health argues that the district court abused its discretion in holding that McKesson's consent defenses foreclosed a finding of predominance under Rule 23(b)(3). Specifically, True Health argues that the district court erred in not certifying subclasses.

As a preliminary matter, McKesson argues that True Health has "forfeited" any argument that the district court should have certified subclasses. According to McKesson, "Plaintiffs . . . did not even make a cursory attempt" to "satisfy [their] burden" to "show that any proposed subclass complies with [the] requirements [of Rule 23]." We disagree.

"Although no bright line rule exists to determine whether a matter has been properly raised below, an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1193 (9th Cir. 2016) (en banc) (quoting *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010)) (internal alteration omitted). In its motion for class certification, True Health argued, assuming the failure of its Solicited Fax Rule argument, that subclasses should be certified. True Health wrote,

> "Defendants' claims for prior express permission can easily be decided through creation of subclasses. For example, . . . Defendants admit their claim of express permission with respect to 39,495 transmission to 7,760 fax numbers is that they obtained permission in software-registration

> forms. The Court can easily decide whether listing a fax number on a software-registration form constitutes 'prior express permission' to receive fax advertisements at that number." (Citations omitted.)

Combined with the discussion of subclasses that took place during oral argument below, this was enough to alert the court that subclasses were sought, to indicate how they might be defined, and to preserve the issue for appeal.

When certification is sought for a litigation class, the predominance inquiry under Rule 23(b)(3) asks whether "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication[.]" *Mazza.*, 666 F.3d at 589 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). The common questions must have the "capacity . . . to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) (emphasis omitted). Defenses that must be litigated on an individual basis can defeat class certification. *Id.* at 367. Yet "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as . . . some affirmative defenses peculiar to some individual class members.' " *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1778, at 123–24 (3d ed. 2005)). The party seeking class certification has the burden of establishing

predominance. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011) (citing *Zinser*, 253 F.3d at 1186).

### 1. Burden of Proof on Consent

We begin with the question whether True Health or McKesson bears the burden of proof on the issue of consent. While the appeal in this case was pending, we decided *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017). There, we held that "express consent" is an affirmative defense to a claim brought under a provision of the TCPA dealing with unsolicited telephone calls, and that the defendant bears the burden of proving such consent. *Van Patten*, 847 F.3d at 1044; *see also* 47 U.S.C. § 227(b)(1)(A). Section 227(b)(1)(C), at issue in our case and part of the same section of the TCPA, does not use the term "express consent." But it clearly provides that consent is a defense with respect to faxes, as does § 227(b)(1)(A) with respect to telephone calls. The requirements of § 227(b)(1)(C) apply to "unsolicited" faxes, which are defined as faxes sent "without [the recipient's] prior express invitation or permission." 47 U.S.C. § 227(a)(5). We see no distinction between "express consent" and "prior express invitation or permission" that would affect which party bears the burden of proving consent. We therefore hold that "prior express invitation or permission" is an affirmative defense on which McKesson bears the burden of proof.

Putative class members, of course, retain the burden of showing that the proposed class satisfies the requirements of Rule 23, including the predominance requirement of Rule 23(b)(3). *See Ellis*, 657 F.3d at 979–80. But the burden of proving consent strongly affects the analysis. Since McKesson bears the burden, we assess predominance by

analyzing the consent defenses McKesson has actually advanced and for which it has presented evidence. A defendant can produce evidence of a predominance-defeating consent in a variety of ways. *See, e.g.*, *Sandusky Wellness.*, 863 F.3d at 468–70. But we do not consider the consent defenses that McKesson might advance or for which it has presented no evidence. *See Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 80 (2017) ("We are unwilling to allow such 'speculation and surmise to tip the decisional scales in a class certification ruling[.]' " (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)) . The consent defenses that McKesson has advanced and for which it has provided supporting evidence may be sufficiently similar or overlapping to allow True Heath to satisfy the predominance requirement of Rule 23(b)(3) with respect to those defenses. If so, a class or subclass of plaintiffs to whom such defenses apply may be certified, provided of course that the other requirements of Rule 23 are also satisfied.

