1  ROBERT C. SCHUBERT (S.B.N. 62684)
   WILLEM F. JONCKHEER (S.B.N. 178748)
2  **SCHUBERT JONCKHEER & KOLBE LLP**
   Three Embarcadero Center, Suite 1650
3  San Francisco, CA 94111
4  Telephone: (415) 788-4220
   rschubert@schubertlawfirm.com
5  wjonckheer@schubertlawfirm.com

6  BRIAN J. WANCA (admitted *pro hac vice*)
   GLENN L. HARA (admitted *pro hac vice*)
7  RYAN M. KELLY (admitted *pro hac vice*)
   ROSS M. GOOD (admitted *pro hac vice*)
8  **ANDERSON & WANCA**
9  3701 Algonquin Road, Suite 500
   Rolling Meadows, IL 60008
10 Telephone: (847) 368-1500
   bwanca@andersonwanca.com
11 ghara@andersonwanca.com
   rkelly@andersonwanca.com
12 rgood@andersonwanca.com

13 *Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC, INC., and MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC., individually and as the representative of a class of similarly-situated persons,<br><br>            Plaintiffs,<br>    v.<br><br>MCKESSON CORPORATION, MCKESSON TECHNOLOGIES, INC., and JOHN DOES 1-10,<br><br>            Defendants. | No. 4:13-cv-02219-HSG<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING *PDR NETWORK*** <br><br>Hon. Judge Haywood S. Gilliam, Jr. |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................2

I.      The FCC's interpretations of the TCPA are "interpretive rules."....................................2

II.     There is no Supreme Court authority precluding the Court from following Justice Kavanaugh's concurrence, but pre-*PDR Network* Ninth Circuit authority is unclear ....................................................................................3

III.    Regardless of how the Court decides Issues One and Two, all of Defendants' faxes were sent to "telephone facsimile machines" under 47 U.S.C.§ 227(a)(3)................................................................................................7

CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*AT Massey Coal Co. v. Holland*,
  472 F.3d 148 (4th Cir. 2006) ................................................................................................12

*Batterton v. Francis*,
  432 U.S. 416 (1977) ................................................................................................................3

*Brigham v. Eugene Water & Elec. Bd.*,
  357 F.3d 931 (9th Cir. 2004) ................................................................................................10

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ..............................................................................................2, 6, 7, 10

*Christensen v. Harris Cty.*,
  529 U.S. 576 (2000) ..............................................................................................................10

*Chugach Natives, Inc. v. Doyon, Ltd.*,
   588 F.2d 723 (9th Cir. 1978) ................................................................................................9

*EEOC v. Arabian Am. Oil Co.*,
  499 U.S. 244 (1991) ..............................................................................................................10

*FCC v. ITT World Commcn's, Inc.*,
  466 U.S. 463 (1984) ...........................................................................................................4, 5

*Golan v. FreeEats.Com, Inc.*,
  930 F.3d 950 (8th Cir. 2019) ................................................................................................10

*Gonzales v. Oregon*,
  546 U.S. 243 (2006) ..............................................................................................................10

*Gorss Motels, Inc. v. Safemark Sys., LP*,
  931 F.3d 1094 (11th Cir. 2019) ..............................................................................................6

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols.*,
  2010 WL 9446806 (C.D. Cal. Oct. 1, 2010) ..........................................................................9

 *Kihn v. Bill Graham Archives, LLC*,
  2020 WL 1820708 (N.D. Cal. Apr. 10, 2020) ........................................................................9

# **TABLE OF AUTHORITIES**

**Cases**

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) ................................................................................................ 3

*Mais v. Gulf Coast Collection Bureau, Inc.*,
    768 F.3d 1110 (11th Cir. 2014) .................................................................................. 6

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ............................................................................. 9, 11

*Nat'l Latino Media Coal. v. FCC*,
    816 F.2d 785 (D.C. Cir. 1987) ................................................................................... 3

*NTCH, Inc. v. FCC*,
    877 F.3d 408 (D.C. Cir. 2017) ................................................................................... 8

*Pauley v. BethEnergy Mines, Inc.*,
    501 U.S. 680 (1991) ................................................................................................ 12

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
    139 S. Ct. 2051 (2019) ..................................................................................... passim

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) .................................................................................................... 2

*Prieto–Romero v. Clark*,
    534 F.3d 1053 (9th Cir. 2008) ................................................................................... 9

*Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*,
    2020 WL 2793954 (E.D. Pa. May 29, 2020) ....................................................... 3, 10

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ........................................................................... passim

