UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRUE HEALTH CHIROPRACTIC INC, et al.,

                    Plaintiffs,

          v.

MCKESSON CORPORATION, et al.,

                    Defendants.

Case No. 13-cv-02219-HSG

**ORDER DENYING MOTION TO DECERTIFY CLASS**

Re: Dkt. No. 362

Pending before the Court are Plaintiffs' motion for summary judgment, Dkt. No. 360, Defendants' motion for partial summary judgment, Dkt. Nos. 363, and Defendants' motion to decertify class, Dkt. Nos. 362 ("Mot."), 372 ("Opp"), 379 ("Reply"). For the reasons stated below, the Court **DENIES** Defendants' motion to decertify and defers ruling on the cross-motions for summary judgment.

**I.    BACKGROUND**

Plaintiff True Health Chiropractic, Inc. filed this putative class action on May 15, 2013, alleging that Defendant McKesson Corporation ("McKesson") sent "unsolicited advertisements" by facsimile ("fax") in violation of the Telephone Consumer Protection Act ("TCPA"). *See* Dkt. No. 1. Plaintiff filed a First Amended Complaint on June 20, 2013, Dkt. No. 7, and a Second Amended Complaint ("SAC") on July 18, 2014, Dkt. No. 90, which added McLaughlin Chiropractic Associates, Inc. ("McLaughlin") as a Plaintiff and McKesson Technologies, Inc. ("MTI") as a Defendant. The operative complaint similarly alleges that Defendants violated the TCPA by sending "unsolicited advertisements" by fax. SAC ¶¶ 1–2. Plaintiffs contend that they neither invited nor gave permission to Defendants to send the faxes, SAC ¶¶ 14–18, but that even assuming the faxes were sent pursuant to a recipient's express permission or an "established

*United States District Court*
*Northern District of California*

business relationship," the required "opt-out notice" was absent, *id.* ¶¶ 33–34.

During heavily contested discovery, Defendants were ordered to identify "each type of act that Defendants believe demonstrates a recipient's express permission to receive faxes (e.g. completing a software registration), (2) explain[] how that act qualifies as express permission, and (3) identif[y] each recipient allegedly giving that type of permission by name and contact information (including, at a minimum, fax and phone number)."  Dkt. No. 178 at 12.  In response, Defendants identified three groups of consent defenses that it argued relieved it of TCPA liability and produced three exhibits—Exhibits A, B, and C—corresponding to the consent-defense groups. See Dkt. No. 305-1 Ex. A, at 1–2.  Fax recipients identified in Exhibit A purportedly gave consent by (1) providing fax numbers when registering a product purchased from a subdivision of McKesson; and (2) entering into software-licensing agreements, or End User License Agreements ("EULA").  *Id.*  Fax recipients identified in Exhibit B purportedly gave consent by (1) checking a box during their software registration "that indicated express permission to be sent faxes as a preferred method of communication to receive promotional information;" (2) completing a written consent form "whereby they further provided their express permission to receive faxes;" or (3) confirming on phone calls "that they would like to continue to receive faxes and/or would like to change their communication method preferences."  *Id.* at 2.  Fax recipients identified in Exhibit C purportedly gave Defendants consent through individual communications and personal relationships.  *Id.*

Plaintiffs later moved to certify a single class of all putative class members.  Dkt. No. 209. The Court denied certification on the basis that Plaintiffs failed to satisfy Rule 23(b)(3)'s predominance requirement.  Dkt. No. 260.  Because the Court denied certification for failure to satisfy predominance, its order did not address other requirements for class certification.  On appeal, the Ninth Circuit affirmed in part, reversed in part, and remanded.  *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018) ("*True Health*").  The Ninth Circuit ruled that this Court should have considered the certification of subclasses tracking Defendants' consent-defense groups identified in Exhibits A, B, and C.  *Id.* at 930–31.  The Ninth Circuit then (1) held that putative class members only in Exhibit A satisfy Rule 23(b)(3)'s

predominance requirement; (2) held that putative class members in Exhibit C do not satisfy Rule 23(b)(3)'s predominance requirement; and (3) remanded to this Court to determine whether putative class members in Exhibit B satisfy Rule 23(b)(3)'s predominance requirement. *Id.* at 933. As to Exhibit B alone, the Ninth Circuit added:

