1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    TRUE HEALTH CHIROPRACTIC INC, et          Case No. 13-cv-02219-HSG
     al.,
8                                              **ORDER GRANTING IN PART AND**
                     Plaintiffs,               **DENYING IN PART PLAINTIFFS'**
9                                              **MOTION FOR SUMMARY**
              v.                               **JUDGMENT AND DENYING**
10                                             **DEFENDANTS' MOTION FOR**
     MCKESSON CORPORATION, et al.,             **PARTIAL SUMMARY JUDGMENT**
11
                     Defendants.               Re: Dkt. Nos. 360, 363
12

13        Pending before the Court are Plaintiffs' motion for summary judgment, Dkt. Nos. 360

14   ("MSJ Mot."), 376 ("MSJ Opp."), 377 ("MSJ Reply"), and Defendants' motion for partial

15   summary judgment, Dkt. Nos. 363 ("PSJ Mot."), 375 ("PSJ Opp."), 378 ("PSJ Reply").  The

16   Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion, and **DENIES**

17   Defendants' motion.

18        Because the parties and the Court are very familiar with the factual and procedural

19   background of this case, the Court discusses relevant facts only as necessary to explain its ruling

20   on the motions.

21   **I.   LEGAL STANDARD**

22        A motion for summary judgment should be granted where there is no genuine issue of

23   material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56;

24   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The purpose of summary

25   judgment "is to isolate and dispose of factually unsupported claims or defenses."  *Celotex v.*

26   *Catrett*, 477 U.S. 317, 323–24 (1986).  The moving party has the initial burden of informing the

27   Court of the basis for the motion and identifying those portions of the pleadings, depositions,

28   answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable

United States District Court
Northern District of California

1    issue of material fact. *Id.* at 323.

2        If the moving party meets its initial burden, the burden shifts to the non-moving party to

3    present facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56; *Celotex*, 477

4    U.S. at 324. The Court must view the evidence in the light most favorable to the nonmovant,

5    drawing all reasonable inferences in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

6    *Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Summary judgment is not appropriate if the

7    nonmoving party presents evidence from which a reasonable jury could resolve the disputed issue

8    of material fact in the nonmovant's favor. *Anderson*, 477 U.S. at 248. Nonetheless, "[w]here the

9    record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

10   there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587

11   (1986) (internal quotation marks omitted).

**II.    PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

13       Plaintiffs argue that they are entitled to summary judgment as to liability under the TCPA

14   because "(1) the faxes are 'advertisements'; (2) each Defendant is a 'sender'; (3) the faxes were

15   sent and received using covered 'equipment'; (4) Defendants' defense of 'prior express invitation

16   or permission' fails as a matter of law; and (5) Defendants' defense of 'established business

17   relationship' fails." MSJ Mot. at 8.[1] Plaintiffs also argue that the Court should enter statutory and

18   treble damages. *Id.* at 20–23. In other words, Plaintiffs contend that both liability and damages

19   can be established on summary judgment.

**A.    Liability elements and damages**

21       The Court **DENIES** Plaintiffs' motion for summary judgment of liability because genuine

22   issues of fact exist as to multiple elements of Plaintiffs' TCPA claim. For example, there are

23   disputed issues of material fact as to whether all of the accused faxes are "advertisements." *See*,

24   *e.g.*, MSJ Opp. at 21–22 and Dkt. No. 376-1 (Declaration of Bonnie Lau), Exhibit 26B. Given

25   that Plaintiffs will have the burden of establishing this element at trial as to all of the accused

26   faxes, the Court declines to engage in a fax-by-fax analysis at this stage.

27

28   [1] Defendants have confirmed that they no longer assert an "established business relationship"
     defense, MSJ Opp. at 5 n.5, so the Court need not address that issue.

United States District Court
Northern District of California

1    As another example, there is a dispute as to who owned the products described in the faxes

2  at issue, and consequently as to whether Defendants were the "senders" of those faxes.  The TCPA

3  does not define the term "send" or "sender."  FCC regulations define "sender" as "the person or

4  entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are

5  advertised or promoted in the unsolicited advertisement."  47 C.F.R. § 64.1200(f)(10).  Neither

6  McKesson's 10-K filing nor the other evidence to which Plaintiffs point establish that any

7  reasonable finder of fact would have to find that Defendants meet the statutory definition.[2]

8    As a third example, there is a dispute as to whether all class members received faxes using

9  a "telephone facsimile machine" as defined by the statute.  The parties offer dueling expert

10  declarations on this issue, such that the Court cannot conclude that a reasonable factfinder would

11  be compelled to find in Plaintiffs' favor on this question.  *Compare* Dkt. No. 209-1 (Declaration of

12  Glen L. Hara), Exhibit B (Expert Report of Robert Biggerstaff) at ¶¶ 49–50 *with* Dkt. No. 364

13  (Declaration of Tiffany Cheung), Exhibit O (Updated Expert Report of Ken Sponsler) at ¶¶ 4.[3]

