# EXHIBIT B

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC, INC., and MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC., individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>MCKESSON CORPORATION, MCKESSON TECHNOLOGIES, INC., and JOHN DOES 1-10,<br><br>Defendants. | No. 4:13-cv-02219-HSG<br><br>**DECLARATION OF ROBERT BIGGERSTAFF**<br><br>Hon. Haywood S. Gilliam, Jr. |

I, Robert Biggerstaff, declare as follows:

1.   I declare under penalty of perjury that the foregoing is true and correct.

2.   I previously submitted a report dated July 16, 2015, and a second report dated April 22, 2015 in this case. My qualifications are the same as those stated in my prior reports.

3.   On August 31, 2021, I received the Declaration of Ken Sponsler dated July 20, 2021 ("Sponsler Decl."). After reviewing that declaration, I elected to submit this declaration in response, and in particular explain the relationship between fax technology and the subpoena process being used to determine membership in the two classes (i.e. the "online fax service" class and the "standalone fax machine" class.)

**I.   INTRODUCTION**

4.   I have prepared a flowchart to help illustrate the process of objectively determining class membership, attached as Exhibit 1 hereto. However, in order to discuss this flowchart, it is important to clarify some basic issues about fax technology.

5.  As a threshold matter, Mr. Sponsler appears to misunderstand the nature of fax transmissions. He implies that faxes can be received via email.[1] This is a gross oversimplification and factually incorrect. This misapprehension of basic technology is fatal to Mr. Sponsler's arguments.

6.  Faxes are not "received" by email. Reading an email on a computer screen or a smartphone does not mean you "received" a "fax" on computer or a smartphone. Faxes are received by fax machines, termed the "receiver" in ITU facsimile standards.[2]

7.  A "fax" transmission is one that employs the technical and procedural standards for fax transmissions, as described in my prior report. You can't use the postal mail or FedEx to send or receive a fax transmission. If someone sends a fax to your office fax machine, and then your associate in the office takes the printed fax page, puts it in a FedEx envelope and sends it to you via FedEx at your home, you received a fax on your office fax machine and then later you received a FedEx envelope at your home—you did not "receive" a "fax" at home via FedEx. While a fax may be *addressed* to you by name, a fax is sent to and received by a fax machine, using ITU fax protocol standards, addressed by a 10-digit telephone number.

8.  An "efax" on the other hand, is the *contents* of a standard fax transmission that was received by an online fax service and then "repackaged" as an attachment to an email or stored as a PDF file on a server for you to retrieve. With an efax, the actual fax transmission is received at the fax server provided for your use by the efax company—a/k/a the online fax service or "OFS." Mr. Sponsler calls this the "initial fax transmission."[3] Then later you will

---

[1] Sponsler Decl, ¶16.

[2] The International Telecommunication Union ("ITU") in the international body that has established worldwide standards for telecommunications equipment and procedures (including fax machines and protocols) for over 150 years.

[3] Deposition of Ken Sponsler, *Kawa Orthodontics LLP v. Lab. Corp. of Am. Holdings*, dated October 17, 2019, 38:14-19.

receive an email containing a copy of the contents of that fax transmission. Mr. Sponsler calls this the "email." These are separate events, and may occur within just minutes of each other, or many days or weeks later.

**II ANALYSIS**

9. There are three particular facts about the topology of internet-based fax services that inform the process laid out in the flowchart. First, all internet-based fax services use "fax servers" to send and receive fax transmissions. Mr. Sponsler agrees with this truism:

> To clarify my opinion, I completely agree with Mr. Biggerstaff that Internet based fax providers receive and/or send faxes on behalf of their customers via fax servers.[4]

> "[A]n online fax [service] is a hosted service where a fax server is locally managed."[5]

10. Second, all fax servers have the capacity to use a regular telephone line. Mr. Sponsler agrees with this fact:

> "Internet-based fax services do receive/send a facsimile over a regular telephone line."[6]

> "[Internet-base fax] services receive/send fax transmissions over a regular telephone line on behalf of their customers."[7]

> "These services receive/send fax transmissions over a regular telephone line on behalf of their customers. The service then stores the faxes online

---

[4] Declaration of Ken Sponsler, dated March 21, 2018 in the matter of *Etter v. Allstate*, No. 17-cv-00184 (N.D. Cal) at ¶3.

