1

2

3

4                                  UNITED STATES DISTRICT COURT

5                                NORTHERN DISTRICT OF CALIFORNIA

6

7    TRUE HEALTH CHIROPRACTIC INC, et          Case No.  13-cv-02219-HSG
     al.,
8                                              **ORDER TO SHOW CAUSE WHY**
                     Plaintiffs,               **CLASS SHOULD NOT BE**
9                                              **DECERTIFIED**
             v.
10                                             Re: Dkt. No. 467
     MCKESSON CORPORATION, et al.,
11
                     Defendants.
12

13

14          A district court "retains the flexibility to address problems with a certified class as

15   they arise, including the ability to decertify" the class.  *United Steel, Paper & Forestry, Rubber,*

16   *Manufacturing Energy, Allied Industrial & Service Workers International Union v.*

17   *Conocophillips Company*, 593 F.3d 802, 809 (9th Cir. 2010).  A class action requires that the

18   requirements of Federal Rule of Civil Procedure 23 be met.  After careful review of the Plaintiffs'

19   Offer of Proof, Dkt. No. 455, telephone carrier declarations submitted by Plaintiffs, Dkt. Nos. 460,

20   465, 468, 469, Defendants' Response to Plaintiffs' Offer of Proof, Dkt. No. 464, and telephone

21   carrier declarations submitted by Defendants, Dkt. Nos. 470, 471, the Court is concerned that

22   common issues do not predominate, which would mean the class fails the requirements of Federal

23   Rule of Civil Procedure 23(b)(3) and should be decertified.  Therefore, the Court **ORDERS**

24   Plaintiffs to show cause by October 4, 2021 why the class should not be decertified.

25   **I.      BACKGROUND**

26          Plaintiff True Health Chiropractic, Inc. filed this putative class action on May 15, 2013,

27   alleging that Defendant McKesson Corporation sent "unsolicited advertisements" by facsimile

28   ("fax") in violation of the Telephone Consumer Protection Act ("TCPA").  *See* Dkt. No. 1.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff filed a First Amended Complaint on June 20, 2013, Dkt. No. 7, and a Second Amended

2   Complaint ("SAC") on July 18, 2014, Dkt. No. 90, which added McLaughlin Chiropractic

3   Associates, Inc. as a Plaintiff and McKesson Technologies, Inc. as a Defendant.  The operative

4   complaint similarly alleges that Defendants violated the TCPA by sending "unsolicited

5   advertisements" by fax.  SAC ¶¶ 1-2.  Plaintiffs contend that they neither invited nor gave

6   permission to Defendants to send the faxes, SAC ¶¶ 14-18, but that even assuming the faxes were

7   sent with a recipient's express permission or based on an "established business relationship, the

8   required "opt-out notice" was absent, *id.* ¶¶ 33-34.

9          Plaintiffs moved to certify a single class of all putative class members.  Dkt. No. 209.

10  After the Court denied certification on the basis that Plaintiffs failed to satisfy Rule 23(b)(3)'s

11  predominance requirement as to consent, the Ninth Circuit affirmed in part, reversed in part, and

12  remanded.  *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018).

13         On remand, Plaintiffs again moved for class certification, Dkt. No. 292, and the Court

14  certified the following class, Dkt. No. 331:

> All persons or entities who received faxes from "McKesson" from
> September 2, 2009, to May 11, 2010, offering "Medisoft," "Lytec,"
> "Practice Partner," or "Revenue Management Advanced" software or
> "BillFlash Patient Statement Service," where the faxes do not inform
> the recipient of the right to "opt out" of future faxes, and whose fax
> numbers are listed in Exhibit A to McKesson's Supplemental
> Response to Interrogatory Regarding Prior Express Invitation or
> Permission, but not in Exhibit B or Exhibit C to McKesson's
> Response to Interrogatory Regarding Prior Express Invitation or
> Permission.

