TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
BONNIE LAU (CA SBN 246188)
BLau@mofo.com
JESSICA GRANT (CA SBN 178138)
JGrant@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

LYNDSEY H. CAIN (admitted *pro hac vice*)
LCain@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza
Denver, Colorado 80202
Telephone: 303.592.2226
Facsimile: 303.592.1510

ERIN P. LUPFER (CA SBN 317994)
ELupfer@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Defendants
MCKESSON TECHNOLOGIES INC. and
MCKESSON CORPORATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC, INC., and MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC., individually and as the representatives of a class of similarly-situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> MCKESSON CORPORATION, MCKESSON TECHNOLOGIES INC., and DOES 1-10, <br><br> Defendants. | Case No. 4:13-cv-02219-HSG <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE WHY CLASS SHOULD NOT BE DECERTIFIED** <br><br> Trial:  October 18, 2021 <br> Time:  8:30 a.m. <br> Courtroom: 2, 4th Floor <br> Judge:  Haywood S. Gilliam, Jr. |

**REDACTED VERSION OF DOCUMENT TO BE SEALED**

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4510796

1

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................ 1

II.  LEGAL STANDARD ...................................................................................... 2

III.  ARGUMENT ................................................................................................... 3

    A.  The Results of Plaintiffs' Subpoena Process Do Not Satisfy Plaintiffs' Burden to Present Class-Wide Evidence of How Class Members Received the Faxes at Issue on a Stand-Alone Fax Machine. ................................ 4

        1.  Individual Inquiries Are Necessary Because Many Phone Carriers Cannot Determine If a Subscriber Received Faxes via Online Fax Service or on a Stand-Alone Fax Machine. ......................................... 4

        2.  Individual Inquiries Are Necessary Because No Phone Carrier Data Exists for At Least 17% of the Class. ............................................ 7

        3.  Individual Inquiries Are Necessary Because Plaintiffs' Subpoena Process Fails to Account for All Scenarios by Which Class Members Might Have Used Online Fax Services. .................................... 12

            a.  Plaintiffs Do Not—and Cannot—Offer Class-Wide Evidence to Establish Which Class Members Used Third-Party Online Fax Services During the 2009-2010 Class Period. ......................................................................... 13

            b.  Plaintiffs Concede That Their Subpoena Process Cannot Identify Which Class Members Used Online Fax Services Through Call Forwarding. ........................................... 14

    B.  Plaintiffs' Expert's Speculative Assumptions Cannot Overcome the Required Individualized Inquiries. .......................................................... 15

    C.  Plaintiffs' Arguments in Response to the Court's Order to Show Cause Fail to Establish the Predominance Required for Class Treatment. ............................. 17

        1.  Plaintiffs Misstate the Legal Standard for Predominance. ....................... 17

        2.  Plaintiffs Cannot Rely on "Generalized" Evidence or "Sampling" to Satisfy their Burden to Provide Class-Wide Proof at Trial. ..................... 18

        3.  Requiring Plaintiffs to Satisfy Their Burden to Offer Class-Wide Proof Does Not Impose a "More Stringent Burden of Proof" Than in an Individual Action. .............................................................. 18

IV.  CONCLUSION .............................................................................................. 19

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-cv-02219-HSG
sf-4510796

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)............................................................................................................2

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................................................2

*In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory*
*Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*
*Junk Fax Prot. Act of 2005*,
CG Dkt. Nos. 02-278, 05-338, 2019 WL 6712128 (Dec. 9, 2019)...............................12, 15, 16

*Andrews v. Plains All Am. Pipeline, L.P.*,
777 F. App'x 889 (9th Cir. 2019) ..............................................................................2, 6, 7, 18

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018) ................................................................................................3

*Career Counseling v. Amerifactors Financial Group, LLC*,
No. 3:16-cv-03013-JMC,
2021 WL 3022677 (D.S.C. July 16, 2021) ........................................................................6

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..............................................................................................................2

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir.2006) ................................................................................................3

*Domingo ex rel. Domingo v. T.K.*,
289 F.3d 600 (9th Cir. 2002)..............................................................................................16

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ...........................................................................................................16

*Hamm v. Mercedes-Benz USA, LLC*,
No. 5:16-cv-03370-EJD,
2021 WL 1238304 (N.D. Cal. Apr. 2, 2021) ...............................................................11, 19

*Luke v. Family Care & Urgent Med. Clinics*,
323 F. App'x 496 (9th Cir. 2009) ......................................................................................12

*Marlo v. United Parcel Serv., Inc.*,
639 F.3d 942 (9th Cir. 2011)..............................................................................................2

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4510796

ii

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................................ 3, 17

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
   139 S. Ct. 2051 (2019) ................................................................................. 15 n.31

*Plexxikon Inc. v. Novartis Pharm. Corp.*,
   No. 17-cv-04405-HSG,
   2020 WL 1325068 (N.D. Cal. Mar. 20, 2020) ....................................................... 12

*Pub. Watchdogs v. S. California Edison Co.*,
   984 F.3d 744 (9th Cir. 2020) ................................................................................. 15

*Racies v. Quincy Bioscience, LLC*,
   No. 15-cv-00292-HSG,
   2020 WL 2113852 (N.D. Cal. May 4, 2020) ...................................................... 2, 17

*In re Lithium Ion Batteries Antitrust Litig.*
   No. 13-MD-2420 YGR,
   2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) ........................................................ 11

*In re Seagate Tech. LLC*,
   326 F.R.D. 223 (N.D. Cal. 2018) ..................................................................... 11, 14

*Sali v. Corona Reg'l Med. Ctr.*,
   909 F.3d 996 (9th Cir. 2018) ............................................................................ 2, 17

*True Health Chiropractic, Inc. v. McKesson Corp.*,
   896 F.3d 923 (9th Cir. 2018) ................................................................................. 17

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ........................................................................................ 18, 19

*United States v. 400 Acres of Land*,
   No. 2:15-cv-01743-MMD-NJK,
   2020 WL 5074255 (D. Nev. Aug. 27, 2020) ......................................................... 16

*Vinole v. Countrywide Home Loans, Inc.*,
   246 F.R.D. 637 (S.D. Cal. 2007), *aff'd*, 571 F.3d 935 (9th Cir. 2009) .............. 14. 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................................................................... 2, 18

