TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
BONNIE LAU (CA SBN 246188)
BLau@mofo.com
JESSICA GRANT (CA SBN 178138)
JGrant@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

LYNDSEY H. CAIN (admitted *pro hac vice*)
LCain@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza
Denver, Colorado 80202
Telephone: 303.592.2226
Facsimile: 303.592.1510

ERIN P. LUPFER (CA SBN 317994)
ELupfer@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Defendants
MCKESSON TECHNOLOGIES INC. and
MCKESSON CORPORATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC, INC., and MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MCKESSON CORPORATION, MCKESSON TECHNOLOGIES INC., and DOES 1-10, <br><br> Defendants. | Case No. 4:13-cv-02219-HSG <br><br> **DEFENDANTS' TRIAL BRIEF REGARDING PLAINTIFFS' INDIVIDUAL CLAIMS FOR TREBLE DAMAGES** <br><br> Trial: January 10, 2022 <br> Time: 10:00 a.m. <br> Courtroom: 2, 4th Floor <br> Judge: Haywood S. Gilliam, Jr. |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 2

III. ARGUMENT ................................................................................................................... 4

    A. Plaintiffs' Treble Damages Claim Against McKesson Corporation Fails Because McKesson Corporation Did Not Send and Had No Involvement With the Faxes at Issue. ........................................................................................ 4

    B. Plaintiffs' Key Documentary Evidence Is Inadmissible. ....................................... 5

    C. Plaintiffs Present No Evidence That McKesson Corporation Received the 2008 FCC Letter. ..................................................................................................... 5

    D. Receipt of the FCC Letter Would Not Prove a Willful or Knowing TCPA Violation. ................................................................................................................ 6

    E. The Reference to the TCPA in the Slingshot Documents Does Not Prove Any Willful or Knowing Conduct. .......................................................................... 7

    F. Plaintiffs' Attempt to Impute the Conduct of MTI Employees to McKesson Corporation Fails Because It Is Contrary to Well-Established Law Regarding Corporate Separateness. ....................................................................... 7

    G. Plaintiffs Have Abandoned Their Treble Damages Claim Against MTI, and Even if They Could Impute MTI's Conduct to McKesson Corporation, Their Claim Would Still Fail. ................................................................................ 8

        1. Plaintiffs Likely Dropped Their Treble Damages Claim Against MTI Because They Recognize That MTI Believed in Good Faith That It Had Permission to Send Plaintiffs the Faxes at Issue. .................... 8

        2. The Inadmissible Documentary Evidence Plaintiffs Rely on Does Not Refute MTI's Good-Faith Belief. ......................................................... 10

    H. Plaintiffs' Other Arguments Lack Merit. ............................................................. 11

IV. CONCLUSION .............................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Backer Law Firm, LLC v. Costco Wholesale Corp.*,
　No. 4:15-cv-00327–SRB, 2017 WL 6388974 (W.D. Mo. Nov. 28, 2017) ................................. 3

*California v. NRG Energy, Inc.*,
　391 F.3d 1011, 1025 (9th Cir. 2004) ........................................................................................ 8

*Davis v. Diversified Consultants, Inc.*,
　36 F. Supp. 3d 217 (D. Mass. 2014) ......................................................................................... 3

*E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*,
　No. CV F 03-5412 AWI LJO,
　2008 WL 2220396 (E.D. Cal. May 27, 2008) ........................................................................... 8

*U.S. ex rel. Giles v. Sardie*,
　191 F. Supp. 2d 1117 (C.D. Cal. 2000) .................................................................................... 8

*Haysbert v. Navient Sols., Inc.*,
　No. CV 15-4144 PSG (Ex),
　2016 WL 890297 (C.D. Cal. Mar. 8, 2016) ..................................................................... 2, 3, 6

*Heidorn v. BDD Mktg. & Mgmt. Co., LLC*,
　No. 13-cv-00229-YGR,
　2013 WL 6571168 (N.D. Cal. Oct. 9, 2013) ............................................................................. 4

*KHS Corp. v. Singer Fin. Corp.*,
　376 F. Supp. 3d 524 (E.D. Pa. 2019) ................................................................................. 2, 10

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
　780 F.3d 1101 (11th Cir. 2015) ................................................................................................ 3

*Malley v. San Jose Midtown Dev. LLC*,
　No. 5:20-cv-01925-EJD,
　2020 WL 5877575 (N.D. Cal. Oct. 2, 2020) ............................................................................. 5

*Mey v. Pep Boys-Manny, Moe & Jack*,
　717 S.E.2d 235 (W. Va. 2011) .................................................................................................. 6

