1  TIFFANY CHEUNG (CA SBN 211497)
   TCheung@mofo.com
2  BONNIE LAU (CA SBN 246188)
   BLau@mofo.com
3  JESSICA GRANT (CA SBN 178138)
   JGrant@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone: 415.268.7000
6  Facsimile: 415.268.7522

7  LYNDSEY H. CAIN (admitted *pro hac vice*)
   LCain@mofo.com
8  MORRISON & FOERSTER LLP
   4200 Republic Plaza
9  Denver, Colorado 80202
   Telephone: 303.592.2226
10 Facsimile: 303.592.1510

11 ERIN P. LUPFER (CA SBN 317994)
   ELupfer@mofo.com
12 MORRISON & FOERSTER LLP
   12531 High Bluff Drive
13 San Diego, California 92130-2040
   Telephone: 858.720.5100
14 Facsimile: 858.720.5125

15 Attorneys for Defendants
   MCKESSON TECHNOLOGIES INC. and
16 MCKESSON CORPORATION

17              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
18                  OAKLAND DIVISION

19 TRUE HEALTH CHIROPRACTIC, INC., and        Case No. 4:13-cv-02219-HSG
   MCLAUGHLIN CHIROPRACTIC
20 ASSOCIATES, INC.,
                                              **DEFENDANTS' PROPOSED**
21              Plaintiffs,                   **FINDINGS OF FACT AND**
                                              **CONCLUSIONS OF LAW**
22          v.
                                              Judge:      Haywood S. Gilliam, Jr.
23 MCKESSON CORPORATION,
   MCKESSON TECHNOLOGIES INC.,
24 and DOES 1-10,

25              Defendants.

26

27

28

1

## GLOSSARY OF CITATIONS

2

| ECF No. | Description | Short Citation |
|---|---|---|
| 498-1, Ex. A | March 4, 2020 Declaration of Lauren Denning, a former employee at Physician Practice Solutions ("PPS") | Denning Decl. |
| 98-1, Ex. B | Excerpts from the March 31, 2015 deposition transcript of David Faupel, a former employee at PPS | Faupel Dep. |
| 498-1, Ex. C | April 2, 2015 Declaration of Minh T. Hoang, former in-house counsel for McKesson Corporation | Hoang Decl. |
| 498-1, Ex. D | Excerpts from the April 28, 2015 deposition transcript of Kari Holloway, a former employee at PPS | Holloway Dep. |
| 498-1, Ex. E | Excerpts from the July 11, 2015 deposition transcript of Sandra Jordan, a former employee at True Health Chiropractic, Inc. ("True Health") | Jordan Dep. |
| 498-1, Ex. F | Excerpts from the April 8, 2015 deposition transcript of McLaughlin Chiropractic Associates, Inc.'s Rule 30(b)(6) designee, Dr. Wesley McLaughlin | McLaughlin Dep. |
| 498-1, Ex. G | March 4, 2020 Declaration of Jeff Paul, a former employee at PPS | Paul Decl. |
| 498-1, Ex. H | Excerpts from the February 24, 2015 deposition transcript of Dr. Franya Peterson, a chiropractor at McLaughlin's offices | Peterson Dep. |
| 498-1, Ex. I | Excerpts from the May 24, 2014 deposition transcript of Dr. Jeffrey Shope, principal of True Health | Shope Dep. |
| 498-1, Ex. | July 1, 2019 Declaration of Dawn Taylor, a former employee at PPS | Taylor Decl. |
| 498-1, Ex. K | Excerpts from the May 8, 2014 deposition transcript of Dawn Taylor, a former employee at PPS | Taylor Dep. |
| 498-1, Ex. L | January 7, 2019 Declaration of Scott Toney, a former employee at PPS | Toney Decl. |
| 522-1 | Redacted 2010 W-2 for Kari Holloway | Holloway 2010 W-2 |
| Trial Ex. 35 | May 9, 2008 letter from the FCC | FCC Letter |
| Trial Ex. 58 | Medisoft registration produced by Dr. Peterson | |
| Trial Ex. 66 | June 18, 2007 Medisoft registration under McLaughlin name | |
| Trial Ex. 72 | True Health August 16, 2007 Medisoft registration form | |
| Trial Ex. 75 | December 30, 2009 Accelero Service Agreement and Accelero and Slingshot documents | |
| Trial Ex. 76 | March 31, 2015 McKesson Organization Chart | |

Pursuant to this Court's March 10, 2022 Order (ECF No. 525), Defendants McKesson Corporation and McKesson Technologies Inc. ("MTI") (collectively, "Defendants") respectfully submit these Proposed Findings of Fact and Conclusions of Law as to the individual claims of Plaintiffs True Health Chiropractic, Inc. ("True Health") and McLaughlin Chiropractic Associates, Inc. ("McLaughlin") (collectively, "Plaintiffs") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[1]

# I.   PROPOSED FINDINGS OF FACT

### A.   Defendants' Corporate Structure in 2009-2010

1.   McKesson Corporation was the parent company of MTI.  (Hoang Decl. ¶ 3; Trial Ex. 76 (Defendants' Organization Chart).)

