UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC INC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MCKESSON CORPORATION, et al., <br><br> Defendants. | Case No. 13-cv-02219-HSG <br><br> **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

True Health Chiropractic, Inc. and McLaughlin Chiropractic Associates, Inc. ("Plaintiffs") brought a putative class action against McKesson Corporation and McKesson Technologies, Inc. ("Defendants"), alleging that Defendants sent unsolicited faxes in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See* Dkt. No. 90. While the Court initially granted Plaintiffs' motion for class certification, *see* Dkt. No. 331, an intervening FCC decision changed the requirements for TCPA liability, *see* Dkt. No. 487 at 1-2. As a result, the Court entered summary judgment against those who had received the faxes via an online fax service, *see* Dkt. No. 418, and the stand-alone fax machine class was ultimately decertified, *see* Dkt. No. 487. This left only Plaintiffs' individual claims for Defendants' alleged violations of the TCPA and for treble damages. *See* Dkt. No. 485, 493. The Court approved the parties' request that these remaining claims be decided by the Court through a streamlined bench trial, with no live testimony. *See* Dkt. No. 492, 493. The parties submitted deposition testimony, witness declarations, briefs, and an omnibus stipulation. *See* Dkt. Nos. 492, 497, 498, 499, 500, 501, 510, 511, 515, and 535. The following constitutes the Court's Findings of Fact and Conclusions of

Law under FRCP 52(a).[1]

**Findings of Fact**

1. Defendant McKesson Corporation is a publicly-traded corporation with hundreds of subsidiaries or affiliated companies, all of which are separate legal entities. Dkt. No. 192 (Decl. of Anne J. Shuford in Support of Defendants' Statement of Issues for the Joint Letter Brief Filed April 9, 2015) ¶ 2 ("Defendant McKesson Corporation has over 600 subsidiaries or affiliated companies. All 600+ subsidiaries or affiliated companies are separate legal entities."). McKesson Corporation's business ranges from the sale of pharmaceuticals to behavioral coaching and information technology. Dkt. No. 179-1 (Decl. of Minh T. Hoang Regarding Document Production) ¶ 3 ("McKesson Corporation is a parent company with over 200 subsidiaries or affiliated companies that span a wide range of businesses, from the sale of pharmaceuticals to behavioral coaching and information technology.").

2. Defendant McKesson Technologies, Inc. ("MTI") was a wholly-owned subsidiary of McKesson Corporation during the relevant time period. Dkt. No. 515 (Joint Omnibus Stipulation Regarding Elements of Liability for Plaintiffs' Individual TCPA Claims) at 1-2.

3. In 2009 and 2010, Plaintiff McLaughlin Chiropractic Associates, Inc. ("McLaughlin") provided chiropractic and other medical services from its location in Knoxville, Tennessee. Dkt. No. 500-7 (Wesley Bruce McLaughlin Deposition) at 14, 127.

4. In 2009, Plaintiff True Health Chiropractic, Inc. ("True Health") provided chiropractic services from its location in Ohio. Dkt. No. 500-10 (Jeffrey Shope Deposition) at 8, 11; Dkt. No. 535 at 109-118 (Trial Ex. 72).

5. On May 9, 2008, the Federal Communications Commission ("FCC") served "McKesson Corporation f/k/a Relay Health Corporation" by certified letter with an "official **CITATION**" (the "2008 FCC Citation") stating that "your company, acting under your direction,

---

[1] To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

apparently sent one or more unsolicited advertisements to telephone facsimile machines in violation of [the TCPA]." Dkt. No. 535 at 31-34 (Trial Ex. 35) (emphasis in original).[2]

6. The 2008 FCC Citation attached a copy of the TCPA and the FCC's implementing regulations, 47 C.F.R. § 64.1200, and advised McKesson Corporation that "in the event of a complaint or dispute, the burden rests with the fax sender" to demonstrate compliance with the law. *Id.*

7. From September 2009 through May 2010, Plaintiff McLaughlin received twelve faxes on a stand-alone fax machine advertising software products called "Medisoft" and "Lytec." Dkt. No. 515 (Joint Omnibus Stipulation Regarding Elements of Liability for Plaintiffs' Individual TCPA Claims) at 2–3; Dkt. No. 535 at 3-6, 13-14, 17-29, 35-43 (Trial Exs. 1, 4, 9, 13, 16, 18, 22, 29, 31, 47–49).

