1  Robert C. Schubert (S.B.N. 62684)
   (rschubert@sjk.law)
2  Willem F. Jonckheer (S.B.N. 178748)
   (wjonckheer@sjk.law)
3  Dustin L. Schubert (S.B.N. 254876)
   (dschubert@sjk.law)
4  **SCHUBERT JONCKHEER & KOLBE LLP**
5  2001 Union. St., Suite 200
   San Francisco, California 94123
6  Telephone:    (415) 788-4220
   Fax:          (415) 788-0161
7
8  *Local Counsel for Plaintiffs*
9
   Brian J. Wanca (*admitted pro hac vice*)
10 (bwanca@andersonwanca.com)
   Glenn L. Hara (*admitted pro hac vice*)
11 (ghara@andersonwanca.com)
   **ANDERSON + WANCA**
12 3701 Algonquin Rd., Suite 500
   Rolling Meadows, Illinois 60008
13 Telephone:    (847) 368-1500
   Fax:          (847) 368-1501
14
15 *Counsel for Plaintiffs*

16                    **UNITED STATES DISTRICT COURT**

17                   **NORTHERN DISTRICT OF CALIFORNIA**

18                            **OAKLAND DIVISION**

19 TRUE HEALTH CHIROPRACTIC, INC.        Case No. 4:13-cv-02219-HSG
   and MCLAUGHLIN CHIROPRACTIC
20 ASSOCIATES, INC., Individually and as the   **NOTICE OF MOTION AND PLAINTIFFS'**
   Representatives of a Class of Similarly-    **SECOND RENEWED MOTION FOR**
21 Situated Persons,                           **CLASS CERTIFICATION;**
                                               **MEMORANDUM OF POINTS AND**
22                          Plaintiffs,        **AUTHORITIES**
23
                                               Date:       January 22, 2026
24 v.                                          Time:       2:00 p.m.
                                               Judge:      Hon. Haywood S. Gilliam, Jr.
25 MCKESSON CORPORATION,                       Courtroom:  2, 4th Floor
   MCKESSON TECHNOLOGIES INC. and
26 JOHN DOES 1- 10,
27                          Defendants.
28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, CLERK, DEFENDANTS, AND ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE** that on January 22, 2026, Plaintiffs will present this Second Renewed Motion for Class Certification before the Honorable Haywood S. Gilliam in Courtroom 2 – 4th Floor, Oakland Courthouse, 1301 Clay St., Oakland, CA 94612.

      Plaintiffs seek entry of an order appointing Plaintiff, McLaughlin Chiropractic Associates, Inc. as the class representative, appointing Plaintiffs' counsel as class counsel, and certifying the following class pursuant to Fed. R. Civ. P. 23(b)(3):

> All persons or entities who received faxes from "McKesson" from September 2, 2009, to May 11, 2010, offering "Medisoft," "Lytec," "Practice Partner," or "Revenue Management Advanced" software or "BillFlash Patient Statement Service," where the faxes do not inform the recipient of the right to "opt out" of future faxes, and whose fax numbers are listed in Exhibit A to McKesson's Supplemental Response to Interrogatory Regarding Prior Express Invitation or Permission, but not in Exhibit B or Exhibit C to McKesson's Response to Interrogatory Regarding Prior Express Invitation or Permission.

      This motion is based on the attached Memorandum of Points and Authorities, the Declaration of Glenn L. Hara filed herewith, and any arguments and evidence to be presented at the hearing on this motion.

Dated: October 24, 2025

Respectfully submitted,

By:    */s/ Glenn L. Hara*

Glenn L. Hara (*admitted pro hac vice*)
Brian J. Wanca (*admitted pro hac vice*)
**ANDERSON + WANCA**
3701 Algonquin Rd., Suite 500
Rolling Meadows, Illinois 60008
Telephone:    (847) 368-1500
Fax:    (847) 368-1501
Email:    ghara@andersonwanca.com
          bwanca@andersonwanca.com

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Robert C. Schubert (S.B.N. 62684)
Willem F. Jonckheer (S.B.N. 178748)
Dustin L. Schubert (S.B.N. 254876)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:     (415) 788-4220
Fax:     (415) 788-0161
E-mail:     rschubert@sjk.law
               wjonkcheer@sjk.law
               dschubert@sjk.law

*Local Counsel for Plaintiffs*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

## **TABLE OF CONTENTS**

Notice of Motion and Plaintiffs' Second Renewed Motion for Class Certification ....................... i

Table of Authorities ................................................................................................................ ii

Memorandum of Points and Authorities ..................................................................................1

Statement of Issue to Be Decided ...........................................................................................2

Factual & Procedural Background ...........................................................................................2

Argument ................................................................................................................................5

I.     The TCPA is not limited to stand-alone fax machines, and it covers "e-faxes." ................5

       A.     The plain language of the TCPA encompasses e-faxes ...................................5

       B.     In the alternative, any ambiguity should be resolved in favor of consumers ........10

              1.     The TCPA is a remedial statute intended to protect consumers ...............10

              2.     The Court should accord "appropriate respect" to the FCC's
                     interpretations under *McLaughlin* ..............................................................11

II.    The Rule 23(a) elements are satisfied ..................................................................19

III.   The Rule 23(b)(3) elements are satisfied ...........................................................19

       A.     Common issues predominate ..............................................................19

       B.     Class certification is superior to the alternatives ..................................19

Conclusion ...........................................................................................................21

# TABLE OF AUTHORITIES

## Cases

*A Fast Sign Co. v. Am. Home Servs., Inc.*,

   734 S.E.2d 31 (2012) ...................................................................................7

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods, Inc.*,

   2013 WL 3654550 (W.D. Mich. July 12, 2013)...........................................15

*Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc.*,

   2021 WL 3043422 (N.D. Ill. Feb. 17, 2021) .............................10, 15, 18

*Artis v. Dist. of Columbia*,

   138 S. Ct. 594 (2018).....................................................................................6

*Bostock v. Clayton Cnty., Ga.*,

   140 S. Ct. 1731 (2020).......................................................................6, 7, 18

*Bridgeview Health Care Ctr., Ltd. v. Clark*,

   2013 WL 1154206 (N.D. Ill. Mar. 19, 2013)................................................7

*Chapman v. Wagener Equities, Inc.*,

   2014 WL 540250 (N.D. Ill. Feb. 11, 2014) ...............................................20

*Charvat v. Allstate Corp.*,

   29 F. Supp. 3d 1147, 1150 (N.D. Ill. 2014) ...............................................10

*Chugach Natives, Inc. v. Doyon, Ltd.*,

   588 F.2d 723 (9th Cir. 1978) ........................................................................7

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,

   296 F.R.D. 299 (D.N.J. 2013)......................................................................7

*Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*,

   343 F.R.D. 581 (E.D. Mo. 2023) ....................................6, 10, 15, 19

*Facebook, Inc. v. Duguid*,

   592 U.S. 395 (2021)......................................................................................8

*Gager v. Dell Fin. Servs., LLC*,

   727 F.3d 265 (3d Cir. 2013) ......................................................................10

1

## TABLE OF AUTHORITIES

2

## Cases

3   *Georgia Power Co. v. Teleport Comm'n Atlanta,*

4        F.3d 1047 (11th Cir. 2003) .................................................................16

5   *Gonzales v. Oregon,*

6        546 U.S. 243 (2006)...........................................................................11

7   *Holtzman v. Turza,*

8          728 F.3d 682 (7th Cir. 2013) ............................................................20

9   *J2 Global Commc'ns, Inc. v. Protus IP Sols.,*

10       2010 WL 9446806 (C.D. Cal. Oct. 1, 2010).................................7, 10

