# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

- - - - - - - - - - - - - - - - - -

MARC IRWIN SHARFMAN, M.D., P.A., a Florida corporation, individually and as the representative of a class of similarly-situated persons,

Plaintiff,

No. 6:21-CV-00525-WWB-DCI

vs.

INFUCARE RX LLC, a Pennsylvania limited liability company, and INFUCARE RX PENNSYLVANIA INC., a Pennsylvania corporation,

Defendants.

- - - - - - - - - - - - - - - - - - -/

DEPOSITION OF KENNETH R. SPONSLER
(Conducted via videoconference)

| | |
|---|---|
| DATE: | JULY 19, 2022 |
| TIME: | 10:03 a.m. - 11:53 a.m. |
| PURSUANT TO: | Notice by counsel for Plaintiff for purposes of discovery, use at trial or such other purposes as are permitted under the Florida Rules of Civil Procedure |
| REPORTED BY: | Lee Ann Reid, Registered Professional Reporter, Notary Public, State of Florida |

APPEARANCES:
WALLACE SOLBERG, ESQUIRE
And
ROSS GOOD, ESQUIRE
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, Illinois 60008
Attorneys for the Plaintiff
ANTHONY J. PALERMO, ESQUIRE
Holland & Knight LLP
100 N. Tampa Street, Suite 4100
Tampa, Florida 33602
Attorney for the Defendants

INDEX


DIRECT EXAMINATION BY MR. SOLBERG Page 3

CERTIFICATE OF OATH Page 61

REPORTER'S CERTIFICATE Page 62


EXHIBITS

| Description | | Page |
|---|---|---|
| Exhibit 1 | original expert report | 5 |
| Exhibit 2 | supplemental report in its entirety | 9 |
| Exhibit 4 | the Amerifactors ruling | 16 |
| Exhibit 6 | Robert Biggerstaff's first expert report | 45 |
| Exhibit 9 | deposition transcript of Mr. Sponsler | 28 |



MR. SOLBERG: Let the record reflect that this is the deposition of Kenneth Sponsler taken pursuant to notice the federal rules of civil procedure in the local rules of Middle District of Florida.

KENNETH R. SPONSLER,

the witness herein, being first duly sworn on oath, was examined and deposed as follows:

DIRECT EXAMINATION

BY MR. SOLBERG:

Q. Good morning, Mr. Sponsler. We have met before. My name is Wallace Solberg. I'm one of the attorneys representing the Plaintiff in this matter. I know you have been deposed. I was actually trying to figure that out. How many times do you think you have been deposed, Mr. Sponsler? More than 80?

A. Maybe around that many. I'm not sure, sir.

Q. So I'm sure you know the drill.

A. Yes.

Q. I ask the questions. You answer them. If you don't understand a question, let me know and I'll rephrase it in such a way that you do. If you need a break, let me know. And if you can answer any question that's pending, we'll take a break. Do you understand that?

A. Absolutely, yes.



MR. PALERMO: Wally, are you not turning on your video today?

MR. SOLBERG: No. I don't know why it's not. That's not something I'm trying to do or not do. Mr. Good will tell you this isn't my strong suit.

THE COURT REPORTER: I just sent you a request.

MR. SOLBERG: Oh. Start my video. Hit that? There we go.

MR. PALERMO: It will probably make it easier to make sure we can see you and hear what you're saying.

MR. SOLBERG: That's fine. I've got it. I'll let Ross get back to his desk.

BY MR. SOLBERG:

Q. I can ask you this: As you know, the deposition is being conducted remotely. Can you tell me where you are?

A. I'm at my home office.

Q. Where is that?

A. It's in Beverly Hills, Florida.

Q. And there's no one in the room with you I gather?

A. No, sir.

Q. All right. Mr. Sponsler, let me direct your



attention to what Ross Good is going to pull up as Plaintiff's Exhibit 1. It's going to be your original expert report in this case.

(Plaintiff's Exhibit 1 was marked for identification.)

BY MR. SOLBERG:

Q. So when he pulls that up, I will ask you about it.

MR. PALERMO: And can you send the witness the exhibit or can he at least have it so he can have control over it himself too to look at?

MR. SOLBERG: I don't care if Mr. Sponsler, if he has a hard copy of his expert report, by all means let him refer to it. I don't think there's going to be a problem with different expert reports.

MR. PALERMO: Yeah. I just wanted to make sure he can see all the pages and look at things if he needs to.

MR. SOLBERG: Yes, he can absolutely consult whatever he has in his office as far as the expert reports go, if that makes it easier.

THE WITNESS: Can we close this screen that you have up so I can access my report? Thank you. And you're asking about the original report?

BY MR. SOLBERG:
Q. Correct. Our Exhibit D -- I will tell you our Exhibit D -- I'm sorry. Our Exhibit 1, your original report, includes Exhibits A, B, C, and E. We have removed D because I believe that's been superceded by your supplemental expert report, but we'll get to that. Our report has those four exhibits minus D.
A. Okay, sir.
Q. So Exhibit 1, I will ask you, consists of your report, which is 38 pages. Do you see that?
A. Yes, sir. I have a signature date on this of 3rd of June '22.
Q. And above your signature you state, quote, I declare under penalty of perjury under the laws of The United States of America that the foregoing is true and correct. Do you see that?
A. Yes, sir.
Q. And as I stated, you submitted a supplemental report in this case; correct?
A. That's correct, sir.
Q. Is Exhibit A to your supplemental report an updated version of Exhibit D to your original report?
MR. PALERMO: Object to form. Can he see the documents if we're going to refer to other ones too?



MR. SOLBERG: Ross, pull up Plaintiff's Exhibit 2, which is the supplemental report in its entirety.
THE WITNESS: Sir, my supplemental report is supplemental to my opinion 4 of this report.
BY MR. SOLBERG:
Q. Yes. And your supplemental report has -- well, let's identify it first. Plaintiff's Exhibit 2, you agree that's your supplemental report in this case?
MR. PALERMO: He would need to see the whole document.
THE WITNESS: My supplemental report is dated 12, July, 2022. And it only contains opinion 4 from the original report. The only difference -- and the exhibit to this is the updated Excel spreadsheet or in your case maybe it's a PDF of three tabs that we had put together summarizing the subpoena results.
BY MR. SOLBERG:
Q. And I'll tell you what I have. And, again, I just want to make sure we get this right. What I have is Exhibit A of your supplemental report consists of pages 1 to 3 and those are not marked confidential. And you have pages 1 to 431 which are marked confidential. And after that pages 1 and 2 which are



also marked confidential. Can you take a look and see if you agree with that.
A. I don't have those pulled up. I can find those.
MR. GOOD: Are you seeing them on the screen?
THE WITNESS: I'm seeing my version of those two reports on my screen. But I can also find these exhibits, if I'm going to need those.
BY MR. SOLBERG:
Q. You'll need pages 1 to 3 and then the last two pages. I don't believe we're going to get into the 1 through 431 range of supplemental report of Exhibit A.
A. Okay. Sir, I'll be with you in just a second.
MR. SOLBERG: While you're doing that, Anthony, what I want to do is I want to attach as Exhibit 2 to this deposition the pages -- his supplemental report and just pages 1 to 3 which are not confidential. Those we would send to the court reporter. The 1 to 431 and the 1 and 2 even if we ask questions for them, since those are going to be confidential, I don't think they need to be part of the transcript. Any objections to that?



MR. PALERMO: I think that's probably fine. We can address that later if there's any need.
MR. SOLBERG: Okay.
(Plaintiff's Exhibit 2 was marked for identification.)
THE WITNESS: Okay. I have Exhibit A is the spreadsheet. You said we're not going to refer to that?
BY MR. SOLBERG:
Q. Absolutely. And my suggestion, Mr. Sponsler, that you make Exhibit A the pages 1 to 3, those you might want to have at the ready as well as your supplemental report. Just not the 431 pages.
A. Oh. I gotcha. So you're talking about the summary sheet is pages 1 to 3. I have that. 3.
Q. Okay.
A. And what else, sir? Anything else from that report?
Q. No. Just the report itself. The supplemental report itself, which I believe consists of seven pages.
A. All right. I have that, sir.
Q. Okay. Now, we can move on.
You're familiar with Robert Biggerstaff, Mr. Sponsler?

Page 10

A. Yes, sir.
Q. And do you consider Mr. Biggerstaff an expert in faxing technology?
MR. PALERMO: Object to form.
THE WITNESS: Yes, sir.
BY MR. SOLBERG:
Q. Do you consider yourself an expert in faxing technology?
MR. PALERMO: Object to form.
THE WITNESS: I have a level of expertise in faxing technology in that all of my opinions are grounded in understanding of faxing technology and I stay abreast of ever-changing faxing technology and my opinions relevant to this case certainly have the technical expertise to provide those opinions.
BY MR. SOLBERG:
Q. Your opinions in this case, if you go back to your original report in Defendant 1 --
A. Yes, sir.
Q. -- your opinions are set forth in paragraph 10 at pages 4 and 5.
MR. PALERMO: Object to form.
BY MR. SOLBERG:
Q. Do you see that?

Page 11

A. Paragraph 10. Let me get up there. Yes, sir.
Q. And my question is this: Are there any opinions you are offering in this case besides the opinions listed there?
A. Well, sir, these are my written opinions and I don't know what kind of opinions I might offer today during this deposition depending on what you ask.
Q. If you go to Exhibit A of this report, Mr. Sponsler, it says documents reviewed and (inaudible). Can you get to that part of your report?
THE COURT REPORTER: I'm sorry. It says "documents reviewed and"?
MR. SOLBERG: Yeah. I'm sorry. I misspoke. I'll do it again.
BY MR. SOLBERG
Q. Mr. Sponsler, can you go to Exhibit A of your report, which is materials reviewed and relied upon?
A. Yes, sir.
Q. Is that list complete?
A. To the best of my knowledge, yes.
Q. Did you review -- do you recall reviewing the complaint in this case?
A. Yes, sir.
Q. And you're familiar with what the Plaintiff,

Page 12

his business is?
A. Yes, sir. He's in the medical profession.
Q. Mr. Sponsler, did you review any deposition testimony to get ready for your deposition today?
A. Yes, sir, I did.
Q. What did you review?
A. There were three depositions that were taken. I believe Mr. Good took three depositions. One was of the CEO of Infucare. One was of I think it was Ms. Clark. She was a sales manager for Infucare. And then there was a technologist. I can't pronounce his last name, but he was the one that was sent the fax list and I think the fax material to upload into the platform.
Q. Any other deposition testimony reviewed?
A. I don't recall any.
(A discussion was held off the record.)
(A recess was taken.)
BY MR. SOLBERG:
Q. Mr. Sponsler, let me direct you to your supplemental report, and in particular Exhibit A. And this is Plaintiff's Exhibit 2 in this deposition.
MR. GOOD: Are you able to see that on your screen, Mr. Sponsler?
THE WITNESS: Say again, sir.
MR. GOOD: Are you able to see it on your

Page 13

screen? Is it legible to you?
THE WITNESS: Yes. What? I'm not seeing anything you're showing. I just have my own version of it. I can try to look at yours.
MR. GOOD: Okay. You can look at yours, but for the future if there's something you don't have, I just want to know if the screen share function is working.
THE WITNESS: All right. Let me check that out, sir. I see it, but it's real narrow. I don't know if you can expand it any more.
MR. SOLBERG: Are you trying to do that, Ross or should I --
MR. GOOD: I am trying to do that.
MR. SOLBERG: There you go. That's a little too bit.
MR. GOOD: Yeah. A little bit. How about that?
MR. SOLBERG: I would go one shot smaller again. There you go.
THE WITNESS: Yes. I can see that.
MR. ROSS: You can use your own version. I just wanted to know if this was working.
THE WITNESS: Yes, sir.

Page 14

BY MR. SOLBERG:
Q. Mr. Sponsler, my question is this: Did you receive any assistance in recreating Exhibit A to your supplemental report?
A. Yes, sir.
Q. Who assisted you?
A. Jennifer Smith. She's my DBA.
Q. Did anyone else assist in the preparation of Exhibit A?
A. No.
Q. Nobody from Defendant's law firm assisted in the preparation of Exhibit A?
A. No. I mean, the law firm obviously provided the subpoena responses to us and my team, you know, dug into each one and built those three tabs to it.
Q. And your team consisted of Jennifer Smith. Anyone else?
A. Kimberly Washburn helped with the -- there's the second tab, which lists out every number that was subpoenaed and the results of that. That was quite a massive undertaking. I think under Jennifer's direction she helped do that.
Q. And as you look at this -- and you can pick any page you want, Mr. Sponsler. The question is: Column E on the 431-page portion of this report, did

Page 15

carrier provide on-line fax service for this number. And am I correct that's self-explanatory; they either did or they didn't; correct?
MR. PALERMO: Object to form.
THE WITNESS: Are you talking about the summary tab, sir, the first three pages?
BY MR. SOLBERG:
Q. No. Actually I was talking about the body of the report, but you know --
A. Oh. I'm sorry.
Q. Let me strike that question. I'll ask you the same question from the report, except on the report column C indicated no. That means that the phone carrier did not provide online fax service to the number listed; is that correct?
MR. PALERMO: Object to form.
THE WITNESS: These are all answers to the question that is at the very top row, row 1, responses to if carrier provides online fax number to the numbers. So that is the response to that statement.
BY MR. SOLBERG:
Q. And it indicated yes in column F is also the response to that statement, but in there the answer is yes; correct?

