# EXHIBIT H

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling | ) | |
| | ) | |
| Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 | ) | CG Docket No. 02-278 |
| | ) | |
| Junk Fax Prevention Act of 2005 | ) | CG Docket No. 05-338 |

# APPLICATION FOR REVIEW

Glenn L. Hara
Brian J. Wanca
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
ghara@andersonwanca.com

Attorneys for Applicant Career Counseling Services, Inc.

January 8, 2020

**Table of Contents**

Table of Authorities ........ ii

Executive Summary ........ 2

Questions Presented ........ 4

Background ........ 5

Argument ........ 10

I. The Bureau Order is in conflict with the statute, regulation, case precedent, and established Commission policy ........ 10

II. The Bureau Order makes erroneous findings as to important or material questions of fact regarding whether a "fax server" is a "telephone facsimile machine" and whether consumers using "online fax services" are injured by junk faxes ........ 19

III. The Bureau Order should be changed to deny the Amerifactors Petition and reaffirm the conclusion of the 2003 Order and the WestFax Order that a "fax server" is a "telephone facsimile machine" and that users of "online fax services" are injured by junk faxes ........ 20

IV. In the alternative, the Commission should vacate the Bureau Order and remand for an inquiry into whether the "equipment" used by "online fax services" has the requisite "capacity" to be a "telephone facsimile machine." ........ 21

Conclusion ........ 21

# TABLE OF AUTHORITIES

## Cases

*ACA Int'l v. FCC*,
885 F.3d 687 (D.C. Cir. 2018) ........ 20

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods, Inc.*,
757 F.3d 540 (6th Cir. 2014) ........ 17–18

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods, Inc.*,
2013 WL 3654550 (W.D. Mich. July 12, 2013) ........ 16

*Gager v. Dell Fin. Servs., LLC*,
727 F.3d 265 (3d Cir. 2013) ........ 10

*Holtzman v. Turza*,
728 F.3d 682 (7th Cir. 2013) ........ 17

*Imhoff Inv., LLC v. Alfoccino, Inc.*,
792 F.3d 627 (6th Cir. 2015) ........ 17

*Ind. Bell Tel. Co., Inc. v. McCarty*,
362 F.3d 378 (7th Cir. 2004) ........ 14

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols.*,
2010 WL 9446806 (C.D. Cal. Oct. 1, 2010) ........ 3, 16

*Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*
323 F.3d 649 (8th Cir. 2003). ........ 18

*Physicians Healthsource, Inc. v. Boehringer, Ingelheim Pharm., Inc.*,
847 F.3d 92 (2d Cir. 2017) ........ 10

*Whiteamire Clinic, P.A., Inc. v. Cartridge World N. Am., LLC*,
2017 WL 561832 (N.D. Ohio Feb. 13, 2017) ........ 17

## Statutes

47 U.S.C. § 227(a)(3) ........ 1, 3-4, 10, 19-22

47 U.S.C. § 227(b)(1)(C) ........ 10

47 U.S.C. § 227(b)(2) ........ 10

## Rules & Regulations

47 C.F.R. § 1.115 ........ 1

47 C.F.R. § 1.115(b)(2) ........ 2

47 C.F.R. § 1.115(b)(2)(i) ........ 2, 4, 10

47 C.F.R. § 1.115(b)(2)(iv) ........ 2, 4, 19

47 C.F.R. § 1.115(b)(3) ....................20

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
10 FCC Rcd. 12391, (rel. Aug. 7, 1995) ....................2, 11

*In re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*,
17 FCC Rcd. 17459, (Pub. Notice Sept. 18, 2002) ....................11

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
18 FCC Rcd. 14014, (rel. July 3, 2003) .................... *passim*

*In re High-Cost Universal Serv. Support Fed.-State Joint Bd. on Universal Serv. Lifeline & Link Up Universal Serv. Contribution Methodology Numbering Res. Optimization Implementation of the Local Competition Provisions in the Telecommc'ns Act of 1996 Developing A Unified Intercarrier Comp. Regime Intercarrier Comp. for Isp-Bound Traffic Ip-Enabled Servs.*,
24 FCC Rcd. 6475 (Nov. 5, 2008) ....................18

*In re WestFax, Inc. Petition for Consideration & Clarification*,
30 FCC Rcd. 8620, (rel. Aug. 28, 2015) ....................2, 6, 13, 16–18, 20–21

*In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*,
CG Docket Nos. 02-278, 05-338, Declaratory Ruling,
2019 WL 6712128 (CGAB Dec. 9, 2019) .................... *passim*

**Other Authorities**

Pub. L. No. 102-243, § 3(a), 105 Stat. 2394 ....................10

S. Rep. 102-178, 1991 U.S.C.C.A.N. 1968 ....................10, 18

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling | ) | |
| | ) | |
| Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 | ) | CG Docket No. 02-278 |
| | ) | |
| Junk Fax Prevention Act of 2005 | ) | CG Docket No. 05-338 |

