TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
ZACH ZHENHE TAN (CA SBN 329303)
ZTan@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone:    415.268.7000
Facsimile:    415.268.7522

JOSEPH R. PALMORE (DC BAR 465811)
(appearance *pro hac vice*)
JPalmore@mofo.com
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Telephone:    202.887.6940
Facsimile:    202.887.0763

*Counsel for Defendants*
MCKESSON TECHNOLOGIES INC., and
MCKESSON CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC, INC., and MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC., individually and as the representatives of a class of similarly-situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>MCKESSON CORPORATION, MCKESSON TECHNOLOGIES INC., and DOES 1-10,<br><br>Defendants. | Case No.    4:13-cv-02219-HSG<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>Date: January 22, 2026<br>Time: 2:00 p.m.<br>Courtroom: 2, 4th Floor<br><br>Hon. Haywood S. Gilliam, Jr. |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES .........................................................................................................ii

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND ..............................................................................................................1

    A.      This Court's Prior Decertification Of The Same Proposed Class..........................1

    B.      The Supreme Court's Review And Remand...........................................................3

    C.      Plaintiffs' Second Renewed Class Certification Motion .......................................3

III.    ISSUE TO BE DECIDED ...............................................................................................4

IV.     ARGUMENT ...................................................................................................................4

    A.      Class Members Who Received Faxes Via An Online Fax Service
    Do Not Have A Valid TCPA Claim.......................................................................4

        1.      The TCPA's Plain Text Does Not Cover Online Fax
        Services. .................................................................................................4

        2.      Legislative History and Congressional Purpose Reinforce
        The Statute's Plain Meaning. .................................................................9

        3.      Persuasive Agency Guidance Further Supports The Same
        Conclusion. ...........................................................................................11

        4.      Plaintiffs' Supposed "Expert Testimony" Is Irrelevant. ...................14

    B.      Class Members Who Received Faxes Via An Online Fax Services
    Do Not, Without Additional Individual Factual Showings, Have
    Article III Standing .............................................................................................16

        1.      The Mere Receipt Of A Fax In The Form Of An Email Does
        Not Constitute Harm As Envisioned By Congress. .................................17

        2.      The Mere Receipt Of A Fax In The Form Of An Email Does
        Not Constitute Harm With Any Historical Common Law
        Analog. ..................................................................................................18

V.      CONCLUSION ..............................................................................................................20

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-cv-02219-HSG
MF-364496693

i

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Am. States Ins. Co. v. Cap. Assocs. of Jackson Cnty., Inc.*,
4
    392 F.3d 939 (7th Cir. 2004) ................................................................................ 20

5

*Astro Cos. v. WestFax Inc.*,
    No. 1:23-cv-02328-SKC-CYC, 2025 WL 474931 (D. Colo. Feb. 12, 2025) ...................... 6, 8
6

7

*Bare v. Barr*,
    975 F.3d 952 (9th Cir. 2020) .................................................................................. 5

8

*Bond v. United States*,
9
    572 U.S. 844 (2014) ............................................................................................ 7

10

*Bureau of Alcohol, Tobacco & Firearms v. FLRA*,
    464 U.S. 89 .................................................................................................... 14
11

12

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*,
    91 F.4th 202 (4th Cir. 2024) ................................................................................ 6

13

*CTS Corp. v. Waldburger*,
14
    573 U.S. 1 (2014) ............................................................................................. 10

15

*Daisy, Inc. v. Mobile Mini, Inc.*,
    489 F. Supp. 3d 1287 (M.D. Fla. 2020) ................................................................. 20
16

17

*Drazen v. Pinto*,
    74 F.4th 1336 (11th Cir. 2023) ............................................................................ 19

18

*Facebook, Inc. v. Duguid*,
19
    592 U.S. 395 (2021) ..................................................................................... 10, 11

20

*FCC v. AT&T Inc.*,
    562 U.S. 397 (2011) ......................................................................................... 20
21

22

*Fischbein v. IQVIA, Inc.*,
    No. 2:19-cv-05365-NIQA, 2025 WL 1616793 (E.D. Pa. June 5, 2025) ........................... 6

23

*Gadelhak v. AT&T Servs., Inc.*,
24
    950 F.3d 458 (7th Cir. 2020) .......................................................................... 16, 19

25

*GemCap Lending, LLC v. Quarles & Brady, LLP*,
    269 F. Supp. 3d 1007 (C.D. Cal. Sept. 13, 2017) ..................................................... 14
26

27

*Gordon v. Virtumundo, Inc.*
    575 F.3d 1040 (9th Cir. 2009) ............................................................................. 18

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-cv-02219-HSG
MF-364496693

ii

*Honeycutt v. United States*,
    581 U.S. 443 (2017) ................................................................................................ 10

*Int'l Partners for Ethical Care Inc v. Ferguson*,
    146 F.4th 841 (9th Cir. 2025) .................................................................................. 19

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ................................................................................................ 14

*Lopez v. Garland*,
    116 F.4th 1032 (9th Cir. 2024) ............................................................................... 12

*Lyngaas v. Curaden AG*,
    992 F.3d 412 (6th Cir 2021) ............................................................................. 8, 9, 12

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025) ............................................................................................ 3, 11

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ............................................................................... 7, 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ................................................................................... 16

*Pakootas v. Teck Cominco Metals, Ltd.*,
    830 F.3d 975 (9th Cir. 2016) .................................................................................. 10

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
    781 F.3d 1245 (11th Cir. 2015) .............................................................................. 18

*Panzarella v. Navient Sols., Inc.*,
    37 F.4th 867 (3d Cir. 2022) ...................................................................................... 7

*Pennsylvania v. New Jersey*,
    426 U.S. 660 (1976) ................................................................................................ 20

*Pinal Creek Grp. v. Newmont Mining Corp.*,
    352 F. Supp. 2d 1037 (D. Ariz. 2005) ................................................................... 14

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) .................................................................................................. 7

*Schroeder v. United States*,
    793 F.3d 1080 (9th Cir. 2015) .................................................................................. 9

*Sharfman v. Precision Imaging St. Augustine LLC*,
    No. 6:22-cv-642-WWB-DCI, 2024 WL 4460209 (M.D. Fla. Aug. 2, 2024) ......................... 20

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ........................................................................................... 12, 14

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-cv-02219-HSG
MF-364496693

iii

*Stiner v. Brookdale Senior Living, Inc.*,
   665 F. Supp. 3d 1150 (N.D. Cal. 2023) .................................................................. 16

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .......................................................................................... 16, 18

*True Health Chiropractic, Inc. v. McKesson Corp.*,
   2023 WL 7015279 (9th Cir. Oct. 25, 2023) .............................................................. 3

*True Health Chiropractic, Inc. v. McKesson Corp.*,
   896 F.3d 923 (9th Cir. 2018) ................................................................................... 2

