Robert C. Schubert (S.B.N. 62684)
(rschubert@sjk.law)
Willem F. Jonckheer (S.B.N. 178748)
(wjonckheer@sjk.law)
Dustin L. Schubert (S.B.N. 254876)
(dschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union. St., Suite 200
San Francisco, California 94123
Telephone:    (415) 788-4220
Fax:            (415) 788-0161

*Local Counsel for Plaintiffs*

Brian J. Wanca (*admitted pro hac vice*)
(bwanca@andersonwanca.com)
Glenn L. Hara (*admitted pro hac vice*)
(ghara@andersonwanca.com)
**ANDERSON + WANCA**
3701 Algonquin Rd., Suite 500
Rolling Meadows, Illinois 60008
Telephone:    (847) 368-1500
Fax:            (847) 368-1501

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| TRUE HEALTH CHIROPRACTIC, INC. and MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC., Individually and as the Representatives of a Class of Similarly-Situated Persons,<br><br>              Plaintiffs,<br><br>v.<br><br>MCKESSON CORPORATION, MCKESSON TECHNOLOGIES INC. and JOHN DOES 1- 10,<br><br>              Defendants. | Case No. 4:13-cv-02219-HSG<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF SECOND RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>Date:          January 22, 2026<br>Time:         2:00 p.m.<br>Judge:       Hon. Haywood S. Gilliam, Jr.<br>Courtroom:  2, 4th Floor |

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1

## <u>TABLE OF CONTENTS</u>

Table of Contents ....................................................................................................................

Table of Authorities ..............................................................................................................

Memorandum of Point and Authorities .............................................................................. 1

I.    Defendants concede that Rule 23(a) is satisfied, and there are no
      individualized issues regarding "prior express invitation or permission." ........................ 1

II.   Defendants' Rule 23(b)(3) challenge is based on a narrow interpretation of
      the TCPA that is contrary to the statute, the FCC interpretations,
      and the remedial-statute canon.................................................................................... 1

      A.    The broad statutory definition of "telephone facsimile machine" covers
            all the faxes ....................................................................................................... 1

      B.    The FCC rulings are in Plaintiffs' favor ............................................................. 4

      C.    Expert testimony demonstrates that e-faxes are sent to
            equipment with the relevant capacity.................................................................. 6

      D.    If the Court finds the statute ambiguous, the ambiguity must be resolved
            in Plaintiffs' favor and against Defendants. ...................................................... 7

III.  Defendants' new Article III standing argument fails................................................. 8

      A.    The Ninth Circuit recognizes the intangible harm of privacy invasion in TCPA
            violations as concrete, regardless of the mode of receipt ...................................... 9

      B.    Defendants' argument regarding CAN-SPAM is without merit............................ 12

      C.    Business entities are "persons" under the TCPA, and they have
            Article III standing ............................................................................................ 13

      D.    Article III standing is a common question appropriate for class treatment .......... 14

      E.    Even if users of online fax services lack Article III standing, there is
            no evidence a "great number" of class members used that technology
            in 2009–2010...................................................................................................... 14

Conclusion .......................................................................................................................... 15

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

# TABLE OF AUTHORITIES

## Cases

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*,
  91 F.4th 202 (4th Cir. 2024) ................................................................................ 2, 7

*Chapman v. Wagener*,
  2014 WL 540250 (N.D. Ill. Feb. 11, 2014) ....................................................... 13

*Chennette v. Porch.com, Inc.*,
  50 F.4th 1217 (9th Cir. 2022) ...................................................................... 10–14

*Craftwood II, Inc. v. Generac Power Systems, Inc.*,
  920 F.3d 479 (7th Cir. 2019) ............................................................................. 12

*Daisy, Inc. v. Mobile Mini, Inc.*,
  489 F. Supp. 3d 1287 (M.D. Fla. 2020) ............................................................. 14

*Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*,
  343 F.R.D. 581 (E.D. Mo. 2023) ............................................................... 1, 2, 5, 7

*Drazen v. Pinto*,
  74 F.4th 1336 (11th Cir. 2023) ......................................................................... 13

*FCC v. AT&T Inc.*,
  562 U.S. 397 (2011) .......................................................................................... 13

*Facebook, Inc. v. Duguid*,
  592 U.S. 395 (2021) ............................................................................................ 8

*Golan v. FreeEats.com, Inc.*,
  930 F.3d 950 (8th Cir. 2019) ............................................................................. 10

*Gordon v. Virtumundo, Inc.*,
  575 F.3d 1040 (9th Cir. 2009) ........................................................................... 12

*Hall v. Smosh Dot Com, Inc.*,
  72 F.4th 983 (9th Cir. 2023) ........................................................................ 10–11

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

# TABLE OF AUTHORITIES

## Cases

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................ 5

*Leyse v. Bank of Am. Nat'l Ass'n*,
   804 F.3d 316 (3d Cir. 2015) ................................................................ 11

*Lyngaas v. Curaden AG*,
   992 F.3d 412 (6th Cir. 2021) ........................................................ 1–3, 5, 7

*Maxum Indem. Co. v. Eclipse Mfg. Co.*,
   2013 WL 5993389 (N.D. Ill. Nov. 12, 2013) ...................................... 13

*Marx v. General Revenue Corp.*,
   568 U.S. 371 (2013) ............................................................................ 3

*Melito v. Experian Marketing Solutions, Inc.*,
   923 F.3d 85 (2d Cir. 2019) ................................................................ 10

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) .............................................................. 15

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) ............................................................ 2

