Robert C. Schubert (S.B.N. 62684)
(rschubert@sjk.law)
Willem F. Jonckheer (S.B.N. 178748)
(wjonckheer@sjk.law)
Dustin L. Schubert (S.B.N. 254876)
(dschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union. St., Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220
Fax: (415) 788-0161

*Local Counsel for Plaintiffs*

Brian J. Wanca (*admitted pro hac vice*)
(bwanca@andersonwanca.com)
Glenn L. Hara (*admitted pro hac vice*)
(ghara@andersonwanca.com)
**ANDERSON + WANCA**
3701 Algonqiun Rd., Suite 500
Rolling Meadows, Illinois 60008
Telephone: (847) 368-1500
Fax: (847) 368-1501

*Counsel for Plaintiffs*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

TRUE HEALTH CHIROPRACTIC, INC. and MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC., Individually and as the Representatives of a Class of Similarly-Situated Persons,

Plaintiffs,

v.

MCKESSON CORPORATION, MCKESSON TECHNOLOGIES INC. and JOHN DOES 1- 10,

Defendants.

Case No. 4:13-cv-02219-HSG

**DECLARATION OF GLENN L. HARA IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF SECOND RENEWED MOTION FOR CLASS CERTIFICATION**

Date: January 22, 2026
Time: 2:00 p.m.
Judge: Hon. Haywood S. Gilliam, Jr.
Courtroom: 2, 4th Floor

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

I, Glenn L. Hara, declare as follows:

1. I am an attorney at Anderson + Wanca, counsel for Plaintiffs True Health Chiropractic, Inc. and McLaughlin Chiropractic Associates, Inc., and am admitted pro hac vice in this action. I have personal knowledge of the following and could competently testify thereto if called upon to do so.

2. I have attached as Exhibit A a true and correct copy of WestFax, Inc.'s Comments on the Petition for Declaratory Ruling filed by Amerifactors Financial Group, LLC, dated August 17, 2017, which I retrieved from the Electronic Comment Filing System (ECFS) maintained by the Federal Communications Commission (FCC).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: January 9, 2026 s/ Glenn L. Hara

# EXHIBIT A

**BEFORE THE**
**FEDERAL COMMUNICATION COMMISSION**
**WASHINGTON, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Rules and Regulations Implementing the Telephone | ) | CG Docket No. 02-278 |
| Consumer Protection Act of 1991 | ) | |
| | ) | |
| Junk Fax Prevention Act of 2005 | ) | CG Docket No. 05-338 |

# WESTFAX, INC. COMMENTS ON THE PETITION FOR DECLARATORY RULING FILED BY AMERIFACTORS FINANCIAL GROUP, LLC[1]

WILLIAM B. HAYES
257 Jackson Street
Denver, Colorado 80206
303 514 0658
303 291 3368 (fax)
sqhayes@aol.com

Its Counsel

August 17, 2017

[1] *Public Notice,* Consumer & Governmental Affairs Bureau Seeks Comment on Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling Under the Telephone Consumer Protection Act of 1991, CG Docket Nos. 02-278 and 05-338, DA 17-390 (rel. Jul 17, 2017); *see* Petition for Expedited Declaratory Ruling of Amerifactors Financial Group, LLC, CG Docket Nos. 02-278 and 05-338 (filed July 13, 2017) (hereinafter "Amerifactors Petition").

WestFax, Inc. ("WestFax") by its undersigned counsel, hereby submits its comments on the Amerifactors Petition. Reference is made to the FCC Declaratory Ruling dated August 28, 2015 ("Ruling")[2] that an electronic facsimile is covered by the consumer protections in the Telephone Consumer Protection Act (TCPA)[3] and the Junk Fax Protection Act (JFPA)[4]. The TCPA and the JFPA are collectively referred to herein as the TCPA.