## 2. Subclasses

True Health argues that three subclasses comprising the putative class members identified in Exhibits A, B, and C satisfy the predominance requirement of Rule 23(b)(3). We agree as to part of Exhibit A; we disagree as to Exhibit C; and we remand as to Exhibit B.

Exhibit A lists all putative class members, including those listed in Exhibits B and C. Their claims are based on faxes sent to 11,979 unique fax numbers. If we remove from Exhibit A all putative class members listed in Exhibits B and C, McKesson has asserted only two consent defenses. First, McKesson asserts that some of the remaining putative class

members gave consent by providing their fax numbers when registering a product purchased from a subdivision of McKesson. Second, McKesson asserts that some of them gave consent by entering into software-licensing agreements, or EULAs. We have examples of product registrations and EULAs in the record. McKesson has provided no further evidence relevant to these two defenses.

So far as the record shows, there is little or no variation in the product registrations and the EULAs. For both of these asserted defenses, the predominance requirement of Rule 23(b)(3) is therefore satisfied. Consent, or lack thereof, is ascertainable by simply examining the product registrations and the EULAs. We therefore conclude that the claims of the putative class members listed in Exhibit A that remain after removing the claims in Exhibits B and C satisfy the predominance requirement of Rule 23(b)(3).

Exhibit C lists putative class members whose claims are based on faxes sent to fifty-five unique fax numbers. McKesson provided evidence in the district court that its consent defenses to these claims would be based on individual communications and personal relationships between McKesson representatives and their customers. The variation in such communications and relationships, as evidenced by the declaration of Mr. Paul and deposition testimony of Ms. Holloway, is enough to support denial of class certification under Rule 23(b)(3) for the putative class members listed in Exhibit C.

Exhibit B lists putative class members whose claims are based on faxes sent to 2,701 unique fax numbers. McKesson asserts several different consent defenses against these putative class members. First, McKesson asserts that some

putative class members listed in Exhibit B gave consent by "check[ing] a box during their software registration that indicated their express permission to be sent faxes as a preferred method of communication to receive promotional information." Second, McKesson asserts that some of them gave consent by "complet[ing] a written consent form whereby they further provided their express permission to receive faxes." Third, McKesson asserts that some of them gave consent by "confirm[ing]," via phone, "that they would like to continue to receive faxes and/or would like to change their communication method preferences" during an "outreach program to update contact information of certain preexisting customers."

It is possible that some or all of the putative class members in Exhibit B satisfy the predominance requirement. For example, the putative class members against whom the first defense would be asserted—those who "check[ed] a box during their software registration"—may be indistinguishable from those class members listed in Exhibit A who assertedly gave consent during product registration. If so, their claims would satisfy the predominance requirement of Rule 23(b)(3). Further, the claims of class members who assertedly gave consent by "complet[ing] a written consent form" may also satisfy the predominance requirement. Given the somewhat unclear state of the record, and given that the district court has not had an opportunity to address class certification in light of our intervening decision in *Van Patten*, we view these and other issues related to Exhibit B as best addressed in the first instance by the district court on remand.

## Conclusion

On the current record, we affirm in part, reverse in part, and remand.  We affirm the district court's denial of class certification with respect to a possible subclass of the putative class members with the fifty-five unique fax numbers in Exhibit C.  We reverse the district court's holding that the other possible subclasses cannot satisfy the predominance requirement of Rule 23(b)(3).  We hold that the subclass of putative class members with 9,223 unique fax numbers that would be created by taking out of Exhibit A the putative class members listed in Exhibits B and C would satisfy the predominance requirement of Rule 23(b)(3).  We remand for a determination by the district court whether the claims and defenses applicable to some or all of the class of putative class members with 2,701 unique fax numbers listed in Exhibit B would satisfy the predominance requirement of Rule 23(b)(3).  Finally, we remand to allow the district court to address the requirements of Rule 23(a), which the court did not reach in its earlier decision.  We leave it to the district court, in its discretion, to allow supplementation of the record in light of *Van Patten* and this opinion.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

The parties shall bear their own costs.