*Sierra Club v. United States Nuclear Regulatory Comm'n*,
    862 F.2d 222 (9th Cir. 1988) .................................................................................3, 5

*Skidmore v. Swift Co.*,
    323 U.S. 134 (1944) ....................................................................................... 1, 11-12

*Sorenson v. Secretary of Treasury*,
    475 U.S. 851 (1986) .................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*U.S. W. Commc'ns, Inc. v. Hamilton*,
    224 F.3d 1049 (9th Cir. 2000) ..................................................................................3, 4

*U.S. W. Commc'ns, Inc. v. Jennings*,
    304 F.3d 950 n.2 (9th Cir. 2002) ....................................................................................6

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ......................................................................................................10

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ....................................................................6, 7, 10, 13

*Vietnam Veterans of Am. v. Secretary of the Navy*,
    843 F.2d 528 (D.C. Cir. 1988) .......................................................................................2

*Watt v. Alaska*,
    451 U.S. 259 (1981) ......................................................................................................12

*Wilson v. A.H. Belo Corp.*,
    87 F.3d 393, 400 (9th Cir. 1996) ..................................................................................5

**Statutes**

5 U.S.C. § 703 ...........................................................................................................................4
28 U.S.C. § 2342(1) ..............................................................................................................3, 8
47 U.S.C. § 155(c)(7) ................................................................................................................8
47 U.S.C. § 227(a)(1) ................................................................................................................9
47 U.S.C. § 227(a)(3) ..................................................................................................1, 2, 7, 9
47 U.S.C. § 227(a)(5) ................................................................................................................3
47 U.S.C. § 227(b)(1)(C) ..........................................................................................................9
47 U.S.C. § 227(b)(2). .............................................................................................................10
47 U.S.C. § 227(b)(2)(B) ........................................................................................................10
47 U.S.C. § 227(b)(2)(D)(ii). ..................................................................................................10
47 U.S.C. § 2342(1) ...................................................................................................................7
47 U.S.C. § 2344 ........................................................................................................................7
47 U.S.C. § 402(a) ..............................................................................................................3, 8

**Rules & Regulations**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    10 FCC Rcd. 12391 (FCC Aug. 7, 1995) ................................................................11

*In re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*,
    17 FCC Rcd. 17459 (Pub. Notice Sept. 18, 2002) ...................................................11

# TABLE OF AUTHORITIES

**Rules & Regulations**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    18 FCC Rcd. 14014 (FCC July 3, 2003) .......................................................................... *passim*

*In re WestFax, Inc. Petition for Consideration & Clarification*,
    30 FCC Rcd. 8620 (CGAB Aug. 28, 2015) ............................................................. 1, 10, 11–13

*In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*,
    2019 WL 6712128 (CGAB Dec. 9, 2019) ................................................................ 1, 8, 12–13

Pursuant to the Court's Order (Doc. 384), Plaintiff and Class representative, McLaughlin Chiropractic Associates, Inc., submits this supplemental brief "responding to *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019), as discussed at the hearing" on May 21, 2020.

### **Introduction**

At the May 21, 2020 hearing, the Court asked the parties to address "the impact of the *PDR Network* decision on the statutory-interpretation questions that are posed in this case," with respect to "whether the faxes were received by a telephone facsimile machine and the interpretations that the agency, the FCC, has made over the years" regarding the statutory definition of that term in 47 U.S.C. § 227(a)(3). (Declaration of Glenn L. Hara ("Hara Decl."), Ex. A, Hr'g Tr. at 12).

There are three agency orders at issue: (1) a "final order" of the Commission from 2003 ruling that when a fax is sent to a "computerized fax server" and then forwarded to the end-user's email "inbox," the fax is nevertheless sent "to a telephone facsimile machine," *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14132 ¶¶ 198–201 (FCC July 3, 2003) ("2003 Order"); (2) a 2015 order of the FCC's Consumer & Governmental Affairs Bureau rejecting a request to "clarify" that an "e-fax" is not sent to a "telephone facsimile machine," *see In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620, 8623, ¶ 9 (CGAB Aug. 28, 2015) ("WestFax Order"); and (3) a 2019 order of the Bureau stating that an "online fax service" is not a "telephone facsimile machine." *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, Declaratory Ruling, 2019 WL 6712128 (CGAB Dec. 9, 2019) ("Amerifactors Bureau Order").