> Given the somewhat unclear state of the record, and given that the district court has not had an opportunity to address class certification in light of our intervening decision in *Van Patten*, we view these and other issues related to Exhibit B as best addressed in the first instance by the district court on remand.

*Id.*; *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017). The Ninth Circuit left it to this Court, "in its discretion, to allow supplementation of the record in light of *Van Patten* and [its] opinion." *Id.*

Following remand, the Court reopened fact discovery for the limited purpose of supplementing the record in light of *Van Patten*, and only as to putative class members identified in Exhibit B. *See* Dkt. No. 285; *see also* Dkt. No. 309 (rejecting Defendants' attempt to reopen fact discovery wholesale). After supplemental discovery, Plaintiffs submitted a renewed motion for class certification. *See* Dkt. No. 292. Plaintiffs sought certification limited to the Exhibit A-only Class. *Id.* at 2. And only Plaintiff McLaughlin sought appointment as a class representative. *Id.* at 3.

At the hearing on the renewed motion for class certification, the Court advised the parties that it was inclined to permit narrow summary judgment briefing before ruling on that motion. *See* Dkt. No. 315. Specifically, the Court expressed interest in resolving whether the provision of fax numbers through the Medisoft product registration and EULA—in other words, Exhibit A consent defenses—constituted prior express invitation or permission to receive the disputed faxes, which is a matter of law that all parties agreed would resolve the case as to the named Plaintiff's claim. *Id.* at 7. The Court then permitted summary judgment briefing on the limited issue of "whether voluntarily providing a fax number on product registration and/or agreeing to the [EULA] constitutes express permission." Dkt. No. 322.

On August 31, 2019, the Court denied Defendant's motion for summary judgment, finding that Defendants failed to carry their burden to show Plaintiffs gave prior express invitation or

permission for faxed advertisements through either the provision of their fax numbers in the Medisoft product registration form or agreeing to the EULA.  Dkt. No. 331.  The Court additionally granted Plaintiffs' renewed motion for class certification, finding that the Exhibit A-only Class satisfied Rule 23(a)'s and Rule 23(b)(3)'s requirements.  *Id.*

After the Court set a new case schedule, the parties were required to submit dispositive motions by March 5, 2020.  *See* Dkt. No. 344, 356.  Now pending before the Court are Defendants' motion to decertify class and the parties' cross-motions for partial summary judgment.  *See* Dkt. Nos. 360, 362, 363.  At the hearing on the pending motions on May 21, 2020, the parties disputed whether the Court was bound by an FCC ruling which, if applicable, could impact several aspects of the case.  Accordingly, the Court ordered the parties to submit supplemental briefs addressing the United States Supreme Court's opinion in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055 (2019).  *See* Dkt. Nos. 384, 385–388.

## II.  MOTION TO DECERTIFY CLASS

### A.  Legal Standard

An order certifying a class "may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1).  "A district court's order respecting class certification is 'inherently tentative' prior to final judgment on the merits."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir.1982); *see also* Fed. R. Civ. P. 23(c)(1)(C).  "In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met."  *Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 927 (N.D. Cal. 2017) (citation omitted).  The burden of proof remains on the plaintiff.  *Id.* (citing *Marlo v. UPS*, 639 F.3d 942, 947 (9th Cir. 2011)).[1]  The manner and degree of evidence required