14    Because the Court finds that disputed issues of material fact preclude entry of judgment in

15  Plaintiffs' favor as to liability, it need not reach their request for a finding as to damages.[4]

16    **B.    Prior express invitation defense**

17    However, the Court **GRANTS** Plaintiffs' motion to the extent of finding that Defendants'

18

---

19  [2] In Plaintiffs' request for judicial notice of McKesson's Form 10-K, Plaintiffs contend that the
20  statements in the Form 10-K that two products are owned by McKesson "cannot reasonably be
   questioned."  Dkt. No. 361 at 2.  The Court finds that it is inappropriate to take judicial notice of
21  the Form 10-K to resolve the factual dispute regarding who owned the products described in the
   faxes at issue.  *See Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal.
22  2015) (declining to take judicial notice of content of SEC filings where plaintiff "relie[d] on the
   *truth* of the contents of the SEC filings to prove the substance of her claims"); *Sansone v. Charter
23  Commc'ns, Inc.*, No. 17CV1880-WQH-JLB, 2018 WL 3343792, at *3 (S.D. Cal. July 6, 2018)
   (same); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995)
24  (affirming denial of judicial notice of defendant's Form 10-K to determine a disputed issue of
   fact).
25  [3] As discussed at length in the Court's orders concerning Defendants' motion to decertify the
   class, Dkt. Nos. 393 and 400, the Court believes that anyone who received a fax via an "online fax
26  service" likely has no TCPA claim as a matter of law.  But that issue can be dealt with separately
   from these pending motions.
27  [4] The Court need not, and does not, rule out that there may be other issues of disputed fact beyond
   these to be resolved at trial.  Instead, the Court simply concludes that these examples of disputed
28  issues of material fact alone are enough to require denial of Plaintiffs' summary judgment motion
   as to liability.

United States District Court
Northern District of California

1   prior express invitation defense fails as a matter of law under the law of the case.  The long history

2   of this case, including a trip to the Ninth Circuit and back, establishes that Plaintiffs are entitled to

3   summary judgment on this issue.

4      The TCPA creates a complete affirmative defense for defendants where a recipient

5   provided "prior express consent" for calls, or "prior express invitation or permission" for faxed

6   advertisements.  47 U.S.C. § 227(b)(1)(A) (referring to "the prior express consent of the called

7   party"); *id.* § 227(a)(5) (referring to a fax recipient's provision of "prior express invitation or

8   permission"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)

9   ("Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense

10  for which the defendant bears the burden of proof.").  Generally, "effective consent is one that

11  relates to the same subject matter as is covered by the challenged calls or text messages." *Van*

12  *Patten*, 847 F.3d at 1044–45.  Crucially, however, "the transactional context matters in

13  determining the scope of a consumer's consent to contact." *Id.* at 1046.  As it explained in its

14  previous order denying summary judgment, the Court does not find material the slightly different

15  language used for telemarketing calls and facsimile transmissions.  *See* Dkt. No. 331 at 6–7.

16     Plaintiffs argue that Defendants' affirmative defense fails as a matter of law.  MSJ Mot. at

17  18–20.  Specifically, Plaintiffs rely on the Court's order denying Defendants' motion for summary

18  judgment finding that prior express consent through voluntary provision of a fax number of

19  product registration and/or agreeing to the EULA could not be established as a matter of law. *See*

20  Dkt. No. 331.  There, the Court found:

21

22       Turning first to the Medisoft registration form, nothing about the
     circumstances under which a registrant filled out the form establishes

23       that a reasonable consumer would anticipate receiving
     advertisements.  Consumers purchased a product, installed that

24       product, and registered that product through a generic form that
     nowhere mentions advertisements, or any sort of contact for that
     matter.  To be sure, entry of one's fax number in the form constitutes

25       "consent to be contacted" to some extent. *See id.* at 1046.  And like
     in *Van Patten*, no one disputes here that the scope of consumers'

26       consent to contact includes "some things, such as follow-up questions
     about [their registration]." *See id.*  Nor could anyone reasonably

27       dispute that consumers here consented to receive ordinary fax
     messages about that topic in the normal course of business.  But faxes

28       in the normal course of business are not advertisements.  And the

4

United States District Court
Northern District of California

> Court finds that advertisements do not fit within the scope of consumers' contextualized consent, in this circumstance.
>
> . . .
>
> To the extent the Court has already held that the transactional context of consumers' provision of their fax number in the Medisoft product registration form does not constitute express invitation or permission to receive faxed advertisements, nothing about the EULA transforms the overall transactional context in any meaningful way so as to warrant a different result.  Reviewing the EULA as a whole, the Court finds that a reasonable user would only understand that assenting to its terms meant consenting to the transmission of usage information *from* the consumer *to* McKesson, not that McKesson would send the user faxed advertisements.