[5] Expert Report of Ken Sponsler, *Kawa Orthodontics LLP v. Lab. Corp. of Am. Holdings*, No. 9:19-cv-80521, dated September 30, 2019, ¶32

[6] *Expert Report of Ken Sponsler in the matter of E & G, Inc. v. Mt. Vernon Mills, Inc.*, No. 17-cv-00318 (D.S.C.), dated November 16, 2018, ¶42.

[7] *Id.*, ¶39.

DECLARATION OF ROBERT BIGGERSTAFF

and either allows the recipient to view the file from a Web-portal or to receive the file via email."[8]

11. Third, there are only three devices that can receive a fax transmission:

    a. a "standalone" fax machine; or

    b. a computer with one or more fax modems; or

    c. a fax server.

In actuality, the latter two are the same thing, differing only in scale. A computerized "fax server" is merely a computer with one or more fax modems. All modern personal computer operating systems have built-in fax capability, that merely needs a fax modem to be installed to enable it. Whether you install a single fax modem, or a dozen, makes no difference except as to scale.

## III. FAX DELIVERY TOPOLOGIES

12. Mr. Sponsler claims there are "countless other ways" that class members could have received online fax services.[9] This is untrue—there are only a few limited ways to do this. A consumer can either:

    a. use a fax number provided to them for their exclusive use by the online fax service;

    b. they can port their existing fax number to the online fax service; or

    c. they can use "call forwarding" on their existing phone line to forward all calls to the fax number provided to them for their exclusive use by the online fax service.

---

[8] *Expert Report of Ken Sponsler in the matter of Gorss Motels, Inc. v. Sprint Solutions, Inc.*, No. 17-cv-00546 (D. Conn.), dated July 31, 2018, ¶49.

[9] Sponsler Decl., ¶6.

13. Other suggestions from Mr. Sponsler, such as "relying on intranet fax technology"[10] is not using an "online fax service." His claims otherwise are factually incorrect.

14. It is true that there are multiple topologies that a *document* can take after it is received by the receiving fax machine. But the path of a document takes after a fax transmission is not relevant to this analysis. Mr. Sponsler has previously opined on the topology of a fax transmission being forwarded to the "ultimate recipient" after the initial fax transmission was completed using a regular telephone:

> Users of online fax services need not own or use the equipment that sends and receives the initial fax transmission. Consider sending and receiving fax machines as "point A" and "point B." Instead, users of online fax services may receive "images or files" either as an email attachment or through an online portal, which is "point C." Point "C" users of online or "commercial as defined by the TCPA" fax services receive an email containing an image or link to their webportal provided by the point "B" Internet fax service provider. The ultimate point "C" "recipient" of the fax image does not necessarily use a traditional fax machine, traditional fax server, fax paper, ink and, thus, is not subjected to any of the nuisances that the TCPA sought to address.[11]

15. Mr. Sponsler's description using "Point A", "Point B", and "Point C" here is correct in some aspects—and illustrates his misconceptions of what "receipt" of a fax means.