20         The Court certified the class on August 13, 2019.  On December 9, 2019, the Consumer

21  and Government Affairs Bureau of the Federal Communications Commission ("FCC") issued a

22  declaratory ruling that an online fax service is not a "telephone facsimile machine" under the

23  TCPA.  *In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling*

24  *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot. Act of*

25  *2005*, CG Dkt. Nos. 02-278, 05-338, 2019 WL 6712128, ¶ 3 (Dec. 9, 2019) ("*Amerifactors*").

26  According to the FCC, "[t]o the extent an unsolicited facsimile advertisement is sent to a service

27  that effectively receives faxes 'sent as email over the internet' and is not itself 'equipment which

28

has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper,' the language of the TCPA and [FCC] precedent make clear that service is not a 'telephone facsimile machine' and is thus outside the scope of the statutory prohibition." *Id.* at ¶ 8.  In short, there is no TCPA liability for sending a fax to an online fax service. *See id.*  The FCC's decision in *Amerifactors* is binding on this Court, as previously explained. *See Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 400 (9th Cir. 1996); Dkt. No. 393 at 9-11.

Following *Amerifactors*, Defendants moved to decertify the class, arguing that it would require a fact-intensive inquiry on an individual basis to determine which members of the class received a fax on a telephone facsimile machine as opposed to via an online fax service. Dkt. No. 362.  In response, Plaintiffs proposed a subpoena process that they represented would differentiate, on a class-wide basis, which class members received a fax on a stand-alone fax machine as opposed to via an online fax service. Dkt. No. 372 at 12.  Because Plaintiffs represented that a similar subpoena process had worked in another TCPA case, the Court determined that it was premature to decertify the class. *See* Dkt. No. 393 at 13.  The Court did, however, modify the class definition to identify two subclasses: a Stand-Alone Fax Machine Class and an Online Fax Services Class, Dkt. No. 393 at 11-12:

> All persons or entities who received faxes from "McKesson" via a "stand-alone" fax machine from September 2, 2009, to May 11, 2010, offering "Medisoft," "Lytec," "Practice Partner," or "Revenue Management Advanced" software or "BillFlash Patient Statement Service," where the faxes do not inform the recipient of the right to "opt out" of future faxes, and whose fax numbers are listed in Exhibit A to McKesson's Supplemental Response to Interrogatory Regarding Prior Express Invitation or Permission, but not in Exhibit B or Exhibit C to McKesson's Response to Interrogatory Regarding Prior Express Invitation or Permission.[1]

> All persons or entities who received faxes from "McKesson" via an "online fax service" from September 2, 2009, to May 11, 2010, offering "Medisoft," "Lytec," "Practice Partner," or "Revenue Management Advanced" software or "BillFlash Patient Statement Service," where the faxes do not inform the recipient of the right to

---

[1] In their Opposition to Defendants' Motion to Decertify the Class, Plaintiffs proposed the alternative modified class definition, suggesting the language "via a 'stand-alone' fax machine" and "via an 'online fax service'" be added to distinguish between faxes received on a telephone facsimile machine and faxes received via an online fax service.  Dkt. No. 372 at 10.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"opt out" of future faxes, and whose fax numbers are listed in Exhibit A to McKesson's Supplemental Response to Interrogatory Regarding Prior Express Invitation or Permission, but not in Exhibit B or Exhibit C to McKesson's Response to Interrogatory Regarding Prior Express Invitation or Permission.

The Court then entered summary judgment against the Online Fax Services Class after the members of that class received notice.  Dkt. No. 418.

In their continued representation of the Stand-Alone Fax Machine Class, Plaintiffs served 246 subpoenas on the class members' telecommunications services providers ("telephone carriers") to determine whether class members had received the faxes on a stand-alone fax machine.  Dkt. No. 455 at 1 ("Offer of Proof").  On September 10, 2021, Plaintiffs submitted an Offer of Proof to the Court, summarizing the results of their subpoena process to date.  *See* Offer of Proof.  The Court also ordered Plaintiffs to file any declarations or equivalent materials received from the telephone carriers.  Dkt. No. 457.  Plaintiffs submitted the requested declarations and have been filing newly received declarations on a rolling basis.  *See* Dkt. Nos. 460, 465, 468, 469 ("Telephone Carrier Declarations").  Defendants, in turn, filed (1) a response to Plaintiffs' Offer of Proof, Dkt. No. 464 ("Defendants' Response"), and (2) two additional telephone carrier declarations, Dkt. Nos. 470, 471.[2]