*Wash. Envtl. Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ................................................................................. 2

*Westways World Travel, Inc. v. AMR Corp.*,
   265 F. App'x 472 (9th Cir. 2008) ..................................................................... 2, 19

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-cv-02219-HSG
sf-4510796

iii

*Williams v. Apple, Inc.*
   No. 19-CV-04700-LHK,
   2021 WL 2186223 (N.D. Cal. May 28, 2021) ........................................................................11

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................................................2, 11

**Other Authorities**

W. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012) .................................................19

Defendants' Response to Plaintiffs' Response to OSC Why Class Should Not Be Decertified
Case No. 4:13-cv-02219-HSG
sf-4510796

iv

1

## I.     INTRODUCTION

Plaintiffs' subpoena process has failed to generate class-wide proof sufficient to establish which individuals belong in the Stand-Alone Fax Machine Class.  Under controlling legal authority, Plaintiffs have failed to satisfy predominance and the class should be decertified. Nothing in Plaintiffs' Response to the Court's Order to Show Cause ("OSC") changes this fact.

Rather than generate the class-wide proof Plaintiffs promised, the subpoena responses highlight the need for individualized inquiries.  Phone carriers for 62.7% of the potential class have confirmed they are unable to determine how a subscriber received faxes.  Other phone carriers for at least 17% of the class have no records about potential class members during the 2009-2010 class period.  Plaintiffs' incomplete subpoena process fails to reliably account for online fax services obtained through other parties beyond the carriers, and fails to account whatsoever for call forwarding.  Plaintiffs attempt to obscure these defects by relying on unsupported expert assumptions about the *absence of data*, and propose to assign class members with *no data* to the Stand-Alone Fax Machine Class.  (*See* ECF No. 480 at 5:23-24.)  But as this Court has already observed, "the declarations submitted by the telephone carriers . . . cast significant doubt on the reasonableness of [the expert's] assumption."  (ECF No. 476 at 6:21-24.) The need for individualized inquiries defeats predominance under binding Supreme Court and Ninth Circuit case law.

Plaintiffs' arguments in their Response to OSC are insufficient to avoid decertification. Their first argument is based on a fundamental misunderstanding of the predominance standard, unsupported even by the single case Plaintiffs cite.  (*See* ECF No. 480 at 1:6-5:2.)  In the two-page section of their Response that attempts to substantively respond to the Court's OSC, Plaintiffs largely repeat the same arguments made in their Offer of Proof (ECF No. 455) that led this Court to voice "serious concerns" about Plaintiffs' ability to offer class-wide proof (*see* ECF No. 476 at 6:25-7:6).  Finally, Plaintiffs' request for leave to seek summary judgment for two individual Plaintiffs highlights precisely the evidence necessary to pursue a TCPA claim: individual testimony confirming how each class member received the fax at issue in 2009-2010.

The manner in which faxes were received is the "predominant issue."  (ECF No. 476

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4585966

1

1    at 7:1-4.)  Plaintiffs lack class-wide proof as to whether class members used a stand-alone fax

2    machine, defeating predominance and requiring decertification of the class.

3    ## II.    LEGAL STANDARD

4           "If later evidence disproves Plaintiffs' contentions that common issues predominate, the

5    district court can at that stage modify or decertify the class."  *Westways World Travel, Inc. v.*

6    *AMR Corp.*, 265 F. App'x 472, 475-76 (9th Cir. 2008) (citation omitted) (affirming

7    decertification after district court found based upon additional evidence that individual issues

8    predominated); *see also* Fed. R. Civ. P. 23(c)(1)(C) (order certifying a class "may be altered or

9    amended before final judgment.").

10          Plaintiffs maintain the burden to demonstrate that all of the Rule 23 requirements have

11   been satisfied through entry of judgment.  *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942,

12   947-48 (9th Cir. 2011).  The requirements to maintain a certified class are "stringent," *Am. Exp.*

13   *Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013), so the district court must take a "close

14   look" at the putative class and perform a "rigorous analysis."  *Comcast Corp. v. Behrend*, 569

15   U.S. 27, 34-35 (2013) (citations omitted).  "The manner and degree of evidence required for the

16   plaintiff to meet his burden depends on the stage of the litigation."  *Racies v. Quincy Bioscience,*

17   *LLC*, No. 15-cv-00292-HSG, 2020 WL 2113852, at *2, *5 (N.D. Cal. May 4, 2020) (Gilliam, J.)

18   (citing *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) and *Sali v. Corona*

19   *Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018)) (decertifying class following trial because

20   essential element of plaintiff's claim "cannot be shown on a common basis, and [thus] common

21   questions of fact do not predominate").

22          Here, Plaintiffs sought certification under Rule 23(b)(3), so common questions must

23   predominate over the individualized ones to maintain class status.  *Wal-Mart Stores, Inc. v.*

24   *Dukes*, 564 U.S. 338, 350-51 (2011); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).

25   Class treatment is not proper when "individualized inquiries go to key elements of the class's

26   claim."  *See Andrews v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 889, 892 (9th Cir. 2019)

27   (reversing class certification decision because "the fact [that] some class members were not

28   injured will require individualized consideration and proof").

1    Moreover, "[n]o class may be certified that contains members lacking Article III

2    standing." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (quoting *Denney v.*

3    *Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir.2006)).  The Court granted summary judgment

4    against the Online Fax Service Class and determined that individuals who received faxes via an

5    online fax service have "no cause of action as a matter of law" under the TCPA.  (ECF No. 418

6    at 2:8-9.)  Accordingly, where, as here, "any class member may be uninjured," the "need to

7    identify those individuals will predominate" over any common questions.  *In re Asacol Antitrust*

8    *Litig.*, 907 F.3d 42, 53 (1st Cir. 2018).

9    **III.    ARGUMENT**

10   Here, "the manner in which the faxes were received [is] a critical element of TCPA

11   liability" and "the predominant issue" at this stage—in fact, it is the only remaining issue for the

12   jury trial.  (ECF No. 476 at 7:1-4.)  Twelve days from trial, however, Plaintiffs have no common

13   evidence to separate members of the Online Fax Services Class, who have no TCPA claim as a

14   matter of law (ECF No. 418 at 2:8-9), from members of the Stand-Alone Fax Machine Class.