*N.L. by Lemos v. Credit One Bank, N.A.*,
　No. 2:17-cv-01512-JAM-DB, 2019 WL 1428122 (E.D. Cal. Mar. 29, 2019),
　*aff'd*, 960 F.3d 1164 (9th Cir. 2020), and
　*aff'd*, 807 F. App'x 698 (9th Cir. 2020) ............................................................................... 2, 3

*Neurocare Inst. of Cent. Fla., P.A. v. US Cap. Access, Inc.*,
   No. 6:13-cv-1233-Orl-31DAB, 2014 WL 12873038 (M.D. Fla. May 14, 2014),
   *and recommendation adopted*, 2014 WL 12873040 (M.D. Fla. May 30, 2014) ........................4

*Perez v. Rash Curtis & Assocs.*,
   No. 16-cv-03396-YGR,
   2019 WL 1491694 (N.D. Cal. Apr. 4, 2019) ...........................................................................2

*Robert W. Mauthe, M.D., P.C. v. MCMC LLC*,
   387 F. Supp. 3d 551 (E.D. Pa. 2019) .....................................................................................2

*Roylance v. ALG Real Estate Servs., Inc.*,
   No. 5:14-cv-02445-PSG,
   2015 WL 1522244 (N.D. Cal. Mar. 16, 2015) ........................................................................3

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   21 FCC Rcd. 3787 (Apr. 6, 2006) ...........................................................................................6

*Sengenberger v. Credit Control Servs., Inc.*,
   No. 09 C 2796,
   2010 WL 1791270 (N.D. Ill. May 5, 2010) ............................................................................4

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ..............................................................................................................7, 8

*Wakefield v. ViSalus, Inc.*,
   No. 3:15-cv-1857-SI,
   2019 WL 2578082 (D. Or. June 24, 2019) .............................................................................2

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) .....................................................................................8

**Statutes & Rules**

47 U.S.C.
   § 227 ................................................................................................................................2, 4, 11

Fed. R. Evid.
   401 .........................................................................................................................................5
   402 ......................................................................................................................................5, 7
   801 .........................................................................................................................................5
   802 .........................................................................................................................................5
   901 .........................................................................................................................................5

**Other Authorities**

Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6
   (2017 ed., last updated Sept. 2021) .......................................................................................2

**GLOSSARY OF CITATIONS**

| Citation | Description |
|---|---|
| Denning Decl. | March 4, 2020, declaration of Lauren Denning, a former employee at Physician Practice Solutions ("PPS"), a business unit of MTI, attached as Exhibit A to the concurrently filed Declaration of Tiffany Cheung in Support of Defendants' Trial Brief Regarding Plaintiffs' Individual Claims for Treble Damages ("Cheung Decl."). |
| Faupel Depo. | Excerpts from the March 31, 2015 deposition of David Faupel, a former employee at PPS, attached as Exhibit B to the Cheung Decl. |
| Hoang Decl. | April 2, 2015 declaration of Minh T. Hoang, former in-house counsel for McKesson Corporation, attached as Exhibit C to the Cheung Decl. |
| Holloway Depo. | Excerpts from the April 28, 2015 deposition of Kari Holloway, a former employee at PPS, attached as Exhibit D to the Cheung Decl. |
| Jordan Depo. | Excerpts from the July 11, 2015 deposition of Sandra Jordan, formerly known as Sandra Perry, a former True Health employee, attached as Exhibit E to the concurrently filed Cheung Decl. |
| McLaughlin Depo. | Excerpts from the April 8, 2015 deposition of McLaughlin Chiropractic Associates, Inc.'s ("McLaughlin") Rule 30(b)(6) designee, Dr. Wesley McLaughlin, attached as Exhibit F to the Cheung Decl. |
| Paul Decl. | March 4, 2020 declaration of Jeff Paul, a former employee at PPS, attached as Exhibit G to the Cheung Decl. |
| Peterson Depo. | Excerpts from the February 24, 2015 deposition of Dr. Franya Peterson, a chiropractor at McLaughlin's offices and the sister of McLaughlin's principal, attached as Exhibit H to the Cheung Decl. |
| Shope Depo. | Excerpts from the May 24, 2014 deposition of Dr. Jeffrey Shope, principal of True Health, attached as Exhibit I to the Cheung Decl. |
| Taylor Decl. | July 1, 2019 declaration of Dawn Taylor, a former employee at PPS, attached as Exhibit J to the Cheung Decl. |
| Taylor Depo. | Excerpts from the May 8, 2014 deposition of Dawn Taylor, a former employee of PPS, attached as Exhibit K to the Cheung Decl. |
| Toney Decl. | January 7, 2019 declaration of Scott Toney, a former employee at PPS, attached as Exhibit L to the Cheung Decl. |
| Trial Ex. 35 | May 9, 2008 FCC letter addressed to "McKesson Corporation f/k/a Relay Health Corporation," attached as Exhibit M to the Cheung Decl. |