2.   MTI was a wholly-owned subsidiary of McKesson Corporation.  (Hoang Decl. ¶ 3; Trial Ex. 76.)

3.   McKesson Corporation and MTI were separate corporate entities.  (Hoang Decl. ¶ 3; Trial Ex. 76.)

4.   Physician Practice Solutions ("PPS") was a business unit of MTI.  (Hoang Decl. ¶ 4 & n.1.)

5.   PPS marketed and sold Medisoft and Lytec, which were electronic health record and practice management software products.  (Paul Decl. ¶¶ 3-4.)

### B.   The Faxes at Issue Were Sent by an MTI Employee

6.   The faxes at issue were sent by a former employee at PPS.  (Holloway Dep. at 36:3-9; Hoang Decl. ¶ 4.)

7.   Kari Holloway, the employee who sent the faxes at issue in this case, worked for the PPS business unit, and therefore MTI.  (Holloway Dep. at 9:10-12; Holloway 2010 W-2.)

---

[1] The Court noted that the parties' respective submissions will not "constitute an admission as to any legal or factual issue, and all arguments and objections previously raised are preserved for appeal."  (ECF No. 525 at 1:18-21.)

8.    Ms. Holloway sent faxes only to existing customers of PPS using a platform called Slingshot.  (Holloway Dep. at 36:3-9, 69:21-24, 89:7-19.)

9.    There is no evidence of any conduct or knowledge by McKesson Corporation regarding the faxes at issue.

**C.    Plaintiffs' Purchase and Registration of Medisoft**

10.    True Health and Dr. Franya Peterson each purchased and registered Medisoft software.  (*See* Trial Ex. 72 (True Health August 16, 2007 Medisoft registration form); Trial Ex. 66 (June 18, 2007 Medisoft registration under McLaughlin name); Trial Ex. 58 (Dr. Peterson printed copy of Medisoft registration).)

11.    Dr. Peterson was Dr. Wesley McLaughlin's sister and an authorized user of McLaughlin's fax machine.  (Peterson Dep. at 105:18-24; McLaughlin Dep. at 126:16-23,127:17-129:1.)

12.    Sandra Jordan (formerly Sandra Perry) was an employee of True Health who was authorized to purchase and register Medisoft on behalf of True Health.  (Shope Dep. at 124:11-18; Jordan Dep. at 36:19-20, 36:24-37:1.)

13.    True Health and Dr. Peterson each voluntarily provided their fax numbers to MTI when registering their Medisoft software, even though providing a fax number was not required.  (Trial Exs. 58, 66, 72; Peterson Dep. at 133:1-3, 104:7-25, 108:3-24; Jordan Dep. at 74:6-75:8, 21:4-22, 22:2-22; *see also* Toney Decl. ¶ 2.)

14.    The "Do Not Fax" box was not checked on either Plaintiff's registration record.  (*See* Taylor Dep. at 73:15-74:14, 79:3-18, 80:1-81:1; Trial Exs. 66, 72; Taylor Decl. ¶¶ 3-4.)

15.    Plaintiffs never told anyone at PPS, MTI, or McKesson Corporation to stop faxing them.  (McLaughlin Dep. at 174:7-10, 181:5-10; Shope Dep. at 62:15-18, 63:19-22; *see also* Peterson Dep. at 133:4-7; Jordan Dep. at 54:13-22, 55:3-6.)

1      16.    True Health received a copy of ECF No. 90 (Second Amended Complaint),

2              Exhibit A.  (ECF No. 515 at 2:8-11.)

3      17.    McLaughlin received a copy of Trial Exhibits 1, 4, 9, 13, 16, 18, 22, 29,

4              31, 47, 48 and 49.  (*Id.* at 2:12-3:1.)

5   **D.**    **MTI Reasonably Believed in Good Faith That Customers Consented to**

6       **Receive Faxes**

7      18.    PPS employees often sent faxes at customers' request.  (*See, e.g.*, Denning

8              Decl. ¶ 4; Paul Decl. ¶¶ 4-5; Holloway Dep. at 89:7-15.)

9      19.    PPS believed that customers who received the faxes at issue had

10             voluntarily provided their fax numbers and wanted to receive faxes,

11             including in order to keep their software current and to comply with

12             regulations regarding handling patient information.  (Denning Decl. ¶ 4;

13             *see also* Holloway Dep. at 89:7-15.)