8. On April 20, 2010, Plaintiff True Health received a fax on a stand-alone fax machine from "McKesson" advertising a $1,500 rebate on the purchase of "Medisoft" software. Dkt. No. 515 (Joint Omnibus Stipulation Regarding Elements of Liability for Plaintiffs' Individual TCPA Claims) at 2; Dkt. No. 535 at 12 (Trial Ex. 7).

9. Collectively, the thirteen faxes received by Plaintiffs are referred to in this order as the "Faxes."

10. Of the thirteen Faxes received by Plaintiffs, four purported to be from an identified person, Kari Holloway. Dkt. No. 535 at 4-6, 27, 29 (Trial Exs. 1, 4, 29, 31). Trial Exhibits 1 and 4, *id.* at 4-6, bore Ms. Holloway's electronic signature and, immediately below that signature, identified her as follows:

> Kari Holloway
> Vice President-Direct Sales, Medisoft
> Physician Practice Solutions
> McKesson Corporation
> kari.holloway@mckesson.com

---

[2] Defendants object to the admissibility of this document. Dkt. No. 498 at 5. The objections are meritless and are **OVERRULED**. The document, an official communication from the FCC that Defendants produced in discovery and admit receiving, is amply authenticated. *See* Dkt. Nos. 103 ¶ 20; 104 ¶ 20; 353 at 1-2; 369 at 1-4. It also is not hearsay: it is not offered for the truth of the matters asserted, but instead as evidence of notice and knowledge.

11. Trial Exhibit 29, *id.* at 27, also bore Ms. Holloway's electronic signature and identified her as follows:

> Kari Holloway, MBA
> Vice President-Medisoft Direct Sales
> Physician Practice Solutions
> McKesson Corporation
> kari.holloway@mckesson.com

12. Trial Exhibit 31, *id.* at 29, identified Ms. Holloway as follows:

> Kari Holloway
> Vice President, Direct Sales
> McKesson Corporation

13. None of the Faxes made any reference to MTI or purported to be from a representative of MTI.

14. Ms. Holloway testified that she was employed by "McKesson" in the "Physicians Practice Solutions" or "PPS" business unit in 2009 and 2010.  Dkt. No. 500-5 (Kari Holloway Deposition) at 6-9.

15. Ms. Holloway created various types of customer communications, including faxes, that promoted Medisoft and Lytec, and employed a "fax broadcasting company" called "Slingshot Technologies" to transmit faxes.  *Id.* at 13-14, 19-21, 24-28.

16. Ms. Holloway signed contracts for the fax broadcasting services of Slingshot. The first contract between McKesson and Slingshot was captioned "Customer Service Agreement" (the "McKesson-Slingshot Service Agreement") and was signed by Ms. Holloway on "7-24-09." Dkt. No. 534-3 (Trial Ex. 75) at 6-7. The first page contained five bullet points, the last of which stated:

> Customer will manage removal requests as required and is responsible for assuring that all broadcast activity is compliant with the TCPA (Telephone Consumer Protection Act) and JFPA (Junk Fax Prevention Act) standards.

*Id.* at 6.[3]

---

[3] Defendants object to the admissibility of the contracts on hearsay and relevance grounds. Dkt. No. 498 at 5. Again, these objections are meritless and are **OVERRULED**. The documents are plainly relevant evidence regarding the circumstances under which the faxes at issue were sent.

4

17. The second page, which was also signed by Ms. Holloway, consisted of eight "Terms and Conditions," which included the following:

> **1. Description of Services:** Slingshot ("SST") will provide information delivery services via facsimile broadcasting . . . services ("Services") for Customer as an independent services bureau. Customer authorizes SST to deliver and/or transmit information via facsimile . . . on SST's equipment.
>
> **4. Indemnification: Limitation of Liability:** . . . Customer acknowledges that the Services are regulated by the TELEPHONE CONSUMER PROTECTION ACT ("TCPA") and customer represents that Customer is familiar with and in compliance with the TCPA.

*Id.* at 7 (emphasis in original).

18. Five months later, Ms. Holloway signed a second contract with Slingshot, which then identified itself as "Accelero Communications, Inc.," for additional fax broadcasting services. This contract (the "McKesson-Accelero Service Agreement") contained the same disclosures and language regarding the TCPA as the McKesson-Slingshot Service Agreement from five months earlier. *Id.* at 2-3.

19. Ms. Holloway had never seen the 2008 FCC Citation prior to this lawsuit and was never advised by anyone at McKesson "that there was a law prohibiting the sending of advertisement by fax." Dkt. No. 500-5 (Kari Holloway Deposition) at 40, 42-43.