11  *Kihn v. Bill Graham Archives, LLC,*

12       2020 WL 1820708 (N.D. Cal. Apr. 10, 2020) .....................................7

13  *Khoja v. Orexigen Therapeutics, Inc.,*

14       899 F.3d 988 (9th Cir. 2018) .............................................................13

15  *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.,*

16       2017 WL 5079181 (W.D. La. Nov. 1, 2017)......................................10

17  *Levine Hat Co. v. Innate Intelligence, LLC,*

18       2022 WL 1044880 (E.D. Mo. Apr. 7, 2022) .................................10, 15

19  *Loper Bright Enters. v. Raimondo,*

20       603 U.S. 369 (2024)...........................................................................11

21  *Lyngaas v. Curaden AG,*

22       992 F.3d 412 (6th Cir. 2021) ..................................1, 4–6, 10, 15, 16, 19

23  *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,*

24        606 U.S. 146 (2025) ...................................................1–4, 11, 17

25  *Meyer v. Bebe Stores, Inc.,*

26       2015 WL 1223658 (N.D. Cal. Mar. 17, 2015)................................10, 11

27  *Meyer v. Portfolio Recovery Assocs., LLC,*

         707 F.3d 1036 (9th Cir. 2012).............................................................7

28

Plaintiffs' Second Renewed Motion for Class Certification

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

*Mims v. Arrow Fin. Servs., LLC*,

4

   132 S. Ct. 740 (2012) ...................................................................................................20

5

*Murray v. GMAC Mtg. Corp.*,

6

   434 F.3d 948 (7th Cir. 2006) ......................................................................................20

7

*Mussat v. Global Healthcare Res., LLC*,

8

   2013 WL 1087551 (N.D. Ill. Mar. 13, 2013) ............................................................20

9

*Mussat v. IQVIA Inc.*,

10

   2020 WL 5994468 (N.D. Ill. Oct. 9, 2020) ........................................................10, 15

11

*Nevada DeAnza Fam. Ltd. P'ship*,

12

   474 F. Supp. 3d 1087 (N.D. Cal. 2020) .....................................................................18

13

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,

14

   588 U.S. 1 (2019) .........................................................................................................3

15

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,

16

   781 F.3d 1245 (11th Cir. 2015) ...............................................................................1, 7

17

*Panzarella v. Navient Sols., Inc.*,

18

   37 F.4th 867 (3d Cir. 2022) .........................................................................................6

19

*Physicians Healthsource, Inc. v. A-S Medication Sols. LLC*,

20

   324 F. Supp. 3d 973 (N.D. Ill. 2018) ...........................................................................2

21

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*,

22

   950 F.3d 959 (7th Cir. 2020) ........................................................................................2

23

*Prieto–Romero v. Clark*,

24

   534 F.3d 1053 (9th Cir. 2008 .......................................................................................7

25

*Satterfield v. Simon & Schuster, Inc.*,

26

   569 F.3d 946 (9th Cir. 2009) .......................................................................................7

27

*Savanna Group v. Trynex, Inc.*,

28

   2013 WL 66181 (N.D. Ill. Jan. 4, 2013) ...................................................................20

Case No. 4:13-cv-02219-HSG

1

## TABLE OF AUTHORITIES

2
### Cases

3 *Skidmore v. Swift Co.*,

4     323 U.S. 134 (1944)............................................................................11

5 *Sorenson v. Secretary of Treasury*,

6     475 U.S. 851 (1986)............................................................................8

7 *True Health Chiropractic, Inc. v. McKesson Corp.*,

8     896 F.3d 923 (9th Cir. 2018) ...........................................................2, 19

9 *True Health Chiropractic, Inc. v. McKesson Corp.*,

10     332 F.R.D. 589 (N.D. Cal. Aug. 13, 2019)......................................1

11 *True Health Chiropractic, Inc. v. McKesson Corp.*,

12     2023 WL 7015279 (9th Cir. Oct. 25, 2023).....................................4

13 *Urgent One Med. Care, P.C. v. Co-Options, Inc.*,

14     2022 WL 16755154 (E.D.N.Y. June 1, 2022) ................................10, 15

15 *Valentino v. Carter-Wallace, Inc.*,

16     97 F.3d. 1227 (9th Cir. 1996) ..........................................................19

17 *Van Patten v. Vertical Fitness Grp., LLC*,

18     2013 WL 12069031 (S.D. Cal. Nov. 8, 2013)..................................20

19 *Van Patten v. Vertical Fitness Grp., LLC*,

20     847 F.3d 1037 (9th Cir. 2017) ........................................................10–11

21

### Statutes
22
23 28 U.S.C. § 2342(1) .............................................................................3

47 U.S.C. § 227(a)(1)...........................................................................6–8
24
47 U.S.C. § 227(a)(3).................................................................1–3, 5–8, 10, 16, 18
25
47 U.S.C. § 227(b)(1)(C) .....................................................1, 5, 7, 13, 15
26
47 U.S.C. § 227(d) ...............................................................................7

27

28

1

# TABLE OF AUTHORITIES

2

## Rules & Regulations

3
Fed. R. Civ. P. 23(a) ...................................................................................................2, 19

4
Fed. R. Civ. P. 23(b)(3)....................................................................................2, 18, 19, 21

5
Fed. R. Evid. 201(b)(1)–(2) ...................................................................................13

6
*In re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*,

7
    17 FCC Rcd. 17459, Notice of Proposed Rulemaking ("NPRM"), Sept. 18, 2002) .................12

8
*In re Rules & Regulations Implementing Tel. Consumer Prot. Act (TCPA) of 1991*,

9
    67 Fed. Reg. 62667-01 (Oct. 8, 2002) ........................................................................12

10
*In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*,

    18 FCC Rcd. 14014 (rel. July 3, 2003) ..............................................................11–15, 16–18

11
*In re WestFax, Inc. Petition for Consideration & Clarification*,

12
    30 FCC Rcd. 8620 (rel. Aug. 28, 2015)........................................................................11, 15–18

13
*In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*,

14
    2019 WL 6712128 (CGAB Dec. 9, 2019) ...........................................................1–4, 11, 17–18

15

16
## Other Authorities

17
Merriam-Webster's Dictionary of Law (1996)...................................................................6

18
Black's Law Dictionary (6th ed. 1990)............................................................................6

19
Black's Law Dictionary (11th ed. 2019)..........................................................................6

20

21

22

23

24

25

26

27

28

1

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

## MEMORANDUM OF POINTS AND AUTHORITIES

2       Following the Supreme Court's decision reversing and remanding this case, *McLaughlin*

3   *Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), this Court should recertify the

4   Exhibit-A Only Class it originally certified in 2019. *See True Health Chiropractic Inc. v. McKesson*

5   *Corp.*, 332 F.R.D. 589, 610 (N.D. Cal. Aug. 13, 2019) (Doc. 331). The only reason the Court later

6   divided that class into subclasses (*see* Doc. 393), entered summary judgment against the "Online

7   Fax Services Class" (*see* Doc. 418), and decertified the "Stand-Alone Fax Machine Class" (*see* Doc.

8   487), was because Ninth Circuit authorities in effect at the time required this Court to follow the

9   interpretation of the FCC's Consumer & Governmental Affairs Bureau in *In re Amerifactors Fin.*

10  *Group, LLC Pet.*, 2019 WL 6712128 (CGAB Dec. 9, 2019) ("Amerifactors Bureau Ruling"), which

11  stated that the TCPA is limited to faxes received on a stand-alone fax machine and does not apply if

12  the end user views the fax on a computer ("e-faxes" or "online fax services").