Page 16

A. Correct.
MR. PALERMO: Object to form.
BY MR. SOLBERG:
Q. Mr. Sponsler, let me hand you what's been marked Plaintiff's Exhibit No. 4.
MR. SOLBERG: If, Ross, we can get there.
MR. GOOD: Yep.
(Plaintiff's Exhibit 4 was marked for identification.)
THE WITNESS: Is this the spreadsheet again?
BY MR. SOLBERG:
Q. No. Mr. Sponsler, this is just going to be the Amerifactors ruling.
A. Oh. I'm sorry. Yes. I'll need to see that.
MR. GOOD: Are you able to see that on your screen?
THE WITNESS: Yes, sir.
BY MR. SOLBERG:
Q. For the record this is in re: Amerifactors -- I won't go through the entire title, but this is the Amerifactors ruling. Do you recognize this, Mr. Sponsler?
A. Yes, sir. I believe it's the Amerifactors ruling.
Q. It was the ruling by the Consumer and

Page 17

Governmental Affairs Bureau. Do you see that?
MR. PALERMO: Object to form.
THE WITNESS: Yes, sir, I see that.
BY MR. SOLBERG:
Q. And you have read the Amerifactors rulings many times; correct?
A. Yes, sir.
Q. And you're aware this ruling is currently on appeal before the FCC?
MR. PALERMO: Object to form.
THE WITNESS: I have been told that, yes.
BY MR. SOLBERG:
Q. Do you have any reason to doubt that?
A. No.
Q. Okay. Here's what I'm going to do, Mr. Sponsler, I'm going to read from paragraph 2 of the ruling. So just follow along. I just want to give us a little foundation here for questions that follow.
Paragraph 2, "An online fax service is a cloud-based service consisting of a fax server or similar device that is used to send or receive documents, images, and/or electronic files in digital format over telecommunications facilities that allows users to access faxes the same way they do e-mail: By logging into a server over the Internet or by receiving

Page 18

a PDF attachment as an e-mail." Close quote.
Do you see that, Mr. Sponsler?
A. I do, sir.
Q. And that's your understanding of what online fax service is for purposes of the Amerifactors ruling?
A. Yes, sir.
Q. One more, Mr. Sponsler. Amerifactors ruling paragraph 13. And from that paragraph the following: Quote, "Online fax services hold inbound faxes in digital form on a cloud-based server where the user accesses the document via the online portal or via an e-mail attachment that has the option to view, delete, or print them as desired," close quote.
MR. PALERMO: Can we show that paragraph, please.
MR. GOOD: Did you say 9?
MR. SOLBERG: 13.
BY MR. SOLBERG:
Q. If you go in the first sentence, "By contrast the record here confirms that." I started out at "online fax services hold inbound faxes."
A. And you started out with "online fax service."
Q. Fax services.
MR. SOLBERG: I think the problem here is,

Page 19

Ross, is our pictures are blocking Mr. Sponsler's view of the paragraph. I don't know what to do.
THE WITNESS: No. I have a different screen.
BY MR. SOLBERG:
Q. Okay. Good.
A. So I'm trying to find which line does that start, "online fax services"?
Q. It says the first sentence of paragraph 13, "By contrast, the record here confirms that." All right? My quote starts out at "online fax services hold inbound faxes." Do you see that?
A. Yes, sir.
Q. All right. And, again, I'm just citing a portion of the ruling for you before we start additional questioning. Okay?
A. Yes, sir.
Q. All right. Now, to subscribe to an online fax service, the subscriber needs to access the Internet; is that correct?
A. Yes. I would say yes.
Q. And that is done with a computer; is that right?
A. In most cases, yes. It could be a smart phone or something.
Q. And a smart phone is a computer; correct?

Page 20

MR. PALERMO: Object to form.
THE WITNESS: It's a smart phone.
BY MR. SOLBERG:
Q. It can access the Internet?
A. It can access the Internet.
Q. Okay. And you're familiar with Group 3 standards as it relates to faxing, Mr. Sponsler?
A. Yes, sir.
Q. And does the Group 3 standard employ the T.30 protocol?
A. Yes, sir.
Q. Is it your understanding that the faxes at issue in this case were sent from a telephone facsimile machine, computer, or other device to ten digit telephone numbers over telephone lines to equipment that can perform the T.30 protocol?
MR. PALERMO: Object to form.
THE WITNESS: Generally, yes, but not at in all cases.
BY MR. SOLBERG:
Q. But in this case all the faxes went over a ten digit telephone line, did they not?
MR. PALERMO: Object to form.
THE WITNESS: Well, as I have described before, there are faxes that are received over

Page 21

VOIP or FOIP connections which would mean that along the line even though they would have started out as T.30, they would have been converted to a T.38 standard in order for the FOIP-connected device to receive it.
BY MR. SOLBERG:
Q. And when it arrives at the -- for instance, when it arrives at the online fax service, what happens next regarding receipt of the fax transmission?
MR. PALERMO: Object to the form.
THE WITNESS: Sir, that question wasn't clear. It was a little bit -- could you ask it again, sir?
BY MR. SOLBERG:
Q. Well, let me ask it a different way. So the faxes at issue here were sent from a telephone facsimile machine, computer, or other device. Is that your understanding?
MR. PALERMO: Objection.
THE WITNESS: Yes.
BY MR. SOLBERG:
Q. And they were sent over ten digit telephone numbers; is that correct?
A. Yes.
MR. PALERMO: Objection.

Page 22

BY MR. SOLBERG:
Q. Or to ten digit telephone numbers over telephone lines; is that correct?
MR. PALERMO: Objection.
THE WITNESS: Again, initially, yes; but as I have said, there are gateways that convert to digital for T.38 protocol for VOIP connected or FOIP-connected technology.
BY MR. SOLBERG:
Q. What happens after the conversion to T.38 protocol?
MR. PALERMO: Objection.
THE WITNESS: I'm sorry. That means that the fax is received via Internet, IT, and Internet protocol versus plane old telephone.
BY MR. SOLBERG:
Q. And are you aware of any call in this case that was received in that fashion?
A. Sir, we cannot be aware of any of these faxes were received in this case other than the declarations that we have from several doctors as well as a few of the responses to the subpoena by a few carriers.
Q. I don't know if you understood my question, Mr. Sponsler. What I'm getting at is this fax transmission, it's traveling over a telephone line and

Page 23

it arrives -- for purposes of this questioning, it arrives at an online fax service. Are you with me so far?
MR. PALERMO: Objection.
THE WITNESS: Okay. I'm with you so far.
BY MR. SOLBERG:
Q. Okay. And having done that, it's gone to a fax server at the online fax service that performs the T.30 protocol and along with a gateway will convert that transmission to a PDF; is that correct?
MR. PALERMO: Objection.
THE WITNESS: Or an image, yes, sir.
BY MR. SOLBERG:
Q. All right. Mr. Sponsler, let me direct you to paragraph 37 of your original report, which is Plaintiff's Exhibit 1.
THE WITNESS: Can you make that a little larger?
MR. GOOD: Yes.
THE WITNESS: Okay. 37?
BY MR. SOLBERG:
Q. Yes. Take your time and read that paragraph.
MR. PALERMO: Ken, do you want it in blue or not? I'm not trying to make Ross' life more difficult here, but I just figured, I don't know

Page 24

if you want it either way.
MR. SOLBERG: He can certainly consult any hard copies that he has in his desk. That's fine with me.
MR. PALERMO: Either way. Whatever Ken wants. Ken, if you want Ross to highlight it in blue or if you want it in white or you want him to look at a hard copy.
THE WITNESS: Okay. I have read it, sir.
BY MR. SOLBERG:
Q. And you see there you're referencing your conversations with various online fax service providers. Do you see that?
A. Yes, sir, I see it.
Q. Did you personally talk to each of these providers or did someone else from your team?
A. I did, sir.
Q. Do you recall when these conversations referenced in this paragraph took place?
A. When it took place?
Q. When, yes.
A. It's been probably a couple of years ago.
Q. Do you remember -- I can imagine this, Mr. Sponsler, based on your last answer. Do you remember who you talked to?

Page 25

MR. PALERMO: Object to form.
THE WITNESS: No.
BY MR. SOLBERG:
Q. Did you take any notes as to who you talked to, Mr. Sponsler?
A. No, sir.
Q. Did you have a script for these conversations?
A. Sir, my conversation was I presented myself as being interested in obtaining working with an online fax service provider who could provide me a print service instead of sending my fax by e-mail if they could print my fax and mail it to me or FedEx it to me, if it were possible for them to provide me that service essentially.
Q. And the answer was?
A. No.
Q. Did you ask any of these providers whether they had a printer on site?
A. Sir, I was just trying to find out if they would provide me that service. I didn't ask about whether they had a printer on site, because that would have been problematic if they had already told me they don't provide the service.
Q. Why would it be problematic?

Page 26

A. Well, because it would appear to put a potential customer that they had a printer on site if they did, and yet they still wouldn't provide me the service I'm telling them I need.
Q. Now, as these are all online fax service providers, they have to have access to the Internet to perform their service for the subscribers, one of those services being forwarding faxes via e-mail. Am I correct?
MR. PALERMO: Objection.
THE WITNESS: Yes.
BY MR. SOLBERG:
Q. And so, again, to restate, these online fax service providers can access the Internet to send e-mails; correct?
A. Yes, sir.
Q. And it's also correct, is it not, that if they can access the Internet to send an e-mail, they can access a printer over the Internet to print; correct?
MR. PALERMO: Objection.
THE WITNESS: That's hypothetical, sir. You know, I guess they could do anything. They could have an automatic coffee maker. I don't know. It's not something that makes any sense. It's not

Page 27

something they offer. It's -- you know, a lot of things are possible.
BY MR. SOLBERG:
Q. My question is: If they can access the Internet, it's possible they can access a printer over the Internet; is that right?
MR. PALERMO: Objection.
THE WITNESS: I guess they could access a printer. They could access all kinds of things over the Internet, but, I mean, the regulation on this is clear. The decision is clear. The FCC stated that these online fax services do not have the capability to print, and I concur with that.
BY MR. SOLBERG:
Q. Well I'm not asking you about the Bureau of the FCC, Mr. Sponsler. What I'm asking is your understanding that if you can send an e-mail over the Internet, you can also access a printer over the Internet.
Now, you previously testified the answer to that question is yes and I'm just asking it again. You testified in another case, I should state, that the answer to that question is yes.
Now, I'll ask you again. If you can access the Internet to send an e-mail, can you access the

Page 28

Internet to print?
MR. PALERMO: Objection. Argumentative and if there's a document you want to show him related to some other questioning, I would invite that.
THE WITNESS: Hypothetically, they can access many, many things over the Internet.
BY MR. SOLBERG:
Q. You know what? Let me take a short break here. Let me take five. Okay. Is that all right with everybody?
A. Sure.
MR. PALERMO: Sure thing.
MR. SOLBERG: All right. Back in 5, which is your time, Mr. Sponsler, 10:51.
THE WITNESS: Yes, sir.
(A recess was taken.)
MR. SOLBERG: Ross, can we pull up Exhibit 9.
(Plaintiff's Exhibit 9 was marked for identification.)
BY MR. SOLBERG:
Q. Mr. Sponsler, I'm going to hand you what's been marked as Plaintiff's Exhibit 9. I would ask you to take a look at the first page.
MR. PALERMO: Can you e-mail this to everybody so we all have it?

Page 29

THE WITNESS: I'm looking at page 55.
MR. SOLBERG: Yeah. Ross, pull the first page up, will you?
MR. GOOD: Yeah. Anthony. I'm e-mailing it to you now while doing that. Okay?
MR. PALERMO: Thanks, Ross.
BY MR. SOLBERG:
Q. You recognize that case that's listed on that page, Mr. Sponsler?
A. I think so, sir.
Q. Plaintiff's Exhibit 9 is a deposition transcript from Alan Presswood v. Opensided. The deposition was of Mr. Sponsler. It was taken on May 4, 2022. Do you see that, Mr. Sponsler?
A. Yes, sir, I see it.
Q. And this is also listed in paragraph 21 of your report in this case. Your original report. That's the last page cited.
In any event, do you recall this deposition, Mr. Sponsler?
A. I recall being deposed. I'm not sure that I recall every answer to every question.
Q. Well, we'll get specific. You were, of course, under oath when you gave these answers, Mr. Sponsler?

A. Yes.
Q. And as always, you would tell the truth when you answer questions at a deposition; correct?
A. Correct.
Q. Let me direct you, Mr. Sponsler, and counsel page 55, line 4 of this deposition transcript.
A. Okay.
Q. I'm going to read you three questions and answers. Here we go.
Question -- this is page 55, line 4.
Question: If your understanding of they can send an e-mail, they can access a printer over the Internet, isn't that right?
Answer: Yeah. I don't know why they would, but I guess they could, yeah.
Question: Then that would give me them the capacity to print, would it not?
Answer: It would give them the needless worthless capacity to print which they would never use, but with computers just about all things are possible.
Question: Okay. Whether they would want to use it or not, they have that capacity; correct?
Answer: If they have access to the Internet, they would obviously be able to access a printer via the Internet, obviously, yes. Close quote.



Do you see that Mr. Sponsler?
A. Yes, sir.
Q. That testimony is true, is it not?
A. Yes. I don't think I have said anything much different than that today.
Q. Oh, good. Then we're in agreement. So we'll move on.
A. Well, sir, can I just make one statement in addition to that answer?
Q. Sure.
A. You know, the fax prohibitions are about the involuntary printing of faxes and involuntary use of ink and paper and all of that. That's what this is all about. And if there were any printing by an online fax service, it would not be involuntary. It would be something voluntarily done by them. So I think that's a huge differentiator here.
Q. And I'll respond and I'll move on. I have to respectfully disagree with you in this sense, Mr. Sponsler: The TCPA does not require the printing of a fax in order to be an action of violation of the TCPA. You don't have to print.
MR. PALERMO: I'll object to form.
BY MR. SOLBERG:
Q. In order to violate the TCPA, but that's my



-- that's what the TCPA provides and counsel may have a different view of that. And that's a fight for counsel and us another time.
MR. SOLBERG: Anthony, I'll let you go here if you want to say something.
MR. PALERMO: Just objection to the -- I don't know if that's a question. I don't think it is, but object.
MR. SOLBERG: It was a response to Mr. Sponsler saying the TCPA's about involuntary printing. Our position is that TCPA is about several things including invasion of privacy, invasion of the interest in seclusion and nuisance, but, again, those are arguments for another day; not here.
MR. PALERMO: Objection. I agree. A deposition is for questions and answers; not for arguments for any day.
MR. SOLBERG: I agree. I was responding to the witness' statements, but again --
MR. PALERMO: Which was an answer to a question that he was clarifying, but, Wally, I'm just letting you know I'm not -- we'll save it all for briefing some day, but hey, I'm just getting my objections out there.