## APPLICATION FOR REVIEW

Pursuant to Section 1.115 of the Commission's rules,[1] Applicant Career Counseling Services, Inc. ("Career Counseling") seeks review by the full Commission of the Order issued by the Consumer & Governmental Affairs Bureau on December 9, 2019, in the above-captioned proceeding.[2]

The Bureau Order granted the Petition of Amerifactors Group, LLC,[3] ruling that an "unsolicited advertisement" sent to a "fax server or similar device" is not sent to a "telephone facsimile machine," as defined by 47 U.S.C. § 227(a)(3), if the fax server is used as part of an "online fax service," where users access the fax "the same way that they do email: by logging into a server over the Internet or by receiving a pdf attachment [as] an email."[4] For the reasons discussed herein, the Commission should reverse the Bureau Order under Rule 1.115(b)(2) because it is in conflict with the statute, regulations, case precedent, and established Commission

---

[1] 47 C.F.R. § 1.115.

[2] *See In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, Declaratory Ruling, 2019 WL 6712128 (CGAB Dec. 9, 2019) ("Bureau Order" or "Order").

[3] *See Pet. for Expedited Declaratory Ruling of Amerifactors Fin. Group, LLC*, CG Docket Nos. 02-278, 05-338 (filed July 13, 2017) ("Amerifactors Petition" or "Petition").

[4] Bureau Order ¶ 2.

policy, and is based on erroneous factual findings.[5] As the Commission previously ruled, "it would make little sense to apply different rules based on the device [a stand-alone fax machine or to one associated with a personal computer or fax server] that ultimately received it."[6]

In the alternative, the Commission should vacate the Bureau Order and remand for an inquiry into the Bureau's "understand[ing]" that a "fax server or similar device" that receives a fax and converts it to email "cannot itself print a fax," and is therefore not "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."[7] The Bureau's "understand[ing]" on this important and material question of fact is unsupported by the record, and it is erroneous.

**<u>Executive Summary</u>**

Since the enactment of the Telephone Consumer Protection Act of 1991 ("TCPA"), the Commission has rejected every attempt by fax advertisers to "circumvent" the TCPA by arguing that a particular type of fax-receiving device is not a "telephone facsimile machine," be it a "computer fax modem board," as addressed in the 1995 Order,[8] or a "computerized fax server" that converts the fax to a different format and forwards it to the end-user's email "inbox," as addressed in the 2003 Order and the WestFax Order.[9] The Bureau Order that is the subject of this Application conflicts with these prior Commission rulings, as well as numerous case authorities applying the TCPA and the Commission's rules in private TCPA enforcement actions.

---

[5] 47 C.F.R. § 1.115(b)(2)(i) & (iv).

[6] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14134, ¶ 202 (rel. July 3, 2003) ("2003 Order").

[7] Bureau Order ¶ 11.

[8] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12405, ¶ 28 (rel. Aug. 7, 1995) ("1995 Order").

[9] 2003 Order ¶¶ 199–200; *In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620, 8623, ¶ 9 (rel. Aug. 28, 2015) ("WestFax Order").

The Amerifactors Petition is in reality a dressed-up argument over who has *statutory standing* to sue in the "efax" scenario: whether it is the provider of the "online fax service" that owns the "equipment" that receives the transmission from the sender, or whether, as the courts have held, it is the consumer who pays for the "online fax service" and is the target of the fax.[10] It makes no sense to rule, as the Bureau Order does, that a "fax server" that receives "faxes" is not a "telephone facsimile machine" simply because the fax is then converted to another format to be accessed by the end-user. That conclusion is contrary to the statute, regulations, case authority, and established Commission policy, and it should be reversed.

In addition, the Bureau Order is based on the "understand[ing]" that "an online fax service cannot itself print a fax," and "the user of an online fax service must connect his or her own equipment in order to do so," and so the receiving equipment lacks the "capacity" to print, as required by 47 U.S.C. § 227(a)(3).[11] That "understanding" is supported by nothing in the record, and it is erroneous. Any "equipment" that can receive a fax and convert it to another format and send it as an email attachment has the "capacity" to print the fax as well. Because the Bureau Order is based on an erroneous factual predicate, it should be reversed. In the alternative, to the extent the Commission determines that further factual development is required as to the "capacity" of the "equipment" used by online fax services, the Commission should vacate the Bureau Order and remand for further inquiry on that issue.

---

[10] *See J2 Glob. Commc'ns, Inc. v. Protus IP Sols.*, 2010 WL 9446806, at *8 (C.D. Cal. Oct. 1, 2010) (holding that "'the recipient' of an unsolicited fax is the person to whom the fax is directed and not" the provider of the online fax service).

[11] Bureau Order ¶ 11.