*United States v. Pacheco*,
   977 F.3d 764 (9th Cir. 2020) ................................................................................... 4

*Van Patten v. Vertical Fitness Group, LLC*,
   847 F.3d 1037 (9th Cir. 2017) .................................................................... 17, 18, 19

*Yates v. United States*,
   574 U.S. 528 (2015) ................................................................................................ 7

*Zellmer v. Meta Platforms, Inc.*,
   104 F.4th 1117 (9th Cir. 2024) ................................................................................ 7

**Regulatory Documents**

*In re Amerifactors Financial Group, LLC Petition for Expedited*
   *Declaratory Ruling*,
   34 F.C.C. Rcd. 11950 (2019) ....................................................................... 2, 12, 13, 14

*In re Rules & Regulations Implementing the Telephone Consumer Protection*
   *Act of 1991*,
   18 F.C.C. Rcd. 14014 (2003) ............................................................................ 12, 13

*In re WestFax, Inc. Petition for Consideration & Clarification*,
   30 F.C.C. Rcd. 8620 (2015) .................................................................................. 13

**Statutes & Rules**

15 U.S.C. § 7706 .......................................................................................................... 18

47 U.S.C. § 227 ............................................................... 1, 4, 5, 6, 7, 10, 11, 15, 17, 20

CAN-SPAM Act of 2003, 15 U.S.C. §§ 7701-7713 .................................................... 18

Fed. R. Civ. P. 23 .................................................................................. 1, 2, 4, 15, 16

Telephone Consumer Protection Act of 1991, Pub. L. 102-243 ................................ 17

**Legislative Materials**

H.R. Rep. No. 102-317 (1991) .............................................................................. 9, 10, 17

**Other Authorities**

*Equipment*, Webster's Ninth New Collegiate Dictionary (1991) ..................................... 5

*Machine*, Webster's Ninth New Collegiate Dictionary (1991) ........................................ 5

Restatement (Second) of Torts § 652I (A.L.I. 1977) ..................................................... 20

William L. Prosser, Law of Torts § 112 (3d ed. 1964) ................................................. 20

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-cv-02219-HSG
MF-364496693

v

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

After more than a decade of litigation, including a bench trial, final judgment, two appeals to the Ninth Circuit, and Supreme Court review, this case returns to this Court on the single question of whether to certify a broad class of "[a]ll persons or entities" who received certain faxed advertisements regardless of how they did so.  Doc. 573 at i.  Plaintiffs do not challenge this Court's prior findings that (1) they have no valid methodology for showing "via class-wide, common proof that each purported class member received the faxes at issue via a means other than an 'online fax service,'" (2) the absence of such proof means that, if relevant, "the individualized question of whether each class member received the faxes at issue on a stand-alone fax machine predominates over common questions," and (3) the same failure renders class action treatment "not the superior method of adjudication."  Doc. 487 at 3, 5, 6.

Instead, Plaintiffs' motion is based solely on the premise that they no longer must provide such class-wide proof because the Telephone Consumer Protection Act (TCPA) sweeps in all claims regardless of whether a fax was received on a stand-alone fax machine or through an online fax service.  But as multiple courts and the Federal Communications Commission have concluded, the TCPA's text, structure, and legislative history establish that it prohibits only unsolicited faxes "sen[t] to a telephone facsimile machine"—a defined term that does not include online fax services.  47 U.S.C. § 227(b)(1)(C).  And even if it did, those receiving faxes merely as email attachments or via an online portal do not, without more, have Article III standing.

For those two independent reasons, Plaintiffs' undisputed failure to provide class-wide proof of how different class members received the challenged faxes leads to the same conclusion this Court reached before remand:  Plaintiffs cannot establish Rule 23(b)(3)'s requirements of predominance and superiority.  Plaintiffs' motion should be denied.

## II.    BACKGROUND

### A.    This Court's Prior Decertification Of The Same Proposed Class

In 2014, Plaintiffs McLaughlin and True Health, both business entities, sued McKesson, alleging that it violated the TCPA by sending them unsolicited fax advertisements.  Doc. 69.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-CV-02219-HSG
MF-364496693

1

Plaintiffs sought to represent a class of all persons or entities that had received such faxes between September 2009 and May 2010.

In 2016, this Court denied class certification on the ground that Plaintiffs failed to establish predominance because of individualized issues of consent. Doc. 260. The Ninth Circuit partially reversed, holding that subclasses could be considered based on the different methods by which McKesson obtained consent to send faxes. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932-33 (9th Cir. 2018).

In 2019, this Court granted Plaintiffs' first renewed motion for class certification as to an "Exhibit A" subclass limited to those whom McKesson argued gave consent in specific ways. Doc. 331. That class included "thousands of class members" that included both real persons and business entities. Doc. 292. But later that year, the FCC issued a declaratory ruling stating that an "online fax service" "is not a 'telephone facsimile machine' and thus falls outside the scope of the statutory prohibition" on unsolicited faxes. *In re Amerifactors Fin. Grp., LLC Pet. for Expedited Declaratory Ruling*, 34 F.C.C. Rcd. 11950, ¶ 3 (2019). McKesson then moved to decertify, arguing that individual inquiries would be needed to separate class members who received faxes on stand-alone telephone facsimile machines from those who received them via online fax services. Doc. 362.

In 2020, this Court concluded it was bound by *Amerifactors*, such that those who received a fax on an online fax service had no cause of action. Doc. 393. This Court initially found decertification premature, instead splitting the class into a "Stand-Alone Fax Machine Class" and an "Online Fax Services Class." *Id.* The Court permitted Plaintiffs to conduct a "subpoena process" to identify those who received faxes via an online fax service and those who did not. *Id.* This Court later entered summary judgment against the "Online Fax Services Class." Doc. 418.

In 2021, after Plaintiffs had engaged in a months-long subpoena process, this Court decertified the class, concluding that Plaintiffs' promised methodology failed as a class-wide means of identifying those who received a fax via an online fax service. Doc. 487. As the Court explained, the lack of such a class-wide methodology to distinguish between those class members who had a valid TCPA claim and those who did not meant that Plaintiffs failed to satisfy Rule

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-CV-02219-HSG
MF-364496693

2

23(b)(3)'s predominance and superiority requirements.

With respect to the remaining individual claims of the two named Plaintiffs only, McKesson stipulated that it sent faxes to these two Plaintiffs, that the Plaintiffs received them on stand-alone fax machines, and that the faxes received by Plaintiffs were "advertisements." Doc. 491. Based on the stipulation and after a bench trial, this Court found McKesson individually liable to Plaintiffs but concluded that Plaintiffs were not entitled to treble damages because they had not proved McKesson "willfully or knowingly" violated the TCPA. Doc. 536.