*Mims v. Arrow Fin. Servs., LLC*,
   565 U.S. 368 (2012) .......................................................................... 10

*Muransky v. Godiva Chocolatier, Inc.*,
   979 F.3d 917 (11th Cir. 2020) ............................................................ 13

*N.L.R.B. v. SW General, Inc.*,
   137 S. Ct. 929 (2017) .......................................................................... 3

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) .............................................................. 15

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

# TABLE OF AUTHORITIES

## Cases

*Pakootas v. Teck Cominco Metals, Ltd.*,
   830 F.3d 975 (9th Cir. 2016) ........................................................................... 8

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
   781 F.3d 1245 (11th Cir. 2015)....................................................................... 11

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
   45 F.4th 816 (5th Cir. 2022) ........................................................................... 13

*Robert W. Mauthe, M.D., P.C. v. MCMC, LLC*,
   387 F. Supp. 3d 551 (E.D. Pa. 2019) .............................................................. 11

*Sharfman v. Precision Imaging St. Augustine LLC*,
   2024 WL 4460209 (M.D. Fla. Aug. 2, 2024) .................................................. 14

*Skidmore v. Swift Co.*,
   323 U.S. 134 (1944) .......................................................................................... 6

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016).............................................................................. 9, 12, 13

*Stiner v. Brookdale Senior Living*,
   665 F. Supp. 3d 1150 (N.D. Cal. 2023) .................................................... 14–15

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).......................................................................................... 15

*True Health Chiropractic, Inc. v. McKesson Corp.*,
   896 F.3d 923 (9th Cir. 2018) ........................................................................... 14

*Van Patten v. Vertical Fitness Grp., LLC*,
   847 F.3d 1037 (9th Cir. 2017) ............................................................ 7, 9–11, 14

*Wakefield v. ViSalus, Inc.*,
   51 F.4th 1109 (9th Cir. 2022) .......................................................................... 10

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1

2                                    **TABLE OF AUTHORITIES**

3    <u>**Statutes**</u>

4    47 U.S.C. § 153(39) ................................................................................................ 14

5    47 U.S.C. § 227(a)(3) ...................................................................................... 1, 3, 6, 7

6    47 U.S.C. § 227(b)(1)(C) ................................................................... 4, 7, 9, 12–14

7

8    <u>**Rules & Regulations**</u>

9    Fed. R. Civ. P. 23(a) ........................................................................................ 1, 15

10   Fed. R. Civ. P. 23(b)(3) .................................................................................... 1, 15

11   *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

12       18 FCC Rcd. 14014 (FCC July 3, 2003) ......................................... 4–7, 15

13   *In re WestFax, Inc. Petition for Consideration & Clarification,*

14       30 FCC Rcd. 8620 (CGAB Aug. 28, 2015) ......................................... 4–6

15   *In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling,*

16       2019 WL 6712128 (CGAB Dec. 9, 2019) ........................................... 4–6

17

18   <u>**Other Authorities**</u>

19   H.R. Rep. 102-317, at 6–7 (1991) ......................................................................... 4

20   Telephone Consumer Protection Act of 1991, Pub. L. 102-243, 105 Stat. 2394 (1991) .......... 9, 13

21   CAN-SPAM Act of 2003, 15 U.S.C. § 7701-7713 ............................................. 12

22

23

24

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs state as follows for their Reply in Support of their Second Renewed Motion for Class Certification (Doc. 573) and in response to the Opposition of Defendants, McKesson Corporation and McKesson Technologies, Inc. (Doc. 581). As argued below, Defendants concede that Rule 23(a) is satisfied, and they have abandoned their challenge to Rule 23(b)(3) predominance based on their "consent" defense. The Court should now reject Defendants' only remaining objections to Rule 23(b)(3) predominance and superiority, which are limited to "e-faxes" or "online fax services," including their new argument that any class members who were using such services between September 2009 and May 2010 lack Article III standing.

## I.    Defendants concede that Rule 23(a) is satisfied, and there are no individualized issues regarding "prior express invitation or permission."

Defendants do not dispute that the Rule 23(a) prerequisites for class certification are satisfied here. (Opp. at 1–20). The Court should find that Rule 23(a) numerosity, commonality, typicality, and adequacy of representation are met, as it did in 2019. (Doc. 331).

In addition, Defendants have abandoned their argument that individualized questions of "prior express invitation or permission" create individualized questions. (Opp. at 1–20). Defendants' only remaining arguments against class certification hinge entirely upon their assertions about e-fax users, which fail for the reasons below.

## II.    Defendants' Rule 23(b)(3) challenge is based on a narrow interpretation that is contrary to the statute, FCC interpretations, expert testimony, and the remedial-statute canon.

### A.    The broad definition of "telephone facsimile machine" covers all the faxes.

The statute broadly defines "telephone facsimile machine" as any "equipment" which has the "capacity" to "transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3). Plaintiffs' Motion discussed *Lyngaas v. Curaden AG*, 992 F.3d 412, 425–27 (6th Cir. 2021), where the Sixth Circuit held the plain language of this definition was not limited to stand-alone fax machines and did not require exclusion of users of "online fax services" from the certified class, as well as *Douglas Phillip Brust, D.C., P.C. v.*

---

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1   *Opensided MRI of St. Louis LLC*, 343 F.R.D. 581, 589 (E.D. Mo. 2023), where the district court

2   followed *Lyngaas* and certified an all-fax-recipients class. (Pls.' Mem. at 5–6).