<u>Comment #1</u>. The TCPA does not apply to an electronic communication. The TCPA did not contemplate emails or electronic facsimiles. Emails and electronic facsimiles did not exist when the TCPA was passed. The JFPA has no statutory language that references or applies to emails or electronic facsimiles. There is no legal, factual or technological basis that an "electronic fax" (which is a misnomer) is not an email.

<u>Comment #2</u>. It is well understood that the FCC position further incentivizes plaintiffs to pursue potentially devastating class actions even though Congress never expressed an intention for the TCPA to regulate emails or to permit a private right of action arising from the receipt of an email. Congress has not authorized the FCC to regulate emails under the TCPA. The TCPA does not apply to emails.

<u>Comment #3</u>. The FCC acknowledges that "faxes sent as emails over the Internet" are not subject to the TCPA and rules." *See 2003 TCPA Order*, 18 FCC Rcd at 14132-33. Emails are separately regulated by the Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM)[5]. CAN-SPAM has consumer protections for recipients of emails. Everyone recognizes and treats an electronic fax for what it is – an email.

<u>Comment #4</u>. The FCC acknowledges in footnote 1 of its Ruling that "Efaxes differ from other faxes in that the intended recipient, instead of using a fax machine to

---

[2] Declaratory Ruling CG Docket No. 02-278 and 05-338 (released August 28, 2015).
[3] The TCPA is codified as 47 U.S.C. § 227. The Commission's implementing rules are codified at 47 C.F.R. § 64.1200.
[4] The Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005) (JFPA) is codified at 47 U.S.C. § 227(b)(1)(C).
[5] Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, Pub. L. No. 108-187, 117 Stat. 2699, codified at 15 U.S.C. § 7701-7713, 18 U.S.C. § 1037 and 28 U.S.C. § 994.

receive incoming faxes, uses equipment or a service that converts the incoming fax into a format that can be and is emailed to the recipient." However, there is no "incoming fax to the recipient", a fax has not been "sent" to a recipient (the fax is intercepted, converted to an email and terminated prior to receipt); and the converted document (email) is not necessarily received on a computer.

Comment #5. There is no statutory basis in the TCPA for the FCC to interpret that "the TCPA applies only to those that begin as faxes" or communications originating as a fax over a telephone line". *See Ruling Par. 10.* The beginning or origination of a communication is not relevant if, in the middle and before it is sent to the recipient, the communication is intercepted and converted by an independent service provider who is not the recipient and as a result, the ending or destination of the communication is an email. A recipient of an electronic facsimile receives an email. Millions of people who use EFAX®, MyFax™ and the other services that intercept, convert and terminate facsimiles and send the message to the intended recipient as an email over the Internet. The facsimile transmission is terminated before it is sent to the recipient; the fax itself it no longer exists. An electronic fax may begin or originate as a traditional facsimile message from the sender but it is intercepted by an independent third-party vendor before it is received by the recipient. The intercepted message is reformatted and converted to a different digital message (i.e. an email) and terminated. The content of the message is then transmitted (sent) as an email to the recipient's email address over the Internet. The recipient receives an email on whatever device the recipient chooses to use to access his or her emails. Electronic faxes are not sent as a fax over a telephone line to a telephone facsimile machine. There is no incoming fax, telephone fax machine, telephone line or paper.

Comment #6. There is no statutory basis in the TCPA for the FCC to interpret that "Efaxes also satisfy the statutory requirements to be a fax on the receiving end.". First, the FCC does not state what those statutory requirements might be and there are none. The TCPA itself has nothing and the FCC extra textural definition of a "telephone fax machine" does not sweep in the fax server and modem, along with the computer that

receives the efax because together they, by necessity, have the capacity to "transcribe text or images (or both) from an electronic signal received over a telephone line onto paper" *See Ruling Par. 9*. A sender is not sending an electronic facsimile to a recipient's fax machine. The recipient has voluntarily and affirmatively elected to receive all such communications as emails on whatever devices he or she uses to receive emails. The receiving end is an email. Faxes are not being sent to the recipients' computers attached to fax servers or modems. The FCC's reasoning on this point "because together they, by necessity, have the capacity to" is difficult to follow. Similarly, the "capacity" argument that the FCC defaults to in its Ruling causes the same problems as the FCC's definition of an "autodialer". This is another pending challenge to the FCC's rule making authority under the TCPA. In *ACA Int'l v. FCC*, No. 15-1211, the D.C. Court is determining the FCC's authority to enter a 2015 order that broadened the definition of an "autodialer".