The Court raised three questions with respect to these orders in light of *PDR Network*. First, the Court asked the parties to "engage with the standard that Justice Breyer stated" in the *PDR Network* majority opinion regarding the distinction between "interpretive rules" and "legislative rules," in order to "try to categorize the orders that we're talking about so that I can assess them under the framework that is set out in *PDR*." (*Id.* at 12–13). Second, the Court asked the parties "to weigh in on Justice Kavanaugh's concurring point of view and whether the parties believe that some authority that is controlling on me – so Ninth Circuit or Supreme Court authority – would preclude me from going on to consider the question posed in the concurrence," which was whether the Hobbs

Act requires a district court to apply the FCC's interpretation of the TCPA (the question presented but not answered by the majority in *PDR Network*). (*Id.* at 13). Third, the Court asked "where you think the case comes out" depending on the answers to the first two questions, which might be as simple as saying, "if you get away from all of this Hobbs Act entanglement and just say it's a matter of statutory interpretation, then the Court can just start fresh, giving the various agency interpretations over time whatever differential or persuasive weight to which they are entitled." (*Id.*)

As argued below, (1) the FCC's interpretations of the TCPA are "interpretive rules," which "do not have the force and effect of law and are not accorded that weight in the adjudicatory process," *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015); (2) there is no Supreme Court authority precluding the Court from adopting the reasoning in Justice Kavanaugh's concurrence in *PDR Network*, but the pre-*PDR Network* authority from the Ninth Circuit is less clear; and (3) regardless of whether the Court finds it "binding" under the Hobbs Act, or "reasonable" under *Chevron*, or merely "persuasive" under *Skidmore*, the Court should follow the reasoning in the 2003 Order that faxes sent to sent to a "fax server" and forwarded to the end-user's email "inbox" are nevertheless sent "to a telephone facsimile machine." The Court should conclude that each and every one of Defendants' faxes were sent to "equipment" with the "capacity" to print (*i.e.*, a "telephone facsimile machine" under 47 U.S.C. § 227(a)(3)), and should deny Defendants' pending Motion to Decertify the Class and grant Plaintiff's pending Motion for Summary Judgment.

## Argument

**I.     The FCC's interpretations of the TCPA are "interpretive rules."**

The Court asked the parties to address whether the FCC's interpretations of the statutory term "telephone facsimile machine" are "interpretive rules" or "legislative rules" in light of "the framework that is set out in *PDR*." (Hara Decl., Ex. A, Hr'g Tr. at 12–13). The FCC's interpretations are best understood as "interpretive rules."

On remand from the Supreme Court in *PDR Network*, the United States filed an amicus brief stating that the FCC's orders interpreting the TCPA "do not have the force and effect of law" and do not "bind the courts" (Hara Decl., Ex. B, U.S. Br. at 16 (quoting *Perez*, 575 U.S. at 97; *Vietnam Veterans of Am. v. Secretary of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988)). The government explained that the 2006 FCC ruling at issue in *PDR Network* pertaining to the term "unsolicited

advertisement" in 47 U.S.C. § 227(a)(5), was "interpretive" and that "by explaining the meaning of the statutory term, the Commission clarified the scope of an existing obligation rather than creating a new one," meaning the rule merely "advise[d] the public of the agency's construction of the statutes and rules which it administers," rather than creating new obligations through a "legislative rule." (*Id.* at 16, 18 (quoting *Perez*, 575 U.S. at 97)).

The courts are "not required to give effect to an interpretive regulation." *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977); *Perez*, 135 S. Ct. at 1204; *Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019) (plurality opinion) ("An interpretive rule itself never forms the basis for an enforcement action—because, as just noted, such a rule does not impose any legally binding requirements on private parties."); *see also Nat'l Latino Media Coal. v. FCC*, 816 F.2d 785, 788 (D.C. Cir. 1987) ("[A]n interpretative rule does not have the force of law and is not binding on anyone, including the courts."). FCC orders are "final" orders "for the purposes of the Hobbs Act" only "'if they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.'" *U.S. West Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000) ("*Hamilton*") (quoting *Sierra Club v. United States Nuclear Regulatory Comm'n*, 862 F.2d 222, 225 (9th Cir. 1988)). Since an interpretive rule does not "impose an obligation, deny a right, or fix some legal relationship," the Hobbs Act does not even come into play.