---

[1] The Court notes that other district courts in this circuit have found that the party seeking decertification bears the burden of demonstrating that the elements of Rule 23 have not been established.  *See, e.g.*, *Zakaria v. Gerber Prod. Co.*, No. 15-cv-00200-JAK EX, 2017 WL 9512587, at *16 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018); *Cole v. CRST, Inc.*, 317 F.R.D. 141, 144 (C.D. Cal. 2016); *Rosales v. El Rancho Farms*, No. 09-cv-00707, 2014 WL 321159, at *4 (E.D. Cal. Jan. 29, 2014). While the Ninth Circuit has not affirmatively articulated the burden of proof for decertification, in *Marlo*, the panel held that the district court, in its order decertifying the class, "properly placed the burden on [the plaintiff] to demonstrate that

4

United States District Court
Northern District of California

1    for the plaintiff to meet his burden depends on the stage of the litigation.  *Wash. Envtl. Council v.*

2    *Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (citation omitted).  As the Ninth Circuit has

3    acknowledged, "the manner and degree of evidence required at the preliminary class certification

4    stage is not the same as at the successive stages of the litigation—i.e., at trial."  *Sali v. Corona*

5    *Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (quotation omitted).

6         **B.**    **Discussion**

7          Defendants argue that class decertification is warranted due to two developments that

8    purportedly defeat predominance and superiority.  Mot. at 11–16, 16–19.  First, Defendants argue

9    that the new consumer survey conducted by Dr. Steven Nowlis shows significant variability in

10    consumers' interpretation of the EULA, such that individualized analysis will be required to

11    determine whether each class member understood the EULA to constitute consent.  The Court

12    readily rejects this argument in light of the Ninth Circuit's determination that consent as to both

13    the EULA and the product registration form can be determined by "simply examining" the

14    documents themselves.  *True Health*, 896 F.3d at 932.  The Court also ruled on Defendants'

15    motion for summary judgment based on the EULA defense and found that the EULA does not, as

16    a matter of law, constitute prior express permission to send the faxes at issue.  Dkt. No. 331.

17    Defendants contend that "the issue of ambiguity in construing the EULA had not arisen" prior to

18    the Court's ruling, *see* Reply at 12, but its efforts to present such factual survey data are flatly

19    inconsistent with both the Ninth Circuit's holding and this Court's denial of summary judgment.[2]

20         Second, Defendants contend that a recent decision by the Consumer and Government

21    Affairs Bureau ("Bureau") of the FCC will necessitate individualized inquiries to determine

22

23    Rule 23's class-certification requirements had been met."  *Marlo*, 639 F.3d at 947.  In any event,

24    the Court does not find that this distinction would change its analysis.
    [2] Defendants argue that the "Nowlis Surveys, in combination with other evidence of consent, show

25    that individualized inquiries into consent requires [sic] decertification."  Mot. at 16.  Concerning
    other evidence, Defendants point to "the additional context that (1) all customers voluntarily

26    provided fax numbers during the product registration process, and (2) numerous customers gave
    additional consent through their frequent oral or written communications and ongoing

27    relationships with their account representatives."  *Id.* at 18.  The Court is similarly unconvinced
    that the other evidence of consent in the record, alone or combined with the Nowlis Surveys,

28    "clearly show[s] that consent based on the EULA cannot be determined through common proof on
    a class wide basis."  *See id.* at 25.

whether class members received the advertisements through online fax services or traditional analog fax machines.  *See In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot. Act of 2005*, CG Dkt. Nos. 02-278, 05-338, 2019 WL 6712128, ¶ 3 (Dec. 9, 2019) ("*Amerifactors*").  To assess Defendants' argument, the Court reviews *Amerifactors* and considers the relevance of *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019).