*Id.* at 10, 13.  The Court found analogous *Physicians Healthsource, Inc. v. A-S Medication Sols. LLC*, in which the court granted plaintiff summary judgment and rejected defendant's argument that customers gave express permission to receive faxes by entering their fax numbers into a customer relationship management software program called Salesforce.  324 F. Supp. 3d 973, 978–79 (N.D. Ill. 2018).  Since then, the Seventh Circuit has affirmed the trial court's order in that case.  *See Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959 (7th Cir. 2020).  The Seventh Circuit held that "[a] consumer's statement that it gave permission to send 'product information' via fax, even on an ongoing basis, after purchasing products or services from a company cannot as a matter of law constitute prior express permission."  *Id.* at 967.

Defendants offer no new arguments or evidence warranting any different conclusion. Defendants' reliance on a consumer survey expert and business relationships between MTI sales representatives and consumers to show that class members consented to receive faxed advertisements is misplaced.  As the Ninth Circuit clearly stated, "[c]onsent, or lack thereof, is ascertainable by simply examining the product registrations and the EULAs."  *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) ("*True Health*").  This Court's previous analysis made clear that the voluntary entry of one's fax number on the Medisoft registration form did not constitute express invitation since advertisements did not fall within the context of the consent, and the agreement to the EULA did not constitute express invitation where the agreement refers only to the unidirectional transfer of information to McKesson.  Dkt. No. 331 at 10, 13.  Defendants' attempt to create factual disputes notwithstanding the language of the product registration and EULA thus fails.

1    Defendants also contend that "[n]ew and previously unconsidered evidence shows that . . .

2    the Class gave express permission to receive promotional faxes through frequent oral and written

3    communications." MSJ Opp. at 12. Defendants attempted to make a similar argument in

4    connection with the renewed motion for class certification and motion for summary judgment, and

5    the Court noted Defendants' "persistent factual and legal shape-shifting." Dkt. No. 331 at 27 n.8.

6    Defendants' current position is another example of that phenomenon.

7    The certified class at issue here is limited to those fax numbers that were listed in Exhibit

8    A to McKesson's Supplemental Response to Interrogatory Regarding Prior Express Invitation or

9    Permission, but not in Exhibit B or Exhibit C. When directly ordered by Judge Ryu to make its

10   consent theories clear, McKesson previously represented to the court that fax recipients identified

11   only in Exhibit A purportedly gave consent only by (1) providing fax numbers when registering a

12   product purchased from a subdivision of McKesson; and/or (2) entering into software-licensing

13   agreements, or EULAs. *See* Dkt. No. 305 (Declaration of Tiffany Cheung), Ex. A at 1–2. That

14   was the basis of the record before the Ninth Circuit, and the basis on which that court reversed this

15   Court's order denying Plaintiffs' motion for class certification. *See True Health*, 896 F.3d at 932

16   (noting that "McKesson has asserted only two consent defenses" as to the Exhibit A-only class

17   members). Simply put, the Ninth Circuit's finding (which was based on Defendants' own

18   litigation tactics) precludes Defendants' attempt to bring new consent defenses notwithstanding its

19   failure to include the fax numbers of the now-certified class in the Exhibit B or Exhibit C consent-

20   defense lists. Consistent with the Court's prior observation, it "will not permit Defendants to

21   change their mind now, nearly [eight] years into this litigation and after the case has been to the

22   Ninth Circuit and back." Dkt. No. 331 at 22 (updated age of case in brackets); *see also id.* at 25–

23   27.

24   Accordingly, the Court finds that Defendants cannot establish prior express invitation or

25   permission through the Medisoft registration form or the EULA agreement as a matter of law.

26   The Court further finds that the Ninth Circuit's ruling is law of the case precluding Defendants

27   from now asserting other individualized consent defenses as to the Exhibit A-only class members.

28   *See True Health*, 896 F.3d at 932 ("We therefore conclude that the claims of the putative class

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    members listed in Exhibit A that remain after removing the claims in Exhibits B and C satisfy the

2    predominance requirement of Rule 23(b)(3).").  The Court thus **GRANTS** Plaintiff's motion for

3    summary judgment as to this affirmative defense.  Without question, this case has become

4    something of a mess, but that mess is largely of Defendants' own making.  Defendants can try to

5    explain in any eventual appeal how their current position is consistent with the prior holdings of

6    the Ninth Circuit and this Court, and with their own prior representations.

7    **III.    DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

8    Defendants' motion is limited to seeking partial summary judgment as to Plaintiffs' claim

9    for treble damages.  PSJ Mot. at 4–10.  Section 227(b)(3) allows the Court, in its discretion, to

10   award treble damages if it finds that the defendant "willfully or knowingly" violated the TCPA.

11   47 U.S.C. § 227(b)(3).  The Court **DENIES** the motion.  While Plaintiffs' claim appears far from

12   overwhelming, the Court concludes that a reasonable factfinder would not be compelled to

13   conclude on the record presented that Defendants had a good faith belief that MTI had prior

14   express consent to send the faxes at issue.  That question will be subject to proof at trial.

15

16   **IT IS SO ORDERED.**

17   Dated: 3/19/2021

18   _____

19   HAYWOOD S. GILLIAM, JR.
     United States District Judge

20

21

22

23

24

25

26

27

28

7