16. A fax transmission takes place in real-time between point A (sending fax machine) and point B (receiving fax machine). The fax machines at points A and B talk to each other in real-time. With a fax server, and the other implementations described by Mr. Sponsler, additional steps are done with the payload of the fax transmission *after* it was received at point B. Those steps in the journey after point B are a separate leg in the journey well after the leg from point A to B was completed. The devices at points A and B are still "fax machines" employing the ITU standard fax protocols despite the fact the fax payload is converted to a file

---

[10] *Id.*

[11] Expert Report of Ken Sponsler, Kawa Orthodontics LLP v. Lab. Corp. of Am. Holdings, No. 9:19-cv-80521, dated September 30, 2019, ¶51.

and that file sent from B to C over the Internet attached to an email. The subsequent journey from the receiving fax machine at point B to some other device (such as a mail server or web server) at point C is irrelevant to the fax transmission from A to B.

17. It is important to understand that a user can neither send nor receive a fax with an email. A user can receive an email that has an image file attached to it and that image can be an image of a previously-received fax document—just like you can receive a FedEx envelope with the printout of a previously-received fax document in that envelope. But as I explained earlier, you no more "received a fax" via email than you "received a fax" via the FedEx envelope. In telecommunications, what you have used is a store-and-forward delivery of a converted payload. The payload (faxed document) is received by a fax machine (point A to point B), stored for some time, then forwarded on over a different medium (point B to point C).

18. Attached as Exhibit 2 hereto, is an document I prepared that illustrates some of the scenarios using the "Point A", "Point B", and "Point C" terminology used by Mr. Sponsler. The TCPA applies only to the fax transmission from point A to point B. What happens to the contents of a fax after it is received at point B is irrelevant. Mr. Sponsler seems fixated only with the irrelevant journey from point B to point C.

19. To illustrate several common fax document delivery topologies, Exhibit 2 hereto presents 6 different scenarios:

    a. No. 1 illustrates a typical online fax service using email-delivery (insecure).

    b. No. 2 illustrates a typical online fax service using file delivery (secure).

    c. No. 3 illustrates a typical office with a standalone local fax machine and printer.

      d.      No. 4 illustrates a the example I described above of having someone in your office take the printed faxed document and forward it to you via FedEx while you are away from the office.

      e.      No. 5 illustrates the ability of an online fax service to print to a printer at the premises of the online fax service as well as print directly to a remote printer at the subscriber's location.[12]

      f.      No. 6 illustrates an office with its own computer that has one or more fax modems installed (a/k/a local fax server) which can print the faxed document or distribute it via email or file sharing.

20. There are obviously many other topologies with different mechanisms transporting the document from point B to point C. However the only facsimile transmissions take place between points A and B.

## IV. FLOWCHART DISCUSSION

21. To determine whether a phone number belongs in the online fax service ("OFS") class, or the standalone class, the flowchart begins with a phone number ("PN") and three known facts:

      a.      the logs document a successful fax transmission was received at the PN on a particular date;

      b.      the phone number carrier ("PNC"); and

      c.      the phone number subscriber ("PNS").

22. If the PNS is an OFS, the PN is placed in the OFS class. (Block 1.)

---

[12] One example is Hewlett-Packard's ePrint functionality that is included by default with a large number of HP printers. All modern operating systems can print to remote printers anywhere in the world via the printer's IP ("Internet Protocol") address.

23. If the PNC offered OFS and records show the subscriber used it, the PN is placed in the OFS class. (Blocks 2-3.)

24. If the PNS forwarded their fax number to an OFS, the PN is placed in the OFS class. (Block 5.)

25. Otherwise, the PN is terminated at the subscriber's equipment. (Block 6.)

26. There are three defaults in this algorithm:

    a. Absence of data regarding whether a subscriber used the carriers OFS results in a default of not in the OFS class.

    b. Absence of data regarding whether a subscriber forwarded their fax number to an OFS results in a default of not in the OFS class.

    c. All devices employed by the subscriber are qualified for the standalone class.

27. The flowchart default for absence of data regarding use of the carrier's OFS is due to the low likelihood of use of the carrier's OFS.  This is consistent with my experience that few subscribers know of such services and few of those used them in the time frame of the faxes at issue (2009-10).   Given the nature of the plaintiff class being medical providers (doctors, chiropractors, etc.) the application of HIPAA[13] to those entities, and the lacking of HIPAA-compliant OFS in the 2009-10 time frame, militates against significant usage of an OFS in that time frame for this group.