## II.    LEGAL STANDARD

An order certifying a class "may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(c).  A district court "retains the flexibility to address problems with a certified class as they arise, including the ability to decertify."  *United Steel, Paper & Forestry, Rubber, Manufacturing Energy, Allied Industrial & Service Workers International Union v. Conocophillips Company*, 593 F.3d 802, 809 (9th Cir. 2010); *see also Armstrong v. Davis*, 275 F.3d 849, 871 n. 28 (9th Cir. 2001) ("Federal Rule of Civil Procedure 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court."), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).  "In considering the appropriateness of

---

[2] With the Court's leave, Plaintiffs also filed Defendants' counsel's communication with telephone carrier Verizon.  Dkt. No. 472, Declaration of Ross M. Good Exhibit A.

1   decertification, the standard of review is the same as a motion for class certification: whether the

2   Rule 23 requirements are met." *Bowerman v. Field Asset Servs, Inc*., 242 F. Supp. 3d 910, 927

3   (N.D. Cal 2017) (citation omitted).

4          Federal Rule of Civil Procedure 23 sets dual-pronged requirements.  First, the proposed

5   class must meet the requirements of Rule 23(a): numerosity, commonality, typicality, and

6   adequacy of representation.  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir.

7   2012); *see* Fed. R. Civ. P. 23(a).  Second, the proposed class must also satisfy one of the three

8   subsections of Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

9          In moving to certify the proposed class in this case, Plaintiffs asserted that the class met the

10  requirements of Rule 23(b)(3).  *See* Dkt. No. 292.   Rule 23(b)(3) applies where there is both

11  "predominance" and "superiority," meaning "questions of law or fact common to class members

12  predominate over any questions affecting only individual members, and . . . a class action is

13  superior to other available methods for fairly and efficiently adjudicating the controversy."  *See*

14  Fed. R. Civ. P. 23(b)(3).  "The predominance inquiry tests whether proposed classes are

15  sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods, Inc. v.*

16  *Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted).  The Supreme

17  Court has defined an individual question as "one where members of a proposed class will need to

18  present evidence that varies from member to member, while a common question is one where the

19  same evidence will suffice for each member to make a prima facie showing [or] the issue is

20  susceptible to generalized, class-wide proof."  *Id.* (citation and internal quotation marks omitted).

21  The Supreme Court has made clear that Rule 23(b)(3)'s predominance requirement is "even more

22  demanding" than the commonality requirement of Rule 23(a).  *See Comcast Corp. v. Behrend*, 569

23  U.S. 27, 34 (2013) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

24  **III.   DISCUSSION**

25         When the Court certified the Stand-Alone Fax Machine Class, the Court did so based on

26  Plaintiffs' representation that their subpoena process would generate class-wide proof capable of

27  showing which individuals received the faxes at issue on a stand-alone fax machine, as opposed to

28  via an online fax service.  After reviewing Plaintiffs' Offer of Proof, the Telephone Carrier

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Declarations, Defendants' Response, and the two declarations submitted by Defendants, Dkt. Nos.

2    470 and 471, the Court has substantial concerns regarding whether it is possible to determine, on a

3    class-wide basis, which individuals received the faxes at issue on a stand-alone fax machine.

4    Multiple declarations submitted by the telephone carriers, including declarations from

5    telephone carriers that provided service to a significant percentage of the class members, state that

6    it is impossible for the telephone carrier to know whether their customer received faxes on a stand-

7    alone fax machine or via an online fax service.  For example, the declaration submitted by

8    Comcast states that "Comcast has no mechanism to determine whether its subscribers received

9    faxes on a standalone fax machine or via online fax service."  Dkt. No. 460, Exhibit A Part 5 at 63.