15   Plaintiffs have thus fallen short of their burden to prove through class-wide evidence which class

16   members received the faxes at issue on a stand-alone fax machine.  Plaintiffs' subpoena process is

17   unreliable, incomplete, and fails to account for the different ways by which an individual could

18   have received the faxes at issue.  And Plaintiffs and their expert cannot use the *absence of data*

19   and unsupported, unreliable opinions—rather than common proof—to gloss over the

20   individualized questions necessary to determine who belongs in the Stand-Alone Fax Machine

21   Class.  The other arguments Plaintiffs make to the contrary are merely red herrings.

22   In the absence of class-wide proof, individualized inquiries are necessary to determine

23   how class members received the faxes at issue in 2009-2010.  As a result, this case cannot

24   proceed to trial as a class action and should be decertified.

25

26

27

28

**A.      The Results of Plaintiffs' Subpoena Process Do Not Satisfy Plaintiffs' Burden to Present Class-Wide Evidence of How Class Members Received the Faxes at Issue on a Stand-Alone Fax Machine.**

**1.      Individual Inquiries Are Necessary Because Many Phone Carriers Cannot Determine If a Subscriber Received Faxes via Online Fax Service or on a Stand-Alone Fax Machine.**

First, the results of Plaintiffs' three-step subpoena process have "confirmed that Plaintiffs cannot determine how a large majority of the class (at a minimum) received the faxes at issue. . ." (September 17, 2021 Third Updated Expert Report of Ken Sponsler ("Sponsler Report") ¶ 17, attached as Ex. A to Declaration of Bonnie Lau in Support of Defendants' Response to Plaintiffs' Response to Order to Show Cause Why Class Should Not Be Decertified.)  Mr. Sponsler reviewed the phone carrier responses received as of September 17, 2021 and determined that "phone carriers that Plaintiffs identified as servicing 62.7% of class members during the class period have attested under oath or otherwise confirmed that they cannot determine whether their subscribers received faxes on a stand-alone fax machine or via online fax services."  (*Id*. ¶ 12.) The chart below identifies the phone carriers that provided these responses thus far, the number of phone numbers Plaintiffs asked each carrier for information about, the percentage of those phone numbers against the potential class, and the relevant excerpts of the carriers' responses:

| Phone Carrier | Number of Phone Nos. | Percentage of Class | Response About Ability to Identify How Subscriber Received Faxes |
|---|---|---|---|
| AT&T | 3,265 | 34% | "AT&T *does not have a mechanism to determine* if any of the subscribers whose telephone numbers are among the class procured online fax service from a third party and/or were using a stand-alone fax machine or any other technology to receive faxes."[1] |

---

[1] ECF No. 470-1 (Declaration of Lisa Likely ("AT&T Decl.")) ¶ 7 (emphasis added).

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE No. 4:13-CV-02219-HSG
sf-4585966

4

| Phone Carrier | Number of Phone Nos. | Percentage of Class | Response About Ability to Identify How Subscriber Received Faxes |
|---|---|---|---|
| Verizon | 1,357 | 14% | "███████████████████████████████████████████████████[2] |
| Frontier | 763 | 8% | "Frontier is **unable to identify** how a subscriber is using its service, including whether a subscriber procured online fax service from a third-party or was using a stand-alone fax machine or any other technology to receive faxes."[3] |
| Comcast | 437 | 4% | "██████████████████████████████████████████████[4] |
| Charter | 108 | 1% | "██ . . . ████████████████████████[5] |
| TPx Communications | 12 | <1% | ". . . ████████████████████ . . ."[6] |

[2] ECF No. 460-7, Ex. A, Part 5 at 39 (TCSR000649), Declaration of Tami Ware ("Verizon Decl.") ¶ 8 (emphasis added).

[3] ECF No. 471-1, Declaration of Jack Hansen ("Frontier Decl.") ¶ 10 (emphasis added).

[4] ECF No. 460-7, Ex. A, Part 5 at 63 (TCSR000673), Declaration of Carol Siderio ("Comcast Decl.") ¶ 3 (emphasis added).

[5] *Id.*, Ex. A, Part 5 at 60 (TCSR000670), Declaration of ShaRayne Jackson ("Charter Decl.") ¶ 6 (emphasis added).

[6] ECF No. 460-5, Ex. A, Part 3 at 122 (TCSR000481) (emphasis added).

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4585966

5

| Phone Carrier | Number of Phone Nos. | Percentage of Class | Response About Ability to Identify How Subscriber Received Faxes |
|---|---|---|---|
| Telapex aka Callis Communications | 2 | <1% | "... ████████████████████████ ████████████████████████ ████████████████████████ [7] |
| Mountain View Telephone Co. / Yelcot Telephone Co. | 1 | <1% | "... ████████████████████████ ████████████████████████ ████████████████████████ [8] |
| **TOTAL** | **5,945** | **62.7%** | |

(Sponsler Report, Table 1.)

These responses confirm that *for more than half of the potential class*, the phone carrier subpoena responses cannot prove who received faxes on a stand-alone fax machine, so method of receipt must be determined on an individual basis. These responses mirror those in *Career Counseling v. Amerifactors Financial Group, LLC*, where the same Plaintiffs' counsel attempted a nearly identical subpoena process. *See* No. 3:16-cv-03013-JMC, 2021 WL 3022677, at *12 (D.S.C. July 16, 2021) (quoting similar language from Verizon, Charter, and AT&T about their inability to determine how subscribers received faxes). There, the court denied class certification because "it would need to make an individualized inquiry of each class member to determine if the fax number identified in the fax log actually was linked to a stand-alone fax machine on" the relevant date. *Id.* So, too, here. While the *Career Counseling* court denied certification based on the inability to ascertain class members, its reasoning applies equally to defeat predominance here.

*Andrews v. Plains All American Pipeline* is instructive on this point. 777 F. App'x 889.

---

[7] ECF No. 460-4, Ex. A, Part 2 at 94 (TCSR000283) (emphasis added).

[8] ECF No. 460-5, Ex. A, Part 3 at 128 (TCSR000487) (emphasis added).