| Citation | Description |
|---|---|
| Trial Ex. 58 | Dr. Franya Peterson's printed copy of her Medisoft product registration, attached as Exhibit N to the Cheung Decl. |
| Trial Ex. 66 | June 18, 2007 Medisoft product registration under McLaughlin's name, attached as Exhibit O to the Cheung Decl. |
| Trial Ex. 72 | True Health's August 16, 2007 Medisoft product registration, attached as Exhibit P to the Cheung Decl. |
| Trial Ex. 75 | Excerpts of Slingshot/Accelero "Service Agreements" and "Activation Forms" dated December 30, 2009, and July 24, 2009 (collectively, "Slingshot documents"), attached as Exhibit Q to the Cheung Decl. |
| Wilson Depo. | Excerpts from the April 10, 2015 deposition of Holly Wilson, a former employee at PPS, attached as Exhibit R to the Cheung Decl. |

**I.     INTRODUCTION**

In their opening trial brief, Plaintiffs ask the Court to make a finding on their treble damages claims only as to Defendant McKesson Corporation. They do not seek a finding against Defendant McKesson Technologies Inc. ("MTI"), thereby abandoning their treble damages claims against MTI. A reasonable inference is that Plaintiffs understand that the undisputed evidence shows MTI believed in good faith that it had prior permission to send True Health and McLaughlin the faxes at issue, and thus could not have violated the TCPA willfully or knowingly. Despite Plaintiffs' apparent concession as to MTI, they paradoxically argue for treble damages against McKesson Corporation based on mere corporate affiliation with MTI. For the reasons explained below, McKesson Corporation's status as MTI's parent company cannot, as a matter of law, be the basis for a treble damages finding against McKesson Corporation.

Plaintiffs have failed to present relevant, admissible evidence to support their treble damages claims against McKesson Corporation. A willful or knowing TCPA violation requires action by the defendant against whom the claim is alleged. Because McKesson Corporation did not send any of the faxes at issue, had no involvement in sending the faxes, and had no knowledge about the faxes MTI sent, Plaintiffs' treble damages claim fails. Plaintiffs focus on a 2008 letter from the FCC that Plaintiffs contend McKesson Corporation should have sent to MTI. Putting aside that the FCC letter is inadmissible, Plaintiffs fail to cite any law that would have required McKesson Corporation to advise all of its subsidiaries (hundreds of companies) about a letter directed at one of its other subsidiaries. Nor does that claimed failure constitute evidence of a willful or knowing TCPA violation. Plaintiffs also spend a considerable amount of time in their brief describing conduct of *MTI* employees, which they imply can be attributed to McKesson Corporation. Not only is this factually inaccurate, but Plaintiffs' attempt to disregard corporate separateness is contrary to well-settled law.

Because Plaintiffs have failed to proffer admissible, relevant evidence to prove by a preponderance of the evidence that McKesson Corporation willfully or knowingly violated the TCPA, the Court should enter judgment in favor of Defendants and against Plaintiffs on their claim for treble damages.

## II.  LEGAL STANDARD

A court has discretion to increase the award for a TCPA violation only if it finds that the plaintiff proved by a preponderance of the evidence that the defendant "willfully or knowingly" violated the TCPA.  47 U.S.C. § 227(b)(3)(C); *see also* Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6 (2017 ed., last updated Sept. 2021); *N.L. by Lemos v. Credit One Bank, N.A.*, No. 2:17-cv-01512-JAM-DB, 2019 WL 1428122, at *2 (E.D. Cal. Mar. 29, 2019), *aff'd*, 960 F.3d 1164 (9th Cir. 2020), and *aff'd*, 807 F. App'x 698 (9th Cir. 2020).

To establish a willful or knowing violation of the TCPA, courts in this circuit require plaintiffs to prove either that the defendant (1) "must know that it is violating the TCPA" or (2) "knew that it was engaging in the conduct that gave rise to liability." *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857-SI, 2019 WL 2578082, at *1-2 (D. Or. June 24, 2019).  Plaintiffs bear the burden to prove that McKesson Corporation and MTI *each* knowingly or intentionally performed *each* act required to prove liability, including proving that each knew that it did not have prior permission to send the faxes at issue.  *See Haysbert v. Navient Sols., Inc.*, No. CV 15-4144 PSG (Ex), 2016 WL 890297, at *10 (C.D. Cal. Mar. 8, 2016) (awarding treble damages under the TCPA "requires a defendant to intend or know that it was performing *each* of the elements of a TCPA claim (i.e. that it was making a call, to a person *who did not provide prior express consent*, using an automated system)" (emphasis added)).