14      20.    If a customer asked not to receive advertising faxes, PPS employees made

15             sure those customers did not receive fax advertisements in the future.

16             (Denning Decl. ¶ 5; Holloway Dep. at 78:10-14, 78:21-79:1.)

17   **E.**    **MTI Witnesses Testified That They Had Never Seen the FCC Letter**

18      21.    Trial Exhibit 35 is a May 9, 2008 letter from the FCC addressed to

19             "McKesson Corporation f/k/a Relay Health Corporation."

20      22.    MTI employees testified that they had never seen the FCC letter before this

21             litigation.  (*See, e.g.*, Holloway Dep. at 43:17-23; Taylor Dep. at 68:9-12;

22             Denning Decl. ¶ 8; Faupel Dep. at 25:18-20; Paul Decl. ¶ 11.)

23   **F.**    **Plaintiffs Request Treble Damages Only Against McKesson Corporation**

24      23.    In their trial briefs (ECF Nos. 497, 501), Plaintiffs ask the Court to make a

25             finding on their treble damages claims only as to McKesson Corporation.

26             They do not seek a finding against MTI, thereby abandoning their treble

27             damages claims against MTI.

28

1

2

**II.     PROPOSED CONCLUSIONS OF LAW FOR LIABILITY UNDER THE TCPA ON PLAINTIFFS' INDIVIDUAL CLAIMS**

3

4

24.     The TCPA prohibits (1) sending (2) to a "telephone facsimile machine" (3) an "unsolicited"[2] (4) "advertisement.'"  47 U.S.C. § 227(b)(1)(C).

5

6

7

8

25.     Plaintiffs bear the burden of proof with respect to elements 1, 2, and 4.  With respect to element 3, the Ninth Circuit has held that Defendants bear the burden to prove that any faxes were "solicited" as an affirmative defense.  *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018).

9

10

11

12

13

26.     FCC regulations define "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(11).  Based on this definition, a "sender" for liability purposes under the TCPA may be distinct from the entity that actually "sent" the faxes.

14

15

16

27.     MTI does not contest that it was a "sender" for liability purposes under the TCPA because it owned the software products Medisoft and Lytec, the subjects of the faxes at issue, during the relevant time period.  (ECF. No 515 at 1:21-24.)

17

18

19

20

28.     McKesson Corporation does not contest that it was a "sender" for liability purposes under the TCPA based solely on MTI's status as a wholly-owned subsidiary of McKesson Corporation and MTI's ownership of Medisoft and Lytec during the relevant time period.  (*Id.* at 1:25-2:3.)

21

22

23

24

29.     For purposes of Plaintiff True Health's individual TCPA claim and based on the individual evidence in the record in this case, True Health received ECF No. 90 (Second Amended Complaint), Exhibit A on a "telephone facsimile machine." (*Id.* at 2:8-11.)

25

26

27

28

---

[2] The Court previously found that "Defendants' prior express invitation defense fails as a matter of law under the law of the case."  (ECF No. 403 at 3:17-4:1.)

30.     For purposes of Plaintiff McLaughlin's individual TCPA claim and based on the individual evidence in the record in this case, McLaughlin received Trial Exhibits 1, 4, 9, 13, 16, 18, 22, 29, 31, 47, 48, and 49 on a "telephone facsimile machine." (*Id.* at 2:12-3:1.)[3]

31.     The thirteen faxes received by True Health or McLaughlin constitute "advertisements" under the TCPA.  (*Id.* at 3:7-8.)

32.     Based on the above, damages shall be assessed to Plaintiff True Health in the amount of five hundred dollars ($500).

33.     Based on the above, damages shall be assessed to Plaintiff McLaughlin in the amount of six thousand dollars ($6000).

III.    **PROPOSED CONCLUSIONS OF LAW FOR TREBLE DAMAGES**

34.     A court has discretion to treble the award for a TCPA violation only if it finds that the plaintiff proved by a preponderance of the evidence that the defendant "willfully or knowingly" violated the TCPA.  47 U.S.C. § 227(b)(3)(C); *see also* Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6 (2017 ed., last updated Sept. 2021); *N.L. by Lemos v. Credit One Bank, N.A.*, No. 2:17-cv-01512-JAM-DB, 2019 WL 1428122, at *2 (E.D. Cal. Mar. 29, 2019), *aff'd*, 960 F.3d 1164 (9th Cir. 2020), and *aff'd*, 807 F. App'x 698 (9th Cir. 2020).

35.     Where a defendant had a reasonable belief that it had permission to send faxes, it cannot be held liable for a willful or knowing TCPA violation.  *See, e.g.*, *Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2019 WL 1491694, at *5 (N.D.