20. Ms. Holloway's supervisor, the Marketing Manager for Medisoft and Lytec, Holly Wilson, had never seen the 2008 FCC Citation prior to this lawsuit, and was never advised by anyone

---

The Court further agrees that the documents are party admissions, and would also appear to be admissible as business records. Defendants also seek to seal the contracts, submitted as Trial Exhibit 75, and a McKesson Corporation organization chart, submitted as Trial Exhibit 76, in their entirety. *See* Dkt. No. 534. The Court **DENIES** Defendants' motion to seal because Defendants have failed to show "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & Cnty. of Honolulu*, 447 F. 3d 1172, 1178-79 (9th Cir. 2006) (internal quotation marks and citation omitted). As these are trial exhibits, they are essential to the public's ability to understand the resolution of this case, and Defendants articulate no compelling reason to seal sufficient to overcome that strong public interest. The Court **DIRECTS** the parties to file revised public versions of all documents for which the proposed sealing has been denied within seven days of this order.

5

at McKesson "not to use faxing to send advertisements." Dkt. No. 500-12 (Holly Wilson Deposition) at 56, 68–69.

21. David Faupel, the Director of Marketing for Practice Partner, had never seen the 2008 FCC Citation prior to this lawsuit, and never had any conversations with anyone at McKesson regarding the legality of sending advertisements by fax. Dkt. No. 500-4 (David Faupel Deposition) at 8, 25.

22. McKesson Corporation is a publicly-traded corporation and filed annual reports ("10-K Reports") with the U.S. Securities and Exchange Commission from 2008 to 2012.

- 2008 10-K Report, Dkt. No. 535 at 243-354 (Trial Ex. 90);
- 2009 10-K Report, *id.* at 356-476 (Trial Ex. 91);
- 2010 10-K Report, *id.* at 478-598 (Trial Ex. 92);
- 2011 10-K Report, *id.* at 600-721 (Trial Ex. 93); and
- 2012 10-K Report, *id.* at 723-842 (Trial Ex. 94).

23. In McKesson Corporation's Annual Report on Form 10-K for 2008 ("the 2008 10-K Report"), McKesson Corporation described itself as follows:

> McKesson Corporation ("McKesson," the "Company", the "Registrant," or "we" and other similar pronouns) is a Fortune 18 corporation providing supply, information and care management products and services . . . . We operate in two segments. The McKesson Distribution Solutions segment . . . [and t]he McKesson Technology Solutions segment . . . .

Dkt. No. 535 at 245. McKesson Corporation's 2008 10-K report described its "Technology Solutions segment" as follows:

> Our Technology Solutions segment provides a comprehensive portfolio of software, automation, support and services . . . . This segment markets its products and services to integrated delivery networks, hospitals, physician practices, home healthcare providers, retail pharmacies and payors.

*Id.* at 248. McKesson Corporation's 2008 10-K report characterizes "Physician Practice Solutions" as a "solutions area" within the "Technology Solutions segment" and described it as follows:

> *Physician practice solutions:* The segment provides a complete solution for physician practices of all sizes that includes software,

6

> revenue cycle outsourcing and connectivity services. Software solutions include practice management and EHR software for physicians of every size, specialty or geographic location.

*Id.* at 249 (emphasis in original).  In its 2008 10-K Report, McKesson Corporation stated that it owned "registered and unregistered trademarks and service marks and similar rights used by our business segments" including both Lytec and Medisoft:

> The substantial majority of technical concepts and codes embedded in our Technology Solutions segment's computer programs and program documentation are protected as trade secrets. The principal trademarks and service marks for this segment are: . . . Lytec® . . . Medisoft™ . . . .

*Id.* at 250.  These statements were repeated without material difference in McKesson Corporation's 10-K reports for 2009 through 2012.  *See id.* at 356-842.

24. The Court finds that Lytec and Medisoft were products of McKesson Corporation and that the Faxes were sent on behalf of McKesson Corporation.

## Conclusions of Law

1. The Court previously granted summary judgment in favor of the Plaintiffs, finding that Defendants did not have prior express consent for the Faxes.  Dkt. No. 403 at 3-7.  The Court concludes that the Faxes were unsolicited.  *See* 47 U.S.C. § 227(a)(5) ("The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise.").