13      The Supreme Court has now overruled those Ninth Circuit authorities and held that district

14  courts are not bound by the Amerifactors Bureau Ruling. *McLaughlin*, 606 U.S. at 155. Rather than

15  being bound by an agency's guidance, the Supreme Court held, this Court must interpret the TCPA

16  "under ordinary principles of statutory interpretation, affording appropriate respect to the agency's

17  interpretation." *Id.*

18      Under ordinary principles of statutory interpretation, the TCPA's definition of "telephone

19  facsimile machine"—meaning any "equipment" with the "capacity" to receive a fax message and

20  print it, 47 U.S.C. § 227(a)(3)—encompasses all unsolicited fax advertisements, no matter whether

21  the end user ultimately views the message on a piece of paper, or on a computer using an "e-fax" or

22  "online fax service," *Lyngaas v. Curaden AG*, 992 F.3d 412, 425–27 (6th Cir. 2021), or not at all,

23  *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir.

24  2015). The manner in which the end user views a fax is unrelated to whether the fax was "sen[t] to"

25  equipment with the relevant capacity in violation of § 227(b)(1)(C) in the first instance. The

26  distinction between "stand-alone" faxes and "e-faxes" based on how the end user views the fax is

27  contrary to the plain language of the statute, the remedial nature of the TCPA, and the FCC's

28

longstanding treatment of this subject (prior to the Amerifactors Bureau Ruling), which, although not binding, is due "appropriate respect" under *McLaughlin*, 606 U.S. at 155.

Finally, because nothing has changed with respect to the Rule 23(a) and Rule 23(b)(3) elements since this Court certified the class in 2019, and because the "online fax services" issue does not raise individual issues that would prevent a finding of "predominance," the Court should recertify the Exhibit-A Only Class, appoint McLaughlin the class representative, and appoint Plaintiffs' counsel as Class Counsel.

## Statement of Issue to be Decided

Whether the Court should recertify the Exhibit-A Only Class it certified in 2019 to harmonize with the broad statutory definition of "telephone facsimile machine" in 47 U.S.C. § 227(a)(3), now that the Supreme Court has overruled the Ninth Circuit authorities that required the Court to follow a 2019 FCC ruling that narrowly interpreted that term to exclude users of "online fax services."

## Factual & Procedural Background

On August 13, 2019, this Court entered its Order denying Defendants' motion for summary judgment and granting Plaintiffs' First Renewed Motion for Class Certification. (Doc. 331). After denying Defendants summary judgment,[1] the Court certified the Exhibit A-only Class. (*Id.* at 28). The Court rejected Defendants' attempt to challenge Rule 23(b)(3) predominance on the basis of "new evidence" that they claimed showed prior express permission from members of the Exhibit A-only Class other than the product registrations or the EULA that they claimed constituted prior express permission of the Exhibit-A Only Class following the Court's sanctions order. (*Id.* at 25). The Court held that allowing new evidence would violate the "law of the case" in light of the Ninth Circuit's holding that the Exhibit A-only Class satisfied predominance, *see True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) ("*True Health I*"), and that

---

[1] The Court denied Defendants' motion for summary judgment on the basis that the only two consent defenses Defendants raised as to the Exhibit-A Only Class—providing a fax number at product registration and the language of the End-User License Agreement ("EULA")—failed to satisfy Defendants' burden to show that they obtained "prior express invitation or permission" to send the fax ads. (Doc. 331 at 11 (citing *Physicians Healthsource, Inc. v. A-S Medication Sols. LLC*, 324 F. Supp. 3d 973 (N.D. Ill. 2018), *aff'd Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959 (7th Cir. 2020)).

Schubert Jonckheer & Kolbe LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1  it was "unreasonable" for Defendants to seek to introduce new evidence after they "repeatedly

2  claimed *several years ago* that they could easily produce this information," after they were

3  "instructed to identify which class members fell into each category" by Magistrate Judge Ryu, and

4  after "Defendants objected neither to Judge Ryu's imposition of sanctions, nor to Judge Ryu's

5  instruction to produce the relevant information." (*Id.* at 25–27).

6           On December 9, 2019, the FCC's Consumer & Governmental Affairs Bureau issued the

7  Amerifactors Bureau Ruling, which construed the TCPA to mean that faxes received by the end user

8  via an "online fax service" are not "sen[t] to" a "telephone facsimile machine," as defined by 47

9  U.S.C. § 227(a)(3). 2019 WL 6712128, at *2. Defendants moved to decertify the Exhibit-A Only

10 Class, arguing that the Amerifactors Bureau Ruling was a "final order" of the FCC and that this

11 Court was required to follow its interpretation of the TCPA by the Hobbs Act, 28 U.S.C. § 2342(1),

12 which vests exclusive jurisdiction in the court of appeals over "any proceeding to enjoin, set aside,

13 annul, or suspend" a "final order" of the FCC. (Doc. 362).

14          On December 24, 2020, the Court denied the motion to decertify but agreed with Defendants

15 that the Amerifactors Bureau Ruling was binding under Ninth Circuit authority applying the Hobbs

16 Act and held it was required to divide the class into an "Online Fax Services Class" and a "Stand-

17 Alone Fax Machine Class." (Doc. 393). Although the court "agree[d] with the reasoning of Justice

18 Kavanaugh's concurrence" in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S.

19 1, 27 (2019), that the Hobbs Act should not be read to require district courts to follow the FCC's

20 interpretations, it recognized that "these questions are obviously for another day, and for a higher

21 court than this one." (*Id.* at 11, n.7).

22          On August 13, 2021, the Court entered summary judgment against the Online Fax Services

23 Class, finding class members had no TCPA claim under the Amerifactors Bureau Ruling. (Doc.

24 418). On October 15, 2021, the Court decertified the Stand-Alone Fax Machine Class on the basis

25 that Plaintiffs' methods failed to adequately separate members of the Stand-Alone Fax Machine

26 Class from members of the Online Fax Services Class, as required by the Amerifactors Bureau

27 Ruling. (Doc. 487).

28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

---

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1    On April 27, 2022, following a bench trial on Plaintiffs' individual claims, the Court entered

2    individual judgment for True Health ($500 for one fax) and McLaughlin ($6,000 for 12 faxes). (Doc.

3    536). The Court made a factual finding and concluded as a matter of law that neither the language

4    of the EULA nor providing a fax number at product registration constituted "prior express invitation

5    or permission" to send fax ads. (*Id.*)

6    On cross-appeals by both parties, the Ninth Circuit affirmed, holding that the Court "correctly

7    found that that it was bound by the [FCC's] *Amerifactors* declaratory ruling, which determined that

8    the TCPA does not apply to faxes received through an online fax service." *True Health Chiropractic,*

9    *Inc. v. McKesson Corp.*, 2023 WL 7015279, at *2 (9th Cir. Oct. 25, 2023) ("*True Health II*"). That

10   was so, in the Ninth Circuit's view, because the Hobbs Act's exclusive-jurisdiction provision

11   forecloses a district court in an enforcement action from even considering whether the agency's

12   interpretation of the TCPA is wrong. *Id.* The Ninth Circuit also confirmed that the FCC's

13   *Amerifactors* decision was both an "order" of the FCC and "final." *Id.* On Defendants' appeal, the

14   Ninth Circuit affirmed the Court's ruling that neither the EULA nor providing a fax number at

15   product registration constituted "prior express invitation or permission" to send McLaughlin or True

16   Health fax advertisements. *Id.* at *1.

17   On June 20, 2025, the Supreme Court reversed the Ninth Circuit's class-certification rulings,

18   holding that the Hobbs Act does not require a federal court to follow the FCC's interpretations of

19   the TCPA, that the Amerifactors Bureau Ruling in particular is not binding on this Court, and that

20   this Court should interpret the TCPA's definition of "telephone facsimile machine" using "ordinary

21   principles of statutory interpretation, affording appropriate respect to the agency's interpretation."