MR. SOLBERG: I'll move on.
(A discussion was held off the record.)
BY MR. SOLBERG:
Q. Mr. Sponsler, you and Mr. Biggerstaff as well in the course of your work regarding the TCPA fax cases have talked about points A, B and C when describing what happens during a fax transmission. Do you recall that?
A. Are you -- is that question relating to what I have presented or Mr. Biggerstaff?
Q. I think if my recollection is correct, I think points A, B and C I thought you originally presented it and Mr. Biggerstaff has certainly commented on it. That's my recollection, but you understand when I say points A, B and C regarding the transmission of a fax, you know what I'm talking about; correct?
MR. PALERMO: Objection.
THE WITNESS: Yes.
BY MR. SOLBERG:
Q. All right. When a fax is transmitted at point A and arrives at an online fax service, point B, the online fax service doesn't receive something that's essentially an e-mail. It receives a fax; is that correct?

Page 34

MR. PALERMO: Objection.
THE WITNESS: Yes, sir.
BY MR. SOLBERG:
Q. Mr. Sponsler, let's move to paragraph 41 of your original report. Are you there?
A. Do you want me to pull it up, sir?
Q. Yes. I would request that you pull it up and take a quick look at the paragraph 41. It's not that long.
A. Okay, sir.
MR. GOOD: And I put it in blue again. Did we ever get an answer on whether you want me to highlight the paragraphs or not? Anthony is seeming to indicate that he doesn't want me to do the extra work.
MR. PALERMO: No. No. I don't think we got an answer. I'm game for whatever is decided on here.
THE WITNESS: I'm at 41, sir.
BY MR. SOLBERG:
Q. Okay. So you say in paragraph 41 in part the following -- you know what, strike that. I got ahead of myself.
Mr. Sponsler, what's a fax portal?
A. A fax portal is an interface provided by

Page 35

online fax services to their customers which allows them to administer their accounts, identify e-mail addresses associated with certain fax numbers that should receive the e-mail fax documents as well as allow them access to the images themselves so that they can deal with them, you know, delete them or forward them or whatever they want to do with them.
Q. All right. A fax portal sits on a server of the online fax service, is that correct, if that's a way to say it?
A. Yes.
Q. Yes?
A. Yes, sir.
Q. I'm sorry. I jumped over your answer. You said yes. Okay.
And paragraph 41 provides -- and I'm going to quote three sentences again. Quote, the portal facilitates a user's ability to view or delete/receive faxes by clicking on the PDF or TIFF file. This opens the image and prints to the user the actual fax image. From that point users can delete, e-mail, save or print the images desired, close quote. Do you see that?
A. Yes, sir.
Q. Okay. Is it correct to say that when an online fax service subscriber is logged into the portal

Page 36

of the online fax service, they are using their computer to view the fax on -- strike that.
Mercifully, we'll move on from that one, Mr. Sponsler. Here's a question for you. The online fax service provides equipment, namely the computer fax server, gateways, and telephone lines that employ the Group 3 protocol standard and to convert what is received over the ten digit telephone number and telephone line into a PDF; is that right?
MR. PALERMO: Objection.
THE WITNESS: Yes, sir.
BY MR. SOLBERG:
Q. And it's that combination of equipment along with the subscriber's computer that allows the subscribers to delete, e-mail, save or print the images desired; is that correct?
MR. PALERMO: Objection.
THE WITNESS: Are you speaking only in the context of what can be done through the portal or are you inclusive of the e-mail --
BY MR. SOLBERG:
Q. This question is directed to the portal.
A. Yes. However they're accessing it, their smart phone or their iPad or their computer, however how they're accessing it, yes.

Page 37

Q. Okay. Mr. Sponsler, are you aware of any medical providers whose offices do not have a computer that could access the Internet?
MR. PALERMO: Objection.
THE WITNESS: I'm not aware, no, sir.
BY MR. SOLBERG:
Q. That would be quite the surprise to you, I assume, sir, if they didn't have a computer that could access the Internet?
A. Yes, sir.
Q. Are you aware of any medical providers whose offices do not have a printer on site?
MR. PALERMO: Objection.
THE WITNESS: Well, it depends on what you mean on site. There can be very complex medical practices that may have some centralized print capability. More and more businesses including medical professionals are trying to go paperless, but I would say the norm would be that they might have access to a printer.
BY MR. SOLBERG:
Q. Now, you had mentioned in getting clarification of a prior question e-mail. Now, as far as e-mail goes with online fax services, let me describe that process as I understand it and you tell

me if you agree or not.
A telephone facsimile machine, computer or other device sends a fax. It arrives at the online fax service whose fax server and/or gateways convert the fax to a PDF. It's then pasted into an e-mail and then it's sent to the subscriber. Do I have that correct?
A. I'm not sure pasted is the right term, but essentially that is correct.
Q. And we can substitute attach for pasted, but that's still correct. Am I right?
A. Yes, sir.
Q. And as with the portal, the subscriber reviewing the fax attached to an e-mail has the option to view, delete or print the fax; is that right?
A. Yes. They could store it. They could forward it. They could do quite a bit with it, yes.
Q. Okay. Let me direct you, Mr. Sponsler, to paragraph 47 of your report. And as you get there, I'll read it. It's pretty straightforward. You state, "Setting up an online fax service account is easy to do-most of the technology is straightforward. In most cases all that is needed is an Internet connection, e-mail address and credit card," close quote.
I think we have talked about why an e-mail address is needed. Why do you need a credit card?



A. Well, you need some means of setting up a way to pay for the service. It could be -- I'm using credit card as an example. You could also give some bank account.
Q. And that's fine. The point is you have to pay for the service; right?
A. Right.
Q. Okay. Is there a difference, Mr. Sponsler, in time between reading a fax from a standalone fax machine versus reading a fax that you're viewing in a portal from your online fax service?
A. I didn't understand your question, sir. A difference in time you said?
Q. Yes. Let's have two scenarios. You pick a fax off your standalone fax machine and read it. That's scenario 1. You log into your portal of your online fax service and read the fax on the screen. That's scenario 2.
I don't see a difference in time in reading those two things. I'm asking you the same question. Do you think it would take you the same amount of time to read a fax you have picked off a standalone fax machine versus a fax you're reading off your computer screen from the portal of the online fax service?
MR. PALERMO: Objection.



THE WITNESS: Well, I don't know, sir. If there's a single fax machine in a business and you're expecting a fax and you have to get up from your desk and go walk to the fax machine, you may have to wait for your particular fax. Whereas, in the portal, you're just sitting at your computer and you're logging in and it could be quicker than getting up and going to a fax machine.
BY MR. SOLBERG:
Q. Okay. Let's narrow it down a little then. The fax from the standalone fax machine is flat on your desk in front of you and the fax from the online portal is on your computer screen. Is there any difference in your mind of the time taken to read the one flat on your desk and the one on your portal --
MR. PALERMO: Objection.
BY MR. SOLBERG:
Q. -- from the online fax service?
A. I guess it would depend on the quality of the image, fax image, that came in on the fax machine versus the digital quality of the one on the portal.
Q. Let's assume the quality of both is perfection. Same question.
MR. PALERMO: Objection.
THE WITNESS: All right. I guess I don't see



any difference.
BY MR. SOLBERG:
Q. Okay. Mr. Sponsler, your -- strike that.
And I would ask the same question of the standalone fax machine fax that's sitting on your desk that's perfect quality versus the attachment from the e-mail that was sent by your online fax service through your computer. Would your answer be the same, the time to read both of those things is essentially the same?
MR. PALERMO: Objection.
THE WITNESS: Yeah. I guess so, yes.
BY MR. SOLBERG:
Q. Mr. Sponsler, let's go to paragraph 53 of your report. And I'll read you your Opinion A, which is just above that. A, Opinion 1, quote, the significant percentage of the ultimate fax recipients included within the proposed class likely used an online fax service to receive the faxes in question, close quote. Do you see that?
A. Yes, sir.
Q. Now, by ultimate recipients, can you explain what you mean?
A. Well, the ultimate recipient in an online fax scenario is not the fax service, the online fax service. They are not the recipient. It is the person

who may or may not have received an e-mail with the attachment in it would be the recipient, the intended recipient of the fax.
Q. All right. You also use the phrase significant in there. Significant percentage of these ultimate fax recipients. Now, what is a significant percentage, as you use that term in this report, Mr. Sponsler?
A. Sir, this is based on all of the sites that I have provided in my report, the research, the think tanks out there that publish the popularity of online fax services these days. No one knows the exact number, but I have seen upwards of 70 percent being used as companies use online fax service.
Q. That's what I'm looking for, Mr. Sponsler. A percentage. So is it a significant percentage 30 percent, 40 percent, 50 percent? What do you consider a significant percentage as you use that phrase or term in your opinion A or Opinion 1?
A. Sir, again, based on the research that I have cited here, I believe it's somewhere between at least 50, but it could be as high as 70 or 80 percent.
Q. Okay. Mr. Sponsler, can you go to Exhibit E of your report and you're going to find that on Plaintiff's Exhibit 1 here. And you're going towards



the declarations that were attached as Exhibit E to your report.
A. Can you show that, Mr. Good, that Exhibit. Is Exhibit E the spreadsheet again.
Q. No, sir. Exhibit E is just the six declarations attached to your expert report.
A. I don't have that readily available, if you can --
MR. GOOD: I believe I have the cover page Exhibit E on screen. Do you see that? I'm going to go through them one by one now.
BY MR. SOLBERG:
Q. To make this efficient, as Ross goes through them one by one, I want you to stop at paragraph 15 of each one of these declarations and read it. And you really only have to read the first one because the next five are the identical language. But that's what my question is going to be directed towards.
MR. SOLBERG: Ross, you got to make this a little bigger.
MR. GOOD: I know. I want to state for the record I have IC000637 and 638 and now I have paragraph 15 highlighted in blue for reasons I'm not sure.



BY MR. SOLBERG:
Q. And I'll read this for the record, Mr. Sponsler. Paragraph 15, as Ross said, on Bates stamp IC638 states, "The practice did not receive the fax through a telephone facsimile machine. Instead the practice received a fax like all of its faxes through an online fax service delivered as an e-mail attachment," close quote. Do you see that?
A. Yes, sir.
MR. SOLBERG: Now, can we agree, Anthony, that that paragraph is going to be the same in the next five declarations; otherwise, we'll just walk through them one by one?
Ross, go through there.
MR. GOOD: You want to go off the record for a second and we could just do it real quick with Anthony?
MR. SOLBERG: Sure.
MR. GOOD: Can we go off the record, Madam Court Reporter.
(A discussion was held off the record.)
MR. GOOD: I'll just state on the record, as stated off the record, Bates pages IC638, 640, 642, 644, 646 and 648 all contain an identical paragraph 15.



BY MR. SOLBERG:
Q. Mr. Sponsler, as to these six declarations, are you aware of the fax number for any of these practices associated with the declarations?
A. I am not certain whether or not the fax number is included in these declarations or not.
Q. You didn't talk to any of these declarants, did you, Mr. Sponsler?
A. I did not, sir.
MR. SOLBERG: Now, Anthony -- and I don't know if this is the time or not, but we're looking for the fax numbers for the practices associated with these declarations. If you could provide those to us. I'll leave that to you to figure out what your answer is, but that's our request. We're looking for fax numbers associated with these six declarations.
BY MR. SOLBERG:
Q. So I will move on. Mr. Sponsler, we're going to present to you what's been marked as Plaintiff's Exhibit 6. And this is Robert Biggerstaff's first expert report in this case.
(Plaintiff's Exhibit 6 was marked for identification.)

BY MR. SOLBERG:
Q. So I'll let Ross pull that up and you can take a look at it.
A. Yes, sir.
MR. GOOD: Are you able to see that?
MR. SOLBERG: There you go. That's better.
THE WITNESS: That's better, yeah.
BY MR. SOLBERG:
Q. Do you recognize Exhibit 6, Mr. Sponsler?
A. Yes, sir.
Q. And what is Exhibit 6?
A. I believe this is the initial expert report from Mr. Biggerstaff.
Q. Now, if you go to page 7 of this report, do you see a section titled Facsimile Technology Standards?
A. Yes, sir.
Q. That section begins at paragraph 18 and ends at paragraph 39. I'll let you find paragraph 39. I could tell you it's on page 13 of 15.
Now, you have read this report in this particular case, Mr. Sponsler?
A. Yes, sir.
Q. And you have read a lot of reports that are very similar to this, have you not, Mr. Sponsler?