**Questions Presented**

Pursuant to Section 1.115(b), this Application identifies two questions for review:

(1) Whether the Bureau's ruling that a "fax server or similar device" is not a "telephone facsimile machine" as defined by 47 U.S.C. § 227(a)(3) if it is used as part of an "online fax service," where the end-user accesses the fax as the user would access an email, is "in conflict with statute, regulation, case precedent, or established Commission policy," warranting Commission review under Rule 1.115(b)(2)(i).

(2) Whether the Bureau's "understand[ing]" that "an online fax service cannot itself print a fax" is based on an "erroneous finding as to an important or material fact" warranting Commission review under Rule 1.115(b)(2)(iv).

## Background

On September 16, 2016, Career Counseling filed a civil action against Amerifactors in the United States District Court for the District of South Carolina, alleging that Amerifactors sent Career Counseling and a class of other persons "unsolicited advertisements" by facsimile in violation of the Telephone Consumer Protection Act of 1991 ("TCPA").[12] The Fax attached to the First Amended Complaint states: "AmeriFactors . . . Funding Business is Our Business," and "AmeriFactors is ready to help your company with your financing needs," and offers recipients the ability to "SAVE $600 OFF OF YOUR CLOSING COSTS!"[13]

On July 18, 2017, Amerifactors filed its Petition seeking a declaratory ruling that an "unsolicited advertisement" is not sent to a "telephone facsimile machine" where the end-user receives the fax through an "online fax service," and the Consumer & Governmental Affairs Bureau issued a public notice requesting comments.[14] The Petition states that its "principal" purpose is for the Commission to "confirm that the statute requires an individualized determination as to how recipients actually received unsolicited fax advertisements" in order to assist Amerifactors and other junk faxers in seeking to avoid class certification in private TCPA actions.[15] The district court overseeing the private TCPA action against Amerifactors stayed the case pending resolution of the Petition.

On August 17, 2017, Career Counseling filed comments in opposition to the Petition, arguing that the Commission had already decided in the 2003 Order that faxes received by

---

[12] *Career Counseling, Inc. v. Amerifactors Fin. Group, LLC*, No. 16-cv-0313-JMC (D.S.C.).

[13] Ex. A (Amerifactors fax sent to Career Counseling on or about June 28, 2016).

[14] *Consumer & Governmental Affairs Bureau Seeks Comment on Amerifactors Financial Group, LLC's Petition for Expedited Declaratory Ruling under the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 05-338 (July 18, 2017).

[15] Pet. at 27.

"commercial facsimile services" and then forwarded to the end user's "inbox" by email are nevertheless sent to "telephone facsimile machines,"[16] and that the Bureau applied that ruling in the WestFax Order,[17] rejecting a fax broadcaster's request to "clarify" that such "efaxes" are not covered by the TCPA.[18]

Several users of "online fax services" filed comments. One user of an online fax service explained that junk faxes impose "costs" on consumers, even if they use online fax services, given that "[t]he fax service must obtain telephone lines and size their equipment based, on part, on the number of faxes that the service receives," and "[u]nsolicited faxes add to this cost," which "must, of course, be passed along to the recipient."[19] The user complained that, when the fax is forwarded in an email, the recipient "must open the email to find out who it is from and if it is an unwanted commercial fax."[20]

A law firm that uses online fax services filed comments stating that "faxing our small law firm with unwanted and unsolicited spam faxes is even *more* disruptive because that fax is then emailed out as a PDF [to] every member of our law firm," meaning that "*every* firm member is disrupted by *every* spam fax—*every* time."[21] Another small business owner commented that "[m]y eFax service costs my small business REAL money every month," and that "[f]or the money I pay, I may receive a limited number of faxes each month, so unsolicited eFaxes sent to

[16] 2003 Order ¶ 199 & n.736.

[17] WestFax Order ¶ 9.

[18] Comments of Career Counseling, Inc. on Amerifactors Petition, CG Docket Nos. 02-278, 05-338 (filed Aug. 17, 2017).

[19] Comments of John A. Shaw, CG Docket Nos. 02-278, 05-338 (Aug. 17, 2017).

[20] *Id.*

[21] Comments of Peter F. Barry, CG Docket Nos. 02-278, 05-338 (Aug. 22, 2017).

my business utilize assets from my paid 'bucket of faxes' (much akin to unsolicited calls to cellular phones that use assets from a prepaid bucket of minutes)."[22]

On September 1, 2017, Robert Biggerstaff filed comments on the Amerifactors Petition.[23] Biggerstaff stated that he has "over two decades of direct experience with all facets of facsimile technology, including computer-based facsimile systems and fax servers, as well as technical specifications and details of facsimile transmissions."[24] Biggerstaff stated that the Amerifactors Petition "is based on an inaccurate description of fax technology and should be denied."[25] Specifically, Biggerstaff stated the Petition assumes that "[o]nline fax services do not receive documents as 'conventional faxes' and no telephone facsimile machine is involved."[26] In reality, Biggerstaff explained, "every fax transmission received and processed by a 'fax server' is indeed 'sent to' and 'received by' a 'telephone facsimile machine' as defined by the TCPA."[27]