On appeal, the Ninth Circuit affirmed, finding that this Court did not abuse its discretion in decertifying the class and that it correctly granted summary judgement to McKesson on the Online Fax Services class. *True Health Chiropractic, Inc. v. McKesson Corp.*, 2023 WL 7015279 (9th Cir. Oct. 25, 2023). The Ninth Circuit also affirmed this Court's decisions regarding McKesson's consent defense and denying Plaintiffs' request for treble damages. *Id.*

### B.    The Supreme Court's Review And Remand

Plaintiff McLaughlin then petitioned for certiorari on a single question: "Whether the Hobbs Act required the district court in this case to accept the FCC's legal interpretation of the Telephone Consumer Protection Act." Petition for Writ of Certiorari at i, *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) (No. 23-1226). The Supreme Court granted review and reversed on that question. While holding that lower courts adjudicating civil cases are "not bound by the FCC's interpretation of the TCPA," the Court expressed no view on the proper interpretation of the TCPA, leaving "for remand" the question of whether, "under ordinary principles of statutory interpretation," "the FCC's interpretation of the TCPA is correct." *McLaughlin*, 606 U.S. at 150-51, 168-69.

### C.    Plaintiffs' Second Renewed Class Certification Motion

Now back on remand, Plaintiffs seek to recertify the same "Exhibit A" class this Court previously decertified in 2021. Doc. 573. Notably, Plaintiffs do not attempt to remedy the recognized deficiencies with their earlier proposed subpoena methodology, much less to provide any other class-wide mechanism for identifying class members who received faxed advertisements via an online fax service. Plaintiffs also do not contest this Court's prior findings

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-cv-02219-HSG
MF-364496693

3

that—assuming such class members do not hold a valid TCPA claim—their failure to provide a class-wide methodology to identify them means that Plaintiffs fail to satisfy Rule 23(b)(3)'s predominance and superiority requirements.  Instead, the sole basis for Plaintiffs' renewed motion is the argument that the TCPA prohibits all unsolicited faxes, including those received via an online fax service.  Under that view, Plaintiffs contend, they need not sort class members by the technology used to receive faxes because all have TCPA claims regardless.

## III.    ISSUE TO BE DECIDED

Whether Plaintiffs fail to satisfy Rule 23(b)(3)'s predominance and superiority requirements because their undisputed failure to propose a valid, class-wide methodology for identifying and excluding class members who received faxes via an online fax service means that this Court would have to adjudicate individualized questions of whether each class member has (i) a valid TCPA claim and (ii) Article III standing.

## IV.    ARGUMENT

### A.    Class Members Who Received Faxes Via An Online Fax Service Do Not Have A Valid TCPA Claim.

The plain text of the TCPA forecloses Plaintiffs' expansive theory that the TCPA prohibits faxes regardless of how they are received, including those sent to an online fax service. The TCPA's legislative history and persuasive agency guidance support the same conclusion. This Court's decertification decision is as correct now as it was before remand.

#### 1.    The TCPA's Plain Text Does Not Cover Online Fax Services.

Statutory interpretation begins "with the text of the statute and with the presumption that Congress intended that the words used be given their plain and ordinary meaning."  *United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020).  Mutually reinforcing aspects of the TCPA's text make clear that the statute does not cover faxes sent to online fax services.

Beginning with the liability-imposing provision at issue here, 47 U.S.C. § 227(b)(1)(C) makes it unlawful "to use any [1] telephone facsimile machine, [2] computer, or [3] other device to send, to a [1] telephone facsimile machine, an unsolicited advertisement."  (Bracketed numbering added).  This text sets out a clear distinction between a "telephone facsimile machine"

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-CV-02219-HSG
MF-364496693

4

on one hand, and a "computer" or "other device" on the other. *Id.* Crucially, while liability can be triggered when an advertisement is sent *from* any of the three "device[s]," Congress proscribed unsolicited faxed advertisements sent only *to* a "telephone facsimile machine." *Id.* Congress's careful distinction among these terms is confirmed by similar references to "telephone facsimile machine[s]," "computer[s]," and "other electronic device[s]"—but with different connecting terms—to capture different prohibited acts elsewhere in the statute. *See id.* § 227(d)(1)(B) (prohibiting the "use [of] a computer or other electronic device to send any message via a telephone facsimile machine" unless certain identification requirements are met). Plaintiffs' interpretation, under which "telephone facsimile machine" can mean the same thing as a "computer" or "other device," would wipe away the TCPA's distinction between these terms, violating the "well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words." *Bare v. Barr*, 975 F.3d 952, 968 (9th Cir. 2020).

Read in this context, the TCPA's statutory definition of a "telephone facsimile machine" confirms that it cannot mean an online fax service. It defines "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3). Both parts of that definition match a traditional fax machine from the time of the provision's 1991 adoption—a discrete physical machine using a regular telephone line to either (A) scan and send or (B) receive and print paper documents. It does not describe an *online* fax *service*—which is neither a "machine" nor "equipment" that uses a "regular telephone line," but a "'cloud-based service'" that operates via the internet. *Machine*, Webster's Ninth New Collegiate Dictionary 713 (1991) ("a mechanically, electrically, or electronically operated device for performing a task"); *Equipment*, *id.* at 421("*physical* resources serving to equip a person or thing" (emphasis added)); Doc. 393 at 7. And if any further confirmation were needed, it is provided by another TCPA provision directing the FCC to impose specific requirements on all "telephone facsimile machines" that were "*manufactured*" after a specified date. 47 U.S.C.

Defendants' Opposition to Plaintiffs' Second Renewed Motion for Class Certification
Case No. 4:13-cv-02219-HSG
MF-364496693

5

§ 227(d)(2) (emphasis added).  A traditional stand-alone fax machine is "manufactured" (and can be subject to manufacturing standards); an online fax *service* is not.

Addressing this "plain statutory language," the Fourth Circuit has squarely held that the TCPA does not prohibit the sending of advertisements to "online fax services"—which it defined as a "cloud-based service" that "hold[s] inbound faxes in digital form on a cloud-based server, where the user accesses the document via the online portal or via an email attachment." *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 209-10 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 2845 (2025).  Relying both on § 227(b)(1)(C)'s distinction between a "telephone facsimile machine" and "computer" or "other device" and § 227(a)(3)'s statutory definition of a "telephone facsimile machine," the Fourth Circuit reasoned that "online fax services" cannot constitute "telephone facsimile machine[s]" because they "receive faxes over the Internet and cannot themselves print any faxes." *Id.* at 210; *accord Fischbein v. IQVIA, Inc.*, No. 2:19-cv-05365-NIQA, 2025 WL 1616793, at *4-6 (E.D. Pa. June 5, 2025) (applying the TCPA to cover online fax services "stretches the plain meaning of the statute"); *Astro Cos. v. WestFax Inc.*, No. 1:23-cv-02328-SKC-CYC, 2025 WL 474931, at *2-4 (D. Colo. Feb. 12, 2025) ("based on a plain reading of the statutory language, the TCPA does not apply to online fax services").