3        Defendants do not discuss *Brust*. (Opp. at 1–20). Defendants attempt to distinguish *Lyngaas*

4   on the basis that the Sixth Circuit based its conclusion on a "high probability" that a computer

5   receiving an "efax" would be "physically connected to a printer and a fax modem." (Opp. at 8). But

6   the decision does not say "physically connected," as Defendants claim. It says "connected . . . to a

7   modem," *Lyngaas*, 992 F.3d at 426–27, which is exactly what happens in the e-fax or "online fax

8   service" scenario. In order for there to be a transmission log recording a successfully sent fax, there

9   must be a receiving device with a fax modem that communicates with the sending machine using

10  the T.30 protocol. (Doc. 573-10, Expert Report of Robert Biggerstaff ¶¶ 32–33 (explaining the

11  "handshake" that takes place between Point A (the sending equipment) and Point B (the receiving

12  equipment) in order to successfully send a fax).

13       Defendants concede that "capacity" refers to "a technical ability to perform certain

14  functions—without a requirement that it 'present[ly]' performed those functions," under *Meyer v.*

15  *Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). (Opp. at 8). But they misread

16  *Meyer* as not applying where a device has certain capacity only if "connected to other devices" to

17  complete the function. (*Id.*) That is incorrect because the predictive dialers at issue in *Meyer* only

18  had the relevant "capacity" to perform the relevant functions "when certain computer software is

19  attached" and when "paired with certain software." *Meyer*, 707 F.3d at 1043. There is no authority

20  for the proposition that equipment can have the capacity to do something only if it performs those

21  functions "in isolation," as *Lyngaas* observed. 992 F.3d at 426.

22       Defendants cite *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202 (4th

23  Cir. 2024), but the case is not persuasive. (Opp. at 6). In *Career Counseling*, the Fourth Circuit

24  adopted the same myopic reading of the statute that Defendants urge here, reading the definition to

25  essentially mean "a device which automatically" transcribes text from an electronic signal to paper,

26  rather than "equipment which has the capacity" to do so. The Court should decline to rewrite the

27  statute in this way. *Career Counseling* also misunderstands online fax services. According to the

28  Fourth Circuit, an online fax service "neither receives an electronic signal 'over a regular telephone

1  line' nor has the capacity to transcribe text or images 'onto paper.'" 91 F.4th at 210. That is

2  incorrect—*all* "online fax service" faxes are sent over regular telephone lines to ten-digit telephone

3  numbers, arrive at the online fax service's fax server, which performs the T.30 protocol and converts

4  the signal to a PDF (electronic paper) or TIFF, which is then forwarded via email attachment to the

5  subscriber or is stored on the online fax service's portal for viewing by the subscriber.[1]

Defendants argue that because the statute restricts using a "telephone facsimile machine,

6  computer, or other device" to send an unsolicited advertisement to a "telephone facsimile machine,"

7  a computer can never meet the definition of a telephone facsimile machine. (Opp. at 5). *Lyngaas*

8  rejected this *expressio unius* rationale, holding that "(1) a computer is not excluded from the statutory

9  definition of a 'telephone facsimile machine,' *id.* § 227(a)(3), and (2) Congress presumably

10  understood that a computer, as a stand-alone device, can be distinct from a telephone facsimile

11  machine and yet part of one as an integrated piece of 'equipment.'" *Id.* at 426–27. The TCPA defines

12  "telephone facsimile machine" broadly as any "equipment" with the relevant capacity, not a singular

13  "device," as Defendants would have it. 47 U.S.C. § 227(a)(3).

14  Moreover, the Supreme Court holds *expressio unius* does not apply if there are "contrary

15  indications that adopting a particular rule or statute was probably not meant to signal any exclusion,"

16  *Marx v. General Revenue Corp.*, 568 U.S. 371, 380 (2013), and it applies only when "circumstances

17  support a sensible inference that the term left out must have been meant to be excluded." *N.L.R.B.*

18  *v. SW General, Inc.*, 137 S. Ct. 929, 940 (2017). The "contrary indications" here are that the TCPA

19  has expressly defined "telephone facsimile machine" to include any "equipment," and thus there can

20  be no "sensible inference" that Congress at the same time meant to exclude any "equipment."

21  Congress was well aware when it passed the TCPA in 1991 that "[a]dvertisers have also

22  seized on facsimile machines, *often coupled to personal computers;* as another potent tool for direct

23  marketing of a number of products and services. An advertiser's facsimile machine can easily deliver

---

[1] If the Fourth Circuit's underlying predicate—that an online fax service does not receive an electronic signal over a regular telephone line—was correct, there would be no fax logs or telephone numbers to which the unsolicited fax advertisements were sent. It is undisputed both are present.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

tens of thousands of unsolicited messages per week to other facsimile machines across the country." H.R. Rep. 102-317, at 6–7 (1991) (emphasis added). The legislative history on this precise issue is scant, but the statute itself reveals that the concern about computers being used to send mass junk-fax broadcasts across the county is what led to the inclusion of "computer, or other device" in the general prohibition in 47 U.S.C. § 227(b)(1)(C). That language ensures that high-volume spamming tools—not just traditional stand-alone fax machines—are covered. By adding "computer, or other device," Congress ensured that a bulk fax advertiser could not escape liability by using a specialized, send-only computer system and then evading liability on the basis that they were not technically using a "telephone facsimile machine." The intent was to capture the *act of broadcasting* regardless of the specific hardware used to send the transmission. Congress drafted the prohibition in § (b)(1)(C) to be anticipatory and resistant to evasion by the fax sender.