Comment #7. The TCPA regulates sending unsolicited facsimile advertisements to recipients. The TCPA expressly states "It shall be unlawful for any person to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."[6] There are two (2) parts to the statute: (1) using a machine to send; and (2) sending the facsimile to the recipient's telephone facsimile machine. The FCC acknowledged the two (2) statutory requirements in its Ruling that the communication be a fax on the "originating end" and be a fax on the "receiving end". *See Ruling Par. 9.* It is obvious the communication is an email and not a fax on the receiving end.

Comment #8. The FCC's rules define "telephone facsimile machine" to mean "equipment which has the capacity to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line or to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."[7] The TCPA does not have such a definition and an electronic facsimile does not fall within this definition in any event. Although some electronic

[6] 47 U.S.C. § 227(b)(1)(C)
[7] 47 C.F.R. § 64.1200(f)(13)

facsimiles may result from the use of a telephone fax machine to *send* an unsolicited advertisement over telephone lines, an electronic facsimile is never *sent to* a telephone fax machine or transmitted over a regular telephone line or to a machine that transcribes text or images (or both) from an electronic signal received over a regular telephone line onto paper.

Comment #9. Electronic facsimiles and emails do not cause any of the harm, damages and inconveniences cited by Congress when the TCPA was passed. An electronic facsimile does not cost a recipient time and money by way of interfering transmissions, and unplanned uses of paper and toner, as well as wear and tear on equipment. A recipient of an electronic facsimile does not lose the use of its fax machine, paper or prevent fax machines from receiving authorized faxes or prevent their use for authorized outgoing faxes. A recipient's telephone line is not used or interfered with. Consumers are not left unprotected. CAN-SPAM regulates email and protects consumers.

Comment #10. In *Bais Yaakov of Spring Valley v. FCC*, No. 14-1234, 2017 WL 1192909 (D.C. Cir. Mar. 31, 2017), the D.C. Circuit Court ruled that the FCC exceeded its authority when it imposed a 2006 mandate that *solicited* fax advertisements contain an opt-out notice – something the text of the TCPA only requires for *unsolicited* fax advertisements. The Court applied straightforward logic. First, the FCC may only take action that Congress has authorized. The Court expressly rejected the FCC's argument that it could require opt-out notices on solicited fax ads because Congress had not prohibited the FCC from doing so. The Court stated the FCC's position "has it backwards as a matter of basic separation of powers and administrative law". 2017 WL 1192909 at *3. Second Congress drew the line at the text of the TCPA. The Court concluded "Congress has not authorized the FCC to require opt-out notices on solicited fax advertisements. And that is all we need to know to resolve this case." *Id.* The authorization to prescribe rules "implementing the TCPA's requirements" does not empower the FCC make law or to enact a rule expanding those requirements beyond the text of the TCPA. The plain statutory language in the TCPA itself does not grant the FCC the authority to make its Ruling or find otherwise. The FCC has the authority to issue

Rulings and Regulations to implement the TCPA but only within its statutory boundaries. To the extent the FCC believes including electronic faxes within the scope of the TCPA is "good policy" that does not change the text of the TCPA. The FCC does not have the authority to expand beyond the statutory text of the TCPA to try to regulate electronic faxes under the TCPA. The purpose of the TCPA is not to help consumers who get emails. CAN-SPAM serves this purpose.

Respectfully submitted,

William B. Hayes
257 Jackson Street
Denver, Colorado 80206
303 514 0658

Counsel for WestFax, Inc.