On May 29, 2020, the first federal court to address *PDR Network* in a private TCPA action agreed, relying on the government's amicus brief in *PDR Network* to hold that the portion of a 2006 FCC order at issue was "interpretive" and thus "non-binding." *Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, 2020 WL 2793954, at *16 (E.D. Pa. May 29, 2020). The Court concluded that "the Hobbs Act does not apply in the instant case and does not mandate that the court implement the relevant portion of the 2006 FCC order." *Id.*

**II.     There is no Supreme Court authority precluding the Court from following Justice Kavanaugh's concurrence, but pre-*PDR Network* Ninth Circuit authority is unclear.**

The Administrative Orders Review Act (commonly referred to as the "Hobbs Act"), provides that "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342(1); *see* 47 U.S.C. § 402(a). The

Court asked the parties to address whether there is controlling authority from the Supreme Court or the Ninth Circuit that would "preclude" this Court from holding that the Hobbs Act does not require it to apply the FCC's interpretation of the TCPA, as Justice Kavanaugh reasoned in his concurring opinion (joined by three other Justices) in *PDR Network*, 139 S. Ct. at 2058 (Kavanaugh, J., concurring). (Hara Decl., Ex. A, Hr'g Tr. at 13).

With respect to Supreme Court authority, the Supreme Court did not decide in *PDR Network* whether the Hobbs Act requires a district court to apply the FCC's interpretations of the TCPA, instead remanding to the Fourth Circuit on two "preliminary" issues—the "interpretive" vs. "legislative" distinction and whether PDR had a "prior, adequate, and exclusive" opportunity to challenge the rule under the Administrative Procedures Act, 5 U.S.C. § 703—"as well as any other related issues that may arise in the course of resolving this case." *PDR Network*, 139 S. Ct. at 2056. Thus, nothing in *PDR Network* itself precludes this Court from following Justice Kavanaugh's concurrence.

There are other Supreme Court cases involving "final orders" of the FCC (although not involving its interpretations of the TCPA), such as *FCC v. ITT World Commcn's, Inc.*, 466 U.S. 463, 468 (1984), where the petitioner *simultaneously* sought relief under the Hobbs Act and in the district court, and the Supreme Court held that "[l]itigants may not evade" the Hobbs Act through such maneuvers. But that holding is consistent with Justice Kavanaugh's reasoning that "[t]he point of the Hobbs Act is to force parties who want to challenge agency orders via facial, pre-enforcement challenges to do so promptly and to do so in a court of appeals" in order to "avoid[] the delays and uncertainty that otherwise would result from multiple pre-enforcement proceedings being filed and decided over time in multiple district courts and courts of appeals." *PDR Network*, 139 S. Ct. at 2059 (Kavanaugh, J., concurring). There is no Supreme Court authority precluding the Court from following Justice Kavanaugh's concurrence in *PDR Network*.

The Ninth Circuit caselaw is less clear. In *Hamilton*, 224 F.3d at 1052, U.S. West, an "incumbent local exchange carrier" ("ILEC"), brought an action in district court seeking to invalidate certain provisions of an arbitrated interconnection agreement with several "competitive local exchange carriers" ("CLECs"), including a provision "that precludes U.S. West from obtaining access to the CLECs' poles, ducts, conduits, and rights-of-way, even though U.S. West must grant

these same CLECs access to its own poles, ducts, conduits, and rights-of-way." That contractual provision was required by an FCC interpretation of the Telecommunications Act of 1996 in the "First Local Competition Order." *Id.* at 1053.

U.S. West argued that the FCC's interpretation was contrary to the statute, but the Ninth Circuit noted that U.S. West "did not file a Hobbs Act petition" challenging the First Local Competition Order, while "[s]everal parties in other cases did petition for review of the FCC's First Local Competition Order in other courts of appeals." *Id.* at 1054. The Ninth Circuit held that those petitions were consolidated and were currently pending before the Eighth Circuit, making the Eighth Circuit "the sole forum for addressing challenges to the validity of" the Local Competition Order, and so U.S. West's challenge was barred by the Hobbs Act. *Id.* U.S. West argued that "the Hobbs Act does not apply to" the FCC order at issue "because it is an 'interpretive' rather than a 'legislative' rule." *Id.* at 1055. While "doubt[ing] the soundness of" the FCC ruling at issue, the Ninth Circuit rejected the "interpretive" argument, holding that the Hobbs Act "contains no exception for 'interpretive' rules," and that "'final orders' include both interpretive and legislative orders," provided that they "impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process," as the First Local Competition Order did by denying ILECs access to CLECs' poles, ducts, conduits, and rights-of-way. *Id.* (quoting *Sierra Club v. United States Nuclear Regulatory Comm'n*, 862 F.2d 222, 225 (9th Cir. 1988)).