### i.   *Amerifactors* Declaratory Ruling

In passing the Communications Act, Congress "delegated to the [FCC] the authority to 'execute and enforce' the Communications Act and to 'prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of the Act," and to "promulgate binding legal rules."  *See Nat'l Cable & Telecom. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 980 (2005); *see also City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 312 (2013) (Breyer, J., concurring).  Pursuant to that authority, the FCC has provided for the disposition of "declaratory rulings," meant to "terminat[e] a controversy or remov[e] uncertainty."  47 C.F.R. § 1.2(a); *see also* 5 U.S.C. 554(e) (granting authority to agencies to "issue a declaratory order to terminate a controversy or remove uncertainty.").  The FCC has delegated authority to its constituent bureaus and offices to docket petitions for declaratory rulings, post notice of and seek comment on them, and issue final orders disposing of them.  47 C.F.R. § 1.2(b).  These orders then become final and effective "upon release."  47 CFR § 1.102(b)(1).  Parties may apply for review of these decisions, but the decisions remain in effect unless the FCC, "in its discretion," issues a stay pending review. § 1.102(b)(2); § 1.115.

In 1991, Congress passed the Telephone Consumer Protection Act (TCPA), granting the FCC the authority to "prescribe regulations to implement" its requirements.  47 U.S.C. § 227(b)(2).  The TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. § 227(b)(1)(C).  To establish liability, Plaintiffs must then show that the faxes were received by Plaintiffs on a "telephone facsimile machine."  *Id.*  The TCPA defines "telephone facsimile

United States District Court
Northern District of California

machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." *Id.* § 227(a)(3).

In 2017 a petitioner sought a declaratory ruling clarifying whether faxes received by "online fax services" are covered under the TCPA. *See Amerifactors*, CG Dkt. Nos. 02-278, 05-338, 2019 WL 6712128, ¶ 2 (Dec. 9, 2019). The Bureau granted the petition and issued a declaratory ruling that an "online fax service" is not a "telephone facsimile machine" under the TCPA. *See generally id.* Specifically, it ruled than "an online fax service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper' is not a 'telephone facsimile machine' and thus falls outside the scope of the statutory prohibition." *Id.* at ¶ 3

The Bureau reached its conclusion by examining the plain language of the TCPA and considering the specific harms Congress sought to address. It first defined an online fax service as "a cloud-based service consisting of a fax server or similar device that is used to send or receive documents, images and/or electronic files in digital format over telecommunications facilities that allows users to access faxes the same way that they do email: by logging into a server over the Internet or by receiving a pdf attachment [as] an email." *Id.* at ¶ 2. It likened online fax services to "faxes sent to a "computer" or "other device," rather than a "telephone facsimile machine." *Id.* at ¶ 13. The Bureau also emphasized that "an online fax service cannot itself print a fax —the user of an online fax service must connect his or her own equipment in order to do so."[3] *Id.* at ¶ 11. It further determined that online fax services did not pose the specific harms Congress addressed in the TCPA, namely "advertiser cost-shifting" from the use of paper and ink and "occupying the recipient's fax machine so it is unavailable for other transmissions." *Id.* at ¶ 11–

---

[3] The Bureau distinguished its discussion of online fax services, which have no capacity to print a fax, from another declaratory ruling focusing on an "efax" that "was sent to a computer with an attached fax modem that had the capacity to print the fax, as required by statute." *See id.* at ¶ 8, 15.

United States District Court
Northern District of California

13.

As noted, the parties dispute the role *Amerifactors* should play in this Court's analysis. Defendants argue that *Amerifactors* is a final order binding upon the Court. Reply at 2. Plaintiffs argue that it is not a binding final order and does not justify decertification of the class. *See* Opp. at 7. More precisely, the parties dispute the applicability of 28 U.S.C. § 2342 (the "Hobbs Act"). The Hobbs Act limits judicial review of FCC "final orders" to the Courts of Appeals, provided that complaints are filed within 60 days of an order's publication. *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a) ("Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter…shall be brought as provided by and in the manner prescribed in [the Hobbs Act]."). However, parties who were "not a party to the proceedings resulting" in the order may file a petition for reconsideration within the agency itself prior to seeking judicial review. 47 U.S.C. 405(a); 47 C.F.R. § 1.106(m); *Wilson v. A.H. Belo Corp.,* 87 F.3d 393, 400 (9th Cir. 1996). The FCC's action on that petition, including a decision not to issue an order at all, is then reviewable by the Courts of Appeals as a final order of the FCC. *See Coalition for a Healthy California v. F.C.C.*, 87 F.3d 383, 385–86 (9th Cir. 1996).