28. The flowchart default for absence of data regarding whether a subscriber forwarded their fax number to an OFS is due to the low likelihood of use of call forwarding in this context.  This is consistent with my experience that few subscribers know of such services

---

[13] The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") is the federal law that required the creation of national standards to protect sensitive patient health information from being disclosed without the patient's consent or knowledge.  HIPAA is n important reason medical providers rely on faxing rather than email as conventional email is not HIPAA compliant.

and few of those used them in the time frame of the faxes at issue (2009-2010). Given the nature of the plaintiff class being medical providers (doctors, chiropractors, etc.) the application of HIPAA to those entities, and the lacking of HIPAA-compliant OFS in the 2009-10 time frame, militates against significant usage of forwarding calls to an OFS in that time frame for this group, particularly given low likelihood of this group of users to use an OFS in this time frame in the first place.

29. Call forwarding in this context has additional negatives compared to simply using the PN provided by the OFS or porting the subscriber's existing PN to the OFS. For example, using forwarding in this context requires the subscriber to keep paying for the local fax line. Also, once turned on, forwarding can fail due to lost configuration information and then calls ring back through to the subscriber's line, which may no longer have a fax machine on the line to answer those "unexpected" calls.

30. The flowchart default concluding all devices employed by the subscriber past block 6 are qualified for the standalone class is based on the fact that every possible fax-receiving device conceivably employed is either a) a standalone fax machine or b) a PC with one or more fax modems (including a local fax server). If Mr. Sponsler believes there is anything else, I would expect him to be able to identify that device.

V. **Printing Capacity**

31. In addition, any device employed by the subscriber to receive fax transmissions in this context has the capacity to print.

32. Printing requires two things - a connection to a printer and a common language that both ends understand. In more technical terms, a device has the capacity to print when it has a) capacity to use a medium to connect to a printing system (*e.g.*, a parallel, serial, or USB cable, wireless or infrared connection, ethernet cable, or Internet/intranet connection) and b) the capacity to transmit the data to be printed in an acceptable format to engage with the

printing system. For example, the personal computer on your desk has the capacity to print since it is connected to a printer over some medium and can transmit the data to be printed over that medium to that printer.

33. Standalone "desktop" fax machines obviously have the capacity to print. With such a desktop fax machine, that connection to the printer is usually a short ribbon cable several inches long. With a computer that receives faxes, like a desktop computer with a fax modem or a local fax server, that cable may be longer so the printer is on the other side of the room, or down the hall in a different room, but otherwise, in both functionality and capacity, they are the same. I see no distinction in the length of the cable.

34. By virtue of having the capacity to send an email, a computer or local fax server, by definition, is a) connected via a medium (the company's "intranet" or the Internet) over which it can print, and b) able to transmit the data in an acceptable format (such as pdf) to that printer. The latter element is demonstrated by the fact many printers automatically accept an incoming email and then print the (fax) image attached to the email.[14] Many printers, such as a plethora of laser printers made by Hewlett Packard, include the ability to print via ftp (file transfer protocol) lp (line print) and lpr (line print requestor) which are all commands that are standard in the operating systems (such as Linux and Windows) used for local fax servers.

35. Put another way, the same connection that lets a computer with a fax modem subsequently send the image of the faxed document out via email to the person the fax was addressed to, also provides that computer with the capacity to print.

36. Local fax servers are not mysterious devices—they are typically off-the-shelf IBM-compatible personal computers built from common off-the-shelf components such as Dialogic or Brooktrout boards/software, using a Microsoft Windows or Linux operating

---

[14] One common way to do so is with the Hewlett Packard ePrint feature standard with many Hewlett Packard printers.

system.  Such computers include the capacity to print by default like any desktop personal computer.