10   As another carrier, Yelcot Telephone Company, explained, "any line in service, with the

11   appropriate connection to the internet could feasibly be used to connect to a third party online fax

12   service."  Dkt. No. 460, Exhibit A Part 3 at 128.  The two declarations submitted by Defendants

13   show a similar problem.  AT&T stated that it does not have a mechanism to determine whether a

14   telephone subscriber used an online fax service or a stand-alone fax machine to receive and/or

15   send faxes.  Dkt. No. 470, Declaration of Lisa Likely at 2.  Frontier stated that it is "unable to

16   identify how a subscriber is using its service, including whether a subscriber procured online fax

17   service from a third-party or was using a stand-alone fax machine or any other technology to

18   receive faxes."  Dkt. No. 471, Declaration of Jack Hansen at 2.

19   Many of the Telephone Carrier Declarations on which Plaintiffs rely in their Offer of Proof

20   state that the telephone carrier did not provide an "online fax service."  *See, e.g.*, Dkt. No. 460,

21   Exhibit A Part 1 at 25, 31, 35.  Plaintiffs make the assumption that if a telephone carrier did not

22   provide an "online fax service," then the class member did not receive the fax via an online fax

23   service.  *See* Dkt. No. 455 at 1. But the declarations submitted by the telephone carriers, as

24   illustrated above, cast significant doubt on the reasonableness of this assumption.

25   At this point, the Court has serious concerns about whether Plaintiffs can offer class-wide

26   proof to show that class members received the faxes at issue on a stand-alone fax machine, as

27   opposed to via an online fax service.  If Plaintiff cannot offer such class-wide proof, then

28   individualized inquiries would be required to determine how each class member received the faxes

1  before liability could be determined.  *Amerifactors* has made the manner in which the faxes were

2  received a critical element of TCPA liability, and, in the absence of class-wide proof, every class

3  member would need to present evidence as to how they received the faxes.[3]  At this stage, this is

4  the predominant issue.  Without generalized, class-wide proof as to whether the class members

5  used a stand-alone fax machine, the Court now believes that questions of law or fact common to

6  class members do not predominate and the requirements of Rule 23(b)(3) are not met.

7  **IV.    CONCLUSION**

8       The Court thus **ORDERS** Plaintiffs to show cause by October 4, 2021 why the class

9  should not be decertified.  Plaintiffs should cite any relevant appellate or district court authority

10  supporting their claim that the results of their three-step subpoena process qualify as class-wide

11  proof that satisfies the predominance requirement.  Defendants may submit any response by

12  October 6, 2021.  In any such response, Defendants, too, should cite any relevant legal authority as

13  to whether the predominance requirement is satisfied.

14       **IT IS SO ORDERED.**

15  Dated:  9/29/2021

16  _____

17  HAYWOOD S. GILLIAM, JR.
United States District Judge

18

19

20

21

22  [3] In their Offer of Proof, Plaintiffs assert that their expert "will testify that all of the class members received the subject faxes on a 'telephone facsimile machine' because every device that is capable of successfully receiving the facsimile transmission format of the subject faxes ('a T.30 fax

23  transmission') would also have the capacity to print the content of such transmissions."  Offer of

24  Proof at 2.  But Plaintiffs' argument improperly negates the very distinction *Amerifactors* drew. In fact, in deciding *Amerifactors*, the FCC considered and rejected the "capabilities" argument

25  Plaintiffs now offer.  *Amerifactors* at ¶ 13 n. 33 ("[I]nterpreting the TCPA to mean that every 'computer' or 'other device' is a telephone facsimile machine, merely because it could be

26  connected to a printer, directly or indirectly, would be overly broad and result in the kind of impermissibly expansive application of the TCPA that the D.C. Circuit recently rejected.").

27  Moreover, as Defendants note, the FCC considered and rejected this exact factual contention from Plaintiffs' expert.  Defendants' Response at 4-5.  As previously explained, the FCC's decision is

28  binding on this Court, and to the extent Plaintiffs continue to dispute that point, the place to do so is on appeal, not through their expert's opinion.  *Supra* Part I; *see also* Dkt. No. 393 at 9-11.

United States District Court
Northern District of California