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-cv-02219-HSG
sf-4585966

6

1    The Ninth Circuit held that it is an abuse of discretion to certify a class when "individualized

2    inquiries go to key elements of the class's claims" because those individual questions defeat

3    predominance.  *Id.* at 892.  In *Andrews*, because "some class members were not injured,"

4    individuals were required "to present varying evidence" to establish their connection to the

5    defendant and the viability of their claims.  *Id.* at 891-92.  Similarly, here, because individuals

6    who received faxes via online fax services have not been injured under the TCPA (ECF No. 418

7    at 2:8-9), and the phone carriers confirmed they cannot determine method of fax receipt,

8    individualized inquiries are necessary for potential class members to prove the viability of their

9    TCPA claims.  This lack of predominance necessitates decertification.

10           **2.    Individual Inquiries Are Necessary Because No Phone Carrier Data
                      Exists for At Least 17% of the Class.**

11

12           Second, given Plaintiffs' burden to affirmatively prove their case through class-wide

13    evidence, they cannot assume, *from a lack of data*, that class members suffered a cognizable

14    injury under the TCPA.  But Plaintiffs attempt to do exactly that.  (*See* ECF No. 480 at 5:9-11

15    (assuming that the 6,491 individuals whose phone carriers did not directly provide online fax

16    services are "members of the Stand-Alone Fax Machine Class"); ECF No. 455-2 ¶ 26(a)-(b); ECF

17    No. 455 at 1:18-23 (speculating that 685 class members with *no data* regarding their use of phone

18    carriers' online fax services "should not be placed in the 'online fax services' subclass").)

19           For at least 17% of the class, carriers have responded that they lack responsive records.

20    (*See* Sponsler Report ¶ 20 and Table 2 (summarizing "no data" responses).)  In some cases, the

21    phone carriers lack data because their retention policies do not extend back to the 2009-2010 class

22    period, and in others, the phone carriers did not service the phone numbers for which Plaintiffs

23    requested information.  (*See id.* ¶¶ 20-21 (analyzing the two types of phone carrier responses).)

24    Either way the result is the same:  for at least 17% of the class, there is no data at all.

25           A chart summarizing those responses is below:

26

27

28

| Phone Carrier | Number of Phone Nos. | Percentage of Class | Response About Lack of Responsive Records |
|---|---|---|---|
| Frontier | 763 | 8% | "[T]he records Plaintiff requests fall outside Frontier's retention period.  Frontier retains customer account information for seven years, after which such records are deleted from the system.  Thus, Frontier ***does not have records*** for subscribers between September 2, 2009, to May 11, 2010."[9] |
| Windstream Communications LLC | 567 | 6% | "██████████████████████████████ ██████████"[10] "██████████████████████████████ ██████"[11] |
| T-Mobile | 123 | 1.3% | "██████████████████████████████ ████████"[12] |
| Northwest Fiber LLC dba Ziply Fiber ("Ziply Fiber") | 103 | 1% | "██████████████████████████████ ██████████████████████ . . . ."[13] |
| Cincinnati Bell Company | 45 | 0.5% | ". . . ██████████████████ ██████████████████████████████"[14] |

---

[9] Frontier Decl. ¶ 8 (emphasis added).

[10] ECF No. 460-7, Ex. A, Part 5 at 46 (TCSR000656).

[11] *Id.* (emphasis added).

[12] ECF No. 460-6, Exhibit A, Part 4 at 98 (TCSR000595) (emphasis added).

[13] ECF No. 406-3, Ex. A, Part 1 at 60 (TCSR000070) (emphasis added).

[14] *Id.*, Ex. A, Part 1 at 70 (TCSR000080) (emphasis added).

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4585966

8

| Phone Carrier | Number of Phone Nos. | Percentage of Class | Response About Lack of Responsive Records |
|---|---|---|---|
| Global Telecom Brokers | 2 | 0.02% | "..."[15] |
| Service Plus South Inc. | 2 | 0.02% | "..."[16] |
| North State Telephone Company | 1 | 0.01% | "... ..."[17] |
| Plateau Communications | 1 | 0.01% | "... ..."[18] |
| Sparklight fka Cable One Inc. | 10 | 0.1% | "... ..."[19] |
| Buckeye Broadband | 8 | 0.08% | "... [phone number] . . . [phone number] . . . [phone number] . . . [phone number] . . ."[20] |
| Nuvera Communications Inc. | 5 | 0.05% | "... ..."[21] |

---

[15] ECF No. 460-4, Ex. A, Part 2 at 117 (TCSR000306) (emphasis added).

[16] ECF No. 460-3, Ex. A, Part 1 at 85 (TCSR000095) (emphasis added).

[17] ECF No. 460-5, Ex. A, Part 3 at 65 (TCSR000424) (emphasis added).

[18] ECF No. 460-3, Ex. A, Part 1 at 131 (TCSR000141) (emphasis added).

[19] ECF No. 460-4, Ex. A, Part 2 at 33 (TCSR000222) (emphasis added).

[20] ECF No. 460-4, Ex. A, Part 2 at 31 (TCSR000220) (emphasis added).

[21] ECF No. 460-6, Ex. A, Part 4 at 111 (TCSR000608) (emphasis added).

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4585966

9

| Phone Carrier | Number of Phone Nos. | Percentage of Class | Response About Lack of Responsive Records |
|---|---|---|---|
| POPP Communications | 4 | 0.04% | "█████████████████████████████ ████"22 |
| AcenTek | 4 | 0.04% | "██████████████████████████ 23 |
| South Central Communications | 2 | 0.02% | ". . . ██████████████ ([phone number], [phone number]) . . ."24 |
| Freedom Ring Communications | 3 | 0.03% | "[phone number] █████████████"25 |
| Citynet | 1 | 0.01% | "██████████████████████ 26 |
| CommuniGroup | 1 | 0.01% | ". . . ███████████████ [phone number] ███████ . . ."27 |
| Hood Canal Communications | 1 | 0.01% | ". . . ████████████████████"28 |
| Climax Telephone Company | 2 | 0.02% | "██████████████████████████████ ██████ 29 |
| **TOTAL** | **1648** | **17%** | |

22 ECF No. 460-5, Ex. A, Part 3 at 84 (TCSR000443) (emphasis added).

23 ECF No. 460-6, Ex. A, Part 4 at 4 (TCSR000501) (emphasis added).

24 ECF No. 460-3, Ex. A, Part 1 at 153 (TCSR000163) (emphasis added).

25 ECF No. 460-7, Ex. A, Part 5 at 24 (TCSR000634) (emphasis added).

26 ECF No. 460-3, Ex. A, Part 1 at 84 (TCSR000094) (emphasis added).

27 ECF No. 460-4, Ex. A, Part 2 at 63 (TCSR000252) (emphasis added).

28 ECF No. 460-5, Ex. A, Part 3 at 22 (TCSR000381) (emphasis added).

29 ECF No. 460-6, Ex. A, Part 4 at 54 (TCSR000551) (emphasis added).

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4585966

10

1    (Sponsler Report, Table 2.)