Whether a defendant "had a good faith belief that it possessed prior express consent" to send faxes to its customers "bears on plaintiff's claim for treble damages, which requires that a defendant engaged in *knowing and/or willful* violations of the TCPA." *Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2019 WL 1491694, at *5 (N.D. Cal. Apr. 4, 2019) (emphasis in original).  For example, there is no willful or knowing TCPA violation when a defendant "believed that . . . it had received permission" from the plaintiff to send fax advertisements, and the plaintiff "never asked [defendant] to stop sending it faxed advertisements." *KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019) (declining to treble damages following bench trial "[b]ecause of the lack of evidence of a willful and knowing violation"); *see also Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 571 (E.D. Pa. 2019)

1  ("Even if a plaintiff did not, in fact, consent to receive the challenged fax, if the defendant
2  *believed* the plaintiff had provided consent, it would not intentionally have engaged in the
3  prohibited act." (emphasis in original)).

4  Plaintiffs' proffered standard—that merely intending to send faxes amounts to a willful or
5  knowing TCPA violation—ignores the "unsolicited" element and would render meaningless the
6  distinction between a non-trebled violation of the TCPA and a violation that rises to the level of
7  "willful or knowing." *See, e.g.*, *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107
8  (11th Cir. 2015) ("If we interpreted the statute to require only that the violator knew he was
9  making a 'call' or sending a fax, the statute would have almost no room for violations that are *not*
10 'willful[] or knowing[].'" (emphasis added, citation omitted)); *Backer Law Firm, LLC v. Costco*
11 *Wholesale Corp.*, No. 4:15-cv-00327–SRB, 2017 WL 6388974, at *8 (W.D. Mo. Nov. 28, 2017)
12 ("[O]nly requiring a knowing operation of a fax machine would essentially read out the
13 'willfulness' provision."). Plaintiffs must "show more than what was required for strict liability."
14 *N.L. by Lemos*, 2019 WL 1428122, at *2 ("For the calls to have been deliberate violations,
15 Plaintiff needed to demonstrate that the representatives calling after [date] should have known
16 that they were calling a person who did not provide prior express consent.").

17  The authority Plaintiffs cite does not support their proffered standard. For example, in
18 *Davis v. Diversified Consultants, Inc.*, the court recognized that a defendant's good-faith belief of
19 permission negates a willful or knowing TCPA violation. *See* 36 F. Supp. 3d 217, 227 (D. Mass.
20 2014) (denying plaintiff's summary judgment motion for treble damages because the "defendant
21 ha[d] asserted that it *acted in good faith*" when making the calls at issue (emphasis added)). In
22 *Roylance v. ALG Real Estate Servs., Inc.*, the court found that the defendant willfully and
23 knowingly violated the TCPA because the undisputed evidence established that the defendant
24 continued to call the plaintiff even *after* he had asked to be placed on the do-not-call list. No.
25 5:14-cv-02445-PSG, 2015 WL 1522244, at *2-4 (N.D. Cal. Mar. 16, 2015). That is consistent
26 with other cases in which courts have found a willful or knowing violation only ***after*** the plaintiff
27 affirmatively revoked consent or proved that the defendant actually knew that the plaintiff had not
28 granted it prior express permission. *See, e.g.*, *Haysbert*, 2016 WL 890297, at *10 (defendant

1  "willfully and/or knowingly made calls to [p]laintiff *after* it knew that [p]laintiff had revoked his
2  consent," but not before (emphasis added)); *Sengenberger v. Credit Control Servs., Inc.*, No. 09 C
3  2796, 2010 WL 1791270, at *4 (N.D. Ill. May 5, 2010) (plaintiff provided unrefuted evidence
4  that he had revoked his consent via certified mail, *after* which the defendant continued to call
5  him); *Neurocare Inst. of Cent. Fla., P.A. v. US Cap. Access, Inc.*, No. 6:13-cv-1233-Orl-31DAB,
6  2014 WL 12873038, at *5 (M.D. Fla. May 14, 2014) (defendant "intended" to send faxes to
7  parties "with whom Defendants had no prior relationship or permission to send a fax"), *report*
8  *and recommendation adopted*, 2014 WL 12873040 (M.D. Fla. May 30, 2014).

9  Finally, even if a court finds a willful or knowing violation, it may "elect[] not to treble
10 damages." *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, No. 13-cv-00229-YGR, 2013 WL
11 6571168, at *3 (N.D. Cal. Oct. 9, 2013) (declining to treble damages under 47 U.S.C. § 227(c)(5),
12 the equivalent provision for telephone calls, even though it found a willful violation).