---

[3] The evidence supporting McLaughlin's receipt of certain of these faxes includes documents the admissibility of which the parties dispute.  Specifically, the parties dispute the admissibility of Bates numbers RS-TRUEHEALTH 000404, RS-TRUEHEALTH 000406, Tab #1 of RSTRUEHEALTH 000345, Tab #2 of RS-TRUEHEALTH 000345, Tab #4 of RS-TRUEHEALTH 000345, Tab #3 of RS-TRUEHEALTH 000350, Tab #3 of RS-TRUEHEALTH 000345, RSTRUEHEALTH 000422, RS-TRUEHEALTH 000424, RS-TRUEHEALTH 000428, RSTRUEHEALTH 000435, Tab #1 of RS-TRUEHEALTH 000350.  The parties agree that Defendants are not waiving any rights to challenge the admissibility of these documents if Plaintiffs seek to introduce them in any future proceeding or trial.  (ECF No. 515 at 2:24-28.)

1   Cal. Apr. 4, 2019); *Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d

2   551, 571 (E.D. Pa. 2019); *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d

3   964, 979 (N.D. Cal. 2019) (collecting cases holding that "good faith error or

4   mistake does not preclude a defendant's liability but is material only to the

5   question of treble damages for willful conduct").

6   36.   There is no willful or knowing TCPA violation when a defendant "believed

7   that . . . it had received permission" from the plaintiff to send fax advertisements,

8   and the plaintiff "never asked [defendant] to stop sending it faxed advertisements."

9   *KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019).

10   37.   Defendants McKesson Corporation and MTI are separate legal entities that must

11   be considered separately by the factfinder.  *United States v. Bestfoods*, 524 U.S.

12   51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our

13   economic and legal systems' that a parent corporation . . . is not liable for the acts

14   of its subsidiaries." (citation omitted)); *E. & J. Gallo Winery v. EnCana Energy*

15   *Servs., Inc.*, No. CV F 03-5412 AWI LJO, 2008 WL 2220396, at *5 (E.D. Cal.

16   May 27, 2008).

17   38.   McKesson Corporation did not send or know about MTI sending the faxes at

18   issue.[4]  McKesson Corporation therefore did not "intend or know that it was

19   performing" any element of a TCPA claim.  *See Haysbert v. Navient Sols., Inc.*,

20   No.  CV 15–4144 PSG (Ex), 2016 WL 890297, at *10 (C.D. Cal. Mar. 8, 2016).

21   McKesson Corporation did not "willfully or knowingly" violate the TCPA.

22   39.   The faxes at issue were sent by a former employee at PPS.

23

24

25   [4] Because the definition of "sender" under FCC regulations may encompass an entity that did not
actually act or "send" the faxes (47 C.F.R. § 64.1200(f)(11), *see also supra* ¶ 26), McKesson

26   Corporation's stipulation as to the "sender" element for liability purposes under the TCPA (ECF
No. 515 at 1:25-2:3), does not support any willful or knowing conduct on the part of McKesson

27   Corporation, and cannot support any finding that McKesson Corporation was involved in actually
sending the faxes at issue.

28

40.   MTI[5] reasonably believed it had permission to send the faxes at issue to Plaintiffs based on, *inter alia*, Plaintiffs voluntarily providing their fax numbers; the unchecked "Do Not Fax" box on Plaintiffs' registration records; Plaintiffs never contacting MTI or revoking permission to send faxes; and the MTI employees' course of dealing with their customers who provided oral and/or written permission to receive information about discounts and upgrades to the Medisoft and Lytec products they had purchased from MTI.

41.   The FCC letter (Trial Ex. 35) was not sent to MTI, and no MTI witness testified he or she was aware of, received, or otherwise had any knowledge of the FCC letter prior to this litigation.

42.   The Slingshot documents (Trial Ex. 75) were signed by Ms. Holloway, an MTI employee acting on behalf of MTI.  McKesson Corporation was not a party to or bound by those documents.

43.   Plaintiffs have failed to show by a preponderance of the evidence that Defendants willfully or knowingly violated the TCPA, 47 U.S.C. § 227.

44.   There is no basis to award treble damages against McKesson Corporation, the sole defendant against whom Plaintiffs seek treble damages.

45.   Judgment will be entered in favor of Defendants on Plaintiffs' claims for treble damages.

---

[5] As noted *supra* in paragraph 23, Plaintiffs seek treble damages only against McKesson Corporation.  However, insofar as Plaintiffs improperly attempt to attribute actions of MTI employees to McKesson Corporation (*see e.g.*, ECF No. 497 at 4-5), the evidence also does not support a willful or knowing violation of the TCPA by MTI.

Dated:  March 24, 2022

MORRISON & FOERSTER LLP

By: /s/ Tiffany Cheung
Tiffany Cheung

Attorney for Defendants
MCKESSON TECHNOLOGIES INC.
and MCKESSON CORPORATION