2. Plaintiffs have the burden to prove that the Faxes are "advertisements" within the meaning of the TCPA.  47 U.S.C. § 227(b)(1)(c).  An "advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services."  47 C.F.R. § 64.1200(f)(1); 47 U.S.C. § 227(a)(5).

3. The Court concludes that the fax sent to Plaintiff True Health on April 20, 2010, is an "advertisement" within the meaning of the TCPA because it advertised the commercial availability or quality of any property, goods, or services—namely, Medisoft.  Dkt. No. 515 (Joint Omnibus Stipulation Regarding Elements of Liability for Plaintiffs' Individual TCPA Claims) at 3.

7

4. The Court similarly concludes that the twelve faxes sent to Plaintiff McLaughlin from September 2009 through May 2010 are "advertisements" within the meaning of the TCPA because they advertise the commercial availability or quality of any property, goods, or services—namely, Medisoft and Lytec. Dkt. No. 515 (Joint Omnibus Stipulation Regarding Elements of Liability for Plaintiffs' Individual TCPA Claims) at 3.

5. Plaintiffs have the burden to prove that each Defendant "sent" the Faxes. 47 U.S.C. § 227(b)(1)(c). With regard to the TCPA, the term "sender" is defined as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(11).

6. The Court concludes that McKesson Corporation is a "sender" of and "sent," for purposes of TCPA liability, each of the thirteen Faxes. Dkt. No. 515 (Joint Omnibus Stipulation Regarding Elements of Liability for Plaintiffs' Individual TCPA Claims) at 3.

7. The Court concludes that MTI is a "sender" of and "sent," for purposes of TCPA liability, each of the thirteen Faxes. Dkt. No. 515 (Joint Omnibus Stipulation Regarding Elements of Liability for Plaintiffs' Individual TCPA Claims) at 3.

8. Plaintiffs have the burden to prove that Defendant(s) sent the Faxes "to a telephone facsimile machine" by the use of a "telephone facsimile machine, computer, or other device." 47 U.S.C. § 227(b)(1)(c). A "telephone facsimile machine" is defined as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3); 47 C.F.R. § 64.1200(f)(14).

9. The Court concludes that all 13 Faxes were sent using a "telephone facsimile machine, computer, or other device." Dkt. No. 500-5 (Kari Holloway Deposition) at 24, 27-28.

10. The Court concludes that all of the Faxes were sent "to a telephone facsimile machine" as both Plaintiffs used traditional ink-and-paper fax machines in 2009 and 2010. Dkt. No. 515 (Joint Omnibus Stipulation Regarding Elements of Liability for Plaintiffs' Individual TCPA Claims) at 2–3; Dkt. No. 500-6 (Sandra Lee Jordan Deposition) at 43-44; Dkt. No. 500-8 (Franya

Peterson Deposition) at 76, 157.

11.     Because (1) the Faxes were "unsolicited advertisements"; (2) the Faxes were sent by the use of a "telephone facsimile machine, computer, or other device" to a "telephone facsimile machine"; and (3) each Defendant is a "sender" of the Faxes, the Court concludes that each Defendant violated 47 U.S.C. § 227(b)(1)(C) and is, therefore, liable to the Plaintiffs.

12.     The TCPA imposes statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3) ("A person or entity may . . . bring . . . (B) an action to recover for actual monetary loss from such a violation [of the TCPA], or to receive $500 in damages for each such violation"). The TCPA grants courts discretion to award treble damages upon finding the defendant acted "willfully or knowingly":

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

13.     Neither party has cited, and the Court has not found, any Supreme Court or Ninth Circuit authority clarifying whether the "willfully or knowingly violated" requirement in the TCPA means simply that the defendant took action intentionally as opposed to inadvertently, or further requires that the defendant knew the facts establishing that its actions violated the statute.

14.     The Court agrees with the Eleventh Circuit and other courts that have found that this standard requires more than simple "intentional or volitional" action, because setting the threshold in that way would encompass virtually all faxes sent under the statute, and would eliminate Congress' distinction between the culpability of willful and other violators. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("If we interpreted the statute to require only that the violator knew he was making a 'call' or sending a fax, the statute would have almost no room for violations that are *not* 'willful[] or knowing[].'" (emphasis in original) (citation omitted)); *Backer Law Firm, LLC v. Costco Wholesale Corp.*, No. 4:15-cv-00327–SRB, 2017 WL 6388974, at *8 (W.D. Mo. Nov. 28, 2017) ("[O]nly requiring a knowing operation of a fax machine would essentially read out the 'willfulness' provision."); *N.L. by Lemos v. Credit One Bank, N.A.*,

9

No. 2:17-cv-01512-JAM-DB, 2019 WL 1428122, at *2 (E.D. Cal. Mar. 29, 2019), *aff'd*, 960 F.3d 1164 (9th Cir. 2020), and *aff'd*, 807 F. App'x 698 (9th Cir. 2020) ("Plaintiff must show more than what was required for strict liability. For the calls to have been deliberate violations, Plaintiff needed to demonstrate that the representatives calling after [the relevant date] should have known that they were calling a person who did not provide prior express consent.").