22   *McLaughlin*, 606 U.S. at 155.  In response to Defendants' request that the Court affirm on the

23   alternative basis that the Amerifactors Bureau Ruling correctly found that faxes sent to an online fax

24   service are not covered by the statute, the Supreme Court decided to "leave that issue for remand."

25   *Id.* at 169.

26   For the reasons below, this Court should now hold, as the Sixth Circuit did in *Lyngaas v.*

27   *Curaden AG*, 992 F.3d 412, 425–27 (6th Cir. 2021), that the TCPA is not limited to faxes received

28

---

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1  on a "stand-alone" fax machine and that the statute does not require exclusion from the class of those

2  who viewed Defendants' fax advertisements using an "e-fax" or "online fax service."

3  <u>Argument</u>

4  **I.  The TCPA is not limited to stand-alone fax machines, and it covers "e-faxes."**

5      **A.  The plain language of the TCPA encompasses e-faxes.**

6      The TCPA makes it generally unlawful "to send, to a telephone facsimile machine," an

7  unsolicited advertisement. 47 U.S.C. § 227(b)(1)(C). The statute defines "telephone facsimile

8  machine" as follows:

9      "Telephone facsimile machine" means *equipment which has the capacity* (A) to

10      transcribe text or images, or both, from paper into an electronic signal and to transmit

11      that signal over a regular telephone line, or (B) to transcribe text or images (or both)

12      from an electronic signal received over a regular telephone line onto paper.

13  47 U.S.C. § 227(a)(3) (emphasis added). The key words are "equipment" and "capacity." When

14  these terms are properly construed, the only permissible reading is that e-faxes (i.e., faxes sent to an

15  "online fax service" and viewed by the end-user as an email or on a portal) are "sen[t] to" equipment

16  with the relevant capacity.

17      **Equipment.** In *Lyngaas v. Curaden AG*, 992 F.3d 412, 426 (6th Cir. 2021). the Sixth Circuit

18  held the definition of "telephone facsimile machine" was unambiguous and affirmed certification of

19  a TCPA class of *all* fax recipients, rejecting the argument that class certification was inappropriate

20  because the plaintiff "failed to establish which proposed class members received faxes on a

21  traditional fax machine versus another device, such as a computer." The Sixth Circuit held the "plain

22  language" of the statutory definition of telephone facsimile machine "encompasses more than a

23  traditional fax machine" and "does not require the actual printing of the advertisement, which dispels

24  the defendants' argument that Congress was concerned only with the burdensome ink-and-paper

25  costs of fax advertising." *Id.* at 426. The Sixth Circuit held that the term "equipment" is not limited

26  to a single "device" and that "Congress presumably understood that a computer, as a stand-alone

27  device, can be distinct from a telephone facsimile machine and yet part of one as an integrated piece

28  of 'equipment.'" *Id.* at 427. "Indeed," the court noted, even a traditional "stand-alone" fax machine

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

"is composed of a modem, scanner, and printer, and thus parallels the computer set-up mentioned above." *Id.*

In *Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581, 589 (E.D. Mo. 2023), the district court followed *Lyngaas* and granted class certification of an all-fax-recipients class, holding "the plain language of the statute rebuts Defendants' argument that the TCPA applies only to traditional fax machines." The Court agreed with the Sixth Circuit that the broad definition of any "equipment" with the relevant "capacity" in § 227(a)(3) is not limited to a single device, such as a stand-alone fax machine. *Id.*

The Third Circuit recently examined whether the term "equipment" in § 227(a)(1)'s definition of "automatic telephone dialing system" ("ATDS") is limited to a single device or can consist of multiple devices in *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 872 (3d Cir. 2022). The court held that "[t]o determine how widely this term sweeps, 'we look first to [the statute's] language, giving the words used their ordinary meaning.'" *Id.* (quoting *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 603 (2018)). The court held that, for an undefined term such as "equipment," the court should "seek to determine its plain meaning at the time of the TCPA's enactment." *Id.* (citing *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020)). The court held that, in 1991, "equipment" referred to "the implements used in an operation or activity." *Id.* (quoting *Equipment*, Merriam-Webster's Dictionary of Law (1996); *Equipment*, Black's Law Dictionary (6th ed. 1990) ("Furnishings or outfit for the required purposes. Whatever is needed in equipping; the articles comprised in an outfit; equippage."); *Equipment*, Black's Law Dictionary (11th ed. 2019) ("The articles or implements used for a specific purpose or activity (esp. a business operation).")). Accordingly, the court held, "as ordinarily understood, equipment could constitute several discrete objects that, together, served a single purpose." *Id.*

The same analysis applies here. As the Sixth Circuit held in *Lyngaas*, there is no indication that Congress meant to limit the definition of "telephone facsimile machine" to stand-alone fax machines. Congress could have done that, but it did not. Moreover, even if one assumes that Congress was *solely* concerned with stand-alone fax machines in 1991 and did not anticipate the development of online fax services, "the limits of the drafters' imagination supply no reason to

1 | ignore the law's demands," and "[w]hen the express terms of a statute give us one answer and

2 | extratextual considerations suggest another, it's no contest. Only the written word is the law, and all

3 | persons are entitled to its benefit." *Bostock*, 140 S. Ct. at 1737.

4 |       Here, the language of the TCPA is not concerned with how a recipient receives a fax. It

5 | focuses solely on what the fax sender is prohibited from doing. *See* 47 U.S.C. § 227(b)(1)(C). Even

6 | the technical requirements in § 227(d) prescribe what the sender must include in a fax. The sole

7 | focus of the statute is on the fax sender, without regard to the recipient. The TCPA does not even

8 | "require proof of receipt." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d

9 | 1245, 1253 (11th Cir. 2015) (quoting *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.* 296

10 | F.R.D. 299, 309 (D.N.J. 2013) ("whether Plaintiff actually received the facsimile is irrelevant to

11 | liability under the TCPA"); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 2013 WL 1154206, at *3

12 | (N.D. Ill. Mar. 19, 2013) ("Neither Congress nor the [FCC], which is tasked with issuing regulations

13 | implementing the TCPA, require proof of receipt to establish a private cause of action.") (citing *A*

14 | *Fast Sign Co. v. Am. Home Servs., Inc.*, 734 S.E.2d 31, 33 (2012)).

15 |       **Capacity.** The Ninth Circuit has not specifically addressed the meaning of "capacity" in

16 | § 227(a)(3), but it has interpreted "capacity" in the definition of "automatic telephone dialing

17 | system" in § 227(a)(1). In *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir.

18 | 2012) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009)), the Ninth

19 | Circuit held "capacity" does not mean that equipment must "actually" perform the listed function,

20 | but "need only have the *capacity* to do it." It is well-established "that the same words or phrases are

21 | presumed to have the same meaning when used in different parts of a statute." *J2 Global Commc'ns,*

22 | *Inc. v. Protus IP Sols.*, 2010 WL 9446806, at *5 (C.D. Cal. Oct. 1, 2010) (quoting *Prieto–Romero*

23 | *v. Clark*, 534 F.3d 1053, 1061 n.7 (9th Cir. 2008)). This presumption is rebutted only "if

24 | the same words or phrases are used 'in such dissimilar connections as to warrant the conclusion that

25 | they were employed in the different parts of the act with different intent.'" *Id.* (quoting *Chugach*

26 | *Natives, Inc. v. Doyon, Ltd.*, 588 F.2d 723, 725 (9th Cir. 1978)); *see also Kihn v. Bill Graham*

27 | *Archives, LLC*, 2020 WL 1820708, at *18 (N.D. Cal. Apr. 10, 2020) ("The normal rule of statutory

28 | construction assumes that identical words used in different parts of the same act are intended to have