A. I would say identical to this.
Q. All right. Do you disagree with any of Mr. Biggerstaff's assertions between paragraphs 18 and 39?
MR. PALERMO: Objection.
BY MR. SOLBERG:
Q. You know, maybe an easier way to ask this, Mr. Sponsler, if you did disagree with any of those assertions between paragraphs 18 and 39 and you thought the disagreement was meaningful, you would have included it in your report, wouldn't you?
MR. PALERMO: Objection.
THE WITNESS: I'm assuming I would, but there's a lot of material here for me to give a blanket answer right here as I sit.
BY MR. SOLBERG:
Q. I'll tell you what then, we'll move on. I understand that and we will move on.
Let's go to paragraph 57 of your report, Mr. Sponsler. I would ask you to take a look at that. And this is Exhibit 1, Ross. Paragraph 57.
My question is going to be very specific, Mr. Sponsler. And it's this: You state in paragraph 57, quote, the online fax service is not the intended recipient of a fax. Their customers are. When they



receive an e-mail with an attachment, there is nothing in evidence to show when, to whom, and if the e-mail from the online fax service was successfully delivered, open, deleted, forwarded and so on, close quote.
Mr. Sponsler, my question is this: Are you aware of any evidence in this case showing that any e-mail to which you're referring to in paragraph 57 was not successfully delivered?
MR. PALERMO: Objection.
THE WITNESS: There is no record or evidence whatsoever about this. What I'm saying, there's no evidence to show when, to whom, or if they got the e-mail, or if the e-mail bounced, if the e-mail address was no longer valid. I mean, there's no record whatsoever concerning that. It stops at the online fax provider.
BY MR. SOLBERG:
Q. Okay. But to get to that point, to attach the fax to an e-mail, that would mean that the fax was successfully transmitted from, I'll say, the sender to the online fax service where it was met by the server and converted to a PDF; is that correct?
A. Well, that part is correct, but the recipient of the fax is what's at issue here.
Q. All right. Let's move to paragraph 54 of



your report. Let's strike that question.
Let's go to paragraph 60 of your report. Can you take a second to review that, Mr. Sponsler?
A. Yes, sir.
Q. Okay. You're talking about call forwarding in this paragraph; correct?
A. Yes, sir.
Q. Now, when you call forward your fax number to an online fax service, the subscribed number remains working with your current provider but is programmed to forward all incoming calls to the new online fax service; is that right?
A. Yes, sir.
Q. And when you call forward your fax number to an online fax service, you're not only paying the current provider for the fax line that you're call forwarding, you're also paying the online fax service for its service. Is that also right?
MR. PALERMO: Objection.
THE WITNESS: That's correct, sir.
BY MR. SOLBERG:
Q. Now, when you call forward with a fax number, you may not be able to receive multiple calls simultaneously because call forwarding only forwards them one call at a time. The second call may receive a

busy signal; is that correct?
MR. PALERMO: Object to form.
THE WITNESS: It could happen.
BY MR. SOLBERG:
Q. And, again, in the call forwarding process, doesn't the call go through an extra switch?
MR. PALERMO: Object to form.
THE WITNESS: I mean, potentially yes, it could go through an extra switch, yes.
BY MR. SOLBERG:
Q. When you call forward a fax number to an online fax service, does that process potentially degrade the fax quality and result in more failed faxes as a result of the expanded travel of the fax?
MR. PALERMO: Object to form.
THE WITNESS: I mean, I don't know if that's a fact. There's a lot that that would depend on, but not necessarily.
BY MR. SOLBERG:
Q. Let me double back to paragraph 64 for a second of your report, Exhibit 1. And the question is: You agree that carriers can identify the numbers associated with their online fax services; right?
MR. PALERMO: Object to form.
THE WITNESS: What paragraph are we looking



at?
BY MR. SOLBERG:
Q. 64, Mr. Sponsler. I'll let you read it.
A. 64. Okay.
Q. And the first sentence of 64, quote, carriers may identify numbers associated with their online fax service. And then you say, however, they cannot identify if other numbers were associated with an online fax service other than their own, close quote.
So my question was, just repeating that, you would agree that carriers can identify numbers associated with their online fax services; correct?
A. Yes, sir.
Q. Now, you're familiar with Plaintiff's three-step process using subpoenas to at least in our view to distinguish standalone fax recipients from online fax service recipients; correct?
MR. PALERMO: Object to form.
BY MR. SOLBERG:
Q. And I'll tell you what. I'll go one step further. Take a look at paragraph 77 of your report. And if you get a chance to read that, I'll ask the question again.
A. Okay. Yes. The first step is subpoenaing iconectiv and Somas. Second step is to subpoena in



this case 192 carriers. And I'm not sure about the third step.
Q. The first two are fine. Now, you've addressed the subpoena process in other TCPA cases in which you have rendered expert reports; correct?
A. Correct, sir.
Q. In any of those cases in which you've generated reports, have you ever identified a single telephone subscriber who used call forwarding to forward their number to an online fax service?
MR. PALERMO: Object to form.
THE WITNESS: Sir, that's not something that's readily available to determine. I know it's -- as I have written here, it's a very popular service. It allows persons who forward their fax number to keep their fax number, keep control of it and not relinquish it as they would if they quoted it. And in fact, we did have at least one or two subpoena responses where the carrier said that the number was forwarded. The analog number of their customer was forwarded and I don't recall right now if they said where it was forwarded to, but --
BY MR. SOLBERG:
Q. So as you sit here now, you don't know



whether it was just forwarded to another line or to an online fax service. You don't know one way or the other?
MR. PALERMO: Object to form.
THE WITNESS: I can't recall. I'm sorry, Anthony.
BY MR. SOLBERG:
Q. But, again, I don't know if I caught the answer to your question in this sense. You haven't identified -- in all those reports, you haven't identified a single instance of call forwarding to an online fax service of which you're aware as you sit here today?
MR. PALERMO: Objection.
THE WITNESS: Sir, I am aware that it is a very popular option. It is something that I know that companies do, but as far as numbers go, as far as carriers reporting it or being aware of it, you're talking about a very difficult concept to ascertain.
BY MR. SOLBERG:
Q. Okay. Here's what I want to do: I'm going to take -- let's take five here and we're going to close out this deposition, Mr. Sponsler, asking you questions regarding your second supplemental report.

And to give you a head start here, the questions regarding particular carriers that you identify in that report. And we're going to be looking at your supplemental report, which is seven pages together with the table, Exhibit A, to your supplemental report.

So let's take five. I'll let you get those materials out and then we'll finish off. Okay?

A. Yes, sir.

Q. I have 10:32. So I'll tell you what, let's get back at 11:40 your time, Mr. Sponsler. How is that?

A. We're taking --

Q. Unless you want to take five.

A. Okay. 11:40, yes, sir.

Q. Okay. We'll be back.

A. Yes, sir.

(A recess was taken.)

BY MR. SOLBERG:

Q. Mr. Sponsler, if you can go to your supplemental expert report at Exhibit A.

A. Yes, sir. I'm there.

Q. Okay. Now, if you can locate AT&T on that report. I'll let Ross pull that up.

MR. GOOD: What line number? Oh, there it is. It's line 8.



BY MR. SOLBERG:

Q. And just tell me if I'm correct here. I think we can get through this pretty quick. For AT&T there were a total of 1,896 phone numbers. 1,892 of them indicated that AT&T -- strike that.

AT&T indicated that it did not provide online fax service for 1,892 and that it did for 4. Do you see that?

A. Yes, sir.

Q. Now, are you aware of any of those AT&T -- strike that again.

Can you explain to me, Mr. Sponsler, what a reseller is in the context of phone carriers?

A. If the context of what?

Q. Phone carriers.

MR. SOLBERG: Did I ask that question right, Ross?

MR. GOOD: Yes.

THE WITNESS: Resellers resell their services to other carriers who then either sell to other carriers or they may work directly with customers who are their subscribers.

BY MR. SOLBERG:

Q. Are you aware of any of the 1,892 AT&T numbers that were purchased by resellers?



A. Sir, you broke up there.

Q. One more time. Are you aware of any of the 1,892 AT&T numbers -- and those were the ones that were not provided online fax service by AT&T. Were you aware of whether any of those numbers were purchased by resellers?

MR. PALERMO: Objection.

THE WITNESS: I'm not aware, sir.

BY MR. SOLBERG:

Q. And, again, maybe we can short circuit this process. Let's go to your report itself, your supplemental report at paragraph 6.

A. Okay, Sir. I'm there.

Q. Now, would your answer to that reseller question be the same for Lumen, that you're unaware of any of those 1,558 phone numbers being purchased by resellers?

A. It's my memory that Lumen is a reseller. Some of the subpoena responses indicated that they did not work directly with customers, that they were resellers, and didn't have a customer relationship.

Q. So if we go back to your three-page chart. This is line 63.

A. I didn't hear what you said, sir. 53?

Q. Let's go back to the three-page chart that



you have.

A. Yes, sir.

Q. Okay. In line 63 this is Lumen. What it says is there's 1,558 phone numbers there and Lumen did not provide online fax service for any of those; is that correct?

MR. PALERMO: Object to form.

THE WITNESS: Yes, sir. That's correct.

BY MR. SOLBERG:

Q. Now, you don't have any reason to doubt those numbers, do you, for AT&T and Lumen, that they did not provide online fax service. That's a fact that we know. Do you agree with that?

MR. PALERMO: Object to form.

THE WITNESS: Sir, all we're doing here is reading the responses from the carriers. We're not extrapolating anything or assuming anything. This is just a record of what the carriers -- how they responded.

BY MR. SOLBERG:

Q. So another way of saying this in large part, this is a scrivener exercise, so to speak?

MR. PALERMO: Object to form.

BY MR. SOLBERG:

Q. You're getting the results in and you're

writing them down in a chart; is that correct?
MR. PALERMO: Object to form.
THE WITNESS: Well, sir, we're putting those responses into a format that enables us to look at the totals in each of these categories and developer percentages at the bottom down here from the categories.
And then on the second tab, the detail tab, we're counting for every single one of the 9,000 plus numbers individually in the detail tab.
BY MR. SOLBERG:
Q. Yeah. And all I'm getting at, Mr. Sponsler -- and I'm not trying to be cryptic here. I'm just saying that you tabulated these responses as we see on these charts that you have created; correct?
A. Yes, sir.
Q. If you could go to your three-page chart, go to Verizon. That's line 101.
A. Okay, sir.
Q. From that it indicates, the chart indicates that the 1,115 phone numbers in the subpoena to Verizon, Verizon did not provide online fax service to any of those lines?
A. Yes, sir.
Q. And if you go back to the first page with



Charter, this is line 19, what I see here is 647 numbers that were identified in the subpoena Charter did not provide online fax service to any of those numbers?
A. That's correct, sir.
Q. Same question for Lightpath, which is line 60. Of the 333 numbers that were for Lightpath, they didn't provide online fax service to any of those numbers?
A. Correct, sir.
Q. I think that we're done here. Let me talk to Ross and I think we'll conclude our portion of the questioning. So this will be quicker. We'll be back in two minutes.
A. All right, sir.
(A discussion was held off the record.)
MR. SOLBERG: Mr. Sponsler, that's all I have. Thank you very much.
THE WITNESS: Thank you once again, sir.
MR. SOLBERG: Are we done, Anthony?
MR. PALERMO: We're done.
THE COURT REPORTER: Okay. Read/waive?
MR. PALERMO: Read, I'm sure, but defer to Ken.
THE WITNESS: Yes. Read, please.



THE COURT REPORTER: And I got your order. Mr. Good, you need it by the 26th. And then, Mr. Palermo, would you like to order?
MR. PALERMO: Sure thing.
THE COURT REPORTER: Do you need it by the 26th as well?
MR. PALERMO: Yes.
(Deposition concluded at 11:53 a.m.)



CERTIFICATE OF OATH

STATE OF FLORIDA
COUNTY OF ORANGE

I, the undersigned authority, certify that KENNETH R. SPONSLER personally appeared before me and was duly sworn.

WITNESS my hand and official seal this 25th day of July, 2022.

Lee Ann Reid, Registered
Professional Reporter
Notary Public - State of Florida
My Commission Expires: 7/16/2023
Commission No.: GG 314294

REPORTER'S CERTIFICATE

STATE OF FLORIDA :
COUNTY OF ORANGE :

I, Lee Ann Reid, Registered Professional Reporter, certify that I was authorized to and did stenographically report the deposition of KENNETH R. SPONSLER; that a review of the transcript was requested and that the transcript is a true and complete record of my stenographic notes.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the outcome of the foregoing action.

Dated this 25th day of July, 2022, IN THE CITY OF ORLANDO, COUNTY OF ORANGE, STATE OF FLORIDA.

Lee Ann Reid, Registered Professional Reporter



Veritext Legal Solutions
1100 Superior Ave
Suite 1820
Cleveland, Ohio 44114
Phone: 216-523-1313

July 26, 2022

To: ANTHONY J. PALERMO

Case Name: Marc Irwin Sharfman, M.D., P.A., etc. v. Infucare RX LLC, etc., et al.
Veritext Reference Number: 5303764
Witness: Kenneth R. Sponsler Deposition Date: 7/19/2022

Dear Sir/Madam:

Enclosed please find a deposition transcript. Please have the witness review the transcript and note any changes or corrections on the included errata sheet, indicating the page, line number, change, and the reason for the change. Have the witness' signature notarized and forward the completed page(s) back to us at the Production address shown

above, or email to production-midwest@veritext.com.

If the errata is not returned within thirty days of your receipt of this letter, the reading and signing will be deemed waived.

Sincerely,

Production Department

NO NOTARY REQUIRED IN CA



DEPOSITION REVIEW
CERTIFICATION OF WITNESS

ASSIGNMENT REFERENCE NO: 5303764
CASE NAME: Marc Irwin Sharfman, M.D., P.A., etc. v. Infucare RX LLC, etc., et al.
DATE OF DEPOSITION: 7/19/2022
WITNESS' NAME: Kenneth R. Sponsler

In accordance with the Rules of Civil Procedure, I have read the entire transcript of my testimony or it has been read to me.

I have made no changes to the testimony as transcribed by the court reporter.

_____________ ______________________
Date Kenneth R. Sponsler

Sworn to and subscribed before me, a Notary Public in and for the State and County, the referenced witness did personally appear and acknowledge that:

They have read the transcript;
They signed the foregoing Sworn Statement; and
Their execution of this Statement is of their free act and deed.

I have affixed my name and official seal

this ______ day of____________________, 20____.

________________________________
Notary Public

________________________________
Commission Expiration Date



DEPOSITION REVIEW
CERTIFICATION OF WITNESS

ASSIGNMENT REFERENCE NO: 5303764
CASE NAME: Marc Irwin Sharfman, M.D., P.A., etc. v. Infucare RX LLC, etc., et al.
DATE OF DEPOSITION: 7/19/2022
WITNESS' NAME: Kenneth R. Sponsler

In accordance with the Rules of Civil Procedure, I have read the entire transcript of my testimony or it has been read to me.