Biggerstaff explained that every "fax server" used by an "online fax service" has the capacity to "receive" a fax, given that a fax "is not a document, nor a 'image file' of a document," but rather "the *transmission* of a rasterized digital payload (usually a document image) done in accordance with fax standards established by the International Telecommunications Union ('ITU') such as T.30 and the attendant standards including T.31, T.37, T.38, T.4, T.6, etc."[28] Biggerstaff explained that "[y]ou cannot receive a fax via e-mail nor

---

[22] Comments of Jimmy A. Sutton, CG Docket Nos. 02-278, 05-338 (Aug. 28, 2017); *see also* 2003 Order ¶ 193 (wireless customers who purchase a "bucket" of minutes at a fixed rate are charged for any minutes that exceed the "bucket" allowance, which is exceeded more quickly if telemarketing calls are received).

[23] Reply Comments of Robert Biggerstaff, CG Docket Nos. 02-278, 05-338 (filed Sept. 1, 2017).

[24] *Id.* at 1.

[25] *Id.*

[26] *Id.* at 2 (quoting Amerifactors Pet. at 6).

[27] *Id.*

[28] *Id.* at 3.

can you receive an e-mail via fax," and that "a device typically referred to generically as a *gateway* must convert one to the other . . . ."[29] "Fax servers," Biggerstaff explained, "are simply onramp gateways dedicated to fax-to-email conversion."[30] Biggerstaff stated that "[f]axes are sent to fax machines, which are *addressed* by a phone number and not by an email address," and that "when an advertiser is sending fax ads to a target list, it is a target list of *phone numbers*, not a target list of e-mail addresses, IP addresses, web URLs, or other address forms."[31] Biggerstaff explained that "the fax server and e-mail sending may take place on the same computer," or may "involve two different computers, such as [a] fax server receiving the fax, then placing it into a queue where a different server may pick it up and package it into an e-mail," but "in every case, the fax server is a 'telephone facsimile machine' under the TCPA."[32]

Biggerstaff also explained that every such "fax server" used by an "online fax service" has "the capacity to print," given that "1) nearly all fax servers are constructed from standard server parts that include printing ports (serial, parallel, USB, infrared, etc.); 2) they are (by definition) connected to networks and thus can print to network-attached printers; and 3) because they (by definition) can send e-mails with the fax images attached, they can utilize e-mail to printer functions (such as Hewlet Packard ePrint) to print."[33]

On March 13, 2019, MasterCard International Inc. filed an Ex Parte Notice, stating that, although MasterCard did not file comments on the Amerifactors Petition, MasterCard representatives met with Chairman Pai and Commissioner Carr on March 11, 2019, to advocate

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at 4–5.

in support of the Petition.[34] MasterCard attached a letter it sent to the Commission on March 8, 2019, explaining that MasterCard was currently a defendant in two private TCPA actions, and arguing the Commission should grant the Amerifactors Petition in order to "make it more difficult for plaintiffs' counsel to obtain class certification" in TCPA fax cases in general and in the cases against MasterCard in particular.[35]

On December 9, 2019, the Bureau issued its Order granting the Amerifactors Petition.[36] The Bureau Order concluded that a "fax server or similar device" that receives a fax is not a "telephone facsimile machine" if it is used as part of an "online fax service," where end-users access the fax "the same way that they do email: by logging into a server over the Internet or by receiving a pdf attachment [as] an email."[37] The Bureau stated that "we understand that an online fax service cannot itself print a fax—the user of an online fax service must connect his or her own equipment in order to do so," and so the "fax server or similar device" that receives the fax must not be "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."[38] As argued below, the Bureau Order should be reversed.

---

[34] *See* Notice of Ex Parte Presentation by MasterCard International Inc., CG Docket Nos. 02-278 & 05-338 (Mar. 13, 2019)

[35] *See* MasterCard Letter to Chairman Pai and Comm'r Carr, CG Docket Nos. 02-278 & 05-338 (Mar. 8, 2019) at 4.

[36] Bureau Order ¶ 1.

[37] *Id.* ¶ 2.

[38] *Id.* ¶ 11.

## Argument

**I. The Bureau Order is in conflict with the statute, regulation, case precedent, and established Commission policy.**

The Bureau Order is "in conflict with statute, regulation, case precedent, or established Commission policy," warranting review under Rule 1.115(b)(2)(i). The TCPA makes it unlawful to "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless certain exceptions are met.[39] Congress passed this provision of the TCPA[40] for the "purpose" of "facilitat[ing] interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers."[41] The statute defines "telephone facsimile machine" as any "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."[42] Congress authorized the Commission to "implement" this prohibition.[43]

The Commission has given the statutory term "telephone facsimile machine" a broad construction, in accordance with the principle that the TCPA is "a remedial statute that was passed to protect consumers"[44] and so "should be construed to benefit consumers."[45] In 1995, for example, the Commission ruled that "telephone facsimile machine" includes "computer fax

---

[39] 47 U.S.C. § 227(b)(1)(C).