Plaintiffs never address the TCPA's clear distinction between a "telephone facsimile machine" and a "computer" or "other device," nor do they mention the Fourth Circuit's persuasive decision on the precise question presented.  Instead, Plaintiffs skip straight to two isolated "key words" from the statutory definition of a "telephone facsimile machine," namely "equipment" and "capacity."  Doc. 573 at 5.  According to Plaintiffs, the term "equipment" must be read to "consist of multiple devices" and "'several discrete objects,'" and the term "capacity" means the theoretical "ab[ility]" to perform stated functions.  *Id.* at 5-8 (emphasis omitted).  And while Plaintiffs never fully explain why those component meanings must then sweep in online fax services, their implied assertion appears to be that any computer using an online fax service, or perhaps just the online fax service itself, necessarily falls into the definition of a "telephone facsimile machine" because it can somehow be connected to *other* devices and thus gain the theoretical ability to perform the enumerated functions of a "telephone facsimile machine."  For

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-CV-02219-HSG
MF-364496693

6

example, Plaintiffs emphasize Defendants' expert's acknowledgement that an "online fax service" may be able to connect to a printer remotely via an internet connection, framing this as a concession that an online fax service thus has the "capacity" to "print." *Id.* at 8-9. But that only highlights the mistaken breadth of their asserted interpretation, under which every device with an internet connection (and that thus has the theoretical ability to remotely connect to a printer and a fax modem) is a "telephone facsimile machine."

Even if the terms "equipment" and "capacity" could in isolation be read as Plaintiffs suggest, the meaning of statutory language "does not turn solely on dictionary definitions of its component words." *Yates v. United States*, 574 U.S. 528, 537 (2015). Instead, language must be understood in "the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Thus, even where a statute defines a given term, "'a fair reading'" requires consideration of "the ordinary meaning of [the] statutorily defined term," such that "the term's ordinary meaning informs its statutory meaning." *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1123-24 (9th Cir. 2024) (quoting *Bond v. United States*, 572 U.S. 844, 861 (2014)). Here, stretching the terms "equipment" and "capacity" to include not just the specific device an advertisement is sent to, but also any other remotely connected devices to which still other devices might be connected makes zero sense in the context of defining a "telephone facsimile machine." 47 U.S.C. § 227(a)(3). The term "machine" ordinarily refers to a discrete physical device, *supra* 5, and the TCPA distinguishes a "telephone facsimile machine" from a "computer" and "other device." 47 U.S.C. § 227(b)(1)(C).

Indeed, it is telling that Plaintiffs' support for interpreting "equipment" to mean "'several discrete objects'" is *Panzarella v. Navient Solutions, Inc.*, 37 F.4th 867 (3d Cir. 2022), a case interpreting the TCPA's definition of an "automatic telephone dialing *system*," a term which (unlike "machine") obviously extends more broadly. *See* 47 U.S.C. § 227(a)(1). Notably, the Third Circuit in *Panzarella* expressly focused on the import of that term "system" in reaching its conclusion. 37 F.4th at 873-74. Plaintiffs' reliance on *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012), which also interpreted the definition of an "automatic telephone dialing system," is even less persuasive. There, the Ninth Circuit merely concluded

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-CV-02219-HSG
MF-364496693

7

that the term "capacity" refers to a device's technical ability to perform certain functions— without a requirement that it "present[ly]" performed those functions. *Id.* at 1043. But here, Plaintiffs seek to go steps further, arguing that a device—despite not possessing the relevant technical "capacity" itself—can still have that "capacity" as long as it can be remotely connected to other devices that do. Again, that would erase Congress's careful delineation among a "telephone facsimile machine," a "computer," and any "other device." *Supra* 4-5.

In support of its expansive interpretation of "telephone facsimile machine," Plaintiffs also rely on the Sixth Circuit's decision in *Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir 2021). But there, the Sixth Circuit avoided the question of whether "online fax services" in general fell within the scope of the TCPA and instead addressed the distinct question of whether a TCPA claim is categorically "not actionable if the unsolicited advertisement is received by any *device . . . other than a traditional fax machine*." *Id.* at 425 (emphasis added); *see Astro*, 2025 WL 474931 at *2 ("The Sixth Circuit was not, as here, evaluating whether an online fax *service* was entitled to protection under the TCPA." (original emphasis)). Answering that question, the court said a "telephone facsimile machine" "encompasses more than traditional fax machines that automatically print a fax over a telephone line" and can extend to a "computer" that is "connected to a printer and to a modem capable of receiving faxes, which as a whole is fully capable of receiving electronic signals over a telephone line and printing out a fax." *Lyngaas*, 992 F.3d at 426-27; *but see id.* at 445-46 (Thapar J., concurring in part and dissenting in part) (reasoning that the majority's interpretation "conflicts with the statutory definition, the syntax of the relevant provision, and the common understanding of both" a "computer" and a "telephone facsimile machine").

Even if the Sixth Circuit were right that "equipment" can extend to a system of connected devices, its reasoning still does not support Plaintiffs' assertion that the TCPA covers faxes sent to online fax services. Crucially, the Sixth Circuit based its conclusion on its empirical assessment of a "high probability" that a computer receiving an "efax" would be physically connected to a printer and a fax modem. *Id.* at 426-27 (majority opinion). Indeed, the Sixth Circuit equated such a specific "computer set-up" to a "traditional fax machine . . . composed of a

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-cv-02219-HSG
MF-364496693

8

modem, scanner, and printer." *Id.* at 427. But here, Plaintiffs do not accept any limitation on the class to those that received faxes on those specific computer set-ups—and they provide no valid class-wide methodology for identifying this hypothetical subset of class members. Instead, in addition to those who received a fax on a traditional fax machine, Plaintiffs' proposed class would include anyone who received a fax *regardless* of what kind of device or service the fax was received on, so long as that device or service has an internet connection. Thus, their theory of liability exceeds the bounds of even the Sixth Circuit's broad interpretation.