On the receiver's end, while Congress was surely concerned with the costs businesses suffer from the loss of "paper and ink" and "tied up" fax lines, it was also concerned with the "interference, interruptions, and expense" resulting from junk faxes. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14134 ¶ 201 (FCC July 3, 2003) ("2003 Commission Order") (quoting H.R. Rep. No. 102-317 at 25 (1991)). The full quote from the House Report on the TCPA cited in the 2003 Commission Order is that "[s]ince businesses have begun to express concern about the interference, interruptions and expense that junk fax[es] have placed upon them, states are taking action to eliminate these telemarketing practices," thus motivating Congress to take action. H.R. Rep. 102-317 at 25. Defendants' argument that Congress intended to limit the statute to situations where ink and paper are wasted is plainly incorrect.

**B.    The FCC rulings are in Plaintiffs' favor.**

Plaintiffs' Motion traced the FCC's treatment of fax technology through the 2003 Commission Order, the 2015 WestFax Bureau Ruling,[2]  and the 2019 Amerifactors Bureau Ruling.[3]

---

[2] *In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620, 2015 WL 5120880 (CGAB Aug. 28, 2015) ("Westfax Bureau Ruling").

[3] *In re Amerifactors Fin. Group, LLC Pet.*, 2019 WL 6712128 (CGAB Dec. 9, 2019) ("Amerifactors Bureau Ruling").

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1    (Pls.' Mem. at 11–18). Plaintiffs argued that a careful reading of these rulings—and the comments

2    filed by interested parties that led to those rulings, particularly Nextel and WestFax—demonstrates

3    that the "commercial facsimile services" discussed in the 2003 Commission Order, the "e-fax

4    services" discussed in the 2015 WestFax Bureau Ruling, and the "online fax services" discussed in

5    the 2019 Amerifactors Bureau Ruling all refer to the exact same thing. (*Id.*) The agency consistently

6    ruled for 16 years that fax advertisers cannot avoid TCPA liability simply because the end-user views

7    the message on a computer instead of a piece of paper, until it abruptly changed course in 2019 to

8    grant a petition filed for the "principal" purpose of helping fax advertisers evade class certification

9    in private TCPA actions like this one. (Doc. 573-8 at 27, *Pet. for Expedited Declaratory Ruling of*

10   *Amerifactors Fin. Group, LLC*, CG Docket Nos. 02-278, 05-338 (filed July 13, 2017)).[4]

11       Defendants disagree, arguing that the FCC's rulings on "commercial facsimile services" in

12   2003 and "e-fax services" in 2015 arose out of "technological innovations from that time" (*i.e.*, 2003

13   and 2015), and did not address "online fax services," which Defendants say are the more "current"

14   technology under consideration in 2019. (Opp. at 12–13). Defendants are mistaken that these are

15   anything other than different names for the same technology. *See, e.g.*, *Brust*, 343 F.R.D. at 589

16   (holding the 2003 Commission Order clearly "determined that online fax services were covered by

17   the TCPA"); *Lyngaas*, 992 F.3d at 426 (holding 2003 Commission Order and 2015 WestFax Bureau

18   Ruling "reinforced" the Sixth Circuit's plain-language reading that online fax services are covered).

19   But even if Defendants are correct that the 2003 and 2015 rulings address different technology from

20   the 2019 ruling, the class definition in this case covers faxes sent between September 2, 2009, and

21   May 11, 2010, in the period between the 2003 Commission Order and the 2015 WestFax Bureau

22   Ruling. (Pls.' Mem. at 1).

23       The WestFax Petition that led to the 2015 ruling was filed September 24, 2009, three weeks

24   after the first of Defendants' faxes at issue in this case were sent. (Doc. 573-7). And it was filed by

---

[4] Notably, WestFax filed comments on the Amerifactors Petition asking the FCC to reconsider the 2015 WestFax Bureau Ruling. (Declaration of Glenn L. Hara ("Hara Decl."), Ex. A). Defendants do not dispute that the Court can take judicial notice of public governmental filings. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

---

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

WestFax, Inc., which was using the "technological innovations from that time," as Defendants put it, to provide an e-fax service called "FaxForward," described as "a service that 'automatically converts received faxes into electronic images that are delivered directly to your email inbox.'" WestFax Bureau Ruling at *1 ¶ 4, n.15. So, even if the Court assumes Defendants are correct that the e-fax services that were available in 2015 are different than the online fax services that later became available in 2019, that tends to show that the technology in use when the faxes at issue in this case were sent in 2009–2010 was the technology considered in the 2003 Commission Order and the 2015 WestFax Bureau Ruling, not the more "current" technology considered by the Bureau in 2019. Either these three rulings discuss the same technology and the Amerifactors Bureau Ruling is wholly inconsistent with "earlier pronouncements" by the Bureau and the full Commission, depriving it of the "power to persuade," *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944), or the Amerifactors Bureau Ruling discusses a technology that was not "current," in Defendants' words, during the relevant timeframe. Either way, the FCC rulings support Plaintiffs, not Defendants.

### C. Expert testimony demonstrates that e-faxes are sent to equipment with the relevant capacity.

Defendants argue that the opinions of Biggerstaff and their own expert Sponsler are "irrelevant" on the question of whether the "equipment" involved in the transmission of an e-fax has the relevant "capacity" to be a telephone facsimile machine under 47 U.S.C. § 227(a)(3). (Opp. at 14). Contrary to Defendants' argument, Plaintiffs do not offer Biggerstaff's testimony (or Sponsler's, for that matter) for a "legal conclusion" or to interpret the statute. (Opp. at 14). Plaintiffs offered that testimony to show, as a factual matter, that the "equipment" used by online fax services has the relevant capacity to meet the definition of "telephone facsimile machine."