At first blush, *Hamilton* might appear to support the notion that a district court is required to apply the FCC's "interpretive rules" regarding the TCPA, but that is questionable. *Hamilton* was decided long before the Supreme Court's decision in *PDR Network*, and it was not a private TCPA action, so it could not decide whether a district court is bound to apply the FCC's interpretations of the TCPA. In addition, there was a concurrent Hobbs Act proceeding challenging the First Local Competition Order, and U.S. West chose not to participate in that appeal and challenged the order in district court instead, meaning it was attempting to "evade" the Hobbs Act like the petitioner in *ITT World*, 466 U.S. at 468. The same thing happened in *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 400 (9th Cir. 1996), where "numerous politicians in Georgia and Alabama" filed Hobbs Act petitions challenging an FCC ruling stating that the FCC had exclusive authority to decide claims that television stations overcharged political candidates for campaign advertisements, and the Ninth

Circuit held that another group of candidates, who elected not to file Hobbs Act petitions, could not challenge the ruling in the district court. In both cases, the Ninth Circuit's rationale is consistent with Justice Kavanaugh's reasoning that the Hobbs Act "force[s] parties who want to challenge agency orders via facial, pre-enforcement challenges to do so promptly and to do so in a court of appeals," but does not require a district court to apply the FCC's interpretations in private TCPA actions. *PDR Network*, 139 S. Ct. at 2059 (Kavanaugh, J., concurring).

In *Van Patten v. Vertical Fitness Grp., LLC*, which was a private TCPA action, the Ninth Circuit stated "[w]e do not question, in this appeal from an order of the district court, the validity of the FCC's interpretation of 'prior express consent.'" 847 F.3d 1037, 1044 (9th Cir. 2017) (citing *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119–21 (11th Cir. 2014);[1] *U.S. W. Commc'ns, Inc. v. Jennings*, 304 F.3d 950, 958 n.2 (9th Cir. 2002)). The Ninth Circuit then interpreted the ruling in the FCC's 1992 Order that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called" in a way that "harmonizes with the TCPA's text and purpose, as well as the FCC's other orders and rulings," and held that "an effective consent is one that relates to the same subject matter as is covered by the challenged calls or text messages," and does not mean that "the consumer has expressly consented to contact for any purpose whatsoever," as the defendant argued. *Van Patten*, 847 F.3d at 1044–45.

In a later section of *Van Patten* deciding whether prior express consent is revocable, the Ninth Circuit referred to another "final order" of the FCC issued in 2015, which concluded that prior express consent is revocable, as "persuasive guidance" and reviewed it under the two-step analysis in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984). *Van Patten*, 847 F.3d at 1048. The Ninth Circuit held that the statute was silent regarding revocation of prior express consent at *Chevron* "step one," and concluded at "step two" that "it [was] reasonable

---

[1] The Eleventh Circuit's decision in *Mais* takes a hard-line position that the Hobbs Act requires a district court to apply the FCC's interpretations of the TCPA. *Mais*, 768 F.3d at 1121; *but see Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir. 2019) (Pryor, J., concurring) (calling for the en banc court to overrule *Mais* at the earliest opportunity and adopt Justice Kavanaugh's concurrence in *PDR Network*, concluding that "[t]he Hobbs Act, correctly construed, does not require district courts adjudicating cases within their ordinary jurisdiction to treat agency orders that interpret federal statutes as binding precedent.").

for the FCC to interpret the TCPA to permit revocation of consent." *Id.* (citing *Chevron*, 467 U.S. at 843–44).

There is considerable tension between these two sections of *Van Patten*. On one hand, the Ninth Circuit stated that federal courts "do not question" the FCC's interpretations of the TCPA outside of a Hobbs Act appeal, implying that a district court is required to apply an interpretation of the TCPA contained in a "final order" of the FCC. On the other hand, the Ninth Circuit proceeded to determine whether the FCC's interpretation in the 2015 Order that prior express consent was revocable was "reasonable" under *Chevron*. Notably, in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009), the Ninth Circuit reviewed a portion of the 2003 Order ruling that text messages are "calls" within the TCPA's autodialer prohibition for *Chevron* deference. The court concluded that "we find that the FCC's interpretation of the TCPA is reasonable, and therefore afford it deference to hold that a text message is a 'call' within the TCPA." *Id.* at 954. If the Hobbs Act required federal courts to apply the FCC's interpretations in private TCPA litigation regardless of whether they are reasonable, the Ninth Circuit could not have made its *Chevron* determinations in *Van Patten* and *Satterfield*, since neither action was a Hobbs Act appeal from a "final order" of the FCC naming the United States as the respondent. *See* 47 U.S.C. § 2342(1); 47 U.S.C. § 2344.

In sum, there is no Supreme Court authority precluding the Court from adopting the reasoning in Justice Kavanaugh's concurring opinion, and the pre-*PDR Network* authority from the Ninth Circuit is unclear.