### ii. PDR Network

In 2019 the United States Supreme Court addressed the applicability of the Hobbs Act in private litigation. *See PDR Network,* 139 S. Ct. at 2055. *PDR Network* involved a private action for damages against Petitioners, alleging violations of the TCPA based on "unsolicited" fax advertisements sent to Respondent. *Id.* The district court dismissed the claim, holding that the faxes, which promoted a free e-book, were not "advertisements" under the TCPA, even though the FCC interpreted advertisements to include the promotion of free goods and services. *Id.* at 2054. The Fourth Circuit reversed, concluding that the Hobbs Act barred the district court from diverging from the FCC's interpretation of the TCPA. *Id.*

The Supreme Court granted certiorari, but ultimately did not resolve whether the Hobbs Act requires a district court to follow a particular FCC order interpreting the TCPA. *See generally id.* In remanding the case to the Court of Appeals, the majority reasoned that "the extent to which the Order binds the lower court may depend on the resolution of two preliminary sets of questions

United States District Court
Northern District of California

that were not aired before the Court of Appeals." *See id.* at 2053, 2055.  First, the Court of Appeals would need to assess the "legal nature" of the relevant FCC order, and whether it was a "legislative rule which is 'issued by an agency pursuant to statutory authority' and has the 'force and effect of law,'" or an "interpretive rule," which lacks the force of law and merely "advise[s] the public of the agency's construction of the statutes…which it administers." *Id.* at 2055.  Second, the Court of Appeals would need to consider whether PDR had "prior" and "adequate" opportunities to seek judicial review of the FCC order.  *Id.* at 2055–56.

Notably, the Supreme Court did not determine what conclusions should be reached in addressing these preliminary questions.  *Id.* at 2055–56.  In a concurring opinion, Justice Kavanaugh said that the Court should have concluded that "the Hobbs Act does not bar a defendant in an enforcement action from arguing that the agency's interpretation of the statute is wrong."  *Id.* at 2058–59 (Kavanaugh, J., concurring).  Justice Kavanaugh explained that "[i]n an as-applied enforcement action, the district court should interpret the [TCPA] . . . under the usual principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* at 2066 (Kavanaugh, J., concurring).

### iii.    Analysis

Because *PDR Network* did not resolve the central issue presented here, Ninth Circuit precedent controls.[4]  And under Ninth Circuit precedent, the Court must treat *Amerifactors* as authoritative.  The Ninth Circuit has held that the Hobbs Act bars district courts from considering claims that would necessarily require the court to determine the validity of, or to enjoin, set aside or suspend, a final FCC order.  In *Wilson*, a plaintiff in a private enforcement action asked the court to disregard a recent FCC order issued in a proceeding in which he had not participated that would render his claims moot.  On appeal, the Ninth Circuit affirmed the dismissal, holding that the district court was divested of jurisdiction by the Hobbs Act and that a "declaratory ruling…is subject to the exclusive review of the court of appeals," even as to parties who "are not parties to

---

[4] *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (stating that only in cases of "clear irreconcilability" can district courts "consider themselves bound by the intervening higher authority and reject the prior opinion of [the Ninth Circuit] as having been effectively overruled").

FCC proceedings." *Wilson*, 87 F.3d at 389.  Because the plaintiff's claim "raise[d] the same issues and [sought] the same relief in substance as the declaratory ruling," it necessarily required "judicial review" and fell under the exclusive appellate jurisdiction described by the Hobbs Act. *Id.* at 399.