37.  There is also no distinction in this context between a personal computer attached to fax modems, and a local "fax server."  I have worked with local "fax servers" that were nothing more than a desktop computer with a single fax modem, as well as larger local fax servers with multiple aggregated phone lines and multiport fax boards.  The only distinction is merely the scale of the fax system in terms of the volume of faxes that can be sent and received. In every case, functioning local fax server systems have the capacity to print, and can actually do so any time they are functioning as a local fax server (i.e. able to receive a fax transmission and then email the image contained in the fax transmission to an email address, or copy it to an IP (internet protocol) address via one of many different standard protocols (such as ftp, lpd, ipp, port 9100 HP protocol, etc.)[15]

### VI.  Other Claims by Mr. Sponsler.

38.  In dismissing the subpoena process for determining class membership, one of Mr. Sponsler's most glaringly inapposite claims is that

> "a class member could set up online faxing through a company such as MyFax which could provide the class member one of the company's phone numbers to use to receive online faxes via email. Companies like MyFax are not phone carriers, so a class member using MyFax would still need to use a separate phone carrier service for telecommunications services."[16]

39.  J2 Global, Inc. d/b/a MyFax ("MyFax") is an OFS.  If a class member did use MyFax or any other OFS, and used the OFS-provided phone number to receive faxes, the

---

[15] For example, many Okidata printers (like many from Hewlett Packard) support PDF direct printing over ftp.  *See, e.g.* <https://okiprinting-en-gb.custhelp.com/app/answers/detail/a_id/581/~ /pdf-direct-printing> "You can send PDF files directly to the printer using an FTP client. Once the printer receives the PDF files, they will be printed."

[16] Sponsler Decl., ¶16.

subpoena results would identify the subscriber for that phone number as MyFax (or other OFS) and the phone number would be in the OFS class.

40. Another inapposite claim by Mr. Sponsler is "even if a subscriber was not using an online fax provider, a subscriber could have set their receiving device to receive faxes via the internet."[17] This sentence makes no sense. There is no such device that a subscriber can "set [] to receive faxes via the internet."

41. Additionally, Mr. Sponsler seems to believe that a person/entity that runs its own local fax server, that subscriber must be placed into the OFS sub-class.[18] That is false. As the FCC said in 2003:[19]

> "We conclude that faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes."[20]

42. Mr. Sponsler seems to be confusing *online fax services* ("OFS") (which have no need to print and which the FCC concluded lacked printing capability) with *local* fax servers which are able to print by default. The FCC concluded an OFS cannot print, but made no such conclusion regarding *local* fax servers.[21]

//

---

[17] Sponsler Decl, ¶16.

[18] Sponsler Decl, ¶17.

[19] I cite to the Commissions orders, not intending to offer a legal opinion on this issue as that is up to the Court, but to set out the authorities which guided my analysis of the flowchart.

[20] *Rules and Regulations Implementing the TCPA*, 18 FCC Rcd 14014 (2003) ¶200 ("2003 TCPA Order"). Since the *Amerifactors* Order does not purport to alter prior guidance, such as the 2003 TCPA Order, the only compatible reading is that in *Amerifactors*, the Commission drew a distinction between public-facing online fax services that are not operated by the consumer and do not necessarily need to print, contrasted with *local* fax servers operated by the consumer in their own homes and businesses which necessarily need the be able to print.

[21] "We also understand that an online fax service cannot itself print a fax." *In Re Amerifactors Fin. Grp., LLC*, 34 FCC Rcd 11950 (Dec. 9, 2019) ¶11.

DECLARATION OF ROBERT BIGGERSTAFF

Executed on: September 10, 2021

*[signature]*
Robert Biggerstaff, CCE

Cert. No. 1360



# EXHIBIT 2

## Sample Facsimile Topologies

"Local" devices are at the location of the person receiving the faxed document.