2         Class certification should be denied where the plaintiffs fail to present evidence of a

3    cognizable injury common to the whole class.  For example, in *Williams v. Apple, Inc.*, Apple

4    averred that "it [was] not feasible" to identify putative class members who suffered cognizable

5    harm during a portion of the class period and those who did not.  No. 19-CV-04700-LHK, 2021

6    WL 2186223, at *11 (N.D. Cal. May 28, 2021).  Apple's records did not capture the relevant

7    distinction, *had no way to distinguish plaintiffs who were "harmed" versus those who were not*,

8    and the plaintiffs failed to provide any alternative common proof for class members during that

9    time period that would support predominance.  The court thus decertified that portion of the class.

10   *Id.* at *8-11, *24-25.

11        Likewise, in *In re Lithium Ion Batteries Antitrust Litig.*, the court denied class certification

12   in part because "the Court . . . cannot ignore the large gaps in the evidence supporting the ability

13   to demonstrate impact and damages on a class-wide basis," and found that the evidence

14   "ultimately does not satisfy [plaintiffs'] burden under Rule 23(b)'s predominance requirement."

15   No. 13-MD-2420 YGR, 2017 WL 1391491, at *17-18 (N.D. Cal. Apr. 12, 2017).  *See also, e.g.*,

16   *Hamm v. Mercedes-Benz USA, LLC*, No. 5:16-cv-03370-EJD, 2021 WL 1238304, at *12 (N.D.

17   Cal. Apr. 2, 2021) (denying class certification and holding that predominance was not satisfied

18   because there was an "unknown number of class members" that "would likely have no damages"

19   and "decipher[ing] which class members" were not injured would "require extensive individual

20   inquiries"); *In re Seagate Tech. LLC*, 326 F.R.D. 223, 243-44 (N.D. Cal. 2018) (declining to

21   certify class because of gaps in the evidence available to evaluate the hard drives at issue and

22   because establishing class-wide proof of injury "require[d] a level of individualized inquiry

23   for which Plaintiffs . . . proposed no manageable plan").

24        In addition to these phone carriers who have affirmatively confirmed lack of data, 110 of

25   the 231 phone carriers that Plaintiffs subpoenaed have not yet responded, creating a potentially

26   greater gap in data.  The lack of data for at least 17% of the potential class provides an

27   independent basis to decertify the class.

28

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4585966

11

1

2

### 3. Individual Inquiries Are Necessary Because Plaintiffs' Subpoena Process Fails to Account for All Scenarios by Which Class Members Might Have Used Online Fax Services.

3

Third, Plaintiffs' subpoena process ignores several ways that Plaintiffs' expert admits

4

class members could have used online fax services, and thus the responses generated cannot

5

reliably or comprehensively provide class-wide proof of liability.  Plaintiffs' subpoenas ask only

6

if the phone carrier itself provided online fax services to the individual subscribers.  But the

7

"phone carrier is merely one of numerous providers a class member could employ to receive

8

online fax services."  (ECF No. 437-2 (July 20, 2021 Second Updated Expert Report of Ken

9

Sponsler) ¶ 11.)  Two additional methods of receiving online fax services include (1) using a

10

third-party online fax service provider separate from the phone carrier and (2) forwarding calls to

11

an online fax service provider, as Plaintiffs' expert Robert Biggerstaff concedes.  (*See* ECF

12

No. 455-2 ("Biggerstaff Decl.") ¶ 12(a), (c).)[30]  As a consequence, "[b]y design, Plaintiffs'

13

subpoena process ignored different methods by which a class member could obtain online fax

14

services."  (Sponsler Report ¶ 19.)

15

---

16

[30] Defendants note that the September 10, 2021 Declaration of Robert Biggerstaff ("Biggerstaff Declaration") is untimely.  The Biggerstaff Declaration consists entirely of opinions regarding the

17

"fax technology and the subpoena process being used to determine membership in the two classes (i.e., the 'online fax service' class and the 'standalone fax machine' class.)."  (*See* Biggerstaff Decl. ¶ 3.)  Although Mr. Biggerstaff purports to "respond" to Mr. Sponsler's July 20, 2021

18

Declaration, the key change in law that should have prompted a timely supplement arose ***nearly two years ago*** when the Consumer and Government Affairs Bureau of the Federal

19

Communications Commission ("FCC") issued *In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer*

20

*Prot. Act of 1991 Junk Fax Prot. Act of 2005*, CG Dkt. Nos. 02-278, 05-338, 2019 WL 6712128 (Dec. 9, 2019) ("*Amerifactors*").  Plaintiffs chose not to timely supplement Mr. Biggerstaff's

21

report in light of *Amerifactors*.  Nor did they timely supplement Mr. Biggerstaff's report following the Court's December 24, 2020 Order ruling that it was bound by *Amerifactors* and

22

dividing the class into a Stand-Alone Fax Machine Class and an Online Fax Services Class.  (*See* ECF No. 372 at 10:1-12:19.)  Plaintiffs' supplements are not properly based on new law or new

23

evidence, so all of Mr. Biggerstaff's untimely opinions should be excluded.  *See Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-cv-04405-HSG, 2020 WL 1325068, at *2 (N.D. Cal. Mar. 20,

24

2020) (Gilliam, J.) (holding that supplementation "is only intended to 'correct[ ] inaccuracies, or fill[ ] the interstices of an incomplete report based on information that was not available at the

25

time of the initial disclosure.'" (quoting *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009)).  The same arguments apply to any testimony by Mr. Biggerstaff

26

that call forwarding to an online fax service "would have degraded the clarity of their fax transmissions resulting in a greater percentage of unreadable faxes" because that opinion was not

27

disclosed to Defendants until Plaintiffs' Response to OSC fourteen days before trial.  (ECF No. 480 at 5:18-20.)