**III.   ARGUMENT**

   **A.   Plaintiffs' Treble Damages Claim Against McKesson Corporation Fails Because McKesson Corporation Did Not Send and Had No Involvement With the Faxes at Issue.**

Plaintiffs cannot establish that McKesson Corporation knowingly or willfully violated the TCPA. It is undisputed that MTI—not McKesson Corporation—is the sole entity that sent the faxes at issue.[1] Because McKesson Corporation did not send the faxes to True Health and McLaughlin, had no involvement with sending the faxes, and took no action whatsoever regarding the faxes, it necessarily cannot have "willfully" or "knowingly" violated the TCPA with regard to the faxes received by Plaintiffs. Indeed, Plaintiffs present *no evidence of any*

---

[1] To the extent Plaintiffs attempt to rely on the parties' stipulation on the sender element as evidence of willful or knowing conduct on the part of McKesson Corporation, their argument fails. For the purposes of liability only, and to streamline the jury trial, McKesson Corporation stipulated that it would "not contest that . . . it was a 'sender' for liability purposes on this one element of the TCPA *based solely on MTI's status as a wholly-owned subsidiary of McKesson Corporation* during the relevant time period and MTI's ownership of Medisoft, Lytec, and Practice Partner at that time." (ECF No. 428 at 1 (emphasis added).) This stipulation does not substitute for actual evidence of any willful or knowing conduct on the part of McKesson Corporation, and cannot support any finding that McKesson Corporation was involved in sending the faxes at issue.

1  *conduct or knowledge by McKesson Corporation regarding the faxes at issue*.  Therefore, there is
2  no basis for an award of treble damages against McKesson Corporation and the Court should
3  enter judgment in favor of McKesson Corporation on Plaintiffs' claim for treble damages.

### B. Plaintiffs' Key Documentary Evidence Is Inadmissible.

The primary documents Plaintiffs cite to support their claim for treble damages—a 2008 FCC letter directed to "McKesson Corporation f/k/a Relay Health Corporation," and Slingshot/Accelero "Service Agreements" and "Activation Forms" (collectively, "Slingshot documents")—are inadmissible.  (*See* ECF No. 432-4 (Joint Exhibit List for the Court's Determination of Treble Damages) at 1, 3.)

Plaintiffs have failed to lay a proper foundation (or any foundation) for the admission into evidence of the 2008 FCC letter (Trial Exhibit 35).  *See Malley v. San Jose Midtown Dev. LLC*, No. 5:20-cv-01925-EJD, 2020 WL 5877575, at *3 (N.D. Cal. Oct. 2, 2020) ("[B]efore evidence can be admitted, the proponent must lay a foundation by evidence sufficient to find that the item is what it is purported to be.").  Nor have Plaintiffs authenticated it.  *See* Fed. R. Evid. 901(a).  Plaintiffs also offer the FCC letter, an out-of-court statement, for the truth of the matter asserted about the alleged TCPA violation, but identify no applicable exception to the hearsay rule.  *See* Fed. R. Evid. 802, 801(c).

Trial Exhibit 75, the Slingshot documents, constitutes inadmissible hearsay.  In addition, the Slingshot documents are irrelevant and inadmissible because McKesson Corporation was not a party to any agreement with Slingshot.  *See* Fed. R. Evid. 401, 402.

Accordingly, Trial Exhibits 35 and 75 are inadmissible and should not be considered by the Court in making its determination.

### C. Plaintiffs Present No Evidence That McKesson Corporation Received the 2008 FCC Letter.

Even if the Court were to consider the inadmissible 2008 FCC letter, it still is not enough to meet Plaintiffs' burden to prove a willful or knowing TCPA violation.  The FCC letter cannot serve as the basis for trebling damages against McKesson Corporation because Plaintiffs failed to present any evidence to show that McKesson Corporation ever received it.  (*See generally* ECF

1  No. 497 (Plaintiffs' Trial Brief); ECF No. 432-4 (Joint Exhibit List for the Court's Determination
2  of Treble Damages).)  Thus, the letter cannot and does not show knowing or willful conduct.
3  *See Haysbert*, 2016 WL 890297, at *10 (noting that treble damages may not be awarded unless
4  the plaintiff shows that the defendant intends or knows it is "performing each of the elements of a
5  TCPA claim").