15. Accordingly, in order to qualify for discretionary treble damages, a plaintiff must show that a defendant knew or was reckless in not knowing that it was engaging in the conduct that violates the statute. *See Lary v. Trinity*, 780 F.3d at 1107; *Olney v. Progressive Cas. Ins. Co.*, 994 F.Supp.2d 1220, 1227 (S.D. Cal. 2014) (denying a motion to dismiss and agreeing that in order to recover treble damages under the TCPA a plaintiff must show that the defendant's actions "were willful, or made with reckless disregard to Plaintiff's rights"). It is not enough for a plaintiff to show that the defendant knew it was sending a fax. Instead, a plaintiff must show that the defendant knew or was reckless in not knowing that it was sending advertisements to a telephone facsimile machine and that the recipient had not given prior express consent. *See, e.g.*, *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857-SI, 2019 WL 2578082, at *2 (June 24, 2019 D. Or.) (holding that to establish willfulness in the context of unlawful telephone calls under the TCPA a plaintiff must show tht the defendant knew "(1) that it was placing telemarketing calls; (2) to a mobile (or cellular) telephone number or to a residential telephone landline; (3) the call used an artificial or prerecorded voice; and (4) the person being called had not given prior express written consent."); *N.L. by Lemos*, 2019 WL 1428122, at *2 (requiring a plaintiff seeking treble damages to show that the defendant "should have known" it did not have prior express consent).

16. The Court concludes that Plaintiffs have failed to prove by a preponderance of the evidence that McKesson Corporation or MTI willfully or knowingly violated the TCPA by sending the Faxes to the Plaintiffs. Other than the 2008 FCC Citation, Plaintiffs have presented no evidence even suggesting that Defendants knowingly or recklessly flouted the law. Plaintiffs do not allege they sent a direct request to Defendants to stop sending the faxes, nor is there any evidence that Plaintiffs marked "Do Not Fax" on any forms. This is in contrast to cases in which courts have found defendants acted willfully or knowingly after receiving direct requests to stop calling or

sending faxes. *See, e.g.*, *Haysbert v. Navient Solutions, Inc.*, No. CV 15-4144 PSG, 2016 WL 890297, at *9-10 (N.D. Cal. March 8, 2016); *Clements v. DSM Supply LLC*, No. 8:13-cv-1092-T-33EAJ, 2014 WL 560561, at *2 (M.D. Fla., Feb. 13, 2014). Similarly, there is no evidence that those involved knew they were violating the law, knew or were reckless in not knowing that the recipients did not want to receive faxes, or were deliberately acting in bad faith. Plaintiffs have failed to meet their burden to show Defendants willfully or knowingly violated the TCPA.[4]

17. For these same reasons, the Court finds in its discretion that even if Plaintiffs had introduced evidence sufficient to show a willful and knowing violation, an award of treble damages would be unwarranted. The weakness of Plaintiffs' willfulness case counsels against a treble damages award on this record.

18. Because the Court concludes that Defendants violated the TCPA by sending one unsolicited facsimile advertisement to Plaintiff True Health but did not violate the TCPA willfully or knowingly, it finds in favor of True Health and against Defendants and awards True Health damages of $500.00.

19. Because the Court concludes that Defendants violated the TCPA by sending twelve unsolicited facsimile advertisements to Plaintiff McLaughlin but did not violate the TCPA willfully or knowingly, it finds in favor of McLaughlin and against Defendants and awards McLaughlin damages of $6,000.00.

20. The Clerk is directed to enter judgment consistent with this order and to close the case.

**IT IS SO ORDERED.**

Dated: 4/27/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[4] Defendants seek an affirmative finding that they reasonably believed they had permission to send the faxes, *see* Dkt. No. 531 ("Defendants' Proposed Findings of Fact and Conclusions of Law") ¶ 40, but the Court need not and does not go that far. Instead, this conclusion of law is based on Plaintiffs' failure to meet their burden of proof.

11