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Plaintiffs' Second Renewed Motion for Class Certification
Case No. 4:13-cv-02219-HSG        7

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

the same meaning.") (quoting *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860 (1986)). Here, there is no reason to believe Congress had any "different intent," and the term "capacity" in the definition of "telephone facsimile machine" at 47 U.S.C. § 227(a)(3)—one subparagraph from § 227(a)(1)—means that the equipment need only be *able* to perform the listed functions—to receive a fax over a telephone line and print the fax—not that it "actually" perform those functions.[2]

Plaintiff's expert gave unrebutted testimony that any equipment that "can receive a T.30 fax transmission, has the capacity to use a regular telephone line for the receipt of a T.30 fax transmission and to print the contents of the T.30 fax transmission," which is true regardless whether the equipment is a "'stand-alone' fax machine" or a "fax server" configured to convert the fax to another format to be emailed to the end-user, as is the case with an online fax service. (Hara Decl., Ex. I, Doc. 209-3, Expert Report of Robert Biggerstaff ¶¶ 46, 49–50). In each case, Biggerstaff testified, the "equipment" to which the fax is sent has the relevant "capacity." (*Id.* ¶ 50). Biggerstaff further testified "categorically" that "without exception, every device of which I am aware that can receive a T.30 fax transmission, has the capacity to use a regular telephone line for the receipt of a T.30 fax transmission and to print the contents of the T.30 fax transmission," and that "a record of a successful transmission by a computer based facsimile transmission system is a record that such a transmission was sent to and received by equipment which has the capacity to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." (*Id.* ¶¶ 49–50).

The report of Defendants' expert, Kenneth Sponsler, does not dispute that the equipment used by online fax services to receive faxes on behalf of its clients has the relevant "capacity." (Hara Decl., Ex. J, Doc. 364, Updated Report of Kenneth Sponsler ¶¶ 9–11, 21–29). If Defendants attempt to contradict that now, Plaintiffs offer for impeachment purposes that Sponsler has given sworn deposition testimony in at least three other cases since the decertification in this case in which he testified that if the fax server used by an online fax service has the capacity to receive a fax and

---

[2] *Meyer's* interpretation of the term "capacity" is not affected by the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021). That case dealt with what kind of "capacity" equipment must possess to be an "automatic telephone dialing system," *id.* at 409, not whether "capacity" means automatically, as Defendants in this case suggest.

forward it by email (which everyone agrees it does), then it also has the capacity to print. (Hara Decl., Ex. A, *Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, No. 4:21-cv-0089 (E.D. Mo. May 4, 2022), Deposition of Kenneth Sponsler at 55:16–18 ("If they have access to the Internet, then they would obviously be able to access a printer via the Internet obviously. Yes."); Hara Decl., Ex. B, *Marc Irwin Sharfman, M.D., P.A. v. Infucare Rx, LLC*, No. 6:21-cv-00525 (M.D. Fla. July 19, 2022), Deposition of Kenneth Sponsler at 26:13-28:6 ("I guess they could access a printer."); Hara Decl., Ex. C, *Scoma Chiropractic, P.A. v. Mastercard Int'l Inc.*, No. 2:16-cv-00041-JLB-NPM (M.D. Fla. Jan. 20, 2023), Deposition of Kenneth Sponsler at 30:11–12; 30:21; 31:3; 31:9; 58:11 (admitting that the equipment used by online fax services to receive and forward faxes has the "capacity" to print); *id.* at 59:3–5, 59:8 (Q: "if you can access the Internet to send an e-mail you have capacity to print because you can access a printer"; A: "That's correct.")).

In his "Updated Expert Report," Sponsler opined that the equipment used by online fax services to receive incoming faxes lacks the "capacity" to print because "no paper or toner is used at all, unless the recipient freely decides to print rather than delete or save fax images on a computer hard drive, thumb drive, or other electronic storage." (Hara Decl., Ex. J , Doc. 364, Page 37 of 375, ¶ 11). That only means that the equipment does not "automatically" print the fax; not that the equipment lacks the capacity to do so.

Sponsler submitted a "Third Updated Expert Report" stating, "I have personally spoken with representatives from major online fax service providers to ask if their online fax technology is capable of printing the incoming fax that is normally converted to a PDF or TIFF file and emailed to the end user or viewed on an online portal," and "[n]one of the online fax service providers I spoke to have online fax technology that is capable of printing the faxes, including eFax, MetroFax, SRFax, Biscom 123, and RingCentral Fax." (Hara Decl., Ex. K, Doc. 548-2, Page 21 of 22, at ¶ 39). But Sponsler later admitted that his methodology for this "survey" was to personally place a phone call to the online fax service, wherein "I presented myself as being interested in obtaining working with an online fax service provider who could provide me a print service instead of sending my fax by e-mail if they could print my fax and mail it to me or FedEx it to me," and the online-fax-service providers informed him that they did not offer that service. (*See* Hara Decl., Ex. B, *Marc Irwin*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

*Sharfman, M.D., P.A. v. Infucare Rx, LLC*, No. 21-cv-525 (M.D. Fla.), ECF No. 50-3, Dep. of Kenneth Sponsler at 25:9–13). That online fax service providers do not offer the unusual service Sponsler inquired about in no way means that they lack the capacity to print a fax to paper instead of emailing it.

In sum, regardless of whether a fax is sent to a stand-alone fax machine or to an e-fax provider, it is sent to equipment with relevant "capacity." *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.*, 2017 WL 5079181, at *7 (W.D. La. Nov. 1, 2017) ("The statutory language requires only that the receiving device have the 'capacity' to print the fax, not that the device 'automatically' print the fax."); *Brust*, 343 F.R.D. at 589; *Urgent One Med. Care, P.C. v. Co-Options, Inc.*, 2022 WL 16755154 (E.D.N.Y. June 1, 2022), *adopted by* 2022 WL 4596754, at *7 (E.D.N.Y. Sept. 30, 2022); *Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc.*, 2021 WL 3043422 (N.D. Ill. Feb. 17, 2021); *Levine Hat Co. v. Innate Intelligence, LLC*, 2022 WL 1044880, 2022 WL 1044880, at *2 (E.D. Mo. Apr. 7, 2022); *Mussat v. IQVIA Inc.*, 2020 WL 5994468, at *3 (N.D. Ill. Oct. 9, 2020); *see also J2 Global*, 2010 WL 9446806, at *6–7 (holding that, although online fax service provider's "servers qualify as 'telephone facsimile machines,'" it is the end user who is the "recipient" with statutory standing to sue). Under ordinary principles of statutory interpretation, all of the fax advertisements in this case were "sen[t] to" a "telephone facsimile machine" as defined by 47 U.S.C. § 227(a)(3), regardless of whether the end user viewed the fax on a piece of paper printed from a stand-alone fax machine or on a computer using an "e-fax" or "online fax service." *Lyngaas*, 992 F.3d at 425–27. The distinction has no basis in the plain statutory language of the TCPA, and it presents no barrier to class certification.

**B.     In the alternative, any ambiguity should be resolved in favor of consumers.**

**1.     The TCPA is a remedial statute intended to protect consumers.**

The TCPA "is a remedial statute intended to protect consumers," and its terms "should be construed in accordance with that purpose." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1047 (9th Cir. 2017) (citing *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013)); *see also Meyer v. Bebe Stores, Inc.*, 2015 WL 1223658, at *2 (N.D. Cal. Mar. 17, 2015) (holding TCPA is "construed to benefit consumers") (quoting *Gager*, 727 F.3d at 271); *Charvat v. Allstate*

*Corp.*, 29 F. Supp. 3d 1147, 1150 (N.D. Ill. 2014)). For example, in *Van Patten*, the parties disagreed over whether "prior express consent" to receive autodialed phone calls was revocable under the TCPA. *Id.* The Ninth Circuit held the statute was silent on that issue (and thus ambiguous) and relied on the remedial-statute doctrine to conclude that prior express consent is revocable. *Id.*

The same reasoning applies here. If the Court determines that the term "telephone facsimile machine" is ambiguous with respect to whether faxes received using an e-fax or "online fax service" are covered by the TCPA, it should interpret the statute "to protect consumers." *Id.* Ninth Circuit authority requires that the statute be "construed to benefit consumers," rather than fax advertisers, in the case of an ambiguity. *Meyer*, 2015 WL 1223658, at *2.