I have listed my changes on the attached Errata Sheet, listing page and line numbers as well as the reason(s) for the change(s).

I request that these changes be entered as part of the record of my testimony.

I have executed the Errata Sheet, as well as this Certificate, and request and authorize that both be appended to the transcript of my testimony and be incorporated therein.

_____________ ______________________
Date Kenneth R. Sponsler

Sworn to and subscribed before me, a Notary Public in and for the State and County, the referenced witness did personally appear and acknowledge that:

They have read the transcript;
They have listed all of their corrections in the appended Errata Sheet;
They signed the foregoing Sworn Statement; and
Their execution of this Statement is of their free act and deed.

I have affixed my name and official seal

this ______ day of____________________, 20____.

________________________________
Notary Public

________________________________
Commission Expiration Date

ERRATA SHEET
VERITEXT LEGAL SOLUTIONS MIDWEST
ASSIGNMENT NO: 5303764

PAGE/LINE(S) / CHANGE /REASON

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

_______________________________________________

______________ ______________________

Date Kenneth R. Sponsler

SUBSCRIBED AND SWORN TO BEFORE ME THIS ________

DAY OF ______________________, 20______ .

________________________________

Notary Public

________________________________

Commission Expiration Date

**&**

**&** 2:6

**0**

**00525** 1:6

**1**

**1** 2:17 5:2,4 6:3 6:9 7:23,24,25 8:10,12,19,21,21 9:11,15 10:19 15:18 23:16 39:16 41:15 42:19,25 47:21 50:21
**1,115** 58:21
**1,558** 56:16 57:4
**1,892** 55:4,7,24 56:3
**1,896** 55:4
**10** 10:22 11:1
**100** 2:7
**101** 58:18
**10:03** 1:15
**10:32** 54:9
**10:51** 28:14
**1100** 63:1
**11:40** 54:10,14
**11:53** 1:15 60:8
**12** 7:13
**13** 18:8,17 19:8 46:20
**15** 43:14,23 44:3 44:25 46:20
**16** 2:19
**18** 46:18 47:3,9
**1820** 63:2
**19** 1:14 59:1
**192** 52:1

**2**

**2** 2:18 7:2,8,25 8:18,21 9:4 12:21 17:16,19 39:18
**20** 64:16 65:22 66:22
**2022** 1:14 7:13 29:14 61:11 62:13 63:4
**21** 29:16
**216-523-1313** 63:3
**22** 6:12
**25004** 61:15 62:17
**25th** 61:10 62:13
**26** 63:4
**26th** 60:2,6
**28** 2:20

**3**

**3** 2:10 7:23 8:10 8:19 9:11,15,15 20:6,9 36:7
**30** 42:16
**314294** 61:18
**333** 59:7
**33602** 2:7
**37** 23:15,20
**3701** 2:4
**38** 6:10
**39** 46:19,19 47:4 47:9
**3rd** 6:12

**4**

**4** 2:19 7:5,13 10:22 16:5,8 29:13 30:6,10 55:7
**40** 42:17
**41** 34:4,8,19,21 35:16
**4100** 2:7
**431** 7:24 8:12,21 9:13 14:25
**44114** 63:2
**45** 2:19
**47** 38:18

**5**

**5** 2:17 10:22 28:13
**50** 42:17,22
**500** 2:4
**53** 41:13 56:24
**5303764** 63:8 64:2 65:2 66:2
**54** 48:25
**55** 29:1 30:6,10
**57** 47:19,21,24 48:7

**6**

**6** 2:19 45:21,23 46:9,11 56:12
**60** 49:2 59:7
**60008** 2:4
**61** 2:11
**62** 2:12
**63** 56:23 57:3
**638** 43:22
**64** 50:20 51:3,4,5
**640** 44:23
**642** 44:24
**644** 44:24
**646** 44:24
**647** 59:1
**648** 44:24
**6:21** 1:6

**7**

**7** 46:14
**7/16/2023** 61:17
**7/19/2022** 63:9 64:3 65:3
**70** 42:13,22
**77** 51:21

**8**

**8** 54:25
**80** 3:15 42:22

**9**

**9** 2:18,20 18:16 28:17,18,22 29:11
**9,000** 58:9

**a**

**a.m.** 1:15,15 60:8
**ability** 35:18
**able** 12:22,25 16:15 30:24 46:5 49:23
**abreast** 10:13
**absolutely** 3:25 5:20 9:10
**access** 5:24 17:24 19:18 20:4,5 26:6,14 26:18,19 27:4,5

27:8,9,18,24,25 28:5 30:12,23,24 35:5 37:3,9,20
**accesses** 18:11
**accessing** 36:23 36:25
**account** 38:20 39:4
**accounts** 35:2
**acknowledge** 64:11 65:16
**act** 64:14 65:20
**action** 31:21 62:11,12
**actual** 35:20
**addition** 31:9
**additional** 19:15
**address** 9:2 38:23,25 48:14 63:16
**addressed** 52:4
**addresses** 35:3
**administer** 35:2
**affairs** 17:1
**affixed** 64:15 65:21
**ago** 24:22
**agree** 7:9 8:2 32:16,19 38:1 44:10 50:22 51:11 57:13
**agreement** 31:6
**ahead** 34:22
**al** 63:7 64:3 65:3
**alan** 29:12
**algonquin** 2:4
**allow** 35:5
**allows** 17:23 35:1 36:14 52:15
**america** 6:15
**amerifactors** 2:19 16:13,19,21 16:23 17:5 18:5 18:7
**amount** 39:21
**analog** 52:21
**anderson** 2:3
**ann** 1:20 61:16 62:6,17
**answer** 3:19,22 15:24 24:24 25:16 27:20,23 29:22 30:3,14,18 30:23 31:9 32:21 34:12,17 35:14 41:8 45:15 47:15 53:9 56:14
**answers** 15:17 29:24 30:9 32:17
**anthony** 2:6 8:17 29:4 32:4 34:13 44:10,17 45:10 53:6 59:20 63:5
**appeal** 17:9
**appear** 26:1 64:11 65:15
**appearances** 2:1
**appeared** 61:7
**appended** 65:11 65:18
**argumentative** 28:2
**arguments** 32:14 32:18
**arrives** 21:7,8 23:1,2 33:22 38:3
**ascertain** 53:20
**asking** 5:25 27:15,16,21 39:20 53:24
**assertions** 47:3,9
**assignment** 64:2 65:2 66:2
**assist** 14:8
**assistance** 14:3
**assisted** 14:6,11
**associated** 35:3 45:4,12,16 50:23 51:6,8,12
**assume** 37:8 40:22
**assuming** 47:13 57:17
**at&t** 54:22 55:3 55:5,6,10,24 56:3,4 57:11
**attach** 8:17 38:9 48:18
**attached** 38:13 43:1,6 65:7
**attachment** 18:1 18:12 41:6 42:2 44:8 48:1
**attention** 5:1
**attorney** 2:8 62:10
**attorneys** 2:5 3:12 62:11
**authority** 61:6
**authorize** 65:11
**authorized** 62:7
**automatic** 26:24
**available** 43:7 52:13
**ave** 63:1
**aware** 17:8 22:17,19 37:1,5 37:11 45:3 48:6 53:12,15,18 55:10,24 56:2,5 56:8

**b**

**b** 2:15 6:4 33:6 33:12,15,22
**back** 4:14 10:18 28:13 50:20 54:10,15 56:22 56:25 58:25 59:13 63:16
**bank** 39:4
**based** 17:20 18:10 24:24 42:9,20
**bates** 44:3,23
**begins** 46:18
**believe** 6:5 8:11 9:20 12:8 16:23 42:21 43:9 46:12
**best** 11:21
**better** 46:6,7
**beverly** 4:21
**bigger** 43:20
**biggerstaff** 9:24 10:2 33:4,10,13

Case 4:13-cv-02219-HSG Document 573-3 Filed 10/24/25 Page 22 of 38



46:13
**biggerstaff's** 2:19 45:21 47:3
**bit** 13:16,17 21:12 38:16
**blanket** 47:15
**blocking** 19:1
**blue** 23:23 24:7 34:11 43:23
**body** 15:8
**bottom** 58:6
**bounced** 48:13
**break** 3:22,23 28:8
**briefing** 32:24
**broke** 56:1
**built** 14:15
**bureau** 17:1 27:15
**business** 12:1 40:2
**businesses** 37:17
**busy** 50:1

**c**

**c** 6:4 15:13 33:6 33:12,15
**ca** 63:25
**call** 22:17 49:5,8 49:14,16,22,24 49:25,25 50:5,6 50:11 52:9 53:11
**calls** 49:11,23
**capability** 27:13 37:17
**capacity** 30:17 30:19,22
**card** 38:23,25 39:3
**care** 5:12
**carrier** 15:1,14 15:19 52:20
**carriers** 22:22 50:22 51:5,11 52:1 53:18 54:2 55:13,15,20,21 57:16,18
**case** 5:3 6:19 7:9 7:16 10:14,18 11:4,23 20:13,21 22:17,20 27:22 29:8,17 45:22 46:22 48:6 52:1 63:6 64:3 65:3
**cases** 19:23 20:19 33:5 38:22 52:4,7
**categories** 58:5,7
**caught** 53:8
**centralized** 37:16
**ceo** 12:9
**certain** 35:3 45:5
**certainly** 10:14 24:2 33:13
**certificate** 2:11 2:12 61:1 62:1 65:11
**certification** 64:1 65:1
**certify** 61:6 62:7 62:10
**chance** 51:22
**change** 63:14,15 65:8 66:3
**changes** 63:13 64:7 65:7,9
**changing** 10:13
**chart** 56:22,25 58:1,17,20
**charter** 59:1,2
**charts** 58:15
**check** 13:9
**circuit** 56:10
**cited** 29:18 42:21
**citing** 19:13
**city** 62:13
**civil** 1:19 3:3 64:5 65:5
**clarification** 37:23
**clarifying** 32:22
**clark** 12:10
**class** 1:4 41:17
**clear** 21:12 27:11,11
**cleveland** 63:2
**clicking** 35:19
**close** 5:23 18:1 18:13 30:25 35:22 38:23 41:19 44:8 48:4 51:9 53:24
**cloud** 17:20 18:10
**coffee** 26:24
**column** 14:25 15:13,23
**combination** 36:13
**commented** 33:14
**commission** 61:17,18 64:19 65:25 66:25
**companies** 42:14 53:17
**company** 1:9
**complaint** 11:23
**complete** 11:20 62:8
**completed** 63:16
**complex** 37:15
**computer** 19:21 19:25 20:14 21:17 36:2,5,14 36:24 37:2,8 38:2 39:23 40:6 40:13 41:8
**computers** 30:20
**concept** 53:19
**concerning** 48:15
**conclude** 59:12
**concluded** 60:8
**concur** 27:13
**conducted** 1:13 4:17
**confidential** 7:23 7:25 8:1,20,23
**confirms** 18:20 19:9
**connected** 21:4 22:7,8 62:11
**connection** 38:22
**connections** 21:1
**consider** 10:2,7 42:17

**consisted** 14:16
**consisting** 17:20
**consists** 6:9 7:22 9:20
**consult** 5:20 24:2
**consumer** 16:25
**contain** 44:24
**contains** 7:13
**context** 36:19 55:13,14
**contrast** 18:19 19:9
**control** 5:11 52:17
**conversation** 25:9
**conversations** 24:12,18 25:8
**conversion** 22:10
**convert** 22:6 23:9 36:7 38:4
**converted** 21:3 48:22
**copies** 24:3
**copy** 5:13 24:8
**corporation** 1:3 1:10
**correct** 6:2,16,19 6:20 15:2,3,15 15:25 16:1 17:6 19:19,25 21:23 22:3 23:10 26:9 26:15,17,20 30:3 30:4,22 33:11,17 33:25 35:9,24 36:16 38:6,8,10 48:22,23 49:6,20 50:1 51:12,17 52:5,6 55:2 57:6 57:8 58:1,15 59:5,10
**corrections** 63:13 65:17
**counsel** 1:16 30:5 32:1,2 62:10,11
**counting** 58:9
**county** 61:4 62:4 62:14 64:10 65:15
**couple** 24:22
**course** 29:24 33:5
**court** 1:1 4:6 8:21 11:12 44:20 59:22 60:1,5 64:7
**cover** 43:9
**created** 58:15
**credit** 38:23,25 39:3
**cryptic** 58:13
**current** 49:10,16
**currently** 17:8
**customer** 26:2 52:21 56:21
**customers** 35:1 47:25 55:21 56:20
**cv** 1:6

**d**

**d** 2:9 6:2,3,5,7 6:22
**date** 1:14 6:11 63:9 64:3,9,19 65:3,13,25 66:20 66:25
**dated** 7:12 62:13
**day** 32:15,18,24 61:10 62:13 64:16 65:22 66:22
**days** 42:12 63:19
**dba** 14:7
**dci** 1:6
**deal** 35:6
**dear** 63:10
**decided** 34:17
**decision** 27:11
**declarants** 45:7
**declarations** 22:20 43:1,6,15 44:12 45:2,4,6 45:13,17
**declare** 6:14
**deed** 64:14 65:20
**deemed** 63:20
**defendant** 10:19
**defendant's** 14:11
**defendants** 1:11 2:8
**defer** 59:23
**degrade** 50:13
**delete** 18:12 35:6 35:18,21 36:15 38:14
**deleted** 48:4
**delivered** 44:7 48:3,8
**department** 63:22
**depend** 40:19 50:17
**depending** 11:8
**depends** 37:14
**deposed** 3:7,13 3:15 29:21
**deposition** 1:13 2:20 3:2 4:17 8:18 11:8 12:3,4 12:14,21 29:11 29:13,19 30:3,6 32:17 53:24 60:8 62:7 63:9 63:12 64:1,3 65:1,3
**depositions** 12:7 12:8
**describe** 37:25
**described** 20:24
**describing** 33:6
**description** 2:16
**desired** 18:13 35:22 36:16
**desk** 4:14 24:3 40:4,12,15 41:5
**detail** 58:8,10
**determine** 52:13
**developer** 58:6
**device** 17:21 20:14 21:5,17 38:3
**difference** 7:14 39:8,13,19 40:13 41:1
**different** 5:15 19:3 21:15 31:5