[40] Pub. L. No. 102-243, § 3(a), 105 Stat. 2394.

[41] S. Rep. 102-178 at 1, 1991 U.S.C.C.A.N. 1968, 1968.

[42] 47 U.S.C. § 227(a)(3).

[43] *Id.* § 227(b)(2).

[44] *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

[45] *Physicians Healthsource, Inc. v. Boehringer, Ingelheim Pharm., Inc.*, 847 F.3d 92, 96–97 (2d Cir. 2017).

modem boards," which "enable personal computers to transmit messages to or receive messages from conventional telephone facsimile machines *or other computer fax modem boards*," holding such devices are "telephone facsimile machines" under the TCPA.[46]

In 2002, the Commission initiated a rulemaking proceeding to update its regulations, seeking public comment on, among other issues, whether the development of "computerized fax servers" might "warrant revisiting the rules on unsolicited faxes."[47] Several "industry representatives" filed comments urging the Commission to rule that faxes that are sent to "fax servers" and then forwarded to the end-user's "inbox" by email are not sent to a "telephone facsimile machine" because they "do not implicate the harms Congress sought to redress in the TCPA, as they are not reduced to paper and can be deleted from one's inbox without being opened or examined."[48]

In the 2003 Order, the Commission rejected these arguments, ruling that that "unsolicited faxes impose costs on consumers, result in substantial inconvenience and disruption, and also may have serious implications for public safety."[49] Even when a fax is sent to a "fax server" and then forwarded to the end-user by email, the Commission concluded, the "computerized fax server" is a "telephone facsimile machine."[50] The Commission reasoned that the TCPA "broadly applies to any equipment that has the *capacity* to send or receive text or images," and that the focus on the "capacity to transcribe text or images" is designed to "ensure that the prohibition on

---

[46] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12405, ¶ 28 (rel. Aug. 7, 1995) ("1995 Order") (emphasis added)

[47] *In re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*, 17 FCC Rcd. 17459, 17482 (Pub. Notice Sept. 18, 2002) (emphasis added).

[48] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14133 ¶ 199 (rel. July 3, 2003) ("2003 Order").

[49] *Id.*

[50] *Id.* ¶ 200.

unsolicited faxing not be circumvented."[51] The Commission ruled that "Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines."[52] The Commission noted that, although a fax may not automatically print when it is received by a fax server and forwarded to the end-user's email inbox, such faxes may nevertheless "shift the advertising costs of paper and toner to the recipient, if they are printed," and they "may also tie up lines and printers so that the recipients' requested faxes are not timely received."[53]

Even apart from the harms of lost paper or toner or tying up of lines, the Commission ruled that Congress was also concerned with the "interference, interruptions, and expense" to businesses and interstate commerce in general caused by junk faxes, and ruled that faxes sent to a fax server and forwarded to the user's "inbox" "may increase labor costs for businesses, whose employees must monitor faxes to determine which ones are junk faxes and which are related to their company's business."[54] The Commission ruled that "because a sender of a facsimile message has no way to determine whether it is being sent to a number associated with a stand-alone fax machine or to one associated with a personal computer or fax server, it would make little sense to apply different rules based on the device that ultimately received it."[55] The Commission also addressed the concerns of commenters regarding "commercial facsimile services," that "transmit faxes to the recipients as email attachments," ruling that those

[51] *Id.* ¶ 201 (emphasis added).

[52] *Id.*

[53] *Id.* ¶ 202.

[54] *Id.* ¶¶ 199–202.

[55] *Id.* ¶ 202.

"commercial facsimile services" do not violate the TCPA by forwarding faxes to the recipients because "any rules the Commission adopts with respect to unsolicited facsimile advertisements would not extend to facsimile messages transmitted as email over the Internet."[56]

On September 25, 2009, WestFax, Inc. filed a petition asking the Commission to "clarify" the 2003 Order to rule that an "efax"—in which "[a] facsimile transmission is received on a fax server," and then "the fax server converts the message into a digital image file that is then sent as an email attachment via the Internet to the recipient"—is not sent to a "telephone facsimile machine" and thus not covered by the TCPA.[57] WestFax argued that the evils Congress sought to remedy in the TCPA do not "make[] any sense" when applied to efaxes, and that "the House Report findings" cited in the 2003 Order "are terribly dated."[58] WestFax argued that Congress's findings regarding lost paper, toner, as well as its findings regarding time wasted "monitoring" unwanted faxes by employees, and "inability to process actual business communications or lines or printers tied up," were "not accurate with respect to faxes sent to fax servers."[59] WestFax argued, "[t]his is the 21st century," and asked the FCC to update its rules to account for "fax servers."[60]

On August 28, 2015, the Consumer & Governmental Affairs Bureau denied the WestFax Petition, relying largely on the 2003 Order.[61] The Bureau rejected "the contention that efaxes do not implicate the TCPA's consumer protection concerns" because they "may shift the advertising

---

[56] *Id.* ¶ 199 & n.736.