### 2. Legislative History and Congressional Purpose Reinforce The Statute's Plain Meaning.

While the TCPA's plain text is sufficient to settle the matter, the TCPA's legislative history further compels the conclusion that the statute does not prohibit sending advertisements to online fax services. *See Schroeder v. United States*, 793 F.3d 1080, 1085 (9th Cir. 2015) ("When a statute is susceptible to two or more meanings," courts "may consider legislative history."). The House report singles out "the facsimile machine" that, at the time, had "become a primary tool for business to relay instantaneously written communications and transactions," and explains in detail how the TCPA was designed to guard against problems unique to traditional "facsimile advertising." H.R. Rep. No. 102-317, at 10 (1991). Because "[f]acsimile machines are designed to accept, process, and print *all* messages which arrive over their dedicated lines," fax advertising "takes advantage of this basic design by sending advertisements to available fax numbers, knowing that it *will be* received and *printed* by the recipient's machine." *Id.* (emphases added). Congress identified "two reasons" why this specific "type of telemarketing is problematic": "First, it shifts . . . the costs of advertising from the sender to the recipient," specifically the "cost associated with the use of the facsimile machine and, the cost of the expensive paper used to print out facsimile messages." *Id.* at 10, 25. Second, such faxes harm the recipient by "occup[ying] the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." *Id.* at 10; *see id.* at 25 ("[W]hen a facsimile machine is receiving a fax, it may require several minutes or more to process and print the advertisement.").

Congress's identification of these two specific harms explains why the TCPA's plain text

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-CV-02219-HSG
MF-364496693

9

1   would limit liability to faxes sent to a traditional "telephone facsimile machine," and *not* to

2   "computer[s]," or "other device[s]" that lack the same technological vulnerabilities.  47 U.S.C.

3   § 227(b)(1)(C).  And it also explains why Congress chose to define a "telephone facsimile

4   machine" in line with the common understanding of how those machines operated at the time.

5   After all, Congress itself explained why it was the "basic design" of the traditional facsimile

6   machine that gave rise to the problems that the TCPA was targeting.  H.R. Rep. No. 102-317, at

7   10.  In contrast, online fax services allow users to access faxes as they do email or by

8   affirmatively logging on to an online portal, avoiding the involuntary printing and phone-line

9   blocking associated with traditional fax advertising.  Such services thus do not implicate the

10  concerns underlying the TCPA.

11          Disregarding Congress's express delineation of these specific harms, Plaintiffs assert more

12  generally that because the TCPA is a "remedial" statute, it must be construed according to the

13  broad "purpose" of "protect[ing]" or "benefit[ing]" consumers.  Doc. 573 at 10-11.  Similarly,

14  Plaintiffs argue that broadly interpreting the term "telephone facsimile machine" would help

15  remedy "'more generalized harms,'" such as "preventing wasted employee time monitoring faxes

16  received by email."  *Id.* at 18.  But a statute's general remedial purpose does not give courts

17  "license . . . to construe a statute in a way that negates its plain text" and defies "express[]

18  limit[s]" set by Congress.  *Honeycutt v. United States*, 581 U.S. 443, 454 n.2 (2017); *see CTS

19  Corp. v. Waldburger*, 573 U.S. 1, 12 (2014) ("proposition that remedial statutes should be

20  interpreted in a liberal manner" not a "substitute for a conclusion grounded in the statute's text

21  and structure").  And even in cases, unlike here, where there is *some* ambiguity in the statutory

22  text, the Ninth Circuit has rejected the use of this general remedial-construction principle as a

23  way of disregarding a proper "textual analysis" and the most "persuasive" interpretation of the

24  statute.  *Pakootas v. Teck Cominco Metals, Ltd.*, 830 F.3d 975, 985-86 (9th Cir. 2016).

25          *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), which addressed the same "remedial"

26  statute at issue here, is particularly instructive.  There, the Supreme Court addressed whether to

27  interpret the TCPA's definition of "automatic telephone dialing system" to encompass all

28  "equipment" with the capacity to "'store' and dial telephone numbers," or whether—as the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-CV-02219-HSG
MF-364496693

10

1    statute's text indicated—the equipment must do so through the specific use of a "random or

2    sequential number generator." *Id.* at 398 (quoting 47 U.S.C. § 227(a)(1)).  While dispensing with

3    that additional requirement would have benefitted plaintiff-consumers, the Supreme Court

4    nevertheless rejected that broader interpretation.  Instead, looking to the same legislative history

5    documents, the Court reasoned that the relevant "prohibitions" relating to the use of autodialed

6    phone calls "target a unique type of telemarking equipment that risks dialing emergency lines

7    randomly or tying up all the sequentially numbered lines at a single entity." *Id.* at 399-400, 405.

8    "Expanding the definition of an autodialer," as plaintiffs there proposed, "would take a chainsaw

9    to these nuanced problems when Congress meant to use a scalpel." *Id.* at 405.  And while

10   plaintiffs asserted that their broader definition would adhere to Congress's "broad[] concern[s]

11   about intrusive telemarketing practices," the Court recognized that "Congress expressly found

12   that the use of random or sequential number generator technology caused unique problems" and

13   "[u]nsurprisingly, then," Congress adopted a definition of autodialer that covered that "narrow"

14   concern. *Id.* at 408.

15        That same logic demonstrates why this Court should reject Plaintiffs' reliance on broad

16   remedial principles and assertion of generalized harms.  As the TCPA's legislative history makes

17   clear, Congress was concerned with two problems uniquely associated with traditional fax

18   advertising—the shifting of printing costs and the blocking of transmission over regular telephone

19   lines.  And that is precisely why the plain text of the statute limits liability to advertisements sent

20   to "telephone facsimile machines"—which operate via "telephone line" and have their own

21   independent "capacity" to print.  47 U.S.C. § 227(a)(3), (b)(1)(C).  Expanding the definition of a

22   telephone facsimile machine in an attempt to remedy Plaintiffs' "'more generalized concerns'"

23   with all unsolicited advertisements would take the same chainsaw to these nuanced problems that

24   the Supreme Court warned against in *Duguid*.  Doc. 573 at 18.

25             **3.    Persuasive Agency Guidance Further Supports The Same Conclusion.**

26        The Supreme Court directed this court to "interpret the statute as courts traditionally do

27   under ordinary principles of statutory interpretation, affording appropriate respect to the agency's

28   interpretation." *McLaughlin*, 606 U.S. at 168.  That agency, the FCC, agrees that online fax

services are not "telephone facsimile machines" under the statute, *Amerifactors*, 34 F.C.C. Rcd. 11950, ¶ 3, further confirming what the statutory text makes plain.

Plaintiffs accept that such guidance can have the "power to persuade" based on factors such as the "the thoroughness evident in its consideration, the validity of is reasoning, [and] its consistency with earlier and later pronouncements." *Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); Doc. 573 at 11. Plaintiffs also recognize that the FCC has issued three rulings on changing fax technology, culminating in the 2019 *Amerifactors* decision holding that online fax services are not covered by the TCPA. But Plaintiffs then ask this Court to ignore that ruling entirely on the premise that it is inconsistent with FCC rulings in 2003 and 2015. Doc. 573 at 11-18. Plaintiffs cannot have it both ways: the FCC's three orders are either consistent (and thus persuasive) or inconsistent (and thus not). A full review of the FCC's orders establishes that it is all three orders, read together, that constitute the FCC's "thorough[]," "consistent[]," and thus persuasive guidance that online fax services do not fall within the scope of the TCPA. *Skidmore*, 323 U.S. at 140.