Defendants also mischaracterize Plaintiffs as arguing that "any device with an internet connection" is a telephone facsimile machine. (Opp. at 15). Not so. But any "equipment" that can (1) receive a fax transmission over a telephone line, leading to a transmission log recording a successful transmission, and (2) send that message as an email over the Internet certainly has the capacity to print the document instead of emailing it, as Biggerstaff and Sponsler agree. (Doc. 573-2 at 55:16–18 ("If they have access to the Internet, then they would obviously be able to access a

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1    printer via the Internet obviously."); Doc. 573-3 at 26:13-28:6 (admitting "they could access a

2    printer"); Doc. 573-4 at 59:3–5, 59:8 (Q: "if you can access the Internet to send an e-mail you have

3    capacity to print because you can access a printer"; A: "That's correct.")). Sponsler agrees that when

4    a user "is logged into an online fax services portal" to view a fax "[t]hat subscriber is not viewing

5    an e-mail, but using their computer to view the fax on the server maintained by the online fax

6    service." (Doc. 573-2 at 49:14–19).

7          The fax servers used by online fax services do not "hypothetically" have the capacity to print,

8    as Defendants assert. (Opp. at 15). The experts agree that the equipment used by online fax services

9    has the relevant "capacity" under § 227(a)(3). That means any faxes sent to that equipment are

10   "sen[t] to" a telephone facsimile machine under § 227(b)(1)(C). The expert testimony in this case

11   supports certification of the Exhibit-A Only Class.

**D.    If the Court finds the statute ambiguous, the ambiguity must be resolved in
        Plaintiffs' favor and against Defendants.**

14         Although the plain language of the statute supports Plaintiffs' position, one could arguably

15   read the authorities holding that faxes sent to online fax services are covered by the TCPA (*e.g.*,

16   *Lyngaas*, *Brust*, the 2003 Commission Order, and the 2015 WestFax Bureau Ruling) and the

17   authorities holding they are not covered (*e.g.*, *Career Counseling*, the 2019 Amerifactors Bureau

18   Ruling) and conclude that the statute is ambiguous on this issue. That is why Plaintiffs' Motion

19   discussed the controlling Ninth Circuit authority holding that the TCPA "is a remedial statute

20   intended to protect consumers," and so any ambiguity "should be construed in accordance with that

21   purpose." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1047 (9th Cir. 2017). If the

22   Court finds the statute ambiguous, then *Van Patten* requires the Court to adopt the rule that better

23   protects consumers. Defendants can prevail on this issue only if they convince the Court that the

24   statute unambiguously limits the TCPA to stand-alone fax machines.

25         Defendants do not cite *Van Patten* in their discussion of the remedial-statute canon.[5] (Opp.

26   at 10–11). Instead, Defendants argue that the remedial-statute canon does not apply where the "plain

---

[5] Defendants discuss *Van Patten* in their Article III standing argument (Opp. at 17), but *Van Patten* actually
supports the conclusion that e-fax users do have Article III standing, as argued in Section III, below.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

text" of the statute is unambiguous. (Opp. at 10). Plaintiffs have never argued otherwise. Plaintiffs' primary argument is that the plain language of the TCPA covers all the faxes sent in this case. (Pls.' Mem. at 5–10). Plaintiffs' alternative argument is that, if the Court finds the statute ambiguous, the remedial-statute canon requires a ruling in Plaintiffs' favor. (*Id.* at 10–11).

Defendants assert that, even if a statute is ambiguous, "the Ninth Circuit has rejected the use of this general remedial-construction principle as a way of disregarding a proper 'textual analysis' and the most 'persuasive' interpretation of the statute," citing *Pakootas v. Teck Cominco Metals, Ltd.*, 830 F.3d 975, 985-86 (9th Cir. 2016). (Opp. at 10). But *Pakootas* is easily distinguishable. In that case, the court was interpreting the word "deposit" in an environmental statute, but there were already two preexisting decisions from the Ninth Circuit interpreting that term contrary to the plaintiff's interpretation. *Pakootas*, 830 F.3d at 983. In contrast, there is no binding Ninth Circuit authority on whether e-faxes are covered by the TCPA that would outweigh the remedial-statute canon of interpretation.

Defendants' reliance on *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), is also misplaced. (Opp. at 10). In *Facebook*, the Supreme Court held the section of the TCPA at issue was unambiguous. 592 U.S. at 402. Thus, the remedial-statute canon was not implicated. *Id.* Moreover, the Supreme Court noted in *Facebook* that, while the language at issue in that case was not ambiguous, "[d]ifficult ambiguities in statutory text will inevitably arise," and "Courts should approach these interpretive problems methodically, using traditional tools of statutory interpretation, in order to confirm their assumptions about the 'common understanding' of words." *Facebook*, 592 U.S. at 404, n.5. One of the "traditional tools of statutory interpretation," at least in the Ninth Circuit, is that ambiguities in a remedial statute like the TCPA are to be resolved in favor of consumers. If the Court finds the TCPA ambiguous with respect to whether e-faxes or faxes sent to "online fax services" are covered, it should apply that canon and rule in Plaintiffs' favor.

### III.    Defendants' new Article III standing argument fails.

Defendants' Opposition raises for the first time the argument that, even if e-fax users are covered by the TCPA, they lack Article III standing without some "additional individual factual

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

showing" of harm, thus creating individualized issues. (Opp. at 16). This new argument fails because e-fax users have the same Article III standing as stand-alone fax machine users.