**III.    Regardless of how the Court decides Issues One and Two, all of Defendants' faxes were sent to "telephone facsimile machines" under 47 U.S.C. § 227(a)(3).**

Regardless of whether the Court is required to apply the FCC's interpretations of the TCPA under the Hobbs Act, the Court should hold for purposes of Plaintiff's pending Motion for Summary Judgment and Defendants' pending Motion to Decertify the Class that all of Defendants' faxes were sent "to a telephone facsimile machine" as defined by 47 U.S.C. § 227(a)(3). That is the correct conclusion regardless of whether any end-user ultimately viewed the faxes after they printed from a "stand-alone" fax machine or on a computer screen via an "online fax service."

If the Court holds that it is required to apply the FCC's interpretations of the TCPA under the Hobbs Act, then the only covered "final order" regarding the definition of "telephone facsimile

machine" is the Commission's 2003 Order ruling that when a fax is sent to a "computerized fax server" and then forwarded to the end-user's email "inbox," the fax server is a "telephone facsimile machine" and the fax is sent "to a telephone facsimile machine" within the meaning of the statute. (2003 Order ¶¶ 198–201). The Commission reasoned that the TCPA "broadly applies to any equipment that has the *capacity* to send or receive text or images," and that the focus on "capacity" is designed to "ensure that the prohibition on unsolicited faxing not be circumvented." *Id.* ¶ 201. The Commission ruled that "Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines." *Id.* The Commission noted that, although a fax may not automatically print when it is received by a fax server and forwarded to the user's email "inbox," such faxes may nevertheless "shift the advertising costs of paper and toner to the recipient," and they "may also tie up lines and printers so that the recipients' requested faxes are not timely received." *Id.* ¶ 202. The 2003 Order specifically addressed "commercial facsimile services," which "transmit faxes to the recipients as email attachments," ruling these services do not violate the TCPA by forwarding faxes to the recipients by email, without even suggesting that such faxes are not sent "to a telephone facsimile machine" in the first place. *Id.* ¶ 199 & n.736.

The Amerifactors Bureau Order, in contrast, is not a "final order" of "the Commission," and so it cannot be covered by the Hobbs Act. 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a). The Amerifactors Bureau Order is currently on appeal to the full Commission. (*See* Doc. 373-1, *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, Application for Review (Jan. 8, 2020)). A decision on that application for review is a "condition precedent to judicial review." 47 U.S.C. § 155(c)(7); *see also NTCH, Inc. v. FCC*, 877 F.3d 408, 413 (D.C. Cir. 2017) (holding "[w]hen Congress says 'the Commission,' it means the Commission," not its "subdivisions"). Thus, if the Court finds it is required to apply the FCC's "final orders" interpreting the TCPA, then the 2003 Order governs here and requires a finding that each of Defendants' faxes was sent "to a telephone facsimile machine."

If the Court holds that it is *not* required to apply the FCC's interpretations of the TCPA under the Hobbs Act, then the Court should start with the plain language of the statute and the Ninth Circuit authority applying the statute, and consider the FCC's orders only if it finds the statute to be

"silent or ambiguous" on the issue. *Satterfield*, 569 F.3d at 952. The TCPA makes it unlawful "to send, to a telephone facsimile machine, an unsolicited advertisement" unless the three-part statutory safe harbor is satisfied. 47 U.S.C. § 227(b)(1)(C). The term "telephone facsimile machine" is defined as any "equipment which has the *capacity* (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3) (emphasis added).

The Ninth Circuit holds that the term "capacity" in the definition of "automatic telephone dialing system" in 47 U.S.C. § 227(a)(1) does not mean that equipment must "actually" perform the listed function, but "need only have the *capacity* to do it." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (quoting *Satterfield*, 569 F.3d at 951). It is a "well-established principle of statutory construction that the same words or phrases are presumed to have the same meaning when used in different parts of a statute." *J2 Global Commc'ns, Inc. v. Protus IP Sols.*, 2010 WL 9446806, at *5 (C.D. Cal. Oct. 1, 2010) (quoting *Prieto–Romero v. Clark*, 534 F.3d 1053, 1061 n.7 (9th Cir. 2008)). This presumption may be rebutted only "if the same words or phrases are used 'in such dissimilar connections as to warrant the conclusion that they were employed in the different parts of the act with different intent.'" *Id.* (quoting *Chugach Natives, Inc. v. Doyon, Ltd.*, 588 F.2d 723, 725 (9th Cir. 1978)); *see also Kihn v. Bill Graham Archives, LLC*, 2020 WL 1820708, at *18 (N.D. Cal. Apr. 10, 2020) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning.") (quoting *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860 (1986)). Here, there is no reason to believe Congress had any "different intent," and the term "capacity" in the definition of "telephone facsimile machine" at 47 U.S.C. § 227(a)(3)—one subparagraph down from § 227(a)(1)—means that the equipment need only be *able* to perform the listed functions—to receive a fax over a regular telephone line and to print the fax—not that it "actually" perform those functions.