Since *Wilson*, the Ninth Circuit has indicated that district courts do not have jurisdiction to question the validity of FCC final orders, and district courts have recognized this limitation.  *See, e.g.*, *US W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000), *as amended on reh'g* (Sept. 13, 2000) (concluding that even court of appeals could not invalidate FCC final order where no Hobbs Act petition had been filed); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO, 2015 WL 7454260, at *6 n.6 (N.D. Cal. Nov. 24, 2015) (determining in TCPA action that an "FCC final order" is binding under the Hobbs Act "unless it is invalidated by a court of appeals").

Plaintiff contends that *Amerifactors* is an "interpretative rule" and thus is not a final order under the Hobbs Act.  Dkt. No. 385 at 3.  Even assuming (without deciding) that Plaintiff were correct in this characterization of *Amerifactors*,[5] Plaintiff acknowledges that the Ninth Circuit has previously considered, and rejected, this argument.  *See id.* at 5.  In *Hamilton*, the Ninth Circuit held that a potential distinction between "legislative" and "interpretive" rules does not matter insofar as the "finality" and enforceability of an FCC order is concerned.  *Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000).[6]  Instead, to determine the order's finality, the Ninth Circuit focused on whether the FCC order was merely "tentative" and whether it "determines rights and gives rise

---

[5] Both parties suggest that *Amerifactors* must be "interpretive" because its purpose is to "interpret" the TCPA.  *See* Dkt. No. 385 at 2; Dkt. No. 386 at 8.  This analysis wrongly assumes that the act of interpretation makes a rule an "interpretive rule" *per se*, and misses the purpose of distinguishing "interpretive" from "legislative rules," which is to determine which rules "carry the force of law."  *Kisor v. Wilkie*, 139 S.Ct. 2400, 2420 (2019).

[6] As noted, *PDR Network* observed that the extent an FCC order "binds the lower courts may depend" on its legal nature, and that an interpretive rule "may not be binding on a district court." 139 S. Ct. at 2055.  The Supreme Court highlighted its use of "may," explaining that it d[id] not definitively resolve these issues here."  *Id.*  The Court thus does not find this ruling to be clearly irreconcilable with presently binding Ninth Circuit law on the question.  *See Hamilton*, 224 F.3d at 1055 ("The Hobbs Act itself contains no exception for 'interpretive' rules, and case law does not create one.").  It follows that Plaintiffs' effort to distinguish *Hamilton* because it was not a private TCPA action and was decided before *PDR Network* must be rejected.  *See* Dkt. No. 385 at 5.

United States District Court
Northern District of California

to legal consequences." *Id.*

Here, the Court finds that *Amerifactors* is a final, binding order for purposes of the Hobbs Act. The Bureau acted "pursuant to delegated authority" to issue a declaratory ruling and the ruling became effective "upon release." *See* 47 C.F.R. § 1.2; 47 CFR § 1.102 (b)(1). The pending petition for reconsideration before the FCC does not affect the order's finality as it applies to Defendants' potential liability under the TCPA. *See* 47 C.F.R. §1.102 (b)(2); *Comm. to Save WEAM v. Fed. Commc'ns Comm'n,* 808 F.2d 113, 119 (D.C. Cir. 1986) (holding that an application for FCC review could not preclude an order from taking effect unless the FCC decided to stay its effectiveness). And because *Amerifactors* establishes that those who received faxes via an online fax service have different legal rights than those who received faxes on a telephone facsimile machine, it clearly "determines rights and gives rights to legal consequences." *See Hamilton*, 224 F.3d at 1055. Moreover, Plaintiffs' request that the Court diverge from *Amerifactors*' fundamental holding, that online fax services do not fall under the TCPA, would "raise the same issues…as the declaratory ruling" and is thus precluded by Ninth Circuit precedent. *See Wilson*, 87 F.3d at 399.[7]

Accordingly, in light of *Amerifactors*, the Court modifies the class definition to include a Stand-Alone Fax Machine Class and an Online Fax Services Class:

> All persons or entities who received faxes from "McKesson" via a "stand-alone" fax machine from September 2, 2009, to May 11, 2010, offering "Medisoft," "Lytec," "Practice Partner," or "Revenue Management Advanced" software or "BillFlash Patient Statement Service," where the faxes do not inform the recipient of the right to "opt out" of future faxes, and whose fax numbers are listed in Exhibit A to McKesson's Supplemental Response to Interrogatory Regarding

---

[7] For what it is worth, the Court agrees with the reasoning of Justice Kavanaugh's concurrence in *PDR Network*, because requiring federal courts to treat administrative agencies' legal interpretations as invariably binding under these circumstances would appear to pose practical as well as constitutional problems. *See PDR Network*, 139 S. Ct. at 2061–62 (Kavanaugh, J., concurring) (noting that "the default rule is to allow defendants in enforcement actions to argue that the agency's interpretation of the statute is wrong, unless Congress expressly provides otherwise"). At least three judges of the Eleventh Circuit have urged that court to reconsider its precedent, which parallels the Ninth Circuit's approach, *en banc* and adopt Justice Kavanaugh's reasoning in *PDR Network*. *See Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir. 2019) (Pryor, J., concurring) (positing that "[o]ur precedents' interpretation of the Hobbs Act ignores the statutory context, generates absurd results, and raises serious constitutional doubts"). But these questions are obviously for another day, and for a higher court than this one.

United States District Court
Northern District of California

Prior Express Invitation or Permission, but not in Exhibit B or Exhibit C to McKesson's Response to Interrogatory Regarding Prior Express Invitation or Permission.

All persons or entities who received faxes from "McKesson" via an "online fax service" from September 2, 2009, to May 11, 2010, offering "Medisoft," "Lytec," "Practice Partner," or "Revenue Management Advanced" software or "BillFlash Patient Statement Service," where the faxes do not inform the recipient of the right to "opt out" of future faxes, and whose fax numbers are listed in Exhibit A to McKesson's Supplemental Response to Interrogatory Regarding Prior Express Invitation or Permission, but not in Exhibit B or Exhibit C to McKesson's Response to Interrogatory Regarding Prior Express Invitation or Permission.

Defendants argue that "the Court lacks jurisdiction over any claims of the proposed 'Online Fax Service Class.'" *See* Reply at 5. While the Court is aware of the language in *Wilson* that could be read in isolation to suggest as much, the reality is that in cases similar to this one, including TCPA cases, the Ninth Circuit has not appeared to view *Wilson* as divesting district courts of jurisdiction altogether. In *Fober v. Management and Technology Consultants, LLC*, 886 F.3d 789, 795 (9th Cir. 2018), for example, the Ninth Circuit found that the district court correctly granted summary judgment in favor of the defendant on the ground that plaintiff gave "prior express consent" as a matter of law. The court of appeals "presume[d] the validity of the relevant FCC rules and regulations," *id.* at 792 n.2, and considered those rules and regulations as part of its analysis in affirming the district court's summary judgment ruling, *id.* at 792–95. Significantly, the Ninth Circuit did not in any way suggest that the district court lacked jurisdiction to consider the case in the first place.

Similarly, in *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), the Ninth Circuit affirmed the post-class-certification grant of summary judgment against a TCPA plaintiff on the ground that he gave prior express consent to receive text messages and did not effectively revoke that consent. The court of appeals confirmed that it "[did] not question, in this appeal from an order of the district court, the validity of the FCC's interpretation of 'prior express consent,'" instead "read[ing] the 1992 [FCC] Order in a way that harmonizes with the TCPA's text and purpose, as well as the FCC's other orders and rulings." *Id.* at 1044. Again, nowhere in its analysis did the *Van Patten* court suggest that the district court should have dismissed the case for lack of jurisdiction.