28

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4585966

12

1
2

      **a.**      **Plaintiffs Do Not—and Cannot—Offer Class-Wide Evidence to Establish Which Class Members Used Third-Party Online Fax Services During the 2009-2010 Class Period.**

3        In their Response to OSC, Plaintiffs incorrectly assert that there are only two ways to use

4  online fax services: directly through one's phone carrier or by call forwarding.  (ECF No. 480

5  at 5:9-14.)  Not so.  During the class period, individuals "could have engaged a separate online

6  fax service provider, which might itself be the subscriber to the phone number."  (Sponsler Report

7  ¶ 22; *see also* Biggerstaff Decl. ¶¶ 12(a), 22.)  Notably absent from Plaintiffs' Response to OSC,

8  however, is any mention of this method of receipt.  Yet Plaintiffs themselves issued subpoenas to

9  fifteen third-party online fax service providers.  (*See* Sponsler Report ¶ 22 n.43 (identifying

10  Plaintiffs' subpoenas to online fax service providers); *e.g.*, ECF No. 460-3, Ex. A Part 1 at 97-104

11  (TCSR000107-114) (subpoena to FAXAGE).)  Indeed, the entire premise of Plaintiffs' original

12  subpoena process was to identify these third-party online fax service providers as subscribers,

13  until Plaintiffs pivoted to the narrower question of direct provision of online fax services by

14  phone carriers.  (*See* ECF No. 409 at 7:16-8:9 (chart showing differences between Plaintiffs'

15  original and revised versions of three-step subpoena process).)  Even after modifying the

16  subpoena process, Plaintiffs and their expert acknowledge that class members could have used

17  online fax services provided by third parties, rather than phone carriers.  (*See* Biggerstaff Decl.

18  ¶¶ 12(a), 22 ("If the [phone number subscriber] is a [third party online fax service], the [phone

19  number] is placed in the [online fax service] class.").)

20        But Plaintiffs' subpoenas to only 15 online fax service providers are deficient and still fail

21  to provide class-wide proof because Plaintiffs have only subpoenaed a small portion of the

22  numerous third party online fax service providers who were in business during the 2009-2010

23  class period.  (*See* Sponsler Report ¶ 23 (providing examples of numerous other online fax

24  service providers in operation during the class period).)  In addition, "[b]ecause more than a

25  decade has passed since the class period, many of the online fax service providers available in

26  2009-2010 may have changed their name, gone out of business, or merged with or acquired

27  another company.  Therefore, it would be virtually impossible to identify all online fax service

28  providers in business during the class period."  (*Id.*)  So Plaintiffs' incomplete attempt to obtain

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4585966

13

1    records from third-party online fax service providers, which they ignore in their Response to

2    OSC, would result in incomplete and unreliable evidence from which to draw any conclusions

3    about class membership.  *See In re Seagate Tech. LLC*, 326 F.R.D. at 243-44 (denying class

4    certification when determining liability "would still require a level of individualized inquiry"

5    because of gaps and differences in the evidence available to evaluate the products at issue).

6          **b.     Plaintiffs Concede That Their Subpoena Process Cannot

7                    Identify Which Class Members Used Online Fax Services Through Call Forwarding.**

8          Plaintiffs' subpoena process does not ask about, and thus cannot identify, instances in

9    which a class member obtained online fax services by call forwarding.  "Several online fax

10   service providers permit[ted] their customers to use their carrier's call forwarding feature to

11   forward incoming 'calls' to the online fax service."  (Sponsler Report ¶ 25.)  Plaintiffs' expert

12   agrees that call forwarding is another way to receive a fax via online fax service.  (Biggerstaff

13   Decl. ¶¶ 12(c), 24 (noting that individuals who "forwarded their fax number to an" online fax

14   service should be "placed in the [online fax services] class"); ECF No. 480 at 5:12-14

15   (representing that Mr. Biggerstaff will testify that a "way for a class member to have utilized an

16   online fax service is by 'call forwarding' the transmissions to their fax line to an on [sic] online

17   fax service . . .").)

18         When using call forwarding, "the phone carrier's records would reflect that the customer

19   was a regular subscriber of telephone services and would have ***no record*** that the telephone

20   number was actually used for online fax services."  (Sponsler Report ¶ 25 (emphasis added).)

21   Accordingly, the subpoena responses cannot provide evidence of which class members used

22   online fax services, and thus do not "diminish the need for individual inquiry."  *See Vinole v.*

23   *Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 641 (S.D. Cal. 2007), *aff'd*, 571 F.3d 935 (9th

24   Cir. 2009).  In *Vinole*, the plaintiffs sought to represent a class on claims that they were

25   misclassified as exempt employees.  *Id.* at 639.  Class membership thus depended on being an

26   exempt employee.  The *Vinole* court denied class certification because "individual questions of

27   fact predominate[d] over common factual and legal issues" as there was "no common scheme or

28   policy"—class-wide proof—to determine exempt status, let alone misclassified exempt status.  *Id.*

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4585966

14

1   at 641-42.  Likewise, here, because Plaintiffs' subpoena results cannot show who used online fax

2   services through call forwarding, the subpoena process cannot identify each class member that

3   received the faxes at issue on a stand-alone fax machine as is required to have a viable TCPA

4   claim.

5           **B.**    **Plaintiffs' Expert's Speculative Assumptions Cannot Overcome the Required Individualized Inquiries.**

6

7        Plaintiffs attempt to rely on supplemental opinions from their expert, Mr. Biggerstaff,

8   to avoid "the need for individualized evidence from the class members."  (ECF No. 480 at 5:7;

9   *see generally* Biggerstaff Decl.)  Plaintiffs cannot do so.[31]

10       First, many of Mr. Biggerstaff's opinions are unfounded, incomplete, and unreliable.  As

11   just one example, Mr. Biggerstaff's proposed approach relies on the following speculative

12   "assumptions" to assign class members to the Stand-Alone Fax Machine Class:

13          &bull;  "*Absence of data* regarding whether a subscriber used the carriers [sic] [online fax

14               service] results in a default of not in the [online fax service] class."  (Biggerstaff

15               Decl. ¶ 26(a) (emphasis added).)

16          &bull;  "*Absence of data* regarding whether a subscriber forwarded their fax number to an

17               [online fax service] results in a default of not in the [online fax service] class."

18               (*Id*. ¶ 26(b) (emphasis added).)

19

20   [31] As Defendants previously explained, Mr. Biggerstaff's opinions are contrary to the law and should be excluded.  (ECF No. 464 at 4:17-5:18.)  In the OSC, the Court acknowledged that the

21   FCC in *Amerifactors* previously considered and rejected Mr. Biggerstaff's exact same "telephone facsimile machine" and "capacity to print" arguments.  (ECF No. 476 at n.3.)  The FCC instead

22   ruled that an online fax service is not a "telephone facsimile machine" under the TCPA because it "cannot itself print a fax—the user of an online fax service must connect his or her own

23   equipment in order to do so."  *Amerifactors* ¶ 11.  As this Court has recognized, the FCC's interpretation is binding here.  (ECF No. 393 at 11:2-3 ("Here, the Court finds that *Amerifactors*

24   is a final, binding order for purposes of the Hobbs Act."); *see also* ECF No. 386 at 2:21-8:3; ECF No. 388 at 1:21-5:7.)  The Ninth Circuit has explained that its "circuit precedent" on the Hobbs

25   Act "remains binding" after Justice Kavanaugh's concurrence in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2057 (2019) suggested a different view of the Hobbs

26   Act's jurisdictional bar.  *Pub. Watchdogs v. S. California Edison Co.*, 984 F.3d 744, 757 (9th Cir. 2020).  And, even if the FCC's interpretation were not binding, it would still be entitled to

27   deference and is in any event correct under any standard of review.  (ECF No. 386 at 12:7-18:23; ECF No. 388 at 5:17-10:25.)

28

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4585966

15

1    Plainly, the *absence of data* does not constitute a reliable or acceptable method to assign a class

2    member to the Stand-Alone Fax Machine Class.  "[N]othing in either *Daubert* or the Federal

3    Rules of Evidence requires a district court to admit opinion evidence that is connected to existing

4    data only by the *ipse dixit* of the expert." *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607

5    (9th Cir. 2002) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  As this Court noted

6    in the OSC, "the declarations submitted by the telephone carriers . . . cast significant doubt on the

7    reasonableness of [Mr. Biggerstaff's] assumption" in paragraph 26(a) of his Declaration.  (ECF

8    No. 476 at 6:21-24.)

9         The absence of data is synonymous with the absence of class-wide proof.  The Court,

10   however, has already observed that Plaintiffs cannot meet their burden of proof at trial by

11   pointing to a lack of evidence.  (*See* ECF No. 462 (Sept. 7, 2021 Hearing Tr.) at 5:23-6:4;

12   15:1-7.)  Mr. Biggerstaff's purported "assumptions" cannot fill that void.

13        Second, in their Response to OSC, Plaintiffs attempt to pivot from these deficiencies and

14   now contend that Mr. Biggerstaff will opine that "there is a 'low likelihood' any class member

15   would have used call forwarding to receive Defendants' faxes via online fax service."  (ECF

16   No. 480 at 5:16-18.)  However, Mr. Biggerstaff cites no data or evidence for his new opinion.

17   (*See* Biggerstaff Decl. ¶¶ 28-29.)  Nor has he provided any reasoned basis to assume from a "low

18   likelihood" of this one method for receiving online fax services that all class members should be

19   assigned by "default" to the Stand-Alone Fax Machine Class.  (*See id*. ¶ 26(b)); *see United States

20   v. 400 Acres of Land*, No. 2:15-cv-01743-MMD-NJK, 2020 WL 5074255, at *22 (D. Nev. Aug.

21   27, 2020) (expert analysis that "relies on *ipse dixit*" with "no factual basis . . . deserves no

22   weight").

23        Mr. Biggerstaff's speculative and unreliable new supplemental opinions, some of which

24   are contrary to the law in *Amerifactors*, are not a substitute for the requisite class-wide proof

25   Plaintiffs need to establish which class members received faxes on a stand-alone fax machine.

26

27

28

1

### C.    Plaintiffs' Arguments in Response to the Court's Order to Show Cause Fail to Establish the Predominance Required for Class Treatment.

2

3

### 1.    Plaintiffs Misstate the Legal Standard for Predominance.

4       Plaintiffs argue that because the parties have narrowed the case through stipulations[32] on

5  two of three elements of their TCPA claim, predominance is satisfied.  (*See* ECF No. 480

6  at 2:12-5:2.)  Plaintiffs cite no authority suggesting predominance can be established when

7  some—but not all—elements would be submitted to the jury by stipulation.  To the contrary, it is

8  well settled in the Ninth Circuit that a lack of class-wide proof on even a single claim element can

9  defeat predominance.  *See, e.g.*, *Mazza*, 666 F.3d at 596 (holding that lack of common evidence

10  as to reliance defeated predominance); *see also Racies*, 2020 WL 2113852, at *5 (decertifying

11  case after trial because trial testimony relating to one issue—lack of reliance on the alleged

12  misrepresentation—defeated predominance and typicality).

13       The only authority Plaintiffs cite on this issue, *True Health Chiropractic, Inc. v.*

14  *McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018), does not support their position.  To the contrary,

15  the Ninth Circuit affirmed denial of class certification for a subset of the class (putative class

16  members listed in Exhibit C) because evidence relating to a single TCPA element—whether those

17  class members had provided prior consent—was too varied and individualized to satisfy

18  predominance.  *Id.* at 932.  Accordingly, Plaintiffs are wrong when they claim that "[t]he

19  predominance inquiry does not demand that every issue in the case be capable of resolution via

20  class-wide proof."  (ECF No. 480 at 1:7-9.)  Particularly now, on the eve of trial, the "manner and

21  degree of evidence required" of Plaintiffs to establish predominance is higher than it was at the

22  class certification stage.  *See Racies*, 2020 WL 2113852, at *2 (quoting *Sali*, 909 F.3d at 1006).

23  Accordingly, lack of predominance on the remaining key TCPA element—method of fax

24  receipt—is sufficient to defeat certification here.

25

26

---

27  [32] Plaintiffs' claim that the "sender" and "advertisement" pretrial stipulations were "hard-won" (ECF No. 480 at 4:10-12) is disingenuous, as *Defendants* proposed those stipulations to maximize efficiency at trial.

28

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE NO. 4:13-CV-02219-HSG
sf-4585966

17

1

### 2.   Plaintiffs Cannot Rely on "Generalized" Evidence or "Sampling" to Satisfy their Burden to Provide Class-Wide Proof at Trial.

2

3       Plaintiffs' argument that they can rely on "generalized" evidence, citing *Tyson Foods, Inc.*

4  *v. Bouaphakeo*, 577 U.S. 442 (2016), is inapt.  In *Tyson Foods*, the Supreme Court expressly

5  declined to adopt any "broad and categorical rules governing the use of representative and

6  statistical evidence in class actions."  *Id.* at 459-60.  It recognized that in cases where, as here, the

7  class members are not similarly situated, there is "little or no role for representative evidence"

8  because, for example, an individual plaintiff could not prevail in an individual discrimination suit

9  by relying on depositions detailing the way other employees were discriminated against.  *Id.*

10  at 458 (discussing *Wal-Mart*, 564 U.S. 338).  Nor is sampling appropriate where, as here, class

11  members that received the faxes via online fax services suffered no cognizable TCPA injury at

12  all.  *See Andrews*, 777 F. App'x at 892 (holding that economic loss model did not constitute class-

13  wide proof of injury in part because the model did not provide a means to differentiate between

14  injured and uninjured class members).

15       In any event, Plaintiffs here could not prove liability at trial through any "sampling."

16  Unfounded *ipse dixit* testimony by Mr. Biggerstaff that "there is a 'low likelihood' any class

17  member would have used call forwarding"—based on no data whatsoever—bears no resemblance

18  to the limited type of "representative" evidence that was permitted in *Tyson Foods*.

19

### 3.   Requiring Plaintiffs to Satisfy Their Burden to Offer Class-Wide Proof Does Not Impose a "More Stringent Burden of Proof" Than in an Individual Action.

20

21       Plaintiffs contend that any class member in an individual action could rely on

22  Mr. Biggerstaff's expert testimony and evidence that their phone carrier did not provide an online

23  fax service in 2009-2010 to attempt to prove that they did not receive the subject faxes via an

24  online fax service.  (ECF No. 480 at 6:7-10.)  Plaintiffs further imply that requiring individualized

25  evidence to prove class claims would impose a "more stringent burden of proof" than would be

26  required in an individual action.  (*See id*. at 6:10-14.)  Plaintiffs' argument lacks merit.  Even in

27  an individual action, a plaintiff could not rely on speculative, unreliable *ipse dixit* expert

28  testimony about the "low likelihood" of call forwarding or incomplete evidence from phone

DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO OSC WHY CLASS SHOULD NOT BE DECERTIFIED
CASE No. 4:13-cv-02219-HSG
sf-4585966

18

1   carriers, for all of the reasons discussed above. Nor would they, when the individual class

2   member could simply testify whether s/he used a standalone fax machine. Plaintiffs' own request

3   for leave to file an individual summary judgment motion supports this point: Plaintiffs intend to

4   rely on testimony from McLaughlin and True Health to prove that "they received the subject

5   faxes via traditional, stand-alone fax machines."[33, 34]  (ECF No. 480 at 7:15-16.)

6          Accordingly, as this Court has already admonished Plaintiffs, they must offer class-wide

7   evidence showing that the class members received the subject faxes at a stand-alone fax machine.

8   Speculative expert testimony and incomplete phone carrier records underscore the need to engage

9   in individualized inquiries that will require decertification. *See, e.g.*, *Hamm*, 2021 WL 1238304,

10  at *12 (denying class certification and holding that predominance was not satisfied because

11  "decipher[ing] which class members" had no injury would "require extensive individual

12  inquiries"); *see Westways World Travel*, 265 F. App'x at 475-76 (affirming decertification after

13  district court found based upon further proceedings that individual issues predominated).

14  **IV.     CONCLUSION**

15         Plaintiffs have failed to satisfy their burden to present generalized, class-wide proof of

16  which class members received the faxes at issue on a stand-alone fax machine, rather than via

17  online fax services. Plaintiffs' Response to OSC cites no relevant authority supporting their claim

18  that the results of their three-step subpoena process qualify as class-wide proof that satisfies the

19  predominance requirement. For the reasons discussed above, no such common evidence exists;

20  individualized inquiries are necessary to establish liability under the TCPA. Accordingly,

---

23  [33] Notably, Plaintiffs do not rely on the subpoena responses from McLaughlin's and True
    Health's phone carriers or Mr. Biggerstaff's speculative testimony to prove the individual TCPA
24  claims, despite asserting that "any class member that brought an individual action" could do so
    "to prove" this element. (*Id.* at 6:7-10.) Plaintiffs thus tacitly admit that this key element of their
25  TCPA claim is an individual question where "members of a proposed class will need to present
    evidence that varies from member to member." *See Tyson Foods*, 577 U.S. at 453 (quoting 2
26  W. Rubenstein, Newberg on Class Actions § 4:50 at 196-97 (5th ed. 2012)).

27  [34] On October 1, 2021, Defendants served an offer of judgment in an amount that exceeds the
    maximum potential recovery of McLaughlin and True Health.
28

1   Plaintiffs have failed to satisfy predominance, and the class should be decertified.[35]

2

3   Dated:  October 6, 2021                    MORRISON & FOERSTER LLP

4

5                                              By:  */s/ Tiffany Cheung*
                                                    Tiffany Cheung
6
                                               Attorney for Defendants
7                                              MCKESSON TECHNOLOGIES INC.
                                               and MCKESSON CORPORATION
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   [35] If the Court decertifies the class, Defendants would propose a referral to a Magistrate Judge for
     a settlement conference concerning the plaintiffs' individual claims.
28