**D.    Receipt of the FCC Letter Would Not Prove a Willful or Knowing TCPA Violation.**

8  In any event, receipt of the 2008 FCC letter still would not establish a willful or knowing
9  TCPA violation.  Plaintiffs contend that McKesson Corporation purportedly received the FCC
10 letter and had an obligation to advise MTI and all of the other "over 200 subsidiaries or affiliated
11 companies that span a wide range of businesses, from the sale of pharmaceuticals to behavioral
12 coaching and information technology."  (*See* ECF No. 497 (Plaintiffs' Trial Brief) at 10:4-16
13 (quoting Hoang Decl. ¶ 3).)  Tellingly, Plaintiffs cite no legal support for this supposed
14 requirement, and no case where treble damages were imposed based on analogous circumstances.
15 The FCC letter appears to be a form document that contains no specifics regarding the alleged
16 conduct and "does not detail what, if any, investigation the FCC undertook prior to issuing it."
17 *Mey v. Pep Boys-Manny, Moe & Jack*, 717 S.E.2d 235, 244 (W. Va. 2011).  Thus, on the face of
18 the 2008 FCC letter, McKesson Corporation was not put on notice of the alleged actions by Relay
19 Health Corporation that led to an individual complaint about an "apparently" unsolicited fax
20 advertisement.  Additionally, to the extent Plaintiffs argue that the FCC letter supposedly
21 "warned" "McKesson Corporation f/k/a Relay Health Corporation" about potential fines for any
22 future violations, there is no evidence that the FCC imposed any such fines for any of the faxes at
23 issue here.  Finally, the FCC has specifically rejected categorical rules on what constitutes "prior
24 express invitation or permission" and recognized that such permission "will take many forms,"
25 including "by oral or written means."  *See In re Rules & Regulations Implementing the Tel.*
26 *Consumer Prot. Act of 1991*, 21 FCC Rcd. 3787, 3811, ¶ 45 (Apr. 6, 2006).  Thus, the FCC letter
27 is irrelevant to the facts of this case, should be excluded, and in any event does not constitute
28

proof that McKesson Corporation willfully or knowingly violated the TCPA with regard to the faxes sent to Plaintiffs. Fed. R. Evid. 402.

### E. The Reference to the TCPA in the Slingshot Documents Does Not Prove Any Willful or Knowing Conduct.

The Slingshot documents, which reference Ms. Holloway in her capacity as an *MTI* employee (not an employee of McKesson Corporation), do not prove anything as to McKesson Corporation, a separate corporate entity. This is especially true since McKesson Corporation was not a party to any agreement with Slingshot. *See* Section III.F *infra*; *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (noting that a parent corporation "is not liable for the acts of its subsidiaries"). Plaintiffs mischaracterize the Slingshot documents as constituting "contractual representations by McKesson," (which Plaintiffs defined as McKesson Corporation) without any factual or legal basis. (ECF No. 497 (Plaintiffs' Trial Brief) at 15:12-13, 4:2.) Because it is undisputed that McKesson Corporation was not a party to any Slingshot agreement, the Slingshot documents are irrelevant as to McKesson Corporation and cannot provide a basis to enhance damages against McKesson Corporation.

### F. Plaintiffs' Attempt to Impute the Conduct of MTI Employees to McKesson Corporation Fails Because It Is Contrary to Well-Established Law Regarding Corporate Separateness.

Lacking any evidence to support a willful or knowing violation of the TCPA by McKesson Corporation, Plaintiffs instead attempt to blur the distinction between McKesson Corporation and MTI by referring to an *MTI* employee and her conduct as the work of "McKesson." (*See, e.g.*, ECF No. 497 (Plaintiffs' Trial Brief) at 4:2-5 (defining "McKesson" to mean "Defendant McKesson Corporation" and then incorrectly describing "Kari Holloway, a McKesson employee"), 5:15-16 ("McKesson plainly acted . . . when a McKesson employee, acting on McKesson's behalf . . . ."); *cf.* Holloway Depo. at 9:10-16; Hoang Decl. ¶ 4 & n.1 ("[T]he faxes at issue were created by or at the direction of one or more former employees of Physician Practice Solutions ("PPS"), a business unit under [MTI]").)

But Plaintiffs cannot sustain their burden to prove a willful or knowing violation by *McKesson Corporation* based on its parent-subsidiary relationship with MTI because "[i]t is a

DEFENDANTS' TRIAL BRIEF RE: PLAINTIFFS' INDIVIDUAL CLAIMS FOR TREBLE DAMAGES
CASE NO. 4:13-CV-02219-HSG
sf-4612182

7

general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61 (citation omitted). It follows that because "[t]he independence of a subsidiary from the parent corporation is to be presumed," McKesson Corporation and MTI, as separately incorporated entities, must be considered separately by the factfinder. *E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. CV F 03-5412 AWI LJO, 2008 WL 2220396, at *5 (E.D. Cal. May 27, 2008) (citing *California v. NRG Energy, Inc.*, 391 F.3d 1011, 1025 (9th Cir. 2004)). Not surprisingly, Plaintiffs do not cite a single case to suggest the Court could disregard this black letter principle of corporate law. Therefore, the Court cannot find a willful or knowing TCPA violation by McKesson Corporation based on alleged conduct of an entirely separate corporate entity.

### G. Plaintiffs Have Abandoned Their Treble Damages Claim Against MTI, and Even if They Could Impute MTI's Conduct to McKesson Corporation, Their Claim Would Still Fail.

Plaintiffs ask the Court to find that only "Defendant McKesson Corporation willfully or knowingly acted in violation of the TCPA." (ECF No. 497 (Plaintiffs' Trial Brief) at 18:7-9.) Thus, Plaintiffs have dropped their claim for treble damages against MTI.[2] Accordingly, the Court should enter judgment in favor of MTI on Plaintiffs' treble damages against MTI.

#### 1. Plaintiffs Likely Dropped Their Treble Damages Claim Against MTI Because They Recognize That MTI Believed in Good Faith That It Had Permission to Send Plaintiffs the Faxes at Issue.

Even if the conduct of MTI's employees could be imputed to McKesson Corporation, there is still no basis to find treble damages against McKesson Corporation. The record evidence establishes that MTI reasonably believed it had permission to send faxes to True Health and McLaughlin. The faxes at issue were created by or at the direction of one or more former employees of PPS, a business unit of MTI. (Hoang Decl. ¶ 4.) Employees of PPS sent these

---

[2] It would be improper for Plaintiffs to try to resurrect that claim in their rebuttal case (*e.g.*, reply brief); should they do so, the Court should reject it because "arguments raised for the first time in Reply briefs are waived." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1035 (N.D. Cal. 2014); *see also U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."). If the Court were to consider a treble damages claim against MTI that is raised for the first time in Plaintiffs' reply brief, MTI reserves the right to submit additional briefing and evidence to defend itself.

1  faxes only to existing customers.  (Holloway Depo. at 9:10-16, 36:3-9, 69:21-24, 89:7-10.)  And
2  it was PPS's practice to send faxes at a customer's request.  (*See, e.g.*, Denning Decl. ¶ 4 ("I am
3  confident that I never sent any faxes to my customers without them knowing about it or without
4  knowing that my customers wanted and were expecting faxes from [MTI]."); *see also* Paul Decl.
5  ¶¶ 4-5; Holloway Depo. at 89:7-15.)  In those instances when a customer asked *not* to receive
6  faxes, former PPS sales representative Lauren Denning attested that she would "immediately
7  remove them from my customer list and I would ask Holly Wilson or Kari Holloway to make sure
8  those customers did not receive faxed advertisements."  (Denning Decl. ¶ 5; *see also* Holloway
9  Depo. at 78:10-14, 78:21-79:1.)

10  Here, MTI reasonably believed that authorized users of the fax machines at True Health
11  and McLaughlin had consented to receive the faxes at issue by (1) voluntarily providing their
12  respective fax numbers on the product registration without checking the "Do not Fax" box and
13  (2) never revoking that consent or otherwise informing MTI that they no longer wished to receive
14  faxes.  It is undisputed that both True Health and Dr. Peterson (Dr. McLaughlin's sister and an
15  authorized user of McLaughlin's fax machine) voluntarily provided their fax numbers to MTI
16  when registering their Medisoft software, even though providing a fax number was not required.
17  (*See* Toney Decl. ¶ 2; Jordan Depo. at 74:6-75:8, 21:4-22, 22:2-22, 36:19-20, 36:24-37:1; Trial
18  Ex. 72 (True Health's August 16, 2007 Medisoft registration form); Shope Depo. at 124:11-18;
19  McLaughlin Depo. at 126:16-23,127:17-129:1; Peterson Depo. at 133:1-3, 104:7-25, 105:18-24,
20  108:3-24, 133:8-134:2; Trial Ex. 58 (Dr. Peterson's printed copy of Medisoft registration); Trial
21  Ex. 66 (June 18, 2007 Medisoft registration under McLaughlin's name).)  It is undisputed that the
22  faxes at issue related to upgrades or new versions of the Medisoft product that the Plaintiffs had
23  previously purchased.  The registration forms for each Plaintiff indicate that the "Do not Fax" box
24  was **not** checked.  (*See* Taylor Depo. at 73:15-74:14, 79:3-18, 80:1-81:1; Trial Ex. 72 (True
25  Health's Medisoft registration); Taylor Decl. ¶¶ 3-4; Trial Ex. 66 (Dr. Peterson's Medisoft
26  registration using McLaughlin's fax number).)  PPS employees reasonably understood these facts,
27  taken together, to constitute permission to send True Health and McLaughlin the faxes at issue.
28  (*See* Holloway Depo. at 89:16-19.)  And Plaintiffs' witnesses each admitted that they never told

1  anyone at PPS to not send these faxes or to stop faxing Plaintiffs.  For example, Dr. McLaughlin
2  admitted that he never "contact[ed] anyone at McKesson or a McKesson subsidiary to ask them to
3  stop sending [him] faxes."  (McLaughlin Depo. at 174:7-10; *see also id.* at 179:16-180:3; 181:5-
4  10 (admitting that he never called the number on the fax to opt out); Peterson Depo. at 133:4-7;
5  Shope Depo. at 31:15-22, 61:17-22, 62:15-18, 63:19-22, 133:6-10; Jordan Depo. at 54:13-22,
6  55:3-6.)
7  　　　　Therefore, there is no evidence of knowing or willful conduct because PPS, the MTI
8  business unit that sent the faxes at issue, reasonably believed it had permission to send them to
9  Plaintiffs, and Plaintiffs gave it no reason to believe otherwise.  *See KHS Corp.*, 376 F. Supp. 3d
10  at 530 (finding no willful or knowing violation when defendant believed it had received
11  permission to fax the plaintiff).

**2.    The Inadmissible Documentary Evidence Plaintiffs Rely on Does Not Refute MTI's Good-Faith Belief.**

14  　　　　The FCC letter and Slingshot documents have no bearing on PPS's (and thus MTI's)
15  good-faith belief that it had permission to send True Health and McLaughlin the faxes at issue.
16  First, it is undisputed that MTI did not receive and had no knowledge of the 2008 FCC letter.
17  (*See* ECF No. 497 (Plaintiffs' Trial Brief) at 10:14-14:13; Holloway Depo. at 42:4-11, 43:17-23;
18  Taylor Depo. at 68:9-12; Faupel Depo. at 24:7-12, 25:18-20; Wilson Depo. at 68:20-69:9;
19  Denning Decl. ¶ 8; Paul Decl. ¶ 11.)  Second, the Slingshot documents do not prove that
20  Ms. Holloway knew she was sending faxes to True Health and McLaughlin without permission in
21  violation of the TCPA.  The first page and Section 4 of the Slingshot documents merely reference
22  the TCPA and indicate agreement to comply with the TCPA.  Acknowledging the existence of a
23  statute does not equate to a knowing or willful violation of it.  Thus, the Slingshot documents do
24  not negate MTI's good-faith belief that it had Plaintiffs' consent to send the faxes at issue.
25  *See* Section III.G.1 *supra*.  Again, perhaps this explains why Plaintiffs have abandoned their
26  treble damages claims against MTI.

## H. Plaintiffs' Other Arguments Lack Merit.

Plaintiffs assert two other arguments, neither of which has any merit. First, they argue that trebling damages incentivizes plaintiffs to pursue TCPA claims because "the TCPA contains no provision for attorney fees." (ECF No. 497 (Plaintiffs' Trial Brief) at 15:25-26.) But the statute lays out the sole reason a court may exercise its discretion to treble damages: only if the defendant willfully or knowingly violated the TCPA, not as a substitute for attorneys' fees. *See* 47 U.S.C. § 227(b)(3)(C). Second, they attempt to rehash motions related to discovery that were resolved years ago and are irrelevant to the Court's assessment of whether McKesson Corporation willfully or knowingly violated the TCPA. Plaintiffs provide no legal authority to support either of these extraneous arguments. No such authority exists. Because Plaintiffs present no other basis for trebling damages, even if the Court were to find that McKesson Corporation willfully or knowingly violated the TCPA, it should exercise its discretion and decline to enhance damages.

## IV. CONCLUSION

Plaintiffs no longer seek treble damages against MTI. As to McKesson Corporation, Plaintiffs have failed to satisfy their burden of proving that McKesson Corporation sent the faxes at issue or had any involvement whatsoever in sending the faxes. Plaintiffs cannot disregard corporate separateness to impute MTI's conduct to McKesson Corporation. Moreover, the documents upon which Plaintiffs rely—2008 FCC letter and Slingshot documents—are inadmissible. But even if they could be considered by the Court in this trial, neither establishes that McKesson Corporation willfully or knowingly violated the TCPA. Because Plaintiffs have failed to meet their burden of proof, there is no basis to award treble damages against either McKesson Corporation or MTI. Defendants therefore request that the Court enter judgment in favor of Defendants and against Plaintiffs on their claims for treble damages.

Dated: December 3, 2021
MORRISON & FOERSTER LLP

By: */s/ Tiffany Cheung*
Tiffany Cheung

Attorney for Defendants
MCKESSON TECHNOLOGIES INC.
and MCKESSON CORPORATION