> ### 2.    The Court should accord "appropriate respect" to the FCC's interpretations under *McLaughlin*.

Although the FCC's interpretations of the TCPA are not binding, they are due "appropriate respect" under *McLaughlin*, 606 U.S. at 155 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024)). The Supreme Court did not elaborate in *McLaughlin* on what "appropriate respect" means, but it is clear that it does not mean *Chevron* deference, which was overruled in *Loper Bright*, 603 U.S. at 412 ("*Chevron* is overruled."). Rather, the correct standard in this context is that an agency interpretation "is entitled to respect" to the extent it has the "power to persuade." *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) (quoting *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944)). The power to persuade "will depend upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore*, 323 U.S. at 140.

There are three relevant FCC interpretations. The two that support Plaintiffs' position (the 2003 Commission Order and the 2015 WestFax Bureau Ruling) have the "power to persuade." The third, the 2019 Americafactors Bureau Ruling, supports Defendants' position but it is not persuasive.

**The 2003 Commission Order.** The full Federal Communications Commission, meaning the five commissioners appointed by the president with the advice and consent of the Senate, has addressed this issue only once, in *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14133 ¶¶ 199–201 (rel. July 3, 2003) ("2003 Commission Order").

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

The 2003 Commission Order was the result of a rulemaking proceeding initiated by the FCC in 2002 to update its regulations, seeking public comment on, among other issues, whether the development of "computerized fax servers" might "warrant revisiting the rules on unsolicited faxes." *In re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*, 17 FCC Rcd. 17459, 17482, Notice of Proposed Rulemaking ("NPRM"), Sept. 18, 2002). The Commission published the NPRM in the Federal Register. *In re Rules & Regulations Implementing Tel. Consumer Prot. Act (TCPA) of 1991*, 67 Fed. Reg. 62667-01 (Oct. 8, 2002).

Several "industry representatives" urged the FCC to rule that faxes sent to "fax servers" and then forwarded to the end-user's email "inbox" are not sent to a "telephone facsimile machine" because "they are not reduced to paper and can be deleted from one's inbox without being opened or examined." (2003 Commission Order ¶ 199). In particular, Nextel Communications, Inc., submitted opening comments (cited in the 2003 Commission Order, n.735) making all the same arguments that would be raised in the Amerifactors Petition 15 years later, including:

- that "fax modem technology now enables the delivery of faxes to email inboxes where consumers can electronically retrieve, view or discard a fax image without ever reducing it to paper," unlike "stand-alone" fax machines;

- that "[i]n light of these changes, . . . the TCPA does not prohibit the transmission of unsolicited facsimile ads to fax servers, personal computers, and other devices that will not print a fax without a user command and attachment to a peripheral printer";

- that "[t]oday, fax servers and many personal computers are enabled by fax modem cards *or simply connection to the Internet* to receive fax transmissions" (emphasis added);

- that "these devices do not have the capacity either to transcribe text or images from paper into an electronic signal, or to transcribe text or images received from an electronic signal onto paper," and that "[e]xternal devices – i.e., optical scanners and printers – must be attached and used by the recipient to perform these transcription functions";

- that because "[t]he TCPA expressly differentiates between the devices used to send a regulated advertising transmission – i.e., a 'telephone facsimile machine, computer, or other device' – and the technology used to receive a regulated fax communication – i.e., a

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

'telephone facsimile machine,'" and so "Congress intended to exclude 'computers' from the definition of a 'telephone facsimile machine,'";

- that "Congress was concerned primarily with the printing costs associated with the receipt of an unsolicited fax advertisement by a conventional stand-alone facsimile machine" so the definition of "telephone facsimile machine" should be limited to those devices;

- that "faxes sent to a fax server or personal computer can be deleted by the recipient without ever being printed to paper," and so "the transmission of facsimiles to these devices simply does not implicate the policy concerns with cost shifting underlying Section 227(b)(1)(C) and in no event meet the definition of a telephone facsimile machine."

(Hara Decl., Ex. D, *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, CG No. 02-278, Comments of Nextel Commc'ns, Inc. (filed Dec. 9, 2002) at 31–34).[3]

Nextel filed Reply Comments specifying that its arguments were aimed at "services offered by eFax.com and similar Web-based service bureaus," which "operate banks of fax servers that receive facsimile transmissions on behalf of their clients and convert these transmissions in real-time into electronic files that end-users receive as an e-mail message attachment." (Hara Decl., Ex. E, *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, CG No. 02-278, Reply Comments of Nextel Commnc'ns, Inc. (filed Jan. 31, 2003) at 3–4)). Nextel made more of the arguments in the Amerifactors Bureau Ruling, including:

- that "[f]axes are received, converted and retransmitted electronically by these services without ever being reduced to paper."

- that "faxes delivered via these services are never converted to a paper image unless the end-user affirmatively chooses to print the attachment using a peripheral device" and so they are not sent to a "telephone facsimile machine."

---

[3] Public records submitted to an administrative agency are subject to judicial notice if the facts therein are "not subject to reasonable dispute," are "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citing Fed. R. Evid. 201(b)(1)–(2)).

(*Id.*) Nextel argued that "[t]he slight effort involved in discarding an e-mail fax attachment does not implicate the harms that Congress sought to redress through the TCPA," which it asserted were limited to the costs of paper and toner and the tying up of the stand-alone fax machine. (*Id.* at 4–5). Nextel argued the TCPA "is not an unsolicited commercial e-mail statute," and "Congress designed the Act to redress a very specific cost-shifting problem posed by the transmission of advertising material to conventional stand-alone fax machines," whereas a consumer can "delete an unwanted eFax message, as she can any other e-mail message, without incurring any costs whatsoever." (*Id.* at 5). Nextel argued that the "transient" burden of "discarding unwanted junk mail" would not warrant imposing the "onerous" requirements of the TCPA. (*Id.* at 6).

The Commission rejected <u>all</u> of Nextel's arguments. (2003 Commission Order ¶¶ 199–201). First, the Commission ruled that "a conventional stand-alone telephone facsimile machine is just one device used for this purpose," and that "developing technologies permit one to send and receive facsimile messages in a myriad of ways," all of which are covered by the statute. (*Id.* ¶ 199). The Commission stated that it would interpret the definition of telephone facsimile machine "broadly," ruling that "Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines." (*Id.* ¶ 201).

Second, the Commission ruled that Nextel incorrectly assumed Congress was concerned solely with the "costs associated with the fax advertisements" received on stand-alone fax machines but that Congress also took account of the "interference, interruptions, and expense" resulting from junk faxes. (*Id.* ¶ 201). The Commission found that, even where junk faxes are ultimately received by email, those concerns are implicated because the faxes "may increase labor costs for businesses, whose employees must monitor faxes to determine which ones are junk faxes and which are related to their company's business," and were covered by the statute. (*Id.* ¶ 202).

Finally, the Commission rejected Nextel's narrow interpretation of the statute, holding that "because a sender of a facsimile message has no way to determine whether it is being sent to a number associated with a stand-alone fax machine or to one associated with a personal computer or fax server, it would make little sense to apply different rules based on the device that ultimately

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

received it." (*Id.*) In short, as recognized in *Brust*, 343 F.R.D. at 589, the 2003 Commission Order clearly "determined that online fax services were covered by the TCPA." *See also Lyngaas*, 992 F.3d at 426 (holding 2003 Commission Order "reinforced" the Sixth Circuit's plain-language reading of the statute); *Urgent One Med. Care*, 2022 WL 16755154; *Ambassador Animal Hosp.*, 2021 WL 3043422; *Levine Hat Co.*, 2022 WL 1044880, at *2; *Mussat v. IQVIA*, 2020 WL 5994468, at *3.

The 2003 Commission Order states that the TCPA does not apply "to facsimile messages sent as email over the Internet." (2003 Commission Order ¶ 200). Defendants will likely misread this lone sentence to mean that online fax services are not covered by the TCPA, but it merely makes clear that the 2003 Commission Order "exempted from the TCPA the act of forwarding a fax by email," while maintaining that "the first step—the transmission of the original fax—still falls within the confines of the TCPA." *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, No. 09-CV-1162, 2013 WL 3654550, at *5 (W.D. Mich. July 12, 2013). The Commission applied this distinction in ruling that "commercial facsimile services" that "transmit faxes to the recipients as email attachments"—*i.e.*, "online fax services"—do not violate the TCPA by forwarding faxes to their customers by email. (2003 Commission Order ¶ 199, n.736). That a fax service provider is not liable under the TCPA for forwarding a fax by email to a paying client in no way translates into a rule that the fax advertiser is off the hook for sending junk faxes in the first place.

In sum, the full FCC in the 2003 Commission Order clearly ruled that faxes received using e-fax and online fax services are "sen[t] to" a "telephone facsimile machine" in violation of § 227(b)(1)(C). The Court should accord the Commission "appropriate respect" and reject the argument that the TCPA is limited to "stand-alone" fax machines or that it requires excluding persons who were using an e-fax or "online fax service" in 2009–2010.

**The WestFax Bureau Ruling.** In 2009, an online fax service provider called WestFax, Inc. filed a petition with the FCC seeking a ruling that faxes are not "sent to" a telephone facsimile machine when they are viewed using an "efax" service, in particular, WestFax's efax service called "FaxForward," described as "a service that 'automatically converts received faxes into electronic images that are delivered directly to your email inbox.'" *In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620, 2015 WL 5120880, at *1 ¶ 4, n.15 (CGAB Aug.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

28, 2015) ("Westfax Bureau Ruling"). Like Nextel seven years earlier, Westfax argued the concerns that motivated Congress to pass the TCPA "are not accurate with respect to faxes sent to fax servers" because they "are not designed to print and do not print the messages. Processing is immediate, there is delay, no monitoring, printing, paper or toner, inability to process actual business communications or lines or printers tied up. This is the 21st century." (Hara Decl., Ex. F, WestFax Pet. for Consideration & Clarification, CG Docket Nos. 02-278, 05-538 (filed Sept. 24, 2009)).

The FCC's Consumer & Governmental Affairs Bureau denied the petition, ruling that, just like the "faxes sent to computers attached to fax servers or modems" in the 2003 Commission Order, "WestFax's description of efaxes makes clear that the recipient computers are attached to fax servers or services that convert the fax into a format that is attached to an email received by the computer." (WestFax Bureau Ruling ¶ 9). The Bureau concluded that the statutory definition of "telephone facsimile machine"—*i.e.*, "equipment" with the relevant "capacity," 47 U.S.C. § 227(a)(3)— "sweeps in the fax server and modem, along with the computer that receives the efax because together they by necessity have the capacity to 'transcribe text or images (or both) from an electronic signal received over a telephone line onto paper.'"[4] (*Id.*). Westfax did not file an application for review with the Commission, so the ruling is final. *See Georgia Power Co. v. Teleport Comm'n Atlanta,* 346 F.3d 1047, 1050 (11th Cir. 2003) (order from a subordinate unit of the FCC (such as the Bureau) becomes final if no application for review before the Commission is filed).

The Westfax Bureau Ruling is perfectly consistent with the 2003 Commission Order. The conclusion in the Westfax Bureau Ruling that the end-user's computer—when "attached to fax servers or services," Westfax Bureau Ruling ¶ 9—is one part of a chain of devices that together make up "equipment" with the relevant "capacity" under § 227(a)(3) is fully consistent with the 2003 Commission Order's conclusion that the statute "broadly applies to any equipment that has the capacity to send or receive text or images," including "personal computers and fax servers," if that is where the advertisement is ultimately "transmitted." (2003 Commission Order ¶ 201).

---

[4] The Sixth Circuit later recognized the same principle: "a computer, as a stand-alone device, can be distinct from a telephone facsimile machine and yet part of one as an integrated piece of 'equipment.'" *Lyngaas*, 992 F.3d at 427.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

In sum, faxes sent to an e-fax service or "online fax service" are covered by the TCPA under the Westfax Bureau Ruling.

**The Amerifactors Bureau Ruling.** In 2017, a financing company named as a defendant in a TCPA action filed a petition with the FCC seeking a ruling that a fax is not "sent to" a telephone facsimile machine if the end-user views the fax through an "online fax service." (Hara Decl., Ex. G, *Pet. for Expedited Declaratory Ruling of Amerifactors Fin. Group, LLC*, CG Docket Nos. 02-278, 05-338 (filed July 13, 2017)). The "principal" purpose of the Amerifactors Petition (according to the petitioner) was to "confirm that the statute requires an individualized determination as to how recipients actually received unsolicited fax advertisements" to help fax advertisers evade class certification in private TCPA actions. (*Id.* at 27). The Amerifactors Petition made all the same arguments made by Nextel in 2002 and by Westfax in 2009. (*Id.*)

This time, the Bureau granted the petition. (*See* Amerifactors Bureau Ruling, 2019 WL 6712128). The plaintiff in the private TCPA action against the petitioner, Career Counseling, Inc., timely filed an Application for Review with the full Commission explaining that the Bureau's decision blatantly conflicted with the 2003 Commission Order and the WestFax Bureau Ruling. (Hara Decl., Ex. H, *In re Amerifactors Financial Grp.*, CG Nos. 02-278, 05-338, Application for Review (filed Jan. 8, 2020)). The Application for Review remains pending as of the filing of this brief.

The "appropriate respect" due to the Amerifactors Bureau Ruling under *McLaughlin* is none. The ruling is based on the fallacy that the only harms the TCPA sought to remedy are wasted "paper and ink" and interruption of use of a stand-alone fax machine, the same fallacy Nextel unsuccessfully raised in the 2002 rulemaking proceeding leading to the 2003 Commission Order. The 2003 Commission Order made clear that the TCPA is not limited to those concerns and also addressed the "interference, interruptions, and expense" to businesses and interstate commerce caused by faxes sent to fax servers and forwarded to the user's email "inbox." (2003 Commission Order ¶¶ 199–202). The FCC specifically ruled in paragraph 202 that faxes sent to a fax server and received by the end-user via email are covered by the statute because they "increase labor costs for businesses, whose

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1   employees must monitor faxes to determine which ones are junk faxes and which are related to their

2   company's business." (*Id.* ¶ 202).

3        The Amerifactors Bureau Ruling "flies in the face" of the 2003 Commission Order.

4   *Ambassador Animal Hosp.*, 2021 WL 3043422, at *1. When the Amerifactors Bureau Ruling states

5   that Congress was *not* concerned with "more generalized harms," such as "time spent monitoring

6   unwanted faxes stored by online fax services," it cites paragraph 202 of the 2003 Commission Order

7   (Amerifactors Bureau Ruling ¶ 14), the very passage where the full FCC rejected Nextel's argument

8   on that point and ruled that the statute is also aimed at preventing wasted employee time monitoring

9   faxes received by email "to determine which ones are junk faxes and which are related to their

10  company's business." In other words, the Amerifactors Bureau Ruling cites the section of the 2003

11  Commission Order stating that these "more generalized harms" *are* covered by the statute to support

12  the claim that such harms are *not* covered.

13        In effect, the interpretation in the Amerifactors Bureau Ruling would rewrite § 227(a)(3) as

14  follows:

15        "Telephone facsimile machine" means ~~equipment~~ <u>a device</u> which ~~has the capacity~~

16        <u>automatically</u> . . . ~~to~~ transcribe<u>s</u> text or images (or both) from an electronic signal

17        received over a regular telephone line onto paper.

18  The Court should decline to rewrite the statute. *See Bostock*, 140 S. Ct. at 1738 ("only the words on

19  the page constitute the law adopted by Congress and approved by the President. If judges could add

20  to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our

21  own imaginations, we would risk amending statutes outside the legislative process reserved for the

22  people's representatives. And we would deny the people the right to continue relying on the original

23  meaning of the law they have counted on to settle their rights and obligations"); *Nevada DeAnza*

24  *Fam. Ltd. P'ship*, 474 F. Supp. 3d 1087, 1092 (N.D. Cal. 2020) (same) (citing *Bostock*, 140 S. Ct. at

25  1738). The Court should find the Amerifactors Bureau Ruling is outweighed by the 2003

26  Commission Order and the 2015 WestFax Bureau Ruling, hold that there is no statutory distinction

27  between "stand-alone" fax machines and e-faxes or "online fax services," and find that common

28  issues predominate under Rule 23(b)(3).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

## II.      The Rule 23(a) elements are satisfied.

The Court held the Rule 23(a) elements of numerosity, commonality, typicality, and adequacy were all satisfied when it granted Plaintiffs' First Renewed Motion for Class Certification in 2019 (Doc. 331), and nothing has changed since then. The Exhibit-A Only Class is too numerous for joinder to be practicable; the case presents common issues of fact or law; McLaughlin's claims are "typical" of the other class members; and McLaughlin is plainly adequate. Additionally, Plaintiffs' counsel have amply demonstrated that they will adequately represent the class, having now litigated this case on a contingent-fee basis for over ten years, successfully appealing to the Ninth Circuit and the Supreme Court. The Court should find Rule 23(a) satisfied.

## III.     The Rule 23(b)(3) elements are satisfied.

### A.      Common issues predominate.

The Ninth Circuit held Rule 23(b)(3) "predominance" was satisfied as to the Exhibit A-Only Class in 2019. *True Health*, 896 F.3d at 932. This Court subsequently certified the same class Plaintiffs seek to certify in this motion, finding common questions predominated. (Doc. 331 at 27). The Court later ruled on the merits of some of those common questions, but at least two common issues remain: (1) whether faxes sent to online fax services are covered by the TCPA (answered in the affirmative in Section I, above); and (2) whether the Court's finding that Defendants failed to demonstrate "prior express invitation or permission" as to the named Plaintiffs applies to the entire Class.

As argued in Section I, above, the issuance of the Amerifactors Bureau Ruling in December 2019 changes nothing. The Court should hold that common issues predominate and recertify the Class. *See Lyngaas*, 992 F.3d at 425–27 (affirming certification of "all-fax recipients" class, notwithstanding the Amerifactors Bureau Ruling); *Brust*, 343 F.R.D. at 589 n.5 (same).

### B.      Class certification is superior to the alternatives.

This Court already recognized that Rule 23(b)(3) superiority is met in this case because "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." (Doc. 331 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1234–35 (9th Cir. 1996)). A class action is routinely recognized to be a superior method of adjudicating mass TCPA violations.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1   *See Holtzman v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013) (holding "[c]lass certification is normal"

2   in TCPA fax cases). Only by aggregating their claims can consumers and businesses impacted by

3   Defendants' junk faxes effectively enforce their rights. *See Chapman v. Wagener Equities, Inc.*, 2014

4   WL 540250 *16 (N.D. Ill. Feb. 11, 2014) (holding $500 statutory recovery gives individual plaintiffs

5   "a low incentive to bring a lawsuit on their own behalf"); *Mussat v. Global Healthcare Res., LLC*,

6   2013 WL 1087551, at *7 (N.D. Ill. Mar. 13, 2013) (holding TCPA fax class superior given "fairly

7   small potential for individual recovery"); *Savanna Group v. Trynex, Inc.*, 2013 WL 66181, at *16

8   (N.D. Ill. Jan. 4, 2013) ("small potential recovery in individual actions" under the TCPA "weighs in

9   favor of class-wide resolution").

10          The Supreme Court recognized the realities of TCPA litigation in deciding that federal courts

11   share concurrent jurisdiction with state courts over TCPA claims, asking in *Mims v. Arrow Fin.*

12   *Servs., LLC*, 132 S. Ct. 740, 753 (2012), "[h]ow likely is it that a party would bring a $500 claim in,

13   or remove a $500 claim to, federal court?" The Court noted that nearly all TCPA cases filed in or

14   removed to federal court are class actions, rejecting the argument that the federal courts would be

15   "inundated" by individual TCPA suits if it found federal-question jurisdiction over TCPA claims.

16   *Id.*; *see also Van Patten v. Vertical Fitness Grp., LLC*, 2013 WL 12069031, at *11 (S.D. Cal. Nov.

17   8, 2013) (rejecting argument that TCPA must be enforced individually based on one senator's

18   comments in legislative history).

19          TCPA defendants sometimes argue that class certification is not superior on the basis that

20   the aggregate statutory damages would violate due process. The courts have consistently rejected

21   this argument at class certification. *See, e.g.*, *Murray v. GMAC Mtg. Corp.*, 434 F.3d 948, 954 (7th

22   Cir. 2006) ("An award that may be constitutionally excessive may be reduced, but constitutional

23   limits are best applied after a class has been certified."). Moreover, the potential aggregate liability

24   in this case—$24.4 million (at $500 per fax)—while a significant recovery for the Class, would be

25   no more than an inconvenience to Defendants. Defendants stated in a recent SEC filing that "[t]he

26

27

28

Company believes that any remaining potential liability [in this case] is not material."[5] Class certification is clearly "superior" to the alternatives, satisfying Rule 23(b)(3).

### Conclusion

For the foregoing reasons, the Court should recertify the Exhibit A-only Class, appoint McLaughlin as class representative, and appoint Plaintiffs' counsel as class counsel.

Dated: October 24, 2025

Respectfully submitted,

By:  */s/ Glenn L. Hara*

Brian J. Wanca (*admitted pro hac vice*)
Glenn L. Hara (*admitted pro hac vice*)
**ANDERSON + WANCA**
3701 Algonquin Rd., Suite 500
Rolling Meadows, Illinois 60008
Telephone:     (847) 368-1500
Fax:               (847) 368-1501
Email:          bwanca@andersonwanca.com
                     ghara@andersonwanca.com

Robert C. Schubert (S.B.N. 62684)
Willem F. Jonckheer (S.B.N. 178748)
Dustin L. Schubert (S.B.N. 254876)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:     (415) 788-4220
Fax:     (415) 788-0161
E-mail:          rschubert@sjk.law
                     wjonkcheer@sjk.law
                     dschubert@sjk.law

*Local Counsel for Plaintiffs*

---

[5]   *See*  McKesson  Corp.,  Form  10-Q,  Aug.  6,  2025,  at  25,  *available  at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0000927653/000092765325000107/mck-20250630.htm

Plaintiffs' Second Renewed Motion for Class Certification
Case No. 4:13-cv-02219-HSG                    21

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220