32:2
**differentiator** 31:17
**difficult** 23:25 53:19
**digit** 20:14,22 21:22 22:2 36:8
**digital** 17:22 18:10 22:7 40:21
**direct** 2:10 3:8 4:25 12:19 23:14 30:5 38:17
**directed** 36:22 43:18
**direction** 14:22
**directly** 55:21 56:20
**disagree** 31:19 47:2,8
**disagreement** 47:10
**discovery** 1:17
**discussion** 12:16 33:2 44:21 59:16
**distinguish** 51:16
**district** 1:1,1 3:4
**division** 1:2
**doctors** 22:21
**document** 7:11 18:11 28:3
**documents** 6:24 11:10,13 17:22 35:4
**doing** 8:16 29:5 57:15
**double** 50:20
**doubt** 17:13 57:10
**drill** 3:17
**dug** 14:14
**duly** 3:6 61:7

**e**

**e** 2:9,15 6:4 14:25 17:24 18:1,12 25:12 26:8,15,18 27:17 27:25 28:24 29:4 30:12 33:24 35:2,4,21 36:15,20 37:23 37:24 38:5,13,23 38:24 41:7 42:1 42:23 43:1,4,5 43:10 44:7 48:1 48:2,7,13,13,14 48:19
**easier** 4:10 5:22 47:7
**easy** 38:20
**efficient** 43:13
**either** 15:2 24:1 24:5 55:20
**electronic** 17:22
**email** 63:17
**employ** 20:9 36:6
**employee** 62:10 62:11
**enables** 58:4
**enclosed** 63:12
**ends** 46:18
**entered** 65:9
**entire** 16:20 64:5 65:5
**entirety** 2:18 7:3
**equipment** 20:15 36:5,13
**errata** 63:14,19 65:7,10,18 66:1
**esquire** 2:2,3,6
**essentially** 25:15 33:24 38:8 41:9
**et** 63:7 64:3 65:3
**event** 29:19
**everybody** 28:10 28:25
**evidence** 48:2,6 48:10,12
**exact** 42:12
**examination** 2:10 3:8
**examined** 3:7
**example** 39:3
**excel** 7:15
**executed** 65:10
**execution** 64:14 65:19
**exercise** 57:22
**exhibit** 2:17,18 2:19,19,20 5:2,4 5:10 6:2,3,3,9,21 6:22 7:2,8,15,22 8:12,18 9:4,6,11 11:9,17 12:20,21 14:3,9,12 16:5,8 23:16 28:17,18 28:22 29:11 42:23,25 43:1,3 43:4,5,10 45:21 45:23 46:9,11 47:21 50:21 54:5,20
**exhibits** 6:4,7 8:8
**expand** 13:11
**expanded** 50:14
**expecting** 40:3
**expert** 2:17,20 5:3,13,15,21 6:6 10:2,7 43:6 45:22 46:12 52:5 54:20
**expertise** 10:10 10:15
**expiration** 64:19 65:25 66:25
**expires** 61:17
**explain** 41:21 55:12
**explanatory** 15:2
**extra** 34:15 50:6 50:9
**extrapolating** 57:17

**f**

**f** 15:23
**facilitates** 35:18
**facilities** 17:23
**facsimile** 20:13 21:17 38:2 44:5 46:15
**fact** 50:17 52:18 57:12

**failed** 50:13
**familiar** 9:24 11:25 20:6 51:14
**far** 5:21 23:3,5 37:23 53:17,18
**fashion** 22:18
**fax** 12:12,13 15:1,14,19 17:19 17:20 18:5,9,21 18:22,24 19:7,10 19:18 21:8,9 22:14,24 23:2,8 23:8 24:12 25:11,12,13 26:5 26:13 27:12 31:11,14,21 33:5 33:7,16,21,22,23 33:24 34:24,25 35:1,3,4,8,9,20 35:25 36:1,2,5,5 37:24 38:3,3,4,5 38:13,14,20 39:9 39:9,10,11,15,15 39:17,17,22,22 39:23,24 40:2,3 40:4,5,8,11,11 40:12,18,20,20 41:5,5,7,16,18 41:23,24,24 42:3 42:6,12,14 44:5 44:6,7 45:3,5,12 45:16 47:24,25 48:3,16,19,19,21 48:24 49:8,9,11 49:14,15,16,17 49:22 50:11,12 50:13,14,23 51:6 51:9,12,16,17 52:10,16,16 53:2 53:12 55:7 56:4 57:5,12 58:22 59:3,8
**faxes** 17:24 18:9 18:21 19:11 20:12,21,25 21:16 22:19 26:8 31:12 35:19 41:18 44:6 50:13
**faxing** 10:3,7,11 10:12,13 20:7
**fcc** 17:9 27:11,16
**federal** 3:3
**fedex** 25:13
**fight** 32:2
**figure** 3:14 45:14
**figured** 23:25
**file** 35:19
**files** 17:22
**financially** 62:12
**find** 8:3,7 19:6 25:20 42:24 46:19 63:12
**fine** 4:13 9:1 24:3 39:5 52:3
**finish** 54:7
**firm** 14:11,13
**first** 2:20 3:6 7:8 15:6 18:19 19:8 28:23 29:2 43:16 45:21 51:5,24 52:3 58:25
**five** 28:9 43:17 44:12 53:23 54:6,13
**flat** 40:11,14
**florida** 1:1,3,18 1:21 2:7 3:4 4:21 61:3,17 62:3,14
**foip** 21:1,4 22:8
**follow** 17:17,18
**following** 18:8 34:22
**follows** 3:7
**foregoing** 6:15 62:12 64:13 65:18
**form** 6:23 10:4,9 10:23 15:4,16 16:2 17:2,10 18:10 20:1,17,23 21:10 25:1 31:23 50:2,7,15 50:24 51:18 52:11 53:4 57:7 57:14,23 58:2
**format** 17:23 58:4
**forth** 10:21
**forward** 35:6 38:16 49:8,11,14 49:22 50:11 52:10,15 63:16
**forwarded** 48:4 52:20,21,23 53:1
**forwarding** 26:8 49:5,17,24 50:5 52:9 53:11
**forwards** 49:24
**foundation** 17:18
**four** 6:7
**free** 64:14 65:20
**front** 40:12
**function** 13:8
**further** 51:21 62:10
**future** 13:6

**g**

**game** 34:17
**gateway** 23:9
**gateways** 22:6 36:6 38:4
**gather** 4:23
**generally** 20:18
**generated** 52:8
**getting** 22:24 32:24 37:22 40:8 57:25 58:12
**gg** 61:18
**give** 17:17 30:16 30:18 39:3 47:14 54:1
**go** 4:9 5:22 10:18 11:9,17 13:15,19,20 16:20 18:19 30:9 32:4 37:18 40:4 41:13 42:23 43:11 44:14,15,19 46:6 46:14 47:19 49:2 50:6,9 51:20 53:17

54:19 56:11,22 56:25 58:17,17 58:25
**goes** 37:24 43:13
**going** 5:1,2,15 6:24 8:8,11,23 9:7 16:12 17:15 17:16 28:21 30:8 35:16 40:8 42:24,25 43:10 43:18 44:11 45:19 47:22 53:22,23 54:3
**good** 2:3 3:10 4:5 5:1 8:5 12:8 12:22,25 13:5,14 13:17 16:7,15 18:16 19:5 23:19 29:4 31:6 34:11 43:3,9,21 44:15,19,22 46:5 54:24 55:18 60:2
**gotcha** 9:14
**governmental** 17:1
**grounded** 10:12
**group** 20:6,9 36:7
**guess** 26:23 27:8 30:15 40:19,25 41:11

**h**

**h** 2:15
**hand** 16:4 28:21 61:10
**happen** 50:3
**happens** 21:8 22:10 33:7
**hard** 5:13 24:3,8
**head** 54:1
**hear** 4:11 56:24
**held** 12:16 33:2 44:21 59:16
**helped** 14:18,22
**hey** 32:24
**high** 42:22
**highlight** 24:6 34:13
**highlighted** 43:23
**hills** 4:21
**hit** 4:8
**hold** 18:9,21 19:11
**holland** 2:6
**home** 4:19
**huge** 31:17
**hypothetical** 26:22
**hypothetically** 28:5

**i**

**ic000637** 43:22
**ic638** 44:4,23
**iconectiv** 51:25
**identical** 43:17 44:24 47:1
**identification** 5:5 9:5 16:9 28:19 45:24
**identified** 52:8 53:10,11 59:2
**identify** 7:8 35:2 50:22 51:6,8,11 54:2
**illinois** 2:4
**image** 23:12 35:20,20 40:20 40:20
**images** 17:22 35:5,22 36:15
**imagine** 24:23
**inaudible** 11:11
**inbound** 18:9,21 19:11
**included** 41:17 45:6 47:11 63:14
**includes** 6:4
**including** 32:12 37:17
**inclusive** 36:20
**incoming** 49:11
**incorporated** 65:12
**indicate** 34:14
**indicated** 15:13 15:23 55:5,6 56:19
**indicates** 58:20 58:20
**indicating** 63:14
**individually** 1:4 58:10
**infucare** 1:8,9 12:9,10 63:6 64:3 65:3
**initial** 46:12
**initially** 22:5
**ink** 31:13
**instance** 21:7 53:11
**intended** 42:2 47:24
**interest** 32:13
**interested** 25:10 62:12
**interface** 34:25
**internet** 17:25 19:19 20:4,5 22:14,14 26:6,14 26:18,19 27:5,6 27:10,18,19,25 28:1,6 30:13,23 30:25 37:3,9 38:22
**invasion** 32:12 32:13
**invite** 28:4
**involuntary** 31:12,12,15 32:10
**ipad** 36:24
**irwin** 1:3 63:6 64:3 65:3
**issue** 20:13 21:16 48:24

**j**

**j** 2:6 63:5
**jennifer** 14:7,16
**jennifer's** 14:21
**july** 1:14 7:13 61:11 62:13 63:4
**jumped** 35:14

**june** 6:12

**k**

**keep** 52:16,16
**ken** 23:23 24:5,6 59:24
**kenneth** 1:13 3:2 3:5 61:6 62:7 63:9 64:4,9 65:4 65:13 66:20
**kimberly** 14:18
**kind** 11:7
**kinds** 27:9
**knight** 2:6
**know** 3:13,17,20 3:22 4:3,16 11:7 13:7,11,23 14:14 15:9 19:2 22:23 23:25 26:23,24 27:1 28:8 30:14 31:11 32:7,23 33:16 34:22 35:6 40:1 43:21 45:11 47:7 50:16 52:13,25 53:2,8,16 57:13
**knowledge** 11:21
**knows** 42:12

**l**

**language** 43:17
**large** 57:21
**larger** 23:18
**law** 14:11,13
**laws** 6:14
**leave** 45:14
**lee** 1:20 61:16 62:6,17
**legal** 63:1 66:1
**legible** 13:1
**letter** 63:20
**letting** 32:23
**level** 10:10
**liability** 1:8
**life** 23:24
**lightpath** 59:6,7
**limited** 1:8
**line** 15:1 19:6 20:22 21:2 22:25 30:6,10 36:9 49:16 53:1 54:24,25 56:23 57:3 58:18 59:1 59:6 63:14 65:7 66:3
**lines** 20:15 22:3 36:6 58:23
**list** 11:20 12:12
**listed** 11:5 15:15 29:8,16 65:7,17
**listing** 65:7
**lists** 14:19
**little** 13:15,17 17:18 21:12 23:17 40:10 43:20
**llc** 1:8 63:6 64:3 65:3
**llp** 2:6
**local** 3:4
**locate** 54:22
**log** 39:16
**logged** 35:25
**logging** 17:25 40:7
**long** 34:9
**longer** 48:14
**look** 5:11,18 8:1 13:4,5 14:23 24:8 28:23 34:8 46:3 47:20 51:21 58:4
**looking** 29:1 42:15 45:11,16 50:25 54:3
**lot** 27:1 46:24 47:14 50:17
**lumen** 56:15,18 57:3,4,11

**m**

**m.d.** 1:3 63:6 64:3 65:3
**machine** 20:14 21:17 38:2 39:10,15,23 40:2 40:4,8,11,20 41:5 44:5
**madam** 44:19 63:10
**mail** 17:24 18:1 18:12 25:12,13 26:8,18 27:17,25 28:24 30:12 33:24 35:2,4,21 36:15,20 37:23 37:24 38:5,13,23 38:24 41:7 42:1 44:7 48:1,2,7,13 48:13,14,19
**mailing** 29:4
**mails** 26:15
**maker** 26:24
**manager** 12:10
**marc** 1:3 63:6 64:3 65:3
**marked** 5:4 7:23 7:24 8:1 9:4 16:5,8 28:18,22 45:20,23
**massive** 14:21
**material** 12:13 47:14
**materials** 11:18 54:7
**matter** 3:12
**meadows** 2:4
**mean** 14:13 21:1 27:10 37:15 41:22 48:14,19 50:8,16
**meaningful** 47:10
**means** 5:14 15:13 22:13 39:1
**medical** 12:2 37:2,11,15,18
**memory** 56:18
**mentioned** 37:22
**mercifully** 36:3
**met** 3:10 48:21
**middle** 1:1 3:4
**midwest** 63:17 66:1
**mind** 40:14
**minus** 6:7
**minutes** 59:14
**misspoke** 11:14

**morning** 3:10
**move** 9:23 31:7 31:18 33:1 34:4 36:3 45:19 47:17,18 48:25
**multiple** 49:23

**n**

**n** 2:7,9
**name** 3:11 12:12 63:6 64:3,4,15 65:3,4,21
**narrow** 13:10 40:10
**necessarily** 50:18
**need** 3:21 7:10 8:8,10,23 9:2 16:14 26:4 38:25 39:1 60:2 60:5
**needed** 38:22,25
**needless** 30:18
**needs** 5:19 19:18
**never** 30:19
**new** 49:11
**norm** 37:19
**notarized** 63:15
**notary** 1:21 61:17 63:25 64:10,18 65:15 65:23 66:23
**note** 63:13
**notes** 25:4 62:9
**notice** 1:16 3:3
**nuisance** 32:14
**number** 14:19 15:1,15,19 36:8 42:13 45:3,6 49:8,9,14,22 50:11 52:10,16 52:16,20,21 54:24 63:8,14
**numbers** 15:20 20:15 21:23 22:2 35:3 45:12 45:16 50:22 51:6,8,11 53:17 55:4,25 56:3,5 56:16 57:4,11 58:10,21 59:2,4 59:7,9 65:7

**o**

**oath** 2:11 3:6 29:24 61:1
**object** 6:23 10:4 10:9,23 15:4,16 16:2 17:2,10 20:1,17,23 21:10 25:1 31:23 32:8 50:2,7,15,24 51:18 52:11 53:4 57:7,14,23 58:2
**objection** 21:19 21:25 22:4,12 23:4,11 26:10,21 27:7 28:2 32:6 32:16 33:18 34:1 36:10,17 37:4,13 39:25 40:16,24 41:10 47:5,12 48:9 49:19 53:14 56:7
**objections** 8:24 32:25
**obtaining** 25:10
**obviously** 14:13 30:24,25
**offer** 11:7 27:1
**offering** 11:4
**office** 4:19 5:21
**offices** 37:2,12
**official** 61:10 64:15 65:21
**oh** 4:8 9:14 15:10 16:14 31:6 54:24
**ohio** 63:2
**okay** 6:8 8:14 9:3,6,16,23 13:5 17:15 19:5,15 20:6 23:5,7,20 24:9 28:9 29:5 30:7,21 34:10,21 35:15,24 37:1 38:17 39:8 40:10 41:3 42:23 48:18 49:5 51:4,24 53:22 54:7,14,15 54:22 56:13 57:3 58:19 59:22
**old** 22:15
**once** 59:19
**ones** 6:24 56:3
**online** 15:14,19 17:19 18:4,9,11 18:21,22 19:7,10 19:17 21:8 23:2 23:8 24:12 25:10 26:5,13 27:12 31:14 33:22,23 35:1,9 35:25 36:1,4 37:24 38:3,20 39:11,17,24 40:12,18 41:7,18 41:23,24 42:11 42:14 44:7 47:24 48:3,16,21 49:9,11,15,17 50:12,23 51:6,9 51:12,17 52:10 53:2,12 55:6 56:4 57:5,12 58:22 59:3,8
**open** 48:4
**opens** 35:19
**opensided** 29:12
**opinion** 7:5,13 41:14,15 42:19 42:19
**opinions** 10:11 10:14,16,18,21 11:4,5,6,7
**option** 18:12 38:13 53:16
**orange** 61:4 62:4 62:14
**order** 21:4 31:21 31:25 60:1,3
**original** 2:17 5:2 5:25 6:4,22 7:14 10:19 23:15 29:17 34:5
**originally** 33:12
**orlando** 1:2 62:14

**outcome** 62:12

**p**

**p.a.** 1:3 63:6 64:3 65:3
**page** 2:10,11,12 2:16 14:24,25 28:23 29:1,3,9 29:18 30:6,10 43:9 46:14,20 56:22,25 58:17 58:25 63:14,16 65:7 66:3
**pages** 5:18 6:10 7:23,24,25 8:10 8:11,18,19 9:11 9:13,15,21 10:22 15:6 44:23 54:4
**palermo** 2:6 4:1 4:10 5:9,17 6:23 7:10 9:1 10:4,9 10:23 15:4,16 16:2 17:2,10 18:14 20:1,17,23 21:10,19,25 22:4 22:12 23:4,11,23 24:5 25:1 26:10 26:21 27:7 28:2 28:12,24 29:6 31:23 32:6,16,21 33:18 34:1,16 36:10,17 37:4,13 39:25 40:16,24 41:10 47:5,12 48:9 49:19 50:2 50:7,15,24 51:18 52:11 53:4,14 56:7 57:7,14,23 58:2 59:21,23 60:3,4,7 63:5
**paper** 31:13
**paperless** 37:18
**paragraph** 10:21 11:1 17:16,19 18:8,8,14 19:2,8 23:15,22 24:19 29:16 34:4,8,21 35:16 38:18 41:13 43:14,23 44:3,11,25 46:18 46:19,19 47:19 47:21,23 48:7,25 49:2,6 50:20,25 51:21 56:12
**paragraphs** 34:13 47:3,9
**part** 8:24 11:11 34:21 48:23 57:21 65:9
**particular** 12:20 40:5 46:22 54:2
**parties** 62:10,11
**pasted** 38:5,7,9
**pay** 39:2,6
**paying** 49:15,17
**pdf** 7:16 18:1 23:10 35:19 36:9 38:5 48:22
**penalty** 6:14
**pending** 3:23
**pennsylvania** 1:8,9,10
**percent** 42:13,17 42:17,17,22
**percentage** 41:16 42:5,7,16 42:16,18
**percentages** 58:6
**perfect** 41:6
**perfection** 40:23
**perform** 20:16 26:7
**performs** 23:8
**perjury** 6:14
**permitted** 1:18
**person** 41:25
**personally** 24:15 61:7 64:11 65:15
**persons** 1:5 52:15
**phone** 15:13 19:24,25 20:2 36:24 55:4,13,15 56:16 57:4 58:21 63:3
**phrase** 42:4,18
**pick** 14:23 39:14
**picked** 39:22
**pictures** 19:1
**place** 24:19,20
**plaintiff** 1:6,17 2:5 3:12 11:25
**plaintiff's** 5:2,4 7:1,8 9:4 12:21 16:5,8 23:16 28:18,22 29:11 42:25 45:20,23 51:14
**plane** 22:15
**platform** 12:13
**please** 18:15 59:25 63:12,12
**plus** 58:10
**point** 33:22,22 35:21 39:5 48:18
**points** 33:6,12 33:15
**popular** 52:15 53:16
**popularity** 42:11
**portal** 18:11 34:24,25 35:8,17 35:25 36:19,22 38:12 39:11,16 39:24 40:6,12,15 40:21
**portion** 14:25 19:14 59:12
**position** 32:11
**possible** 25:14 27:2,5 30:20
**potential** 26:2
**potentially** 50:8 50:12
**practice** 44:4,6
**practices** 37:16 45:4,12
**preparation** 14:8,12
**present** 45:20
**presented** 25:9 33:10,13
**presswood** 29:12
**pretty** 38:19 55:3
**previously** 27:20
**print** 18:13 25:11,13 26:19 27:13 28:1

30:17,19 31:22 35:21 36:15 37:16 38:14
**printer** 25:19,22 26:2,19 27:5,9 27:18 30:12,24 37:12,20
**printing** 31:12 31:14,20 32:11
**prints** 35:20
**prior** 37:23
**privacy** 32:12
**probably** 4:10 9:1 24:22
**problem** 5:15 18:25
**problematic** 25:23,25
**procedure** 1:19 3:3 64:5 65:5
**process** 37:25 50:5,12 51:15 52:4 56:11
**production** 63:16,17,22
**profession** 12:2
**professional** 1:20 61:16 62:6 62:17
**professionals** 37:18
**programmed** 49:10
**prohibitions** 31:11
**pronounce** 12:11
**proposed** 41:17
**protocol** 20:10 20:16 22:7,11,15 23:9 36:7
**provide** 10:15 15:1,14 25:11,14 25:21,24 26:3 45:13 55:6 57:5 57:12 58:22 59:3,8
**provided** 14:13 34:25 42:10 56:4
**provider** 25:11 48:16 49:10,16
**providers** 24:13 24:16 25:18 26:6,14 37:2,11
**provides** 15:19 32:1 35:16 36:5
**public** 1:21 61:17 64:10,18 65:15,23 66:23
**publish** 42:11
**pull** 5:1 7:1 28:17 29:2 34:6 34:7 46:2 54:23
**pulled** 8:3
**pulls** 5:7
**purchased** 55:25 56:5,16
**purposes** 1:17 1:18 18:5 23:1
**pursuant** 1:16 3:3
**put** 7:17 26:1 34:11
**putting** 58:3

**q**

**quality** 40:19,21 40:22 41:6 50:13
**question** 3:20,22 11:3 14:2,24 15:11,12,18 21:11 22:23 27:4,21,23 29:22 30:10,11,16,21 32:7,22 33:9 36:4,22 37:23 39:12,20 40:23 41:4,18 43:18 47:22 48:5 49:1 50:21 51:10,23 53:9 55:16 56:15 59:6
**questioning** 19:15 23:1 28:4 59:13
**questions** 3:19 8:22 17:18 30:3 30:8 32:17 53:25 54:1
**quick** 34:8 44:16 55:3
**quicker** 40:7 59:13
**quite** 14:20 37:7 38:16
**quote** 6:13 18:1 18:9,13 19:10 30:25 35:17,17 35:22 38:23 41:15,19 44:8 47:24 48:4 51:5 51:9
**quoted** 52:18

**r**

**r** 1:13 3:5 61:7 62:7 63:9 64:4,9 65:4,13 66:20
**range** 8:12
**read** 17:5,16 23:22 24:9 30:8 38:19 39:15,17 39:22 40:14 41:9,14 43:15,16 44:2 46:21,24 51:3,22 59:22,23 59:25 64:5,6,12 65:5,6,17
**readily** 43:7 52:13
**reading** 39:9,10 39:19,23 57:16 63:20
**ready** 9:12 12:4
**real** 13:10 44:16
**really** 43:16
**reason** 17:13 57:10 63:15 65:8 66:3
**reasons** 43:23
**recall** 11:22 12:15 24:18 29:19,21,22 33:7 52:22 53:5
**receipt** 21:9 63:19
**receive** 14:3 17:21 21:5 33:23 35:4,18 41:18 44:4 48:1

49:23,25
**received** 20:25 22:14,18,20 36:8 42:1 44:6
**receives** 33:24
**receiving** 17:25
**recess** 12:17 28:16 54:17
**recipient** 41:23 41:25 42:2,3 47:25 48:23
**recipients** 41:16 41:21 42:6 51:16,17
**recognize** 16:21 29:8 46:9
**recollection** 33:11,14
**record** 3:1 12:16 16:19 18:20 19:9 33:2 43:22 44:2,15,19,21,22 44:23 48:10,15 57:18 59:16 62:8 65:9
**recreating** 14:3
**refer** 5:14 6:24 9:7
**reference** 63:8 64:2 65:2
**referenced** 24:19 64:11 65:15
**referencing** 24:11
**referring** 48:7
**reflect** 3:1
**regarding** 21:9 33:5,15 53:25 54:2
**registered** 1:20 61:16 62:6,17
**regulation** 27:10
**reid** 1:20 61:16 62:6,17
**related** 28:3
**relates** 20:7
**relating** 33:9
**relationship** 56:21
**relative** 62:10,11
**relevant** 10:14
**relied** 11:18
**relinquish** 52:17
**remains** 49:9
**remember** 24:23 24:24
**remotely** 4:17
**removed** 6:5
**rendered** 52:5
**repeating** 51:10
**rephrase** 3:21
**report** 2:17,18 2:20 5:3,13,24 5:25 6:4,6,7,10 6:19,21,22 7:2,4 7:5,7,9,12,14,22 8:12,19 9:13,18 9:19,20 10:19 11:9,11,18 12:20 14:4,25 15:9,12 15:12 23:15 29:17,17 34:5 38:18 41:14 42:7,10,24 43:2 43:6 45:22 46:12,14,21 47:11,19 49:1,2 50:21 51:21 53:25 54:3,4,5 54:20,23 56:11 56:12 62:7
**reported** 1:20
**reporter** 1:20 4:6 8:21 11:12 44:20 59:22 60:1,5 61:16 62:7,18 64:7
**reporter's** 2:12 62:1
**reporting** 53:18
**reports** 5:16,22 8:7 46:24 52:5,8 53:10
**representative** 1:4
**representing** 3:12
**request** 4:7 34:7 45:15 65:9,11
**requested** 62:8
**require** 31:20
**required** 63:25
**research** 42:10 42:20
**resell** 55:19
**reseller** 55:13 56:14,18
**resellers** 55:19 55:25 56:6,17,21
**respectfully** 31:19
**respond** 31:18
**responded** 57:19
**responding** 32:19
**response** 15:20 15:24 32:9
**responses** 14:14 15:19 22:22 52:19 56:19 57:16 58:4,14
**restate** 26:13
**result** 50:13,14
**results** 7:18 14:20 57:25
**returned** 63:19
**review** 11:22 12:3,6 49:3 62:8 63:13 64:1 65:1
**reviewed** 11:10 11:13,18 12:14
**reviewing** 11:22 38:13
**right** 4:25 7:21 9:22 13:9 19:10 19:13,17,22 23:14 27:6 28:9 28:13 30:13 33:21 35:8 36:9 38:7,10,14 39:6 39:7 40:25 42:4 47:2,15 48:25 49:12,18 50:23 52:22 55:16 59:15
**road** 2:4
**robert** 2:19 9:24 45:21
**rolling** 2:4
**room** 4:22

**ross** 2:3 4:14 5:1 7:1 13:12,22 16:6 19:1 23:24 24:6 28:17 29:2 29:6 43:13,19 44:3,14 46:2 47:21 54:23 55:17 59:12
**row** 15:18,18
**rules** 1:19 3:3,4 64:5 65:5
**ruling** 2:19 16:13,21,24,25 17:8,17 18:5,7 19:14
**rulings** 17:5
**rx** 1:8,9 63:6 64:3 65:3

**s**

**s** 2:15 63:16 65:8 65:8 66:3
**sales** 12:10
**save** 32:23 35:21 36:15
**saying** 4:12 32:10 48:11 57:21 58:14
**says** 11:10,12 19:8 57:4
**scenario** 39:16 39:18 41:24
**scenarios** 39:14
**screen** 5:23 8:5,7 12:23 13:1,7 16:16 19:3 39:17,24 40:13 43:10
**script** 25:7
**scrivener** 57:22
**seal** 61:10 64:15 65:21
**seclusion** 32:13
**second** 8:15 14:19 44:16 49:3,25 50:21 51:25 53:25 58:8
**section** 46:15,18
**see** 4:11 5:18 6:10,16,23 7:10 8:1 10:25 12:22 12:25 13:10,21 16:14,15 17:1,3 18:2 19:11 24:11,13,14 29:14,15 31:1 35:22 39:19 40:25 41:19 43:10 44:8 46:5 46:15 55:8 58:15 59:1
**seeing** 8:5,6 13:2
**seen** 42:13
**self** 15:2
**sell** 55:20
**send** 5:9 8:20 17:21 26:14,18 27:17,25 30:12
**sender** 48:20
**sending** 25:12
**sends** 38:3
**sense** 26:25 31:19 53:9
**sent** 4:6 12:12 20:13 21:16,22 38:6 41:7
**sentence** 18:19 19:8 51:5
**sentences** 35:17
**server** 17:20,25 18:10 23:8 35:8 36:6 38:4 48:21
**service** 15:1,14 17:19,20 18:5,23 19:18 21:8 23:2 23:8 24:12 25:11,12,14,21 25:24 26:4,5,7 26:14 31:15 33:22,23 35:9,25 36:1,5 38:4,20 39:2,6,11,17,24 40:18 41:7,18,24 41:25 42:14 44:7 47:24 48:3 48:21 49:9,12,15 49:17,18 50:12 51:7,9,17 52:10 52:15 53:2,12 55:7 56:4 57:5 57:12 58:22 59:3,8
**services** 18:9,21 18:24 19:7,10 26:8 27:12 35:1 37:24 42:12 50:23 51:12 55:19
**set** 10:21
**setting** 38:20 39:1
**seven** 9:21 54:4
**share** 13:7
**sharfman** 1:3 63:6 64:3 65:3
**sheet** 9:15 63:14 65:7,10,18 66:1
**short** 28:8 56:10
**shot** 13:19
**show** 18:14 28:3 43:3 48:2,12
**showing** 13:3 48:6
**shown** 63:16
**signal** 50:1
**signature** 6:11 6:13 61:15 62:17 63:15
**signed** 64:13 65:18
**significant** 41:16 42:5,5,6,16,18
**signing** 63:20
**similar** 17:21 46:25
**similarly** 1:5
**simultaneously** 49:24
**sincerely** 63:21
**single** 40:2 52:8 53:11 58:9
**sir** 3:16 4:24 6:8 6:11,17,20 7:4 8:14 9:17,22 10:1,5,20 11:2,6 11:19,24 12:2,5 12:24 13:10,24 14:5 15:6 16:17 16:23 17:3,7 18:3,6 19:12,16

20:8,11 21:11,13 22:19 23:12 24:9,14,17 25:6 25:9,20 26:16,22 28:15 29:10,15 31:2,8 34:2,6,10 34:19 35:13,23 36:11 37:5,8,10 38:11 39:12 40:1 41:20 42:9 42:20 43:5 44:9 45:9 46:4,10,17 46:23 49:4,7,13 49:20 51:13 52:6,12 53:15 54:8,14,16,21 55:9 56:1,8,13 56:24 57:2,8,15 58:3,16,19,24 59:5,10,15,19 63:10
**sit** 47:15 52:25 53:12
**site** 25:19,22 26:2 37:12,15
**sites** 42:9
**sits** 35:8
**sitting** 40:6 41:5
**situated** 1:5
**six** 43:5 45:2,17
**smaller** 13:19
**smart** 19:23,25 20:2 36:24
**smith** 14:7,16
**solberg** 2:2,10 3:1,9,11 4:3,8,13 4:15 5:6,12,20 6:1 7:1,6,19 8:9 8:16 9:3,9 10:6 10:17,24 11:14 11:16 12:18 13:12,15,19 14:1 15:7,22 16:3,6 16:11,18 17:4,12 18:17,18,25 19:4 20:3,20 21:6,14 21:21 22:1,9,16 23:6,13,21 24:2 24:10 25:3 26:12 27:3,14 28:7,13,17,20 29:2,7 31:24 32:4,9,19 33:1,3 33:20 34:3,20 36:12,21 37:6,21 40:9,17 41:2,12 43:12,19 44:1,10 44:18 45:1,10,18 46:1,6,8 47:6,16 48:17 49:21 50:4,10,19 51:2 51:19 52:24 53:7,21 54:18 55:1,16,23 56:9 57:9,20,24 58:11 59:17,20
**solutions** 63:1 66:1
**somas** 51:25
**sorry** 6:3 11:12 11:14 15:10 16:14 22:13 35:14 53:5
**speak** 57:22
**speaking** 36:18
**specific** 29:23 47:22
**sponsler** 1:13 2:21 3:2,5,10,15 4:25 5:12 9:10 9:25 11:10,17 12:3,19,23 14:2 14:24 16:4,12,22 17:16 18:2,7 20:7 22:24 23:14 24:24 25:5 27:16 28:14,21 29:9,13 29:14,20,25 30:5 31:1,20 32:10 33:4 34:4,24 36:4 37:1 38:17 39:8 41:3,13 42:8,15,23 44:3 45:2,8,19 46:9 46:22,25 47:8,20 47:23 48:5 49:3 51:3 53:24 54:10,19 55:12 58:13 59:17 61:7 62:8 63:9 64:4,9 65:4,13 66:20
**sponsler's** 19:1
**spreadsheet** 7:16 9:7 16:10 43:4
**stamp** 44:4
**standalone** 39:9 39:15,22 40:11 41:5 51:16
**standard** 20:9 21:4 36:7
**standards** 20:7 46:16
**start** 4:8 19:7,14 54:1
**started** 18:20,22 21:2
**starts** 19:10
**state** 1:21 6:13 27:22 38:19 43:21 44:22 47:23 61:3,17 62:3,14 64:10 65:15
**stated** 6:18 27:12 44:23
**statement** 15:21 15:24 31:8 64:13,14 65:19 65:19
**statements** 32:20
**states** 1:1 6:15 44:4
**stay** 10:13
**stenographic** 62:9
**stenographically** 62:7
**step** 51:15,20,24 51:25 52:2
**stop** 43:14
**stops** 48:16
**store** 38:15
**straightforward** 38:19,21
**street** 2:7
**strike** 15:11 34:22 36:2 41:3 49:1 55:5,11

**strong** 4:5
**submitted** 6:18
**subpoena** 7:18 14:14 22:22 51:25 52:4,19 56:19 58:21 59:2
**subpoenaed** 14:20
**subpoenaing** 51:24
**subpoenas** 51:15
**subscribe** 19:17
**subscribed** 49:9 64:10 65:14 66:21
**subscriber** 19:18 35:25 38:6,12 52:9
**subscriber's** 36:14
**subscribers** 26:7 36:15 55:22
**substitute** 38:9
**successfully** 48:3 48:8,20
**suggestion** 9:10
**suit** 4:5
**suite** 2:4,7 63:2
**summarizing** 7:17
**summary** 9:15 15:6
**superceded** 6:5
**superior** 63:1
**supplemental** 2:18 6:6,18,21 7:2,4,5,7,9,12,22 8:12,19 9:13,20 12:20 14:4 53:25 54:4,5,20 56:12
**sure** 3:16,17 4:11 5:18 7:21 28:11,12 29:21 31:10 38:7 43:24 44:18 52:1 59:23 60:4
**surprise** 37:7
**switch** 50:6,9
**sworn** 3:6 61:8 64:10,13 65:14 65:18 66:21

**t**

**t** 2:15
**t.30** 20:9,16 21:3 23:9
**t.38** 21:4 22:7,10
**tab** 14:19 15:6 58:8,8,10
**table** 54:5
**tabs** 7:17 14:15
**tabulated** 58:14
**take** 3:23 8:1 23:22 25:4 28:8 28:9,23 34:8 39:21 46:3 47:20 49:3 51:21 53:23,23 54:6,13
**taken** 3:2 12:7 12:17 28:16 29:13 40:14 54:17
**talk** 24:15 45:7 59:11
**talked** 24:25 25:4 33:6 38:24
**talking** 9:14 15:5 15:8 33:16 49:5 53:19
**tampa** 2:7,7
**tanks** 42:11
**tcpa** 31:20,22,25 32:1,11 33:5 52:4
**tcpa's** 32:10
**team** 14:14,16 24:16
**technical** 10:15
**technologist** 12:11
**technology** 10:3 10:8,11,12,13 22:8 38:21 46:15
**telecommunic...** 17:23
**telephone** 20:13 20:15,15,22 21:16,22 22:2,3 22:15,25 36:6,8 36:9 38:2 44:5 52:9
**tell** 4:5,17 6:2 7:20 30:2 37:25 46:20 47:17 51:20 54:9 55:2
**telling** 26:4
**ten** 20:14,22 21:22 22:2 36:8
**term** 38:7 42:7 42:18
**testified** 27:20 27:22
**testimony** 12:4 12:14 31:3 64:6 64:7 65:6,9,12
**thank** 5:24 59:18 59:19
**thanks** 29:6
**thing** 28:12 60:4
**things** 5:18 27:2 27:9 28:6 30:20 32:12 39:20 41:9
**think** 3:14 5:14 8:23 9:1 12:9,13 14:21 18:25 29:10 31:4,16 32:7 33:11,12 34:16 38:24 39:21 42:10 55:3 59:11,12
**third** 52:2
**thirty** 63:19
**thought** 33:12 47:9
**three** 7:17 12:7,8 14:15 15:6 30:8 35:17 51:15 56:22,25 58:17
**tiff** 35:19
**time** 1:15 23:22 28:14 32:3 39:9 39:13,19,21 40:14 41:8 45:11 49:25 54:10 56:2

**times** 3:14 17:6
**title** 16:20
**titled** 46:15
**today** 4:2 11:7 12:4 31:5 53:13
**told** 17:11 25:23
**top** 15:18
**total** 55:4
**totals** 58:5
**transcribed** 64:7
**transcript** 2:20 8:24 29:12 30:6 62:8,8 63:12,13 64:5,12 65:5,11 65:17
**transmission** 21:9 22:25 23:10 33:7,16
**transmitted** 33:21 48:20
**travel** 50:14
**traveling** 22:25
**trial** 1:17
**true** 6:15 31:3 62:8
**truth** 30:2
**try** 13:4
**trying** 3:13 4:4 13:12,14 19:6 23:24 25:20 37:18 58:13
**turning** 4:1
**two** 8:7,11 39:14 39:20 52:3,19 59:14

**u**

**ultimate** 41:16 41:21,23 42:6
**unaware** 56:15
**undersigned** 61:6
**understand** 3:20 3:23 33:15 37:25 39:12 47:18
**understanding** 10:12 18:4 20:12 21:18 27:17 30:11
**understood** 22:23
**undertaking** 14:21
**united** 1:1 6:15
**updated** 6:22 7:15
**upload** 12:13
**upwards** 42:13
**use** 1:17 13:22 30:19,22 31:12 42:4,7,14,18
**user** 18:10 35:20
**user's** 35:18
**users** 17:24 35:21

**v**

**v** 29:12 63:6 64:3 65:3
**valid** 48:14
**various** 24:12
**veritext** 63:1,8 66:1
**veritext.com.** 63:17
**verizon** 58:18,22 58:22
**version** 6:22 8:6 13:4,22
**versus** 22:15 39:10,23 40:21 41:6
**video** 4:2,8
**videoconference** 1:13
**view** 18:12 19:2 32:2 35:18 36:2 38:14 51:16
**viewing** 39:10
**violate** 31:25
**violation** 31:21
**voip** 21:1 22:7
**voluntarily** 31:16
**vs** 1:7

**w**

**wait** 40:5
**waive** 59:22
**waived** 63:20
**walk** 40:4 44:12
**wallace** 2:2 3:11
**wally** 4:1 32:22
**wanca** 2:3
**want** 7:21 8:17 8:17 9:12 13:7 14:24 17:17 23:23 24:1,6,7,7 28:3 30:21 32:5 34:6,12,14 35:7 43:14,21 44:15 53:22 54:13
**wanted** 5:17 13:23
**wants** 24:6
**washburn** 14:18
**way** 3:21 17:24 21:15 24:1,5 35:10 39:1 47:7 53:2 57:21
**went** 20:21
**whatsoever** 48:11,15
**white** 24:7
**witness** 3:6 5:9 5:23 7:4,12 8:6 9:6 10:5,10 12:24 13:2,9,21 13:24 15:5,17 16:10,17 17:3,11 19:3 20:2,18,24 21:11,20 22:5,13 23:5,12,17,20 24:9 25:2 26:11 26:22 27:8 28:5 28:15 29:1 32:20 33:19 34:2,19 36:11,18 37:5,14 40:1,25 41:11 46:7 47:13 48:10 49:20 50:3,8,16 50:25 52:12 53:5,15 55:19 56:8 57:8,15 58:3 59:19,25 61:10 63:9,12 64:1,4,11 65:1,4 65:15

**witness'** 63:15
**work** 33:5 34:15 55:21 56:20
**working** 13:8,23 25:10 49:10
**worthless** 30:19
**writing** 58:1
**written** 11:6 52:14
**wwb** 1:6

**x**

**x** 2:9,15

**y**

**yeah** 5:17 11:14 13:17 29:2,4 30:14,15 41:11 46:7 58:12
**years** 24:22
**yep** 16:7

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.