[57] *WestFax, Inc. Petition for Consideration & Clarification*, CG Docket Nos. 02-278, 05-338 (Sept. 25, 2009) at 2.

[58] *Id.* at 4.

[59] *Id.*

[60] *Id.*

[61] *In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620, 8623, ¶ 9 (rel. Aug. 28, 2015) ("WestFax Order").

costs of paper and toner to the recipient if they are printed" and can cause "interference, interruptions, and expense" the same as any junk fax.[62] The Bureau ruled that efaxes "just like paper faxes, can increase labor costs for businesses, whose employees must monitor faxes to separate unwanted from desired faxes."[63] The Bureau applied the 2003 Order, ruling that "it would make little sense to apply a different set of rules (or, in this case, no rule at all) to faxes sent to one type of device (a standalone fax machine) versus another (a computer and its attachments) when the sender generally does not know what device will receive the fax."[64] No party sought reconsideration of the WestFax Order or filed an application for review, and so it carries "the FCC's imprimatur," as if it was issued by the full Commission.[65]

In sum, the Commission has consistently rejected the argument that a fax is not sent to a "telephone facsimile machine" when it is received by a "fax server" and then forwarded to the end user on a computer. The implication of the Bureau Order under review here that a "fax server" receiving a fax transmission may or may not be a "telephone facsimile machine" depending solely on whether the fax is then converted to some other format is contrary to the language of the statute, as interpreted by the 2003 Order and the WestFax Order.

The Bureau Order misconstrues the 2003 Order, focusing on the statement that the TCPA does not prohibit faxes "sent as email over the Internet," and characterizing the reasoning of the 2003 Order as applying solely to "a personal computer attached to printer and modem," which "would remain within the scope of the statute."[66] To the contrary, the Commission's ruling that

[62] *Id.* ¶ 11.

[63] *Id.*

[64] *Id.*

[65] *Ind. Bell Tel. Co., Inc. v. McCarty*, 362 F.3d 378, 387 (7th Cir. 2004) (citing 47 C.F.R. § 1.102(b)).

[66] Bureau Order ¶ 5.

faxes "sent as email over the Internet" are not sent to a "telephone facsimile machine" merely made clear that the "online fax service" does not violate the TCPA by forwarding the fax to the end-user by email.[67] The 2003 Order clearly held that the *fax* transmission—from the fax sender to the "fax server" maintained by the "commercial facsimile service"—is still sent to a "telephone facsimile machine."[68] The 2003 Order is also not limited to "a personal computer attached to printer and modem," as the Bureau Order states. The 2003 Order expressly considered and rejected the suggestion that a fax sent to a "computerized fax server" and then forwarded to the end-user's email "inbox" is not sent to a "telephone facsimile machine."[69] Indeed, a "fax server" is functionally nothing more than a computer with multiple fax modems.

The Bureau Order seeks to distinguish the WestFax Order on the basis that it "did not consider" the same type of "online fax services" described in the Amerifactors Petition, where (1) the WestFax Order considered only "whether the mere conversion of a conventional fax to email at some point in the transmission chain removed the fax from the TCPA's reach" and (2) the WestFax Order "assumed," "based on a limited record," that "that the 'efax' in question was sent to a computer with an attached fax modem that had the capacity to print the fax, as required by statute."[70]

This reasoning is erroneous because the WestFax Order considered exactly the same type of "online fax services" raised in the Amerifactors Petition, where "the recipient computers are attached to fax servers *or services* that convert the fax into a format that is attached to an email

---

[67] 2003 Order ¶ 199 & n.736.

[68] *Id.*

[69] *Id.* ¶¶ 199–200.

[70] Bureau Order ¶ 15.

received by the computer."[71] It specifically considered WestFax's "efax service," "FaxForward," which WestFax described as "a service that 'automatically converts received faxes into electronic images that are delivered directly to your email inbox.'"[72] There is no difference between the "efax" service considered in the WestFax Order and the "online fax service" considered in the Bureau Order under consideration, in which faxes are received by a "fax server" and users access the faxes "the same way that they do email: by logging into a server over the Internet or by receiving a pdf attachment [as] an email."[73]

The courts overseeing private TCPA actions have consistently held that faxes received by the user through an "online fax service" are nevertheless sent to a "telephone facsimile machine." As the district court explained in *Am. Copper & Brass, Inc. v. Lake City Indus. Prods, Inc.*, 2013 WL 3654550, at *5 (W.D. Mich. July 12, 2013), although the Commission "exempted from the TCPA the act of forwarding a fax by email," "the first step—the transmission of the original fax—still falls within the confines of the TCPA").

In at *J2 Glob. Commc'ns, Inc. v. Protus IP Sols.*, two providers of "online fax services" argued that, by intercepting and converting faxes to emails, they were the "recipients" and had standing to assert TCPA claims.[74] The district court rejected this argument, holding that "[g]iven the plain language, purpose, and statutory scheme of the TCPA, the Court concludes that 'the recipient' of an unsolicited fax is the person to whom the fax is directed and not an unknown intermediary, like j2 [or Protus], who intercepts the transmission."[75] The district court held that

---

[71] WestFax Order ¶ 9.

[72] *Id.* ¶ 4.

[73] Bureau Order ¶ 2.

[74] 2010 WL 9446806, at *8 (C.D. Cal. Oct. 1, 2010).

[75] *Id.*

under the Commission's rules, persons who receive faxes on a computer as opposed to a stand-alone fax machine have no less right to sue for TCPA violations:

> [T]he FCC has concluded that faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes. However, a facsimile machine does not have standing under the TCPA; rather, "the recipient" has standing, "the recipient" being the person to whom the . . . unsolicited fax advertisement is directed.[76]

In *Whiteamire Clinic, P.A., Inc. v. Cartridge World N. Am., LLC*, the plaintiff received the subject fax via an online fax service, which then converted it to email.[77] The defendant argued that the plaintiff lacked standing to sue, and the district court rejected the argument, holding that, despite the lack of wasted paper or ink toner, the fax nevertheless "wasted [plaintiff's] time reviewing the junk emails that could have been spent on other business activities," and "impede[d] Plaintiff's ability to engage in the free flow of commerce," and that "Plaintiff suffered damages to his business in lost time and in diversion of resources and can be made whole by injunctive and monetary relief through this Court."[78]

The courts recognize, as the Commission recognized in the 2003 Order and the WestFax Order, that "[e]ven a recipient who gets the fax on a computer and deletes it without printing suffers *some* loss: the value of the time necessary to realize that the inbox has been cluttered by junk," and "[t]hat loss, and the statutory remedy, are the same for all recipients."[79] The Sixth Circuit recognized in *American Copper & Brass, Inc. v. Lake City Indus. Prods*., that "Congress was generally concerned with the costs associated with unsolicited fax advertisements. But

---

[76] *Id.* at *7 (citing 2003 Order).

[77] 2017 WL 561832, at *3 (N.D. Ohio Feb. 13, 2017).

[78] *Id.*

[79] *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *see also Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 632 (6th Cir. 2015) (quoting *Turza* with approval).

unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time *and impede the free flow of commerce*."[80] The Eighth Circuit held in *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.* that "unsolicited fax advertising interferes with company switchboard operations and burdens the computer networks of those recipients who route incoming faxes into their electronic mail systems."[81] These case authorities are consistent with the congressional "purpose" in passing the TCPA: to "facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers."[82]

As to "established Commission policy," the 2003 Order and the WestFax Order clearly establish the Commission's policy that faxes that are received by "fax servers" and then forwarded to the user's email "inbox" by "commercial facsimile services" are sent to "telephone facsimile machines."[83] Outside the TCPA context, the Commission has refused to exempt "electronic facsimile (e-fax)" services from universal service contributions, reasoning that e-fax services "are receiving the benefit of accessing the public network and therefore assessing universal service contributions on these entities is appropriate."[84]

---

[80] 757 F.3d 540, 544 (6th Cir. 2014) (emphasis added).

[81] 323 F.3d 649, 655 (8th Cir. 2003).

[82] S. Rep. 102-178 at 1, 1991 U.S.C.C.A.N. 1968, 1968.

[83] 2003 Order ¶ 199, n.736; WestFax Order ¶ 9.

[84] *In re High-Cost Universal Serv. Support Fed.-State Joint Bd. on Universal Serv. Lifeline & Link Up Universal Serv. Contribution Methodology Numbering Res. Optimization Implementation of the Local Competition Provisions in the Telecommc'ns Act of 1996 Developing A Unified Intercarrier Comp. Regime Intercarrier Comp. for Isp-Bound Traffic Ip-Enabled Servs.*, 24 FCC Rcd. 6475, 6691 (Nov. 5, 2008)

In sum, the Bureau Order conflicts with the statutory definition of "telephone facsimile machine," as applied in established Commission precedent and case precedent, and it should be reversed.

## II. The Bureau Order makes erroneous findings as to important or material questions of fact regarding whether a "fax server" is a "telephone facsimile machine" and whether consumers using "online fax services" are injured by junk faxes.

The Bureau Order is based on an "erroneous finding as to an important or material fact" warranting Commission review under Rule 1.115(b)(2)(iv). Specifically, the Bureau Order hinges on the "understand[ing]" that "an online fax service cannot itself print a fax—the user of an online fax service must connect his or her own equipment in order to do so."[85] Based on that "understanding," the Bureau Order concludes that "[a]s such, an online fax service is plainly not 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper,'" and is therefore not a "telephone facsimile machine" under 47 U.S.C. § 227(a)(3).[86]

The Bureau Order cites nothing in the record for its "understanding" that "an online fax service cannot itself print a fax," and this understanding is erroneous. As noted by Robert Biggerstaff, the only expert in the relevant technology to comment on the Amerifactors Petition, every "fax server" used by an "online fax service" has "the capacity to print," given that "1) nearly all fax servers are constructed from standard server parts that include printing ports (serial, parallel, USB, infrared, etc.); 2) they are (by definition) connected to networks and thus can print to network-attached printers; and 3) because they (by definition) can send e-mails with the fax images attached, they can utilize e-mail to printer functions (such as Hewlet Packard

[85] Bureau Order ¶ 11.

[86] *Id.*

ePrint) to print."[87] Contrary to the implication of the Bureau Order, this fact does not implicate the issue of equipment that may lack the "present capacity" to perform a task but could "potentially" gain that capacity through "modifications such as software changes," as the D.C. Circuit considered in *ACA Int'l v. FCC*.[88] Rather, in this instance, the "equipment" that the "online fax service" uses to receives a fax transmission and convert it to email plainly has the present, actual "capacity" to print a fax, without modifications such as software changes.[89]

Ultimately, the core assertion that "an online fax service cannot itself print a fax"[90] does not pass basic logical scrutiny. Such services must be able to print faxes, if for no other reason than when testing their systems or performing maintenance to confirm received faxes are being processed properly—such as comparing original "test" fax images to those received by their service and to ensure readability and formatting of the image files their service creates. In conclusion, the Bureau Order is based on an erroneous factual finding that all "fax servers" lack the capacity to print a fax, and it should be reversed.

## III. The Bureau Order should be changed to deny the Amerifactors Petition and reaffirm the conclusion of the 2003 Order and the WestFax Order that a "fax server" is a "telephone facsimile machine" and that users of "online fax services" are injured by junk faxes.

Pursuant to Commission Rule 1.115(b)(3), Career Counseling states that the "respects in which the action taken by the designated authority should be changed" are as follows:

(1) The Order should deny the Amerifactors Petition and reaffirm the conclusion of the 2003 Order and the WestFax Order that a fax that is received by a "fax server" is sent to a

---

[87] Biggerstaff Comments at 4–5.

[88] 885 F.3d 687, 693 (D.C. Cir. 2018).

[89] Biggerstaff Comments at 4–5.

[90] Bureau Order ¶ 11.

"telephone facsimile machine" as defined by 47 U.S.C. § 227(a)(3), regardless of whether the fax is converted to another format and emailed to the recipient as part of an "online fax service";[91]

(2) The Order should reaffirm that, even where a fax is received by a fax server and forwarded by email and is not automatically printed, it is nevertheless covered by the TCPA, where Congress was also concerned with the "interference, interruptions, and expense" to businesses and interstate commerce in general caused by junk faxes, and such faxes "may increase labor costs for businesses, whose employees must monitor faxes to determine which ones are junk faxes and which are related to their company's business."[92]

## IV. In the alternative, the Commission should vacate the Bureau Order and remand for an inquiry into whether the "equipment" used by "online fax services" has the requisite "capacity" to be a "telephone facsimile machine."

As discussed in Section II, above, the Bureau's "understand[ing]" that "an online fax service cannot itself print a fax"[93] is erroneous. The "equipment" that the online fax service uses to receives a fax transmission and convert it to email absolutely has the capacity to print the fax.

At the very least, however, the Commission should vacate the Bureau Order and remand to the Bureau to conduct some minimal level of fact-finding on this issue. The Bureau Order cites nothing in the record for its mistaken "understanding," and it would be a simple matter to investigate whether the "equipment" used by "online fax services" has the requisite "capacity." As Robert Biggerstaff relayed in his comments, such an inquiry would undoubtedly confirm that any "equipment" that has the capacity to perform the functions of an online fax service also has the capacity to print a fax.[94]

---

[91] 2003 Order ¶ 199 & n.736; WestFax Order ¶ 9.

[92] *Id.* ¶¶ 199–202.

[93] Bureau Order ¶ 11.

[94] Biggerstaff Comments at 4–5.

**Conclusion**

For the foregoing reasons, the Commission should reverse or vacate the Bureau Order and reaffirm its rulings in the 2003 Order and the WestFax Order that a fax sent to a "fax server" is sent to a "telephone facsimile machine" as defined by 47 U.S.C. § 227(a)(3), regardless of whether the fax is then converted to another format and accessed by the end-user through an "online fax service."

Dated: January 8, 2020

Respectfully submitted,

By: s/Glenn L. Hara

Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2020, I caused the foregoing Application for Review to be served on the parties listed on the attached service list via U.S. first-class mail, postage prepaid.

s/Glenn L. Hara