Beginning with the FCC's 2003 order, that 225-paragraph order addressed many different issues, with only five paragraphs addressing the topic of the "developing technolog[y]" of "computerized fax servers." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, ¶¶ 198-202 (2003). Crucially, the FCC did not mention online fax services at all. Instead, addressing technological innovations from that time, the FCC concluded that "faxes sent to personal computers equipped with, or attached to, modems and computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes." *Id.* ¶ 200. In other words, just like the Sixth Circuit in *Lyngaas*, the FCC in 2003 was addressing a distinction between "conventional stand-alone fax machines" and other kinds of physical device set-ups, such as "a modem attached to a personal computer" that "allows one to transmit and receive electronic documents *as faxes.*" *Id.* (emphasis added). That the FCC was addressing only that outdated technology is made clear by the order's premise that such faxes "may also tie up lines and printers so that the recipients' requested faxes are not timely received." *Id.* ¶ 202. As Plaintiffs do not dispute, such transmission-blocking and involuntary printing do not arise with

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-CV-02219-HSG
MF-364496693

12

modern online fax services. And further confirming the narrowness of its order, the FCC clarified that the order did *not* cover technologies that allowed faxes to be "sent as email over the Internet." *Id.* ¶ 200. That is exactly what online fax services do. Doc. 393 at 7 (this Court recognizing FCC's later understanding in *Amerifactors* that "'an online fax service . . . effectively receives faxes "sent as email over the Internet"'").

The FCC's 2015 ruling reiterated the 2003 order's reasoning and broke no new ground. *In re WestFax, Inc. Petition for Consideration and Clarification*, 30 F.C.C. Rcd. 8620 (2015). *Westfax* concluded that "efaxes" may trigger TCPA liability, but again based on the understanding that "the computer that receives the efax" is connected to a "fax server and modem," such that this set-up "together . . . by necessity ha[s] the capacity to 'transcribe text or images (or both) from an electronic signal received over a telephone line onto paper.'" *Id.* ¶ 9. The 2015 ruling called this "interpretation" "consistent" with the 2003 order "addressing whether the TCPA covers faxes sent to computers attached to fax servers or modems." *Id.* And while the FCC understood "[e]faxes" as ads "sent as a fax over a telephone line to a telephone facsimile machine," it again "contrast[ed]" that technology with "a fax *sent as an email* over the Internet— e.g., a fax attached to an email message or a fax whose content has been pasted into an email message," making clear the latter "is not subject to the TCPA." *Id.* ¶ 10.

Against that backdrop, the FCC issued its 2019 *Amerifactors* ruling to address the technology of "*current* online fax services," which it expressly defined for the first time as a "'cloud-based service consisting of a fax server or similar device that is used to send or receive documents, images, and/or electronic files in digital format . . . ' that allows users to 'access "faxes" the same way they do by email: by logging into a server over the Internet or by receiving a pdf attachment [as] an email.'" 34 F.C.C. Rcd. 11950, ¶¶ 2, 8 (emphasis added). Based on a "great deal of information on the nature and operation of current online fax services," the FCC concluded that such technology did not fall within the scope of the TCPA because "an online fax service is plainly not 'equipment'" with the capacity to print and "the user of an online fax service must connect his or her own equipment in order to do so." *Id.* ¶¶ 8, 11-13.

In reaching this conclusion, the FCC expressly left undisturbed its reasoning in the prior

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-CV-02219-HSG
MF-364496693

13

1    orders, recognizing that TCPA liability could still attach to faxes sent to "equipment" which

2    "itself could transcribe a fax onto paper—such as a personal computer attached to printer and

3    modem." *Id.* ¶ 5.  And the FCC also explained that its 2015 ruling did *not* interpret the TCPA to

4    include modern online fax services because, "based on a limited record, [that order] assumed that

5    the 'efax' in question was sent to a computer with an attached fax modem that had the capacity to

6    print," not to "online fax services that have no such capacity."  *Id.* ¶ 15; see Doc. 393 at 7 n.3

7    (this Court's prior recognition that *Amerifactors* "distinguished its discussion of online fax

8    services, which have no capacity to print a fax, from [the 2015] declaratory ruling focusing on an

9    'efax' that was 'sent to a computer'" with such printing capacity).

10        Reading the three orders together—as the FCC itself did in *Amerifactors*—shows a

11    consistent statutory understanding as applied to evolving technology.  That "'body of experience

12    and informed judgment'" is what this Court should find persuasive, especially since it is the

13    FCC's technical understanding of how online fax services work—as opposed to the legal

14    questions of statutory interpretation—that is the "'factual'" matter within the FCC's "subject

15    matter expertise."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 374 (2024) (quoting

16    *Skidmore*, 323 U.S. at 140 & *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 98

17    n.8)).  Indeed, it is notable that the only inconsistency Plaintiffs assert in the FCC's three orders is

18    the agency's assessment of whether, in enacting the TCPA, "Congress was . . . concerned with

19    'more generalized harms,' such as 'time spent monitoring unwanted faxes stored by online fax

20    services.'"  Doc. 573 at 18.  But "an agency's . . . understanding of specific congressional intent"

21    crosses the line into "the quintessential judicial function of deciding what a statute means," and

22    thus "cannot bind a court."  *Bureau of Alcohol, Tobacco & Firearms*, 464 U.S. at 98 n.8.

### 4.    Plaintiffs' Supposed "Expert Testimony" Is Irrelevant.

24        Plaintiffs' supposed "unrebutted testimony" of their expert is beside the point.  Doc. 573

25    at 8.  "An expert witness cannot render an opinion as to a legal conclusion," and thus "[a]n

26    expert's interpretations of statutes and regulations" play no role in statutory construction.

27    *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1028-29 (C.D. Cal.

28    Sept. 13, 2017); *see Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042 (D.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-cv-02219-HSG
MF-364496693

14

Ariz. 2005) ("[F]ederal courts typically prohibit . . . experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case.").

Plaintiffs' supposed expert testimony is just a legal conclusion premised entirely on Plaintiffs' own flawed legal interpretation of the TCPA.  In particular, the expert states that "a record of a 'successful' transmission by computer based facsimile transmission systems reflects the successful completion of [a fax transmission] to a device with a fax-modem and appropriate software."  Doc. 573, Ex. I, ¶ 46.  The expert goes on to assert, without additional explanation, that such devices have "the *capacity* to use a regular telephone line for the receipt of a . . . fax transmission and *to print* the contents."  *Id.* ¶ 49 (emphasis added).  Based on that assertion, the expert then parrots the statutory language of the TCPA and says every fax transmission must thus be "sent to and received by equipment which has the capacity to transcribe text or images (or both) from an electronic signal over a regular telephone line onto paper."  *Id.* ¶ 50.

While Plaintiffs' expert does not clarify what he means by "device," "equipment," and "capacity," Plaintiffs' argument confirms that their expert is relying on the same misunderstanding that such language can sweep in all equipment that might hypothetically be connected to a receiving device (even if only remotely via an internet connection).  Specifically, Plaintiffs rely on Defendants' expert testimony to assert a lack of a "dispute" that online fax services have the "capacity" to print.  Doc. 573 at 8-10.  But as explained above, Defendants' expert merely acknowledged that any device or service with an internet connection might be able to remotely connect to a printer.  *Id.*; *see, e.g.*, Doc. 573, Ex. A, 55:16-18 ("[I]f they have access to the Internet, then they would obviously be able to access a printer via the Internet obviously.").  That does not mean that any device with an internet connection becomes a "telephone facsimile machine."

In sum, all the relevant tools for statutory interpretation show that faxes sent to online fax services fall outside 47 U.S.C. § 227(b)(1)(C)'s scope.  Plaintiffs' undisputed failure to provide a valid, class-wide methodology for excluding those who received faxes via online fax services thus means that Plaintiffs fail to meet Rule 23(b)(3)'s predominance and superiority requirements.

Defendants' Opposition to Plaintiffs' Second Renewed Motion for Class Certification
Case No. 4:13-cv-02219-HSG
MF-364496693

15

1

**B.      Class Members Who Received Faxes Via An Online Fax Services Do Not, Without Additional Individual Factual Showings, Have Article III Standing**

2

3      Class certification should be denied for another, independent reason.  Even assuming that

4   the TCPA can be read to cover online fax services, the receipt of an advertisement via an online

5   fax service does not—without more—establish the concrete harm necessary to prove Article III

6   standing.  Thus, even if all class members have a TCPA cause of action, this Court would still

7   confront individualized questions of whether "class members actually suffered an injury sufficient

8   to confer Article III standing," leading to the same fatal lack of predominance and superiority.

9   *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1199 (N.D. Cal. 2023) (denying

10   class certification where plaintiffs had no common method of proving Article III injury); *see*

11   *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 n.12 (9th Cir.

12   2022) ("Rule 23 also requires a district court to determine whether individualized inquiries into

13   [the Article III] standing issue would predominate over common questions.").

14      "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among

15   other things, that they suffered a concrete harm.  No concrete harm, no standing." *TransUnion*

16   *LLC v. Ramirez*, 594 U.S. 413, 417 (2021).  In line with this mandate, a plaintiff's "standing to

17   sue is not settled by the fact that the [TCPA] authorizes his suit.  It depends on whether [the

18   challenged acts] caused him concrete harm or were merely a technical violation of the statute."

19   *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461-62 (7th Cir. 2020) (Barrett, J.).

20      That "concrete harm" inquiry is guided by two principles.  <u>First</u>, "[i]n determining

21   whether a harm is sufficiently concrete to qualify as an injury in fact, . . . Congress's views may

22   be 'instructive'" and "must" be "afford[ed] due respect." *TransUnion*, 594 U.S. at 425.  <u>Second</u>,

23   "'history and tradition'" provide critical guidance, and courts must "assess whether the alleged

24   injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized" at common

25   law. *Id.* at 424.  Here, class members who received faxes via online fax services cannot establish

26   concrete harm without further individualized showings.  The mere receipt of an email or message

27   on an online portal is not the kind of harm that Congress sought to remedy in the TCPA cause of

28   action, nor is it analogous to any harm giving rise to a common law claim.

1

### 1.    The Mere Receipt Of A Fax In The Form Of An Email Does Not Constitute Harm As Envisioned By Congress.

As Plaintiffs have never disputed, the key feature of an online fax service is that it allows a fax recipient to view it as an email attachment or to log in and view it on a web portal. Affording the necessary respect to Congress's judgment precludes a finding that any and every plaintiff receiving an advertisement this way suffers concrete Article III harm.

*Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), is instructive. There, the court addressed whether a plaintiff who alleged that defendants had sent unsolicited "text messages using an automatic telephone dialing system" had adequately alleged "concrete harm." *Id.* at 1042-43.  At issue was a claim under 47 U.S.C. § 227(b)(1)(A), which prohibits the use of "any automatic dialing telephone dialing system" to "make any *call*." (Emphasis added). In finding concrete harm based on the receipt of an unwanted text message, the Court relied both upon the fact that Congress had "made *specific findings* that 'unrestricted telemarketing can be an intrusive invasion of privacy'" and the observation that "[u]nsolicited telemarketing phone calls or text messages, *by their nature*, invade the privacy and disturb the solitude of their recipients." 847 F.3d at 1042-43 (emphases added).  Quoting from the legislative materials, the Court "defer[red]" to the "congressional purpose" that "'[b]anning such automated or prerecorded telephone calls to the home . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.'"  *Id.* at 1043 (quoting Pub. L. 102-243, § 2, ¶ 12).

Here, affording the same respect to Congress's judgment points in a different direction. While Congress made "specific findings" about the "privacy" and nuisance concerns associated with "the nightly recurrence of calls from solicitors and automated machines trying to sell something," Congress made distinct findings on why it chose to regulate "facsimile advertising." H.R. Rep. No. 102-317, at 10, 18.  Congress expressly relied on the two unique harms identified above—the shifting of printing costs and the blocking of phone lines.  *Id.* at 10, 25.  And Congress also relied on those unique harms to distinguish "fax advertising" from unsolicited advertising "through regular mail," which (like spam email) might trigger some generalized annoyance but does not cause the specified harms identified.  *Id.* at 25.  Thus, even if that

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-CV-02219-HSG
MF-364496693

17

legislative history were not dispositive as a matter of statutory interpretation, it nevertheless establishes Congress's judgment and "views" on what harms are "sufficiently concrete" to justify the provision of a private right of action against fax advertising. *TransUnion*, 594 U.S. at 425. Plaintiffs' own cited case, *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015), proves the point. Doc. 573 at 7. There, the Eleventh Circuit recognized, consistent with Congress's judgment, that it was the fact that the recipient's "fax machine was occupied" by an unsolicited fax that established "Article III standing" for a TCPA claim. 781 F.3d at 1253. Here, extending a cause of action to those who have never suffered that harm would be inconsistent with Congress's judgment.

Notably, the fact that Congress has elsewhere provided a cause of action for unsolicited junk emails reinforces this conclusion. Specifically, in the CAN-SPAM Act of 2003, 15 U.S.C. §§ 7701-7713, Congress addressed the issue of the "rapid growth of spam e-mails." *Gordon v. Virtumundo, Inc.* 575 F.3d 1040, 1047 (9th Cir. 2009). Without banning such emails "outright," Congress provided a "code of conduct to regulate commercial e-mail messaging practices." *Id.* at 1048. But crucially, Congress provided only a "limited private right of action" to a "'provider of Internet access service *adversely affected*'" by a violation. *Id.* (quoting 15 U.S.C. § 7706(g)(1)). As the Ninth Circuit has held, that requires a private plaintiff to show harm "beyond the mere annoyance of spam and greater than the negligible burdens typically borne by an [Internet access] provider in the ordinary course of business." *Id.* at 1053-54. Affording Article III standing to *any* user of an online fax service who receives faxes essentially as emails would fly in the face of Congress's careful judgment, expressed in *both* the TCPA and the CAN-SPAM Act, on the harms that are "sufficiently concrete" to justify a private right of action for those who receive such unwanted emails. *TransUnion*, 594 U.S. at 425.

### 2. The Mere Receipt Of A Fax In The Form Of An Email Does Not Constitute Harm With Any Historical Common Law Analog.

Even putting aside Congress's judgment, the mere receipt of a fax via an online fax service still cannot constitute concrete Article III standing given the lack of any historical common-law analog. Again, *Van Patten* is helpful. There, the Ninth Circuit reasoned that

DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION
CASE NO. 4:13-CV-02219-HSG
MF-364496693

18

1   Congress's identification of the harms of "nuisance" and intrusion into "privacy" had a sufficient

2   analog in the common law because "[a]ctions to remedy defendants' invasions of privacy,

3   intrusion upon seclusion, and nuisance have long been heard by American courts."  847 F.3d at

4   1043.  Critically however, the court also reasoned that "[u]nsolicited telemarketing phone calls or

5   text messages, *by their nature*, invade the privacy and disturb the solitude of their recipients."  *Id.*

6   (emphasis added).  Reaching a similar conclusion as to why the receipt of unsolicited text

7   messages paralleled harms that were actionable at common law, the Seventh Circuit reasoned the

8   "*undesired buzzing* of a cell phone from a text message, like the *unwanted ringing* of a phone

9   from a call, is an intrusion into the peace and quiet in a realm that is private and personal."

10  *Gadelhak*, 950 F.3d at 462 n.1 (emphasis added); *see Drazen v. Pinto*, 74 F.4th 1336, 1345-46

11  (11th Cir. 2023) (relying on the same "'undesired buzzing of a cell phone from a text message'"

12  to find concrete harm for purposes of an "automatic telephone dialing system" claim).

13          The same cannot be said about receiving a faxed advertisement via online fax services, for

14  two reasons.  First, advertisements received via online fax services do not, "by their nature,"

15  result in the same forms of nuisance and annoyance.  *Van Patten*, 847 F.3d at 1043.  Unlike calls

16  and texts, emails do not automatically create any "undesired buzzing" that inherently constitutes a

17  nuisance.  *Gadelhak*, 950 F.3d at 462 n.1.  To be sure, there may be *some* class members who—

18  based on their personalized device settings—receive an alert on their computer or phone when

19  they receive an email.  But even if so, this Court would still be forced to conduct individualized

20  inquiries to identify those class members to determine who has Article III standing.  Even further

21  afield, it is undisputed that a user of an online fax service can also affirmatively choose whether

22  or not to log on to a web portal to view faxed advertisements.  Doc. 573, Ex. J., ¶ 11 ("The fax

23  'phone number' assigned to an efax service will convert incoming and outgoing faxes to an

24  electronic document that can be managed online via email or through the Web Interface provided

25  by the efax service provider."), ¶ 10 ("The .PDF or image files received as attachments to emails

26  *may be viewed*, deleted, stored, forwarded to others, or printed if needed or desired.").  A user

27  who voluntarily chooses to take time downloading a fax from a portal cannot characterize that

28  choice as a concrete harm.  *See Int'l Partners for Ethical Care Inc v. Ferguson*, 146 F.4th 841,

1   848 (9th Cir. 2025) ("[N]o [plaintiff] can be heard to complain about damage inflicted by its own

2   hand." (quoting *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam))).

3       Second, even if receipt of faxed advertisements by email or through an online portal can

4   be viewed as harmful by analogy to common-law interests in privacy and seclusion, Plaintiffs

5   would still fail to justify their broad class of *all* "persons or entities" because business entities

6   hold no such common-law rights. *FCC v. AT&T Inc.*, 562 U.S. 397, 406 (2011) ("'It seems to be

7   generally agreed that the right to privacy is one pertaining only to individuals, and that a

8   corporation or a partnership cannot claim it as such.'" (quoting William L. Prosser, Law of Torts

9   § 112, at 843-44 (3d ed. 1964))); Restatement (Second) of Torts § 652I (A.L.I. 1977) ("Except for

10  the appropriation of one's name or likeness, an action for invasion of privacy can be maintained

11  only by a living individual whose privacy is invaded."); *id.* cmt. c ("A corporation, partnership or

12  unincorporated association has no personal right of privacy.")); *Am. States Ins. Co. v. Cap.*

13  *Assocs. of Jackson Cnty., Inc.*, 392 F.3d 939, 942 (7th Cir. 2004) ("businesses lack interests in

14  seclusion" and "privacy interests").

15      Other district courts addressing this precise question have held that this common-law

16  limitation means that "business entities cannot suffer the *kind of harm* contemplated" by privacy

17  and seclusion torts and thus cannot establish Article III standing to bring a § 227(b)(1)(C) claim

18  as a "matter of law." *Sharfman v. Precision Imaging St. Augustine LLC*, No. 6:22-cv-642-WWB-

19  DCI, 2024 WL 4460209, at *1-2 (M.D. Fla. Aug. 2, 2024), *appeal argued*, No. 24-13315 (11th

20  Cir. July 30, 2025); *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1294 (M.D. Fla. 2020)

21  ("Even if some plaintiffs could analogize" unwanted faxes to common-law "invasion of privacy,"

22  corporations cannot because they "have never been understood to have privacy rights.")). And

23  while these business entities might be able to establish other forms of harm based on additional

24  factual showings—e.g., a particular business receiving numerous unwanted advertisements might

25  show a tangible loss in wasted time and expense—that would again require this Court to engage

26  in the very forms of intensive individualized adjudication that preclude class treatment.

27  **V.    CONCLUSION**

28      Plaintiffs' renewed motion for class certification should be denied.

1    Dated: December 5, 2025                    MORRISON & FOERSTER LLP

2

3                                              By:    /s/ Tiffany Cheung
                                                      TIFFANY CHEUNG
4
                                               Attorneys for Defendants
5                                              MCKESSON TECHNOLOGIES INC.,
                                               AND MCKESSON CORPORATION
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28