**A.      The Ninth Circuit recognizes the intangible harm of privacy invasion in TCPA violations as concrete, regardless of the mode of receipt.**

In *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), the Supreme Court held that while a concrete injury must actually exist, "concrete" is not necessarily synonymous with tangible, and intangible injuries can also be concrete. *Id.* at 340. In determining whether intangible statutory injuries are concrete, "both history and the judgment of Congress play important roles." *Id.*

Applying the analysis in *Spokeo* here, online fax service recipients have standing because they have suffered the very injury the TCPA was designed to prevent—being sent an unsolicited fax advertisement. The first *Spokeo* step, the judgment of Congress, is set forth in the text of the TCPA, which prohibits the "sending" of unsolicited fax advertisements. *See* 47 U.S.C. 227(b)(1)(C). In enacting the TCPA, Congress explained that: "the use of the telephone to market goods and services to the home *and other businesses* is now pervasive," Pub. L. 102-243, § 2, ¶ 1; over 30,000 businesses actively telemarket goods and services *to businesses* and residential customers, *id.* ¶ 2; "the evidence presented to Congress indicates that automated or prerecorded calls are *a nuisance and an invasion of privacy, regardless of the type of call*," *id.* ¶ 13; and that "*Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce*," *id.* ¶ 14 (emphasis added).

In *Van Patten*, the Ninth Circuit held that "actions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts," and that "in enacting the TCPA, Congress made specific findings that 'unrestricted telemarketing can be an intrusive invasion of privacy' and are a 'nuisance.'" 847 F.3d at 1043 (citing Telephone Consumer Protection Act of 1991, Pub. L. 102-243, § 2, ¶¶ 5, 10, 13, 105 Stat. 2394 (1991). The *Van Patten* court added that "Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls *and fax advertisements*," and that "the TCPA establishes "substantive" rights, *i.e.*, not procedural rights. *Id.* (citations omitted) (emphasis added).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Defendants argue that there must be some follow-on injury from a TCPA violation for Article III standing to exist, such as the "buzzing" of a cell phone or the annoyance of an "alert" on one's computer. (Opp. at 19). This argument is foreclosed by Ninth Circuit authority holding that the receipt of a communication in violation of the TCPA is, in itself, "a concrete injury in fact sufficient to confer Article III standing," without "any *additional* harm beyond the one Congress has identified." *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 985–86, 988 (9th Cir. 2023) (emphasis added) (quoting *Van Patten*, 847 F.3d at 1043); *see also Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1116 (9th Cir. 2022); *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1222 (9th Cir. 2022). Defendants do not dispute that stand-alone fax machine users have Article III standing (Opp. at 16), and their attempt to distinguish "online faxes" from "traditional faxes" for standing purposes is a distinction without a legal difference in this Circuit.

Defendants rely on a narrow reading of *Van Patten*, 847 F.3d at 1043, suggesting that faxes cause concrete injury only if they occupy a phone line or waste paper or toner. (Opp. at 17–18). This is incorrect. The Ninth Circuit held in *Van Patten* that the TCPA was intended to protect a substantive right to be free from "intrusive invasion[s] of privacy." *Van Patten*, 847 F.3d at 1043. The harm is the unsolicited communication itself, not any physical depletion of resources. The Ninth Circuit reaffirmed this principle in *Wakefield*, holding that "the receipt of [unwanted] calls" bears a "close relationship" to the common-law tort of intrusion upon seclusion because it "interferes with the right to be let alone." 51 F.4th at 1117–18. Whether that interference occurs via a blinking light on an "e-fax" portal or a piece of paper in a tray, the interference with seclusion is identical.

These authorities are consistent with the Supreme Court's recognition that Congress found in passing the TCPA that unregulated telemarketing was "intrusive," a "nuisance," and "rightly regarded as an invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012); *see also Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) (the "harm to be remedied by the TCPA was the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements"); *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 94 (2d Cir. 2019) ("the receipt of unwanted advertisements *is itself* the harm") (emphasis in original). Although the TCPA is meant to address the unauthorized use of fax machines, toner, and paper, "it also aims to mitigate

1    'the nuisance and invasion of privacy' that unsolicited telecommunications cause." *Robert W.*

2    *Mauthe, M.D., P.C. v. MCMC, LLC*, 387 F. Supp. 3d 551, 561–62 (E.D. Pa. 2019) (citing *Leyse v.*

3    *Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015)); *Palm Beach Golf-Boca, Inc. v. Sarris*,

4    781 F.3d 1245, 1252 (11th Cir. 2015) (the occupation of plaintiff's fax machine is "among" the

5    injuries to be prevented by the TCPA).

6        Defendants argue that some e-fax users might be able to establish Article III standing if they

7    could show they were subjected to "undesired buzzing" from a cell phone or an "alert on their

8    computer," but the Court would "be forced to conduct individualized inquiries to identify those class

9    members to determine who has Article III standing." (Opp. at 19). That argument contradicts the

10   Ninth Circuit authorities holding that a plaintiff alleging a TCPA violation "need not allege any

11   *additional* harm beyond the one Congress has identified," *Hall*, 72 F.4th at 988 (quoting *Van Patten*,

12   847 F.3d at 1043), such as the buzzing of a cell phone or an alert on a computer.

13       For example, in *Hall*, the defendants argued the plaintiff lacked Article III standing where

14   she was the subscriber of a cell phone, but her 13-year-old son was the user, arguing that since she

15   was not "the *actual user* of the phone number to which Defendants sent the text messages [or] the

16   *actual recipient* of those messages," she did not suffer the concrete injury contemplated by Congress.

17   72 F.4th at 989. After all, the defendants argued, the plaintiff did not personally experience the

18   "buzzing" of the cell phone at issue. *Id.* And yet the Ninth Circuit nevertheless held the plaintiff had

19   Article III standing because "'[r]eceiving even one unsolicited, automated text message from [a

20   telemarketer] is the precise harm identified by Congress,' and sufficient to state an injury in fact

21   under Article III." *Id.* at 990 (quoting *Chennette*, 50 F.4th at 1222). The Ninth Circuit noted that the

22   plaintiff additionally alleged that she personally found the texts to be "irritating, exploitative and

23   invasive," which "suggest[ed]" to the court that the plaintiff may in fact have "suffered the precise

24   sort of nuisance and privacy deprivation the TCPA was enacted to address," but it held those

25   allegations were "not necessary to show injury in fact" for Article III standing purposes where she

26   suffered the "precise harm identified by Congress," *i.e.*, receipt of an unsolicited text message. *Id.*

27       Defendants' argument that any injury e-fax users suffer is "inflicted by [their] own hand"

28   (Opp. at 19–20) misses the mark. Defendants' suggestion that health-care providers like McLaughlin

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

should simply not read their faxes, including patient-related faxes, is unsustainable because Defendants expect providers to review their faxes. That is why they sent the fax ads at issue in this case in the first place. Moreover, the injury takes place when the fax is transmitted, and Defendants offer no reason why Plaintiff should be required to take steps to avoid a harm that has already occurred. *See Craftwood II, Inc. v. Generac Power Systems, Inc*., 920 F.3d 479, (7th Cir. 2019).[6]

**B.    Defendants' argument regarding CAN-SPAM is without merit.**

Defendants cite *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009) to argue that e-fax users must make the same showing of "greater than negligible burdens" that an internet access provider must make to sue under the CAN-SPAM Act in order to sue under the TCPA. (Opp. at 18). This is a false equivalence. The CAN-SPAM Act and the TCPA are different statutes with different standing requirements. Congress specifically designed the TCPA to provide a private right of action for any violation of § 227(b). The Ninth Circuit held in *Chennette* that TCPA plaintiffs "have Article III standing because they have alleged a violation of their statutory rights under the TCPA." 50 F.4th at 1222. No "extra" burden like those found in CAN-SPAM cases is required.

Defendants' argument that affording Article III standing to any user of an online fax service who receives faxes "as essentially emails" would "fly in the face of Congress's careful judgment" that the harm be "sufficiently concrete" (Opp. at 18) misstates the *Spokeo* test and is factually mistaken. There is no "sufficiently concrete" weighing of injury under *Spokeo*; an injury is either concrete (*i.e.*, "real") or not. Moreover, the "essentially emails" characterization is wrong—what is sent (point A) to an online fax service (point B) is not "essentially an email"; it is a fax, as Sponsler has repeatedly admitted. (*See* Doc. 573-2 at 49:7-12) ("When a fax goes – is transmitted from point A and arrives at the online fax service, point B, the online fax service doesn't receive something that's essentially an email. It receives a fax. Correct.?" A: "Yes, sir."); Doc. 573-3 at 33:21-34:2 (same); Doc. 573-4 at 28:1-7) (same).

---

[6] Defendants' argument also concedes printing capacity, stating "[t]he .PDF or image files received as attachments to emails *may be viewed*, deleted, stored, forwarded to others, *or printed* if needed or desired." (Opp. at 19 (emphasis added)).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**C.      Business entities are "persons" under the TCPA and have Article III standing.**

Defendants argue that business entities who received their faxes using an online fax service lack Article III standing because they would not be able to sue Defendants at common law for the tort of intrusion upon seclusion, citing *FCC v. AT&T Inc.*, 562 U.S. 397, 406 (2011). This argument is a non-starter.[7] The "close relationship" test in *Spokeo* asks whether the statutory cause of action involves the same type of harm "*associated with*" the common-law cause of action, not whether it is an "exact duplicate" of the elements of a common-law cause of action. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021) (emphasis added). The close-relationship test is "really a simple instruction: see if a new harm is similar to an old harm." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020) (en banc).

Here, the "new harm"—the receipt of unsolicited fax advertisements, which Congress found causes "[b]usinesses *in particular* to suffer "a nuisance . . . [and] an invasion of privacy" in enacting the TCPA, Pub. L. 102-243, § 2, ¶¶ 1, 14 (1991)—is "similar" to the "old harm" of intrusion upon seclusion. "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law,'" and "the level of harm required at common law 'does not stake out the limits of [its] power to identify harms deserving a remedy.'" *Drazen v. Pinto*, 74 F.4th 1336, 1343 (11th Cir. 2023) (en banc) (quoting *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022)).

In addition, the Ninth Circuit held in *Chennette* that the TCPA's protections apply to a "person or entity" who receives a prohibited call. 50 F.4th at 1222. "Because the statutory text includes not only 'person[s]' but also 'entit[ies],' we conclude that all of the plaintiffs have standing to sue under § 227(b) of the TCPA." *Id.* at 1223. The Ninth Circuit does not require a business to

---

[7] *FCC v. AT&T* is additionally inapposite as it is not a TCPA case but instead addressed the term "personal privacy" in relation to a Freedom of Information Act exemption.

[8] It would make little sense to provide a right of action for an "entity" to sue, only to find it cannot establish standing. Courts have repeatedly held that businesses are "covered" by the TCPA. *See, e.g.*, *Maxum Indem. Co. v. Eclipse Mfg. Co.*, 2013 WL 5993389, at *7 (N.D. Ill. Nov. 12, 2013) "([S]ince the TCPA makes no distinction among individuals, corporations, and other business entities, it follows that the TCPA created by statute a right of privacy for all three: a right not to be intruded upon by unwanted faxes"); *Chapman v. Wagener*, 2014 WL 540250, at *5 (N.D. Ill. Feb. 11, 2014) (noting the chapter in which the TCPA is listed,

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

prove a common-law "right to privacy" to have standing under the TCPA. *Id.* Because Congress "elevat[ed] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate at law," *Spokeo*, 578 U.S. at 341, the business class members have standing based on the statutory injury defined by Congress in 47 U.S.C. § 227(b)(1)(C). Defendants' two out-of-circuit district court cases, *Sharfman v. Precision Imaging St. Augustine LLC*, No. 6:22-cv-642-WWB-DCI, 2024 WL 4460209, at *1-2 (M.D. Fla. Aug. 2, 2024), *appeal argued*, No. 24-13315 (11th Cir. July 30, 2025); and *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1294 (M.D. Fla. 2020), do not change that result. (Opp. at 20). The reasoning of these cases is on appeal before the Eleventh Circuit, and they are inconsistent with *Chennette*.

**D.      Article III standing is a common question appropriate for class treatment.**

Defendants cite *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1199 (N.D. Cal. 2023), to argue that standing requires "individualized inquiries." But *Stiner* was an Americans with Disabilities Act case, where each class member would eventually have to establish that the defendant's policies affected their "full and equal enjoyment of the facility," even though many of them admittedly had access to such full and equal enjoyment. In TCPA cases, however, standing is established by the successful fax transmission, with no showing of "any *additional* harm" required. *Hall*, 72 F.4th at 988 (quoting *Van Patten*, 847 F.3d at 1043). Whether a class member received a fax is a common question that can be resolved through Defendants' own records of their fax broadcasts that the Ninth Circuit relied on in this case. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931–32 (9th Cir. 2018). There is no need for individualized testimony regarding "device settings" or "buzzing" because the injury is the transmission of the advertisement itself, and those transmissions can be proven on a class-wide basis here.

**E.      Even if users of "online fax services" lack Article III standing, there is no evidence a "great number" of class members used that technology in 2009–2010.**

Finally, even if users of the "online fax services" described in the 2019 Amerifactors Bureau Ruling lack Article III standing, that does not require denial of class certification. *See Stiner*, 665 F.

---

Chapter 5, Wire or Radio Communications, defines the term "person" to include "an individual, partnership, association, joint-stock company, trust, *or corporation*") (citing 47 U.S.C. § 153(39) (emphasis added).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1   Supp. 3d at 1197 (holding "the Court may not deny class certification merely because the proposed

2   class may contain some uninjured class members"). Although Defendants suggest that *TransUnion*

3   stands for the proposition that a class cannot be certified if it contains any members who lack Article

4   III standing, the Ninth Circuit has held that "[t]he Supreme Court expressly held open the question

5   'whether every class member must demonstrate standing before a court certifies a class.'" *Olean*

6   *Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 (9th Cir. 2022) (en

7   banc) (quoting *TransUnion*, 594 U.S. at 431). The Ninth Circuit held in *Olean* that Rule 23 permits

8   "certification of a class that potentially includes more than a de minimus number of uninjured class

9   members." *Id.* The relevant standard is whether the class contains "*a great number* of members who

10  for some reason could not have been harmed by the defendant's allegedly unlawful conduct . . . ."

11  *Olean*, 31 F.4th at 669, n.14 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824

12  (7th Cir. 2012)) (emphasis added).

13        Here, if the Court agrees with Defendants that the rulings in the 2003 Commission Order and

14  the 2015 WestFax Bureau Ruling were based on the "technological innovations from that time" and

15  were not addressing the more "current" online fax services available in 2019 (Opp. at 12–13), it is

16  not at all clear that there were a "great number" of class members using "online fax services" from

17  September 2009 to May 2010. Defendants certainly have not provided any evidence of that. The

18  record shows to the contrary that, if anything, some class members who received Defendants' faxes

19  between September 2009 and May 2010 may have been using the type of "commercial facsimile

20  services" discussed in the 2003 Commission Order or the "e-fax services" discussed in the 2015

21  WestFax Bureau Ruling. There is no evidence anyone was using the supposedly more "current"

22  "online fax service" technology when the faxes at issue in this case were sent, and thus no good

23  reason to deny class certification.

24                           **<u>Conclusion</u>**

25        For the foregoing reasons, the Court should find that Rule 23(a) and Rule 23(b)(3) are

26  satisfied and re-certify the Exhibit-A Only Class.

27

28

Dated: January 9, 2026

Respectfully submitted,

By:     /s/ Glenn L. Hara

Brian J. Wanca (*admitted pro hac vice*)
Glenn L. Hara (*admitted pro hac vice*)
**ANDERSON + WANCA**
3701 Algonquin Rd., Suite 500
Rolling Meadows, Illinois 60008
Telephone:     (847) 368-1500
Fax:               (847) 368-1501
Email:          bwanca@andersonwanca.com
                    ghara@andersonwanca.com

Robert C. Schubert (S.B.N. 62684)
Willem F. Jonckheer (S.B.N. 178748)
Dustin L. Schubert (S.B.N. 254876)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:     (415) 788-4220
Fax:     (415) 788-0161
E-mail:          rschubert@sjk.law
                    wjonkcheer@sjk.law
                    dschubert@sjk.law

*Local Counsel for Plaintiffs*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220