Plaintiff's expert gave unrebutted testimony that any equipment that "can receive a T.30 fax transmission, has the capacity to use a regular telephone line for the receipt of a T.30 fax transmission and to print the contents of the T.30 fax transmission," which is true regardless whether the equipment is a "'stand-alone' fax machine" or a "fax server" configured to convert the fax to

another format to be emailed to the end-user. (Doc. 209-3, Expert Report of Robert Biggerstaff ("Biggerstaff Report") ¶¶ 46, 49–50). Defendants' expert, Kenneth Sponsler, does not dispute that the equipment used by the online fax service has the relevant "capacity." (Doc. 364, Ex. O, Updated Report of Kenneth Sponsler ¶¶ 9–11, 21–29). *See also J2 Global*, 2010 WL 9446806, at *6–7 (holding that, although online fax service provider's "servers qualify as 'telephone facsimile machines,'" it is the end-user who is the "recipient" with statutory standing to sue). Since the statute is unambiguous, the Court need not even consider the FCC's interpretation. *See Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, 2020 WL 2793954, at *20 (E.D. Pa. May 29, 2020) (holding post-*PDR Network* that "[b]ecause the definition of 'unsolicited advertisement' is not ambiguous, the court does not apply *Chevron* or *Skidmore* deference to" the FCC's interpretation).

Even if the Court finds the statute ambiguous, however, it should defer to the interpretations in the 2003 Order and the WestFax Order. As to the level of deference, "[i]nterpretive" rules are ordinarily entitled only to the deference described in *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944)—"the interpretation is 'entitled to respect' only to the extent it has the 'power to persuade.'" *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) (quoting *Skidmore*, 323 U.S. at 140). The level of deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), where the question is simply whether the agency's action is "reasonable," does not apply because interpretive rules "enjoy no *Chevron* status as a class."[2] *United States v. Mead Corp.*, 533 U.S. 218, 232 (2001); *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 940 (9th Cir. 2004) (same, citing *Mead*); *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 256-58 (1991). Nevertheless, the Ninth Circuit applied *Chevron* deference to the FCC's interpretations in *Satterfield*, 569 F.3d at 952, and *Van Patten*, 847 F.3d at 1048. The distinction should not matter here because the 2003 Order and the WestFax Order have the "power to persuade" under the lower *Skidmore* standard. *See Golan v. FreeEats.Com, Inc.*, 930 F.3d 950, 960 n.8 (8th

---

[2] The TCPA also does not expressly delegate to the FCC the power to "interpret" the TCPA. It directs the FCC to "implement the requirements of this subsection." 47 U.S.C. § 227(b)(2). For example, the statute *requires* the FCC to consider whether to exempt certain calls, 47 U.S.C. § 227(b)(2)(B), and *requires* the FCC to determine "the shortest reasonable time, as determined by the Commission," for a fax sender to comply with an opt-out request, 47 U.S.C. § 227(b)(2)(D)(ii).

Cir. 2019) (holding in TCPA action post-*PDR Network* that "[w]e agree with the FCC not because we believe we are bound to do so but because we find this portion of their interpretation of the statute to be persuasive").

"The weight" given an agency ruling under *Skidmore* "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. 140. The 2003 Order was the result of a rulemaking proceeding begun in 2002 to update the FCC's regulations, seeking public comment on numerous issues, including whether the development of "computerized fax servers" might "warrant revisiting the rules on unsolicited faxes." *In re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*, 17 FCC Rcd. 17459, 17482 (Pub. Notice Sept. 18, 2002). The FCC "thoroughly" considered comments on that issue, including from "industry representatives" urging the FCC to rule that faxes sent to "fax servers" and then forwarded to the end-user's email "inbox" are not sent to a "telephone facsimile machine" because they do not automatically print, and the FCC rejected that suggestion because it was contrary to the statutory definition of "telephone facsimile machine" as equipment with the "capacity" to print, not equipment that automatically prints. (2003 Order ¶ 199).

The "validity" of the reasoning in the 2003 Order is clear because its focus on the "capacity" of the equipment is consistent with Ninth Circuit authority interpreting that term in *Satterfield*, 569 F.3d at 951, and *Meyer*, 707 F.3d at 1043, that a device need not "actually" be configured to perform the listed function, but "need only have the *capacity* to do it." The 2003 Order is consistent with "earlier" FCC orders, specifically, the 1995 Order rejecting fax advertisers' bid to narrow the definition of "telephone facsimile machine" to exclude "computer fax modem boards," which "enable personal computers to transmit messages to or receive messages from conventional telephone facsimile machines or other computer fax modem boards," holding such devices are "telephone facsimile machines." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12405, ¶ 28 (FCC Aug. 7, 1995) ("1995 Order"). And it is consistent with the later WestFax Order which rejected a request to "clarify" that an "e-fax" is not sent to a "telephone facsimile machine." (WestFax Order ¶ 9). The Bureau there ruled that faxes were sent "to a telephone facsimile machine" where they were ultimately received by the end-user

by email via WestFax's "efax service" called "FaxForward," which was "a service that 'automatically converts received faxes into electronic images that are delivered directly to your email inbox,'" (*id.* ¶ 4), *i.e.*, an "online fax service" in the language of the Amerifactors Bureau Order. The 2003 Order and the WestFax Order have the "power to persuade," and to the extent the Court finds any ambiguity in the statute, the Court should follow these rulings.

      The Amerifactors Bureau Order, in contrast, does not have the power to persuade. Rather than being the product of a rulemaking proceeding to update the FCC's rules, the "principal" purpose of the Amerifactors Petition (according to the petitioner) was to "confirm that the statute requires an individualized determination as to how recipients actually received unsolicited fax advertisements" to help fax advertisers attempt to defeat class certification in private TCPA actions. (Hara Decl., Ex. C, *Pet. for Expedited Declaratory Ruling of Amerifactors Fin. Group, LLC*, CG Docket Nos. 02-278, 05-338 (filed July 13, 2017) at 27 ("Amerifactors Petition"). There is no "thoroughness evident" in the Bureau's analysis, where it completely ignored the salient rulings in the 2003 Order and the WestFax Order, focusing solely on the comment in the 2003 Order that the TCPA does not apply to faxes "sent as email over the Internet" (Amerifactors Bureau Order ¶ 5), while totally ignoring the 2003 Order's reasoning that the transmission from Point A (the sending device) to Point B (the "fax server" maintained by the "commercial facsimile service") is sent "to a telephone facsimile machine." And the Amerifactors Bureau Order mischaracterizes the WestFax Order as assuming the fax "was sent to a computer with an attached fax modem," when in fact it considered WestFax's "FaxForward" service (*i.e.*, an "online fax service"). That the Amerifactors Bureau Order is inconsistent with the 2003 Order and the WestFax Order means it is entitled to no deference at all. *See Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 698 (1991) ("[T]he case for judicial deference is less compelling with respect to agency positions that are inconsistent with previously held views"); *Watt v. Alaska*, 451 U.S. 259, 272–73 (1981) (noting that inconsistent interpretations garner "considerably less deference"); *see also AT Massey Coal Co. v. Holland*, 472 F.3d 148, 160 (4th Cir. 2006) (affording no deference because "the inconsistency of the Commissioner's [interpretation of the statute] over the years destroys any residual legitimacy").

      Finally, even if the Court finds that it *could* interpret the statute in accordance with the Amerifactors Bureau Order, it *should not* do so because the TCPA "is a remedial statute intended to

protect consumers," and its terms must "be construed in accordance with that purpose." *Van Patten*, 847 F.3d at 1047. The 2003 Order and WestFax Order interpret the TCPA in a manner that protects fax recipients, while the Amerifactors Bureau Order goes out of its way to protect fax advertisers. The Court should reject that approach.

## Conclusion

For the foregoing reasons, the Court should hold that each of Defendants' faxes was sent "to a telephone facsimile machine" for purposes of Defendants' Motion to Decertify the Class and Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

Dated: June 4, 2020

McLaughlin Chiropractic Associates, Inc.
individually and on behalf of the Class

By: s/ Glenn L. Hara

GLENN L. HARA (admitted *pro hac vice*)
ROSS M. GOOD *(pro hac admitted)*
BRIAN J. WANCA *(pro hac admitted)*
RYAN M. KELLY *(pro hac admitted)*
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile:  (847) 368-1501
bwanca@andersonwanca.com
rmkelly@andersonwanca.com
*Lead Counsel*

ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile:  (415) 788-0161
rschubert@schubertlawfirm.com
wjonckheer@schubertlawfirm.com
*Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Glenn L. Hara