12

United States District Court
Northern District of California

Consistent with the Ninth Circuit's approach in *Fober* and *Van Patten*, the Court acknowledges (as it must under controlling precedent) that *Amerifactors* is authoritative and establishes that those who received faxes via an online fax service have different legal rights than those who received faxes via a traditional physical fax machine.  Accordingly, in modifying the class definition, the Court simply adheres to the FCC's interpretation and enables a process for identifying those who received faxes via an online fax service.  So rather than posing a threshold "jurisdictional" issue as Defendants assert, the question of whether the Online Fax Service subclass has a claim under the TCPA is simply a common merits question whose answer will be the same for all members of that subclass.

Defendants further argue that Plaintiffs' "failure to fully describe . . . a common proof methodology and to show class-wide liability defeats predominance."  Reply at 7.  But the Court is satisfied with Plaintiffs' proposed three-step subpoena process to distinguish members of these subclasses based on Plaintiffs' counsel's experience in another TCPA case.  *See id.* at 12 (citing *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 2014 WL 11429029, at *1 (W.D. Mich. Feb. 20, 2014)).

Accordingly, the Court **DENIES** Defendants' motion to decertify the class.

III.     **CROSS-MOTIONS FOR SUMMARY JUDGMENT**

The Court turns next to the cross-motions for summary judgment.

A.     **Legal Standard**

A motion for summary judgment should be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986).  The moving party has the initial burden of informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  *Id.* at 323.

If the moving party meets its initial burden, the burden shifts to the non-moving party to

1   present facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56; *Celotex*, 477

2   U.S. at 324.  The Court must view the evidence in the light most favorable to the nonmovant,

3   drawing all reasonable inferences in its favor.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

4   *Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  Summary judgment is not appropriate if the

5   nonmoving party presents evidence from which a reasonable jury could resolve the disputed issue

6   of material fact in the nonmovant's favor.  *Anderson*, 477 U.S. at 248.  Nonetheless, "[w]here the

7   record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

8   there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587

9   (1986) (internal quotation marks omitted).

### B.  Discussion

11      Plaintiffs argue that they are entitled to summary judgment as to liability under the TCPA

12   because "(1) the faxes are 'advertisements'; (2) each Defendant is a 'sender'; (3) the faxes were

13   sent and received using covered 'equipment'; (4) Defendants' defense of 'prior express invitation

14   or permission' fails as a matter of law; and (5) Defendants' defense of 'established business

15   relationship' fails."  Dkt. No. 360 at 8.  Plaintiffs also argue that the Court should impose statutory

16   and treble damages.  *Id.* at 20–23.  Defendants limit their motion for partial summary judgment to

17   Plaintiffs' claim for treble damages.  Dkt. No. 363 at 4–10.

18      In light of the Court's modification of the class definition, the Court defers ruling on these

19   motions.  Under *Amerifactors*, it appears that the Online Fax Service subclass has no cause of

20   action as a matter of law, and is subject to a grant of summary judgment against it on that basis.

21   As reluctant as it is to further drag out the resolution of this seemingly interminable case, the

22   Court is inclined to provide class members an updated notice explaining that the class has now

23   been divided into subclasses with different legal rights.  The updated notice would also provide

24   another opportunity to opt out, which potentially could be significant for members of the Online

25   Fax Service subclass.  Each party shall submit simultaneous statements, not to exceed two pages,

26   indicating whether the party objects to or agrees with this proposal.  The parties may not relitigate

27   any of the issues decided above: the limited and simple task is for each party to state its position

28   on the question of providing supplemental notice of the creation of subclasses, accepting all of the

United States District Court
Northern District of California

above issues as decided.  The parties' positions on the underlying substantive questions have already been exhaustively preserved for the record, and need not be repeated.

## IV.     CONCLUSION

The Court **DENIES** Defendants' motion for class decertification and defers ruling on the parties' cross-motions for summary judgment.  With respect to the Court's proposal regarding updated notice, the parties are **DIRECTED** to submit their separate statements by January 19, 2021.


**IT IS SO ORDERED